IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SCOTT TURNAGE, CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, and TRAVIS BOYD on behalf of themselves and all similarly situated persons,<br><br>   Plaintiffs,<br><br>v.<br><br>BILL OLDHAM, in his individual capacity and in his official capacity as the Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity and in his official capacity as the Jail Director of Shelby County, Tennessee; CHARLENE MCGHEE, in her individual capacity and in her official capacity as the Assistant Chief of Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity and in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; and TYLER TECHNOLOGIES, INC., a foreign corporation,<br><br>   Defendants. | Civil Action No.<br>2:16-cv-02907-SHM-tmp<br><br>Jury Demanded |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OF DEFENDANTS BILL OLDHAM, ROBERT MOORE, CHARLENE MCGHEE, AND DEBRA HAMMONS AS TO THE SECOND AMENDED CLASS ACTION COMPLAINT**

Defendants Sheriff Bill Oldham, Robert Moore, Charlene McGhee, and Debra Hammons (hereinafter "Individual Defendants"), in their individual capacities, submit this Memorandum in Support of their Motion for Partial Judgment on the Pleadings, stating as follows:

Plaintiffs' Second Amended Class Action Complaint (D.E. 52) ("Complaint") fails to state a claim upon which relief can be granted against the Individual Defendants based on either their own acts or their respective alleged roles as supervisors. The Individual Defendants are also entitled to Qualified Immunity. Thus, Plaintiffs' claims against them in their individual capacities should be dismissed.

## RELEVANT FACTS

Plaintiffs brought this claim against Shelby County, Tyler Technologies, Inc., and the Individual Defendants under 42 U.S.C. § 1983, alleging violations of Plaintiffs' constitutional rights and rights under Tennessee common law.[1] Specifically, the Plaintiffs allege that they were unlawfully detained in violation of various rights at the Shelby County Criminal Justice Center (hereinafter the "Jail"). However, the Complaint states no facts with specificity which place the Individual Defendants at the Jail during these alleged unlawful detentions. Instead, the Individual Defendants' respective roles, as alleged in the Complaint, are limited to their involvement in the selection and implementation of a new computer criminal intake system.

---

[1] The Tennessee common law claims are brought solely against Tyler Technologies, Inc.

2

Years before this litigation began, Shelby County undertook the task of implementing a new series of computer systems used to run various aspects of the Jail. Shelby County is "the largest of the ninety-five counties in Tennessee," and its largest city—Memphis—is one of the most heavily populated cities in the State. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 368 (Tenn. 2009) (citations omitted). According to the Complaint, over 28,000 criminal cases must be tracked and processed in the Jail each year. (D.E. 52, ¶30).

Prior to even selecting the vendors for these new programs, Shelby County formed an IT Steering Committee composed of various representatives from different County agencies to oversee and select the right vendors and products. This Committee existed long before the County took steps to begin implementation of the new systems.

In addition to contracting with multiple vendors for different aspects of the new project, Shelby County established teams to oversee the transition to the new programs. These included an iCJIS Executive Committee, a Court Executive Team, a Court Project Team, and a Court Technical Team, among others. (Tyler Technologies Contract, D.E. 45-2, p. 23).[2]

In November of 2016, after several years of preparation, Shelby County, along with Tyler Technologies and several other vendors, began the implementation of the new inmate tracking system and other systems. When it became apparent that difficulties had arisen with the transition, Shelby County personnel (including

---

[2] The Court may consider the contract with Tyler Technologies because the Plaintiffs reference it. (*See* D.E. 52, ¶39). *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008).

3

the Individual Defendants) took immediate action to keep the Jail running and to prevent constitutional violations or other harm from occurring.

## ARGUMENT

**A.     Standard of Review**

A court may dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(c).[3]  "When [the failure to state a claim] defense is raised by a Rule 12(c) motion for judgment on the pleadings, courts apply the standard for reviewing a Rule 12(b)(6) motion." *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 741 (W.D. Tenn. 2012) (footnote omitted).

A complaint survives a motion for judgment on the pleadings only if it contains "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim only has "facial plausibility" if the plaintiff provides enough factual allegations for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) ("In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal's* standards strictly.").

**B.     Plaintiffs Have Failed to Make Specific Allegations of Constitutional Violations By the Individual Defendants.**

A complaint against multiple defendants in the § 1983 context is insufficient if it does not specify the unlawful acts of each defendant.  As the Sixth Circuit has

---

[3] The Court reviews this as a Rule 12(c) Motion for Judgment on the Pleadings because Shelby County and the Individual Defendants have filed an Answer to the Complaint.  *See, e.g.*, *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 741 (W.D. Tenn. 2012).

4

recognized, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x. 762, 764 (6th Cir. 2002) (citing *Hall v. United States,* 704 F.2d 246, 251 (6th Cir. 1983)). A complaint must "make clear exactly **who** is alleged to have done **what** to **whom**, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). Otherwise, defendants have no way of knowing "what particular unconstitutional acts they are alleged to have committed." *Id.* The Sixth Circuit has "consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what **each** defendant did to violate the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original).

Here, the Plaintiffs do not allege specific facts illustrating how the Individual Defendants violated Plaintiffs' constitutional rights. Instead, they focus almost exclusively on the Individual Defendants' general involvement in discretionary decisions related to the adoption and implementation of the Odyssey computer inmate intake system. This is insufficient to attach liability to the Individual Defendants for alleged violations that occurred at the Jail.

For instance, Plaintiffs allege that "Defendants Oldham, Moore, McGhee and Hammons[4] terminated the Jail's use and reliance on [the old system] and began to

---

[4] Defendants also point out that McGhee and Hammons are never addressed individually except in one introductory paragraph each, nor are specific acts attributed to them. Instead, they are only

5

record all arrest and inmate activity by hand[,]" and that they then "went 'live'" on November 7, 2016. (D.E. 52, ¶51). Plaintiffs do not establish a connection between alleged actions like these and conduct by the Individual Defendants that allegedly violated the Plaintiffs' constitutional rights.

And where the Plaintiffs do allege facts placing the Individual Defendants at the scene of the alleged constitutional violations—the Jail—those allegations are too vague and conclusory to make out a claim. Specifically, the Plaintiffs allege in only two paragraphs some action (inaction, to be more precise) placing the Individual Defendants at the Jail:

> Defendants Oldham, Moore, McGhee and Hammons did not release Plaintiff Brown from the Jail until November 14, 2016, a full seven days after [Brown's] charges were fully dismissed. (D.E. 52, ¶ 77).
>
> * * *
>
> . . . Defendants Oldham, Moore, McGhee and Hammons did not release Plaintiff Melton at that time nor for four more days thereafter, based on their subordinates [sic] claims that his order was not in the Computer System. *Id.* at ¶ 79.

These allegations are little more than legal conclusions couched as factual allegations. They do not explain how or why the Individual Defendants came to be on scene for Brown or Melton's detention, what authority the Individual Defendants had to prevent such a release, or what steps they took or did not take in order to "not release" Brown or Melton.

---

addressed in the cluster "Defendants Oldham, Moore, McGhee and Hammons." (*See generally* D.E. 52). In similar fashion, Defendant Moore is only singled out in one allegation paragraph that does not even place him at the Jail. *Id.* at ¶48.

6

In other, similar paragraphs, the Plaintiffs allege in more conclusory terms that the Individual Defendants had a hand in the Plaintiffs' detentions, without any factual specificity: "Defendants, with deliberate indifference, failed and refused to process and arraign arrestees so that their bonds could even be set . . . ." *Id.* at ¶ 26. This is not a factual allegation; it is a legal conclusion that does not allege factually-specific action by the Individual Defendants. Such bare, conclusory allegations are insufficient to make out a claim for constitutional violations.

**C.     The Individual Defendants Are Not Liable As Supervisors.**

The Individual Defendants cannot be held liable individually merely because they had supervisory authority over Sheriff's Office employees. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft*, 556 U.S. at 676. And inaction is not enough to make out a claim for supervisory liability. "The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act." *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Instead, "a plaintiff must plead that each Government-official defendant, through the official's ***own*** official actions, violated the Constitution." *Id.* at 888 (emphasis added). Moreover, a Plaintiff cannot simply show that a supervisor committed some act that inadvertently led to a constitutional violation. Rather, a "claimed constitutional violation must be based upon ***active unconstitutional behavior***." *Id.* (emphasis added) (citation omitted).

Here, the Plaintiffs do not allege active unconstitutional behavior by the Individual Defendants.  Instead, they allege two separate sets of facts:  (1) that the Plaintiffs were unlawfully detained in violation of their rights, and (2) that the Individual Defendants chose to proceed with the Odyssey Case Management System once it came to light that problems were allegedly occurring in the system's implementation. (D.E. 52, ¶112).   While Plaintiffs may argue that these two facts are connected, it cannot be said that the Individual Defendants' actions amounted to "active unconstitutional behavior," *Summers*, 368 F.3d at 888, or that they "encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Moreover, Plaintiffs' allegations based on the County's decision to select Tyler as a vendor or Odyssey as a program are not attributable to the Individual Defendants.  As the Tyler Contract shows, the Individual Defendants did not sign and were not the final authority on that decision.  Thus, Plaintiffs' claims against the Individual Defendants based on supervisory liability should be dismissed.

### D. The Individual Defendants Are Entitled to Qualified Immunity.

Government officials performing discretionary functions generally are granted qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). Courts must resolve immunity questions at the earliest possible stage of litigation because "qualified immunity is an immunity from suit rather than an affirmative defense." *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Qualified immunity exists to ensure that government officials focus on doing their jobs rather than worrying about being sued. *See Harlow*, 457 U.S. at 807. It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Although a defendant must plead the defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Blake*, 179 F.3d at 1007.

In order to lose qualified immunity, a government official must be on notice that his specific actions amount to a constitutional violation. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The "contours of the right must be sufficiently clear that a reasonable official would understand that ***what he is doing*** violates that right." *Id.* (emphasis added); *see Summers*, 368 F.3d at 888 (concluding that defendant-sheriff was entitled to qualified immunity because the plaintiff's complaint attributed no specific acts to the sheriff).

Courts within the Sixth Circuit conduct a three-step analysis to determine whether an official receives qualified immunity. *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). First, the court determines whether "the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred." *Id.* The court then considers "whether the violation involved a clearly

established constitutional right of which a reasonable person would have known." *Id.* Lastly, the court asks whether the official's actions were "objectively reasonable" in light of the clearly established right. *Id.*

Here, Plaintiffs do not allege (nor can they) some act by the Individual Defendants in which the Individual Defendants, themselves, violated Plaintiffs' clearly established rights. And the paragraphs of the Complaint which do place the Individual Defendants at the Jail are so conclusory and void of factual specificity that they cannot put the Individual Defendants on notice of how they violated specific rights at the Jail (*e.g.* "Defendants . . . failed to permit many arrestees to post bonds that were preset . . ." D.E. 52, ¶25). Moreover, they do not show how the Individual Defendants' actions were not objectively reasonable in light of the extraordinary circumstances that arose as alleged in the Complaint. Without more, the Individual Defendants must be dismissed from this case as protected under Qualified Immunity.

## CONCLUSION

For all these reasons, the Individual Defendants respectfully request that the claims against them in their individual capacities be dismissed.

Respectfully submitted,

s/ Amber D. Floyd
Robert E. Craddock, Jr. (# 5826)
Odell Horton (# 12426)
Amber D. Floyd (#29160)
Wyatt Tarrant & Combs LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN  38120
(901) 537-1000
rcraddock@wyattfirm.com
ohorton@wyattfirm.com

E. Lee Whitwell (# 33622)
Shelby County Attorney's Office
160 North Main Street, Suite 950
Memphis, TN  38103
(901) 222-2100
lee.whitwell@shelbycountytn.gov

*Attorneys for Shelby County*

Certificate of Service

      I certify that the foregoing is being filed via the Court's ECF system this 25th day of May, 2017, for service on all persons registered in connection with this case, including:

Michael G. McLaren
William E. Cochran, Jr.
Brice M. Timmons
Black McLaren Jones Ryland & Griffee PC
530 Oak Court Drive, Suite 360
Memphis, TN 38117
MMcLaren@blackmclaw.com
wcochran@blackmclaw.com
btimmons@blackmclaw.com

Frank L. Watson
William F. Burns
Watson Burns, PLLC
253 Adams Avenue
Memphis, TN 38104
fwatson@watsonburns.com
bburns@watsonburns.com

Claiborne Ferguson
The Claiborne Ferguson Law Firm P.A.
294 Washington Avenue
Memphis, TN 38103
Claiborne@midsouthcriminaldefense.com

Joseph S. Ozment
The Law Office of Joseph S. Ozment, PLLC
1448 Madison Ave.
Memphis, TN 38104
jozment@oz-law.net

*Counsel for Plaintiffs*

Bradley E. Trammell
Baker, Donelson, Bearman, Caldwell & Berkowitz
165 Madison Avenue, Suite 2000
Memphis, TN 38103
btrammell@bakerdonelson.com

Beth Petronio
K&L Gates
1717 Main Street, Suite 2800
Dallas, Texas 75201
beth.petronio@klgates.com

*Counsel for Tyler Technologies, Inc.*

                                s/ Amber D. Floyd

61621633.1