IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT TURNAGE , CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, and TERRENCE DRAIN on behalf of themselves and all similarly situated persons, | ) ) ) ) ) ) ) ) | **Case No. 2:16-cv-2907-SHM/tmp** |
| PLAINTIFFS, | ) ) | **CLASS ACTION COMPLAINT FOR** |
| v. | ) ) ) ) | **VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, AND TENNESSEE COMMON LAW** |
| BILL OLDHAM, in his individual capacity and in his official capacity as the Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity and in his official capacity as the Jail Director of the Shelby County, Tennessee; CHARLENE McGHEE, in her individual capacity and in her official capacity as the of Assistant Chief Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity and in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; and TYLER TECHNOLOGIES, INC., a foreign corporation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED PURSUANT TO FED. R.  CIV. PRO. 38(a) & (b)** |
| DEFENDANTS. | ) | |

**PLAINTIFFS' RESPONSE TO MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OF DEFENDANTS BILL OLDHAM, ROBERT MOORE, CHARLENE MCGHEE, AND DEBRA HAMMONS AS TO THE SECOND AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT OF SAME**

COME NOW Scott Turnage, Cortez D. Brown, Deontae Tate, Jeremy S. Melton, Issacca Powell, Keith Burgess, Travis Boyd, and Terrence Drain, on behalf themselves and all similarly situated persons (hereinafter "Plaintiffs"), by and through the undersigned counsel, and in response to the Motion for Partial Judgment on the Pleadings filed by Defendants Bill Oldham, Robert Moore, Charlene McGhee, and Debra Hammons (hereinafter "Individual Defendants" or "Movants") as to the Second Amended Class Action Complaint (D.E. 56) state as follows:

## ARGUMENT

The Individual Defendants argue that the Second Amended Class Action Complaint (D.E. 52)(the "Complaint") fails to state a claim upon which relief can be granted and that they are also entitled to qualified immunity. (Defs.' Mem. In Supp. of Mot. J. Pleadings, May 25, 2017, ECF 56-1).  The allegations relating to municipal liability for Shelby County, Tennessee are not in issue in the Individual Defendants' motion and are not addressed here.  As explained below, reading the Complaint in the light most favorable to Plaintiffs, it is plausible that the Individual Defendants' acts violated Plaintiffs' clearly established constitutional rights. Therefore, Defendants' motion should be denied.

### I.   Standard of review

In the Sixth Circuit, a motion for judgment on the pleadings (Fed. R. Civ. P. 12(c)) is treated like a motion for failure to state a claim (Fed. R. Civ. P. 12(b)(6)).  The court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Jelovsek v. Bredesen, 545 F.3d 431, 434 (6th Cir. 2008) (citing Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 761 (6th Cir. 2006) (internal quotation marks omitted). Under Ashcroft v. Iqbal, 556 U.S. 662 (2009), which governs motions

2

to dismiss, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. Of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)(quoting Iqbal, 556 U.S. at 678).

To survive a motion to dismiss on qualified immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016)(quoting Johnson v. Moseley, 790 F.3d 649, 653 (6th Cir. 2015)). "'The test is whether reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional rights.'" Id. (quoting Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 562-63 (6th Cir. 2011)).

Although insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery, the Sixth Circuit has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." Id. The Sixth Circuit clarified that, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." Id. (quoting Wesley v. Campbell, 779 F.3d 421, 433 (6th Cir. 2015)).

## II. Plaintiffs make specific allegations of constitutional violations by each of the named Individual Defendants.

To establish personal liability in a § 1983 action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25 (1991). "A person 'subjects' another to the deprivation of a constitutional right,

within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made." Williams v. City of Euclid, 2013 U.S. Dist. LEXIS 79762 (N.D. Ohio June 6, 2013)(*quoting* Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  An official can be held liable if he wrongfully instigates events which lead to a deprivation of constitutional rights: "[a]ny official who 'causes' a citizen to be deprived of [his] constitutional rights can . . . be held liable. The requisite causal connection is satisfied if the [official] sets in motion a series of events that the [official] knew or should reasonably have known would cause others to deprive the plaintiff of [his] constitutional rights."  Hansen v. Williamson, 440 F. Supp. 2d 663, 669 (E.D. Mich. June 20, 2006)(*quoting* Conner v. Reinhard, 847 F.2d 384, 396-97 (7th Cir. 1998)).

An illustrative case on this point is Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016)(*en banc*), *cert denied*, 137 S. Ct. 831 (2017). Castro sued Los Angeles and jail officials for injuries he suffered when a Los Angeles jailer left him with a disturbed, combative person in a sobering cell that lacked audio monitoring or adequate supervision.  Id. at 1064-65. The jail officials argued that Castro's allegations did not show that they violated their duty to protect him. Id. at 1067.  The en banc court explained:  "Nor do the official's actions, in this context, require some affirmative act."  Id. at 1067.  It explained, quoting an Eighth Amendment case, that "direct causation by affirmative action is not necessary."  Id. An official may be liable if he knows that the inmates face a substantial risk and disregards that risk "by failing to take reasonable steps to abate it."  Id. (*quoting* Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir. 2009)).

Here, Plaintiffs' Complaint makes specific allegations of constitutional violations by each of the Individual Defendants. The Individual Defendants were personally involved in, and set in motion, a series of events that the officials knew or reasonably should have known would cause

Plaintiffs' unlawful seizures and detentions. The Complaint makes clear that the Individual Defendants, consisting of the Sheriff[1], the Chief Jail Director, the Assistant Chief of Jail Security, and the Assistant Chief of Jail Programs, are named in their individual capacities. (Complaint ¶¶ 14-17). The personal involvement by the Individual Defendants is explained in the Complaint as follows:

> Defendants, acting with deliberate indifference, failed to permit many arrestees to post bonds that were preset by their arrest warrants or civil writs of attachment of the person, causing these persons to be imprisoned for days and even weeks – often over petty crimes such as driving on a suspended license and public intoxication. Moreover, when these arrestees actually were allowed to post bond (and in fact did so), the County nevertheless recklessly failed to acknowledge their bond postings, thus continuing to unlawfully detain them. [Pl.'s Second Amd. Class Action Compl., ECF No. 1 (hereinafter "Complaint") ¶ 25].

> Additionally, Defendants, with deliberate indifference, failed and refused to process and arraign arrestees so that their bonds could even be set, causing them to be detained for days and even weeks without a bond setting. [Complaint ¶ 26].

> Plaintiffs allege that the County's unreasonably inefficient implementation of its administrative policies, as specifically enforced by the individual Defendants named herein, amounts to a policy of deliberate indifference and/or inaction to their constitutional rights. [Complaint ¶ 29].

> The County formed an IT Steering Committee from the Shelby County Criminal Justice Coordinating Council to study an overhaul of the JSSi Computer Tracking System. JSSi tracked the initiation and disposal of over 28,000 criminal cases per year. The selection and implementation of its replacement system constitutes a custom, policy or practice in that the Defendants made a deliberate choice to follow a course of action made from among various alternatives and the Defendants were the officials responsible for establishing the final policy with regard to

---

[1] Tenn. Code Ann. Section 41-4-101 provides "The sheriff of the county has, except in cases otherwise provided by law, the custody and charge of the jail of the county, and of all prisoners committed thereto, and may appoint a jailer, for whose acts the sheriff is civilly responsible."

implementing a competent and efficient Computer Tracing System. [Complaint ¶ 30].

The IT Committee established an iCJS Executive Committee of which the Sheriff was a member. The IT Committee received request for proposals from a number of independent contractor software vendors, including Defendant Tyler Tech. Defendant Tyler Tech promoted to the County the purchase and implementation of its Odyssey Case Management System, claiming that it could provide a fully integrated court and justice solution with up to date information. [Complaint ¶ 31].

Upon information and belief, the Sheriff and the County received information from various members of the IT Steering Committee that the Odyssey software was not compatible with the needs of the Computer Tracking System and would not be appropriate. For example, Criminal Circuit Court Judge Lee Coffee told this committee that the Odyssey Case Management platform would simply not work well and that another solution should be sought out. [Complaint ¶ 32].

As a result, the Sherriff and the County were expressly on notice that Odyssey was incapable of serving as a proper Computer Tracking System. Indeed, several other counties around the country have experienced significant problems with Defendant Tyler Tech's Odyssey. [Complaint ¶ 33].

Defendant Moore and the County were aware that Odyssey was not ready to "go live" immediately prior to its implementation. [Complaint ¶ 48].

In fact, Defendants, individually or collectively, made the determination to defer implementation of the Odyssey System just a few months prior because they knew it was not ready. [Complaint ¶ 49].

The decision to implement Odyssey in light of these concerns also constitutes a custom, policy or practice in that the Defendants made a deliberate choice to follow a course of action made from among various alternatives *in light of the known concerns about Odyssey* and the Defendants were the officials responsible for establishing the final policy with regard to implementing a system adequate to protect the constitutional rights of the public and pre-trial detainees. [Complaint ¶ 50].

6

Notwithstanding these serious storm warnings, the Sheriff and County determined nevertheless to contract with Defendant Tyler Tech to install and implement the Odyssey Case Management System.  Specifically, on November 1, 2016, Defendants Oldham, Moore, McGhee and Hammons terminated the Jail's use and reliance on JSSi and began to record all arrest and inmate activity by hand. Then on November 7, 2016, Defendants Oldham, Moore, McGhee and Hammons went "live" with the Odyssey Case Management System.  [Complaint ¶ 51].

Immediately thereafter, the Class Members as defined below became subject to a Computer Tracking System that could not and would not properly track their arrest records and criminal cases, forcing them to become "lost" in the Jail.  [Complaint ¶ 52].

The County and Defendants Oldham, Moore, McGhee and Hammons acknowledged these problems and their protracted indifference to the problem but took no action to terminate the current method of tracking Plaintiffs and the Class Members so as to prevent the wrongful dentitions.  [Complaint ¶ 53].

One or more of the Defendants have asserted that they should have returned to the use of JSSi following the flawed implementation of Odyssey but did not do so for budgetary reasons. [Complaint ¶ 56].

As a result, the County had no effective ability to determine and ensure: (i) that arrestees with pre-set bonds in their arrest warrants or other instruments authorizing detention could post such bonds and be released, (ii) ensure that no arrestee was detained longer than forty-eight [48] hours prior to probable cause determination, (iii) that those  arrestees who had in fact posted bond were released, (iv) that those arrestees who had their charges against dismissed were released, and/or (v) that those who had been arrested and released would not be re-arrested on the same warrant. [Complaint ¶ 59].

Count 1 of the Complaint presents the cause of action against the Individual Defendants and further explains their personal involvement in causing Plaintiffs' illegal detentions. (Complaint ¶¶ 109-14). That personal involvement included: (1) adopting and implementing a case management system that they knew or should have known would cause the violation of constitutional rights of detainees; (2) failing to take reasonable measures to rectify a case

management system that they knew or should have known was causing the violation of constitutional rights of detainees; (3) failing to properly train and/or supervise subordinates with respect to the case management system; and (4) authorizing, approving, or knowingly acquiescing in the above unconstitutional conduct of the offending subordinates. (Complaint at ¶¶ 109-14). Plaintiffs' Complaint provides enough factual allegations for this Court to draw the reasonable inference that the Individual Defendants acted unreasonably and caused the deprivation of Plaintiffs' constitutionally-protected rights.

### III. Plaintiffs allege that the Individual Defendants are directly liable for their own active unconstitutional behavior.

"Active" unconstitutional behavior does not mean active in the sense that the official must have physically put his hands on the injured party or even been physically present at the time of the constitutional violation. Peatross v. City of Memphis, 818 F.3d 233, 242 (6th Cir. 2016). Where an official's execution of his or her job function causes injury to the plaintiff, the official may be liable under § 1983. Id.   Where an official has a job to do, does not do it, and his failure to do his job results directly in violation of a plaintiff's federal rights, the official may be liable under § 1983. Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 81 (6th Cir. 1995)(holding that a prison official can be held individually liable for failing to adopt and implement operating procedures "in the face of actual knowledge of a breakdown in the proper workings of the department.").  Officials are also susceptible to liability under § 1983 for their misconduct in failing to adequately discharge their supervisory duties. Hayes v. Vessey, 777 F.2d 1149, 1154 (6th Cir. 1985).

Plaintiffs do not allege vicarious liability against the Individual Defendants and do not claim that the Individual Defendants are liable merely because they had supervisory authority over subordinates. Rather, Plaintiffs allege that the Individual Defendants are liable for their own

active unreasonable or deliberately indifferent unconstitutional behavior, namely the behavior and personal involvement discussed in section II above, which proximately caused Plaintiffs' illegal seizures and detentions (Complaint ¶¶ 109-14). The Complaint plausibly alleges that the Individual Defendants wrongfully instigated events, through execution of their job functions, which lead to a deprivation of constitutional rights.  The officials in this case knew that detainees faced a substantial risk of illegal seizure and detention due to the case management system. Nevertheless, the officials disregarded that risk by failing to take reasonable steps to abate it.  For example, they knew that the system was malfunctioning, but they still did not implement either the old system or any other remedial measures to avoid constitutional deprivations.

The Individual Defendants had a job to do and they did not do it. Specifically, they (1) adopted and implemented a system that they knew or should have known would cause unlawful seizures and detentions, (2) failed to adopt and implement procedures to rectify a breakdown in the proper working of the jail's case management system, (3) failed to properly train and or supervise their subordinates with respect to the jail's case management system, and (4) implicitly authorized, approved, or knowingly acquiesced in the above unconstitutional conduct of the offending subordinates.  The Complaint also sufficiently alleges a causal connection.  The Individual Defendants' failures to do their jobs could be reasonably expected to give rise to just the sort of injuries that occurred -- unlawful seizures and detentions.

Movants argue that the Tyler Contract shows that the Individual Defendants did not sign and were not the final authority on the decision to select Tyler as a vendor or Odyssey as the software program.  However, the Tyler Contract referred to by Movants does not establish that the Individual Defendants were not final authorities on the above decision. At most, it establishes the identity of the agent that signed the Tyler Contract on behalf of the Shelby County

Government. There is no evidence that this agent was the final authority or only authority on the above decision. The Complaint, on the other hand, alleges that Movants were final authorities on the decision (Complaint ¶¶ 30, 50), and that allegation must be assumed correct at this point in litigation.

### IV. The Individual Defendants are not entitled to qualified immunity.

To determine whether an officer is entitled to qualified immunity, the Sixth Circuit employs a two-part analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Estate of Carter v. City of Detroit, 408 F.3d 305, 310 (6th Cir. 2005). Occasionally, the Sixth Circuit will apply a three-part test.[2] It consists of the two steps above, considered in any order,[3] with the added third step: (3) whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. Champion v. Outlook Nashville, Inc., 380 F.3d 893, 905 (6th Cir. 2004).

A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015). The test for determining whether qualified immunity applies is one of "objective reasonableness" that requires a "reasonably competent public official" to know the law governing his conduct. Harlow v. Fitzgerald, 457 U.S. 800, 818-89 (1982). An action's

---

[2] "We have, from time to time, elaborated a third step in the qualified immunity analysis: 'whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003) (quoting Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). This requirement is implicit in the two-step approach. See Sample v. Bailey, 409 F.3d 689, 696 n.3 (6th Cir. 2005) (explaining that this third step "directly flows" from Saucier). Regardless of how the test is articulated, a defendant will only be held liable if his or her actions were objectively unreasonable in view of clearly established law." Robertson v. Lucas, 753 F.3d 606, 615 n.4 (6th Cir. 2014)

[3] Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

unlawfulness can be apparent from direct holdings in other cases, specific examples described as prohibited, or the general reasoning that a court employs. Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003). "Officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 742-43 (2002).

The Individual Defendants' argument in favor of qualified immunity does not dispute that Plaintiffs' allegations establish parts one and two of the three-part test. They only disagree as to whether their actions were objectively reasonable. As explained below, Plaintiffs' allegations establish all parts of the test, including objective unreasonableness.

### A. Considering the allegations of the Complaint in a light most favorable to Plaintiffs, Plaintiffs' clearly established constitutional rights were violated.

#### 1. Forty-eight hours without a probable cause determination.

Plaintiffs Boyd and Drain allege the Individual Defendants violated their Fourth Amendment rights by detaining them longer than forty-eight hours following warrantless arrests. (Complaint ¶¶ 85-93). The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.

The Supreme Court has held that individuals arrested and detained without a warrant are entitled to a prompt judicial determination of probable cause. Gerstein v. Pugh, 420 U.S. 103, 125 (1975). "The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." Id. at 114. Failing to conduct a prompt probable-cause hearing following a warrantless arrest constitutes a violation of the Fourth Amendment's shield against unreasonable seizures. Powell v. Nevada, 511 U.S. 79, 80

(U.S.).  "Prompt" generally means within 48 hours of the warrantless arrest. <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 55-56 (1991). The Sixth Circuit has held the existence of the Fourth Amendment right to a judicial determination of probable cause within 48 hours and the unavailability of any "intervening weekend or holiday" exception to the 48-hour rule are clearly established.  <u>Drogusch v. Metcalf</u>, 557 F.3d 372, 379 (6th Cir. 2009). Here, Boyd's six days and Drain's six days of confinement without hearings after warrantless arrests plainly constituted violations of their Fourth Amendment rights that are clearly established by Supreme Court decisions. (Complaint ¶¶ 85-93).

**2. Seizure and detention after lawful basis for custody expired.**

Plaintiffs Melton and Brown allege that the Individual Defendants violated their Fourth and Fourteenth Amendment rights by detaining them longer than six hours after charges against them had been dismissed or it was determined that probable cause did not exist to detain them. (Complaint ¶¶ 77, 79) Plaintiff Burgess alleges that the Individual Defendants violated his Fourth and Fourteenth Amendment rights by causing his arrest and detention on an already satisfied warrant. (Complaint ¶¶ 82-84). Plaintiff Turnage alleges the Individual Defendants violated his Fourth and Fourteenth Amendment rights by causing his arrest and detention on an expired civil warrant. (Complaint ¶¶ 60-76).

Plaintiffs' rights not to be subject to unlawful pretrial detention were clearly established. The Supreme Court decided four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment. <u>Manuel v. City of Joliet</u>, 137 S. Ct. 911, 917 (2017) (*citing* <u>Gerstein</u>, 420 U.S. at 106). A subsequent Supreme Court decision indicates that those objecting to a pretrial deprivation of liberty may invoke the Fourth Amendment when that deprivation occurs after legal process commences. <u>Id.</u> at 918 (*citing* <u>Albright v. Oliver</u>, 510 U.S.

266, 268-69 (1994)). In Manuel v. City of Joliet, 137 S. Ct. 911 (2017), the Court held that the plaintiff could challenge his pretrial detention, based on allegedly fabricated evidence, under the Fourth Amendment even after a probable cause determination. Id. at 914-15. "[P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." Manuel, 137 S. Ct. at 918.  "If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." Id. at 919; *see also* Schneyder v. Smith, 653 F.3d 313 (3d Cir. 2011) (holding that material witness detained after case in which she was supposed to testify was continued alleged violation of clearly-established Fourth Amendment right*)*; Russo v. City of Bridgeport, 479 F.3d 196 (2d Cir. 2007) (finding person held in jail despite exculpatory evidence police could have checked stated a Fourth Amendment claim).

The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, and regulates the period of confinement after the initial determination of probable cause. Drogusch v. Metcalf, 557 F.3d 372, 378 (6th Cir. 2009). "The Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction." Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)(*citing* Baker v. McCollan, 443 U.S. 137, 144 (1979). *See also* Foucha *v.* Louisiana*,* 504 U. S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

The Sixth Circuit has recognized a due process violation arising from an arrestee's detention after the lawful basis for custody expires. Shorts v. Batholomew, 255 Fed. Appx. 46, 51 (6th Cir. 2007); *see also*  Slone v. Herman, 983 F.2d 107, 110 (8th Cir. 1993)(holding once a

judge orders the release of a prisoner, any continued detention unlawfully deprives the prisoner of his liberty because "the state has lost its lawful authority" to hold him); Cannon v. Macon County, 1 F.3d 1558, 1562-63 (11th Cir. 1993)(finding a recognized Fourteenth Amendment right to be free from continued detention after it was or should have been known that the detainee was entitled to release). As the Sixth Circuit explained:

> . . . when a prisoner's sentence has expired, he is entitled to release. Whirl v. Kern, 407 F.2d 781, 791 (5th Cir. 1969)(holding that "there is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence"). Perhaps more to the point, an incarcerated inmate has "a liberty interest in being released at the end of his term of imprisonment." Shultz v. Egan, 103 F. App'x 437, 440 (2d Cir. 2004); Davis v. Hall, 375 F.3d 703, 712-13 (8th Cir. 2004). This liberty interest is most often attributed to the Due Process Clause of the Fourteenth Amendment. Id. at 51; see also McNeil v. Dir. Patuxent Inst., 407 U.S. 245, 246 (1972)(holding that continued incarceration after the lawful basis for custody expires violates due process under the Fourteenth Amendment).

Shorts v. Batholomew, 255 Fed. Appx. 46, 51 (6th Cir. 2007).

The District Court for the District of Columbia has also held that "[o]verdetentions potentially violate the substantive component of the Due Process Clause by infringing upon an individual's basic liberty interest in being free from incarceration absent a criminal conviction." Barnes v. District of Columbia, 793 F. Supp. 2d 260, 275-75 (D.D.C. 2011). "Even if an inmate's initial confinement was justified by a constitutionally adequate basis, that confinement cannot constitutionally continue once that basis no longer exists." Id. at 275. While recognizing that "temporarily retaining custody over an inmate who is entitled to release in order to accomplish administrative tasks incident to that release is not per se unconstitutional," failing to release inmates whose sentences have expired "within a reasonable time after the reasons for their detentions have ended" violates their due process rights. Id. "[C]ourts appear to agree that

the maximum permissible administrative delay in the overdentention context likely falls well short of the 48-hour horizon set out in McLaughlin." Id. (citing Berry v. Baca, 379 F.3d 764, 771-72 (9th Cir. 2004); and Brass v. County of Los Angeles, 328 F.3d 1192, 1202 (9th Cir. 2003). "'[E]ven a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment.'" Id. (quoting Davis v. Hall, 375 F.3d 703, 713 (8th Cir. 2004)).

Any reasonably competent jailer in the Sixth Circuit would know that a system that causes someone to be detained after the lawful basis for custody expires violates clearly established rights to liberty embedded within the Fourth and Fourteenth Amendments. Manuel v. City of Joliet, 137 S. Ct. 911, 918-19 (2017); Shorts v. Batholomew, 255 Fed. Appx. 46, 51 (6th Cir. 2007); Allen v. Thompson, 14 F. Supp. 3d 885, 896 (W.D. Ky. 2014)("detaining someone without any justification violates a clearly established right to be free from unlawful detention"); Tate v. Alexander, 527 F. Supp. 796, 802 n. 8 (M.D. Tenn. 1981) (stating "it is well established not only that an illegal detention by state authorities is unconstitutional, but also that the failure to release a prisoner within a reasonable time after the expiration or termination of his sentence violates the fundamental right to liberty."). Here, Brown's seven days, Melton's four days, Turnage's 80 hours, and Burgess's days of confinement after charges against them had been dismissed, the civil warrant against them expired, or it was determined that probable cause did not exist to detain them plainly constituted a violation of their clearly established Fourth and Fourteenth Amendment rights.   (Complaint ¶¶ 60-77, 79, 82-84). Likewise, Burgess's and Turnage's arrests violated their clearly established rights to be free from unreasonable seizure. (Complaint ¶¶ 60-76, 82-84).

**3.   Detention after bail was set.**

Plaintiffs Turnage, Tate, and Powell allege that the Individual Defendants violated their Fourteenth Amendment rights to liberty by denying them the ability to post bonds that were pre-set. (Complaint ¶¶ 60-67, 78, 80-81). Plaintiffs Powell, Boyd and Drain allege that the Individual Defendants violated their rights to liberty by detaining them longer than six hours after posting bond.  (Complaint ¶¶ 80-81, 85-93).

In Dodds v. Richardson, the Tenth Circuit held that a pretrial detainee's due process right to be free from unjustified detention after his bail was set was clearly established in 2007 for purposes of qualified immunity. Dodds v. Richardson, 614 F.3d 1185, 1206 (10th Cir. 2010)(holding that where the arrestee was prevented by sheriff's maintenance of county policy from posting a pre-set bond for three days, arrestee was deprived of his clearly established due process rights); *see also* Hurm v. Curry, 2011 U.S. Dist. LEXIS 78502 (W.D. Ky. July 19, 2011)(holding that the due process right to be released upon the proper presentation of bond was clearly established in June 2009); Holder v. Town of Newton, 638 F. Supp. 2d 150 (D.N.H. 2009)(denying a motion to dismiss a section 1983 claim alleging a detention of nine hours after plaintiff had been released on bail); Parilla v. Eslinger, 2005 U.S. Dist. LEXIS 34716 (M.D. Fl. December 5, 2005)(holding that jail employers were not entitled to qualified immunity where pre-trial detainees were detained for approximately five hours after a court order for their immediate release was received at the Jail); Powell v. Barrett, 376 F. Supp. 2d 1340 (N.D. Ga. July 5, 2005), *rev'd on other grounds*, 246 Fed. Appx. 615 (11th Cir. 2007)(refusing to dismiss Plaintiff's over-detention claims on qualified immunity where the alleged overdetentions after plaintiffs' had served sentences, posted bond, or had been ordered released ranged from one to ten days).  District courts from Louisiana have held that the Eighth Amendment guarantees a

limited right to bail including a fundamental due process right not to be deprived of the opportunity to post bail and be released. Augustus v. Roemer, 771 F. Supp. 1458, 1465 (E.D. La. 1991); and Herbert v. Maxwell, 2005 U.S. Dist. LEXIS 42496, *20-21 (W.D. La. September 30, 2005).

Here, Turnage's 80 hours, Tate's five days, and Powell's 11 days of confinement without the ability to post pre-set bonds plainly constituted a violation of their clearly established Fourteenth Amendment rights. (Complaint ¶¶ 60-67, 78, 80-81). Likewise, Powell's two days, Boyd's two days, and Drain's six hours (or more) of confinement after posting bonds plainly constituted a violation of their clearly established Fourteenth Amendment rights. (Complaint ¶¶ 80-81, 85-93).

**B. Plaintiffs' Complaint alleges sufficient evidence to indicate that what the Individual Defendants did was objectively unreasonable in light of clearly established constitutional rights.**

The Individual Defendants' failure to do their job could be reasonably expected to give rise to just the sort of injuries that occurred -- unlawful seizures and detentions. Reasonably competent public officials would take steps to ensure that the jail's case management system is functional and that subordinates are properly trained on the system because they know that arrestees have a right not to be illegally seized and detained. The Complaint alleges that the Individual Defendants (1) adopted and implemented a case management system that they knew or should have known would cause the violation of constitutional rights of detainees; (2) failed to take reasonable measures to rectify a case management system that they knew or should have known was causing the violation of constitutional rights of detainees; (3) failed to properly train and/or supervise subordinates with respect to the case management system; and (4) authorized, approved, or knowingly acquiesced in the above unconstitutional conduct of the offending

17

subordinates. (Complaint ¶¶ 108-14).  Under the circumstances, the Individual Defendants were plainly incompetent or knowingly violated the law. This is sufficient evidence that the Individual Defendants were objectively unreasonable in light of Plaintiffs' rights to be free from unlawful seizure and detention.

## CONCLUSION

As explained above, reading the Complaint in the light most favorable to Plaintiffs, it is plausible that the Individual Defendants' acts violated Plaintiffs' clearly established constitutional rights. Therefore, Defendants' motion should be denied.

Respectfully submitted,

/s/ *William E. Cochran, Jr.*
Michael G. McLaren (#5100)
William E. Cochran, Jr. (#21428)
Brice M. Timmons (#29582)
BLACK MCLAREN JONES RYLAND & GRIFFEE PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117
(901) 762-0535 (Office)
(901) 762-0539 ( Fax)
wcochran@blackmclaw.com

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38104
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

Claiborne Ferguson (Tenn. Bar No. 20457)
Attorney for Plaintiffs and the Class
THE CLAIBORNE FERGUSON LAW FIRM P.A.
294 Washington Avenue
Memphis, Tennesseee 38103
Claiborne@midsouthcriminaldefense.com

Joseph S. Ozment (Tenn. Bar No. 15601)
THE LAW OFFICE OF JOSEPH S. OZMENT, PLLC
1448 Madison Ave.
Memphis, Tennessee 38104
Phone: (901) 525-4357
Email: jozment@oz-law.net

*Counsel for Plaintiffs and the putative Class
Members*

19

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on July 6, 2017, the foregoing was served via the Court's ECF filing system to all counsel of record, including:

Robert E. Craddock, Esq.
Odell Horton, Jr., Esq.
Amber D. Floyd, Esq.
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee 38120
(901) 537-1000
Email: rcraddock@wyattfirm.com
Email: ohorton@wyattfirm.com
Email: afloyd@wyattfirm.com

Emmett Lee Whitwell, Esq.
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Suite 950
Memphis, TN 38103
(901)222-2100
Email:
lee.whitwell@shelbycountytn.gov

*Counsel for Defendants Bill Oldham, Robert Moore, Charlene McGhee, Debra Hammons and Shelby County, Tennessee*

Bradley E. Trammell, Esq.
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
(901) 577-2121
Email:
btrammell@bakerdonelson.com

Beth Bivans Petronio, Esq.
K&L GATES, LLP
1717 Main Street
Suite 2800
Dallas, Texas 75201
9214) 939-5815
Email: beth.petronio@klgates.com

*Counsel for Defendant Tyler Technologies, Inc*

/s/ William E. Cochran, Jr.