# EXHIBIT A-2

Best practice traditionally has been to treat this activity as a mock go live, simulating the upcoming milestone go live event."

67.    The Contract's Statement of Work also stated: "The goal for end user acceptance testing is a full end to end test cycle. This testing will verify that all aspects of the project . . . are working seamlessly." Appendix A to this scope of work is a "Project Schedule" which shows this "User Acceptance Testing" as a step to be completed before even training begins. In effect, under the Contract, the County and Defendant Tyler Tech should have fully tested the Odyssey System prior to switching away from JSSi to iCJIS.

68.    Defendant Tyler further undertook the duties of training and supervising the County's employees with respect to Odyssey and its functionality with the iCJIS system. Defendant Tyler failed to properly train and supervise these employees.

69.    Defendant Tyler Tech did not properly integrate Odyssey with the Computer Tracking System and did not properly train County employees so that the Computer Tracking System would work properly, thus causing the wrongful conduct alleged herein. Further, Defendant Tyler Tech failed to properly test Odyssey before the County went "live" with the system.

70    On information and belief, the County intentionally canceled the testing phase of implementation along with other aspects of the implementation process in order to save money.

71.    Defendant Moore and the County were aware that Odyssey was not ready to "go live" immediately prior to its implementation.

72.    In fact, Defendants, individually or collectively, made the determination to defer implementation of the Odyssey System just a few months prior because they knew it was not ready.

73.     The decision to implement Odyssey in light of these concerns also constitutes a custom, policy or practice in that the Defendants made a deliberate choice to follow a course of action made from among various alternatives in light of the known concerns about Odyssey and the Defendants were the officials responsible for establishing the final policy with regard to implementing a system adequate to protect the constitutional rights of the public and pre-trial detainees.

**D.     Ignoring these Warnings, the Sheriff and the County Adopt and Defendants Moore, McGhee, and Hammons Implement the Odyssey System and the Violation of Arrestees' Rights Ensues.**

74.     Notwithstanding these serious storm warnings, the Sheriff and County determined nevertheless to contract with Defendant Tyler Tech to install and implement the Odyssey Case Management System. Specifically, on November 1, 2016, Defendants Oldham, Moore, McGhee and Hammons terminated the Jail's use and reliance on JSSi and began to record all arrest and inmate activity by hand. The on November 7, 2016, Defendants Oldham, Moore, McGhee and Hammons made the decision, to which they were empowered, to go "live" with the Odyssey Case Management System.

75.     Immediately thereafter, the Class Members as defined below became subject to a Computer Tracking System that could not and would not properly track their arrest records and criminal cases, forcing them to become "lost" in the Jail. On November 15, 2016, General Sessions Criminal Court Judge Anderson characterized the County's failures as follows:

> I apologize for the system. I don't know what the problem is. Nobody can tell me what the problem is, where the problems are. That's just a terrible example of the problems we are having. You know I'm not an IT person, I don't understand how computers operate. It's not my job. My job is to make sure that people who are charged with criminal offenses have their day in court in a timely manner, have a bond set & get the opportunity to process their selves thru the system. They're just charged not convicted. I'm not talking about a single person that's been convicted. Every single person I'm talking about that comes in my court initially are only charged with criminal offenses. Nobody has been convicted of a thing.

You called this a debacle? The way I've seen it in the last week and a half, that's the best way I can come up with. They are doing the best they can but much of this should have been anticipated.

I've been told this company has been implemented in numerous big cities across the country. I can't believe we're the first ones to have these terrible problems. And one person being in jail too long is bad enough, but 15, 20, 30. I went down last weekend, last Thursday before the holiday and I walked thru the jail and went to a booking session. He was sleeping on the floor, people sleeping in chairs. There was no movement. It was terrible. I mean it was unbelievable. I thought how could this be happening in Shelby County where our system has flowed so smoothly since I've been a judge. Frankly, it's worked very well for years. We expected problems but we didn't expect problems of this magnitude, where people remain and languish in jail without even getting a bond set, without having court appearance set and us not even knowing how to go about solving the problem. ...how do you lose somebody in the system for three weeks...That's an excellent question. I'm going to try to get answers to that. I'm not able to get answers to get. Kinda like running into one wall after another, anytime I ask questions "how did this happen" they said it's not our fault, it was their fault. I go the next person, it wasn't our fault. We never get to the bottom line, we never get to the end person that the buck stops at. And the only thing I can think of it's the computer system.

Everybody says it's the comp. system. Well, fine, but I've got to get people into court. I understand that answer, you can only do the best you can do and they obviously did not anticipate problems of this magnitude you've heard. Every single group that has been asked has thrown out 6, 7, 8, 9 different problems. Now that takes time obviously. The question I suppose is why hasn't more of this anticipated on the front end before. In a city this size, in a county this size, in a magnitude of having a computer system that's archaic but worked fine before fine. And a computer system that's going to be the way of the future doesn't talk to the archaic one. They should have anticipated that this is going to be a problem. Maybe it's like you speak English and I speak French. We are two people but you don't understand French. It's not helping me to talk to you. That's what I am hearing in there. ...rights being violated & the Constitution? Well, it's very simple, it's what I do for a living, that the oath I took, what I have to do is to make sure the criminal justice system flows.

76.    The County and Defendants Oldham, Moore, McGhee and Hammons acknowledged these problems but took no action to terminate the current method of tracking Plaintiffs and the Class Members so as to prevent the wrongful dentitions.

77.    Shelby County Sheriff's Department representative Earle Farrell gave an interview on November 4, 2016, days after implementation, in which he acknowledged that the intake

process was taking six times as long as usual. (Plaintiffs contend that this was a gross understatement.)

78.     Despite this acknowledgment of the problem Mr. Farrell stated: "I guess my advice to anybody out there having a delay getting out of jail: don't be arrested. There's an idea for you."

79.     One or more of the Defendants have asserted that they should have returned to the use of JSSi following the flawed implementation of Odyssey but did not do so for budgetary reasons.

80.     As a result, the County had no effective ability to determine and ensure: (i) that arrestees with pre-set bonds in their arrest warrants or other instruments authorizing detention could post such bonds and be released, (ii) ensure that no arrestee was detained longer than forty-eight (48) hours prior to probable cause determination, (iii) that those arrestees who had in fact posted bond were released, (iv) that those arrestees who had their charges against dismissed were released, and/or (v) that those who had been arrested and released would not be re-arrested on the same warrant.

81.     On information and belief, the above-referenced problems continue to persist as of the date of filing of this pleading.

82.     The decision not to implement a return to JSSi, a system of using paper records or to implement some alternative set of procedures to ensure compliance with constitutional requirements in light of the serious and well-known flaws with Odyssey also constitutes a custom, policy or practice in that the Defendants made a deliberate choice to follow a course of action made from among various alternatives and the Defendants were the officials responsible for establishing the final policy with regard to implementing a system adequate to protect the constitutional rights of the public and pre-trial detainees. As a result, Defendants Oldham, Moore,

McGhee and Hammons were each aware of the unlawful dentitions that were taking place at the hands of their subordinates and knowingly acquiesced in this unconstitutional conduct.

**E.      Damages**

83.      Plaintiffs and the Class Members have sustained damages as the result of the unlawful dentition proximately caused by Defendants' acts and omission. These damages include two distinct types.

84.      First, having been unlawfully deprived of their liberty, Plaintiffs and the Class Members are entitled to compensatory damages for the loss of "intangible rights" which "redress the denial of free movement and the violation done to [an individual's] dignity as a result of the unlawful dentition, and not the physical and mental injuries arising from the incident." *Rhoades v. Lauderale County, Tennessee,* No. 2:10-cv-02068-JPM-dkv, 2012 U.S. Dist. LEXIS 13922 at *31 (W.D. Tenn. Sept. 24, 2012), quoting *Martinez v. Port Auth. of N.Y.,* 2005 U.S. Dist. LEXIS19141, 2005 WL 2143333 at *19 (S.D.N.Y Sept. 2, 2005).

85.      Plaintiffs assert that each named Plaintiff and each Class Member is entitled to $48,000 per day that they were unlawfully incarcerated or unlawfully re-incarcerated (approximately $2,000 per hour) for their loss of liberty. *See Rhoades v. Lauderale County, Tennessee,* 2012 U.S. Dist. LEXIS 13922 at *32 (awarding $72,000 ($2,000 per hour) to husband and $72,000 ($2,000 per hour) to wife who were unlawfully detained for 36 hours).

86.      Upon information and belief, Plaintiffs anticipate that at least 1000 Class Members were unlawfully detained an average of three (3) days. As such, Plaintiffs allege that the damages to themselves and the Class defined below is $144,000,000.00.

87.     Second, Plaintiffs and the Class Members are entitled to damages for "tangible injury," as each suffered embarrassment, emotional suffering, and/or physical harm, to be determined by the trier of fact.

88.     Plaintiffs reserve the right to amend this allegation based upon the discovery that will be conducted in this action.

## V.      CLASS ACTION ALLEGATIONS

89.     The named Plaintiffs bring this action as a Class Action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, and pursuant to Rules 23(b)(1), 23(b)(2) and/or 23(b)(3) defines the class as follows:

> From November 1, 2016 to the present, Plaintiffs, and all of similarly situated persons who were arrested and incarcerated in the Shelby County Jail and who:
>
>> (i) were previously or will be in the future denied the ability to post bonds that were pre-set,
>>
>> (ii) were previously or will be in the future detained longer than forty-eight (48) hours prior to probable cause determination and who were or will be either released for lack of probable cause or had or will have criminal bonds set which were or will be posted,
>>
>> (iii) were previously or will be in the future detained longer than six hours after posting their required bonds,
>>
>> (iv) were previously or will be in the future detained longer than six hours after charges against them had been dismissed or it was determined that probable cause did not exist to detain them, and/or
>>
>> (v) were previously or will be in the future re-arrested on warrants that had previously been served and satisfied (i.e., were re-arrested on the identical warrant that had been previously served).

Excluded from the Class are the named Defendants, their agents, affiliates, and employees, the Judge assigned to this matter and his or her staff.

90.    Numerosity. The requirements of Rule 23(a)(1) are satisfied in that there are too many Class Members for joinder of all of them to be practicable. Upon information and belief, these Class Members exceed over 1000 in number. This Class, as defined above, meets the numerosity requirement.

91.    Commonality. The claims of the Class Members raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2). These common legal and factual questions, which may be determined without the necessity of resolving individualized factual disputes concerning any Class Member, include, but are not limited to, the following questions:

(i) Whether the U.S. Constitution protects an arrestee's right to comply with a preset bond and, thus, be released from incarceration.

(ii) Whether the U.S. Constitution protects an arrestee's right to a timely probable cause determination.

(iii) Whether the U.S. Constitution protects an arrestee's right to be released from incarceration upon a criminal court's dismissal of the charges against him or her.

(iv) Whether the U.S. Constitution protects an arrestee's right to be released from incarceration upon posting the required bond.

(v) Whether the U.S. Constitution protects an arrestee's right to be free from incarceration based upon the same warrant that was previously served and satisfied.

(vi) Whether the rights alleged to be protected by the U.S. Constitution set forth in issues (i) through (v) above, were clearly established.

(vii) Whether the acts or omissions of Defendants Oldham, Moore, McGhee and Hammons in connection with adopting and implementing the Odyssey Case Management System were the proximate cause of the constitutional deprivations of Plaintiff and the proposed Class and/or whether these Defendants' failure to properly train and supervise their subordinates with respect to the Odyssey Case Management System was the proximate cause of the constitutional deprivations of Plaintiff and the proposed Class.

(viii) Whether that the County's implementation of its administrative policies amounts to a policy of deliberate indifference and/or inaction to their constitutional rights.

(ix) Whether Tyler Tech owed an ordinary duty of care to Plaintiffs and the proposed Class that its Odyssey system would operate and could be operated in a proper manner such that their rights to be released from incarceration would and could be timely honored.

(x) Whether Tyler Tech breached its ordinary duty of care to Plaintiffs and the proposed Class.

(xi) Whether Tyler Tech breach of its ordinary duty of care to Plaintiffs and the proposed Class has proximately caused them damages.

(xii) Whether Tyler Tech negligently trained and/or supervised its employees and/or the County's employees.

92.     Typicality. The claim of the named Plaintiffs is typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3). For example, the named Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class Members were injured or damaged by the same wrongful practices in which Defendant engaged, namely the failure and refusal to honor their Fourth and Fourteenth Amendment rights secured under the U.S. Constitution.

93.     Adequacy of Representation. The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiffs have a sufficient stake in the litigation to vigorously prosecute their claims on behalf of the Class Members and the named Plaintiffs' interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiffs individually, as distinguished from the other members of the Class, and the relief sought is common to the Class. Plaintiffs do not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and has no conflict with any other member of the Class.

94.    Further, Plaintiffs have retained competent counsel experienced in civil and class action, and which are competent to bring this class action based on adequate study and proper professional association. These Plaintiffs will diligently prosecute this action, fairly and adequately protecting the interests of the community and/or a class as a whole, if allowed by the Court

95.    Predominance and Superiority. All of the requirements for Rule 23(b)(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation. In particular, the Plaintiffs and the Class Members have suffered a common cause of injury, namely the violation of their due process rights, caused by the common course of conduct engaged in by Defendants. The Class Members' legal claims arise exclusively under Section 1983, 1988, and Tennessee law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof. Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Additionally, individual litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation. *Zuccarini v. Hoechst* (In re Cardizem CD Antitrust Litig.), 200 F.R.D. 326, 335 (E.D. Mich. 2001)("Differences in damages sustained by individual class members does not preclude a showing of typicality nor defeat class certification"); *Bremiller v. Cleveland Psychiatric Inst.,* 898 F. Supp. 572, 579 (N.D. Ohio 1995) ("The above-cited caselaw demonstrates that the

existence of individual damages is not enough to defeat class certification on the commonality element. Therefore, the court declines to decertify the **class on this basis**") **As a result, the** desirability to concentrate litigation in this forum is significantly present. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance of a class action. Relief concerning **Plaintiffs' rights under the laws** herein alleged and with respect to the Class would be proper.

## VI.   CAUSES OF ACTION

**COUNT 1 –   VIOLATION OF 42 U.S.C. § 1983 (AGAINST DEFENDANTS OLDHAM, MOORE, MCGHEE, HAMMONS IN THEIR INDIVIDUAL CAPACITIES)**

96.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

97.    As alleged above Defendants Oldham, Moore, McGhee and Hammons, acting under color of state law and with deliberate indifference, violated the rights of Plaintiffs and the Class Member secured by the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

98.    It is clearly established that: (i) the failure and refusal to permit an arrestee to post the criminal bonds pre-set in his arrest warrant constitutes the unlawful seizure and detention of the arrestees, (ii) the failure and refusal to afford arrestees a probable cause hearing within forty-eight (48) hours of arrest constitutes an unlawful seizure and detention of the arrestee, (iii) the failure and refusal to release an arrestee who has in fact his posted required bond constitutes and unlawful seizure and detention of the arrestee, (iv) the failure and refusal to release an arrestee who has had the charges against him dismissed, constitutes an unlawful seizure and detention of the arrestee and/or (v) the detention of an arrestee on a warrant that has been served and previously satisfied (i.e., the arrest of a person on the same warrant twice) constitutes an unlawful seizure and detention of the arrestee. These unlawful dentitions were without any legal justification. *Allen v.*

31

*Thompson,* 14 F. Supp. 3d 885, 896 (W.D. Ky. 2014) ("detaining someone without any justification violates a clearly established right to be free from unlawful dentition"). It would be clear to any reasonable person – let alone any public law enforcement officer – that these actions are wrongful and unconstitutional. As a result, Defendants Oldham, Moore, McGhee and Hammons are not entitled the any affirmative defense of "qualified immunity" for the individual liability.

99.     Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by adopting and implementing the Odyssey Case Management System.

100.     To the extent that Defendants Oldham, Moore, McGhee and Hammons claim their subordinates are the actual persons who wrongfully detained Plaintiffs and the Class Members and that they were not personally involved themselves, Defendants Oldham, Moore, McGhee and Hammons at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of these offending subordinates. Indeed, almost immediately after Odyssey went live, Defendants became aware of the defects in the Computer Tracking System that were causing the unlawful dentitions. Nevertheless, they each knowingly acquiesced in the continued use of the Odyssey Case Management System. As a result, Defendants Oldham, Moore, McGhee and Hammons are personally liable under Section 1983. *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 81 (6th Cir. 1995) ("At a minimum, a § 1983 plaintiff must how that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983).

101.     In the alternative, Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, failed to properly train and/or their subordinates with respect to the

32

Odyssey Case Management System, which proximately caused the above described constitutional rights violations.

102.    In the alternative, Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by failing to implement remedial measures to rectify the systematic constitutional rights violations outlined above after being placed on notice of the actual failure of the Odyssey Case Management System.

**COUNT 2 –    VIOLATION OF 42 U.S.C. § 1983 (AGAINST DEFENDANTS OLDHAM, MOORE, MCGHEE, HAMMONS IN THEIR OFFICIAL CAPACITIES AND, THUS AGAINST SHELBY COUNTY)**

103.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

104.    As alleged above Defendants Oldham, Moore, McGhee and Hammons, acting under color of state law, violated the rights of Plaintiffs and the Class Member secured by the Fourth and Fourteenth Amendments of the U.S. Constitution. It is clearly established that: (i) the failure and refusal to permit an arrestee to post the pre-set bond constitutes the unlawful seizure and detention of the arrestee, (ii) the failure and refusal to afford arrestees a probable cause hearing within forty-eight (48) hours of arrest constitutes an unlawful seizure and detention of the arrestee, (iii) the failure and refusal to release an arrestee who has in fact posted his required bond constitutes and unlawful seizure and detention of the arrestee, (iv) the failure and refusal to release an arrestee who has had the charges against him dismissed, constitutes an unlawful seizure and detention of the arrestee and/or (v) the incarceration of an arrestee on a warrant that has been served and previously satisfied (i.e., the arrest of a person on the same warrant twice) constitutes

an unlawful seizure and detention of the arrestee. These unlawful dentitions were without any legal justification.

105.    The huge and unreasonable delays in the release from custody of Plaintiffs and the Class were not the result of necessary administrative procedures. To the contrary, no matter how "reasonable" the County's criminal administrative policies may appear on their face, the implementation of those policies, through the defective Odyssey system, constitutes a policy of inaction and/or policy amounting to deliberate indifference to the rights of Plaintiffs and the Class Members. Because Plaintiffs and the Class challenge the County's implementation of its criminal administrative policies in toto, Plaintiffs and the Class Members are entitled to have their claims against the County tried to a jury. *See Berry v. Baca,* 379 F.3d 764 (9th Cir. 2004)(in Section 1983 action where arrestees were not released until 29 hours after their charges were dismissed, court held that county's summary judgment must be denied, where plaintiffs alleged that the implementation of the county's administrative procedures in toto amount to deliberate indifference).

**COUNT 3 – NEGLIGENCE AGAINST DEFENDANT TYLER TECHNOLOGIES, INC.**

106.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

107.    As a software company specializing in the development and installation of criminal court and jail inmate tracking computer systems, Defendant Tyler Technologies owed a duty of Reasonable care to Plaintiff and the Class Members to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored.

108.    These duties arose when Defendant Tyler undertook to provide services in connection with the software implementation in its Contract with the County "for Court Management System."

109.    Defendant, however, breached these duties with its development and installation of Odyssey for the Jail.

110.    As a direct and proximate result of the negligence of Defendant Tyler Technologies, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including Tenn. Code Ann. § 29-39-101(1), from Defendant Tyler Technologies.

111.    The pleading standard of *Ashcroft vs. Iqbal* does not require the presentation of the labyrinthine technical complexities of reworking a major criminal justice computer system. This Court does not play the role of an IT administrator attempting to figure out what went wrong in terms of technical exactitude. Rather, it is sufficient at the pleading phase that the Plaintiffs have presented a duty of care, a breach and consequential damages.  This standard has been met.

**COUNT 4 –   NEGLIGENT TRAINING AND SUPERVISION AGAINST DEFENDANT TYLER TECHNOLOGIES, INC.**

112.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

113.    Defendant Tyler Tech had a duty train and supervise its own employees and undertook a duty to train and supervise the County's employees in connection with the integration and operation of the Odyssey Case Management System, so as to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored. *Acuity v. McGhee Eng'g, Inc.,* 297 S.W.3d 718, 734 (Tenn. Ct. App. 2007) ("Tennessee law recognizes an exception to the economic loss doctrine:

despite the absence of privity, a plaintiff may maintain an action for purely economic loss based upon negligent supervision or **negligent misrepresentation"**).

114.    As alleged above, Defendant Tyler Tech failed to properly train and supervise these employees, thus proximately causing the wrongful dentitions alleged herein.

115.    As a direct and proximate result of the negligent supervision of Defendant Tyler Tech, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Defendant Tyler Technologies.

## VII.    PRAYER FOR RELIEF

WHEREFORE, the named Plaintiff and the Class Members demand judgment against Defendants Tyler Technologies, Bill Oldham, Robert Moore, Charline McGhee, Debra Hammons and Shelby County, Tennessee, on each Count of the Complaint and pray for the following relief:

1.    Issue service of process and serve the Defendant;

2.    Issue an Order certifying that this action may be maintained as a class action, appointing Plaintiffs and their counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to all Class Members;

3.    Grant any reasonable request to Amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this Class Action;

4.    Empanel a jury to try this matter;

5.    Award each plaintiff Class Member compensatory damages who has suffered same in an aggregate amount of not less than $144,000,000.00;

6.    Award Plaintiffs' their reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

36

7.      Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

8.      Award pre-and post-judgment interest in the amount of 10% per annum pursuant to Tenn. Code Ann. § 47-14-123 in amount according to the proof at trial; and

9.      Grant the Plaintiff and Class Members such further relief as the Court may deem just and proper.

**Dated:**          October 31, 2017

**Respectfully submitted,**

s/Daniel Lofton
DANIEL O. LOFTON, BPR#27386
2400 Poplar Ave., Ste. 210
Memphis, TN 38112
(901) 526-7837 Phone
dlofton@craigandloftonlaw.com

s/Paul Craig
PAUL F. CRAIG, BPR#18359
2400 Poplar Ave., Ste. 210
Memphis, TN 38112
(901) 526-7837 Phone

s/Steve Wilson
STEVE G. WILSON, BPR#28460
5100 Poplar Ave., Ste. 2700
Memphis, TN 38137
steve@stevewilsonfirm.com

s/Matt Gulotta
MATTHEW C. GULOTTA, BPR#28194
202 Adams Avenue
Memphis, TN 38103
matt@gulottalaw.net

s/Patrick Brooks
PATRICK M. BROOKS BPR#31045
2299 Union Avenue
Memphis TN 38104
patrick@patrickbrookslaw.com

*Attorneys, Plaintiffs/Class Representatives*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Melvin Ingram, et al. [See attachment] | Bill Oldham, Robert Moore, Charlene McGee, Debra Hammons, Shelby County Tennessee, Tyler Technologies, Inc. |

**(b)** County of Residence of First Listed Plaintiff   Shelby County, Tennessee
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Shelby County, Tennessee
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

[See attachment]

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question
    *(U.S. Government Not a Party)*
- ❏ 2   U.S. Government Defendant
- ❏ 4   Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product |     Product Liability | |     28 USC 157 |     3729(a)) |
| ❏ 140 Negotiable Instrument |     Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & |     Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
|   & Enforcement of Judgment |     Slander |     Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' |     Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted |     Liability | ❏ 368 Asbestos Personal | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
|     Student Loans | ❏ 340 Marine |     Injury Product | |     New Drug Application | ❏ 470 Racketeer Influenced and |
|     (Excludes Veterans) | ❏ 345 Marine Product |     Liability | | ❏ 840 Trademark |     Corrupt Organizations |
| ❏ 153 Recovery of Overpayment |     Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
|   of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending |     Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ |
| ❏ 190 Other Contract |     Product Liability | ❏ 380 Other Personal | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) |     Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal |     Property Damage |     Relations | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise |     Injury | ❏ 385 Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| | ❏ 362 Personal Injury - |     Product Liability | ❏ 751 Family and Medical | | ❏ 893 Environmental Matters |
| |     Medical Malpractice | |     Leave Act | | ❏ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |     Act |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee |     Income Security Act |     or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party |     Act/Review or Appeal of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ |     Sentence | |     26 USC 7609 |     Agency Decision |
| ❏ 245 Tort Product Liability |     Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | |     State Statutes |
| |     Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| |     Other | ❏ 550 Civil Rights |     Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | |     Conditions of | | | |
| | |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Class action brought under 42 U.S.C. §§ 1983 and Tennessee common law.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   144,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE  :          DOCKET NUMBER

DATE
10/31/2017

SIGNATURE OF ATTORNEY OF RECORD
s/Steven G. Wilson

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE

## CIVIL COVER SHEET ATTACHMENT

**I. (a)    Plaintiffs**

MELVIN INGRAM

SHANTEL ADAMS

DAVID BECK

DWYANE BOWENS

ALFREDO CARDENAS

VERONICA CLEAVES

MARCUS COCHRAN

ROBERT COLUCCI

LESLIE CREWS

ERIC FLAKE

JACOB GREENWELL

LAWONDA HODGES

LAROME HUMPHREY

ROBERT KATALTEPE

JOHN LINTNER

KEESHA MCCLINTON

LAKISHA MCCOY

CLIFTON MCCOY

DEDRECK MCVAY

HARRY OLIVER

DARRELL ONSBY

FREDERICK RAYFORD

JOHN RILES

ASHLEY ROBERTSON

DEANDRE ROSSER

DUSTIN RUSSELL

PATRICK SHAW

CEDRIC TAYLOR

JESSE TOWNSEND

STEVEN WESBY

**I. (c) Attorneys**

DANIEL LOFTON
2400 POPLAR AVE., STE. 210
MEMPHIS, TN 38112
(901) 526-7837

PAUL CRAIG
2400 POPLAR AVE., STE. 210
MEMPHIS, TN 38112
(901) 526-7837

STEVE WILSON
5100 POPLAR AVE., STE. 2700
MEMPHIS, TN 3813
(901) 337-1300

MATT GULOTTA
202 ADAMS AVENUE
MEMPHIS, TN 38103
(901) 213-6648

PATRICK BROOKS
2299 UNION AVENUE
MEMPHIS TN 38104
(901) 238-8226