## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

| | | |
|---|---|---|
| MELVIN INGRAM; | JACOB GREENWELL; | DARRELL ONSBY; |
| SHANTEL ADAMS; | LAWONDA HODGES; | FREDERICK RAYFORD; |
| DAVID BECK; | LAROME HUMPHREY; | JOHN RILES; |
| DWYANE BOWENS; | ROBERT KATALTEPE; | ASHLEY ROBERTSON; |
| ALFREDO CARDENAS; | JOHN LINTNER; | DEANDRE ROSSER; |
| VERONICA CLEAVES; | KEESHA MCCLINTON; | DUSTIN RUSSELL; |
| MARCUS COCHRAN; | LAKISHA MCCOY; | PATRICK SHAW; |
| ROBERT COLUCCI; | CLIFTON MCCOY; | CEDRIC TAYLOR |
| LESLIE CREWS; | DEDRECK MCVAY; | JESSE TOWNSEND; and |
| ERIC FLAKE; | HARRY OLIVER; | STEVEN WESBY; |

Individually and as potential class
Representatives for all similarly
Situated claimants                                    )
       **PLAINTIFFS**                        )
                              )

**VS.**                                                         )
                              )

BILL OLDHAM, in his individual capacity          )
and in his official capacity as the Sheriff of       )      **NO: 2:17-cv-02795-SHM-tmp**
Shelby County, Tennessee; ROBERT                  )
MOORE, in his individual capacity and in         )      **JURY DEMAND**
his official capacity as the Jail Director of        )
the Shelby County, Tennessee; CHARLENE      )
McGHEE, in her individual capacity and in       )
her official capacity as the of Assistant Chief    )
Jail Security of Shelby County, Tennessee;       )
DEBRA HAMMONS, in her individual              )
capacity and in her official capacity as the        )
Assistant Chief of Jail Programs of Shelby      )
County, Tennessee; SHELBY COUNTY,           )
TENNESSEE, a Tennessee municipality;          )
and TYLER TECHNOLOGIES, INC., a              )
foreign corporation, and other unknown           )
and unnamed Individuals and Entities,             )
       **DEFENDANTS**

### *INGRAM PLAINTIFFS'* RESPONSE TO THE *CONSOLIDATED CASE PLAINTIFFS'* MOTION TO DISMISS AND/OR STAY AND DEFENDANTS' MOTION TO CONSOLIDATE

Plaintiffs Melvin Ingram et al. ("Ingram" or "Ingram Class Action"), by and through counsel of record, now respond to *Plaintiff's Rule 23(g)(3) Motion for Appointment of Interim Class Counsel and to Dismiss without Prejudice or Alternatively to Stay the Recently Filed as Ingram Class Action Complaint*, No. 2:16-cv-02907, ECF No. 80[1], and *Defendant's Combined Motion and Supporting Memorandum for Consolidation*, No. 2:17-cv-02795, ECF No. 27, and 2:16-cv-02907, ECF No. 85[2], and respectfully show to the Court as follows:

## I.       PROCEDURAL HISTORY

1.       On November 17, 2016, Issaaca Powell, individually and on behalf of similarly situated persons, filed a putative class action ("Powell Class Action") in the Western District of Tennessee, No. 2:16-cv-02907, and the case was assigned to U.S. District Court Judge Samuel H. Mays. This case was related to the late 2016 - early 2017 fiasco at 201 Poplar in Memphis, Tennessee, involving the jail computer system.

2.       On December 24, 2016, Melvin Ingram and nine (9) other Plaintiffs filed individually, and as representatives of a putative class in the Circuit Court of Shelby County Tennessee, and asserted various claims under State negligence law and the Tennessee Governmental Tort Liability Act. On April 25, 2017, their Complaint was amended to add fifteen additional Plaintiffs, for a total of twenty-five (25). This case was also related to the fiasco at 201 Poplar involving the jail computer system during the same time-period noted above.

3.       On January 9, 2017, Plaintiffs Cortez D. Brown, Deontae Tate, and Jeremy S. Melton filed [another] putative class action, No. 2:17-cv-02015, ("Brown Class Action"), also

---

[1] The Motion filed by Plaintiff's counsel in the Consolidated Case, No. 2:16-cv-02907, was filed in that case. It was not filed in the Ingram case, No. 2:17-cv-02795, though it purports to seek dismissal of Ingram.

[2] Defendants filed their motion in both the consolidated case and in the Ingram case.

involving the fiasco with the jail computer system at 201 Poplar during the time-period referenced above. This case was assigned to U.S. District Court Judge Hon. John T. Fowlkes, Jr.

4.      On February 22, 2017, the Brown Class Action was transferred to this Court, and on March 13, 2017, an Order was entered consolidating the Brown and Powell cases into one case (the "Consolidated Case"), No. 2:16-cv-02907-SHM-tmp. Later, on May 4, 2017, the Plaintiffs in the new consolidated case filed their Second Amended Complaint to effectuate the consolidation.

5.      For a host of reasons unrelated to the merits and causes of action by the Ingram Plaintiffs, the Ingram case was nonsuited pursuant to Tenn. R. Civ. P. 41, in the Shelby County Circuit Court on June 14, 2017.

6.      On October 31, 2017, Melvin Ingram, with an additional twenty-nine (29) individual plaintiffs, most of whom were plaintiffs in the state court Ingram action, filed both individually and as class representatives of the putative class, a new Complaint in Federal Court, No. 2:17-cv-02795-SHM-tmp. This Complaint admittedly alleges substantially similar, if not identical Defendants and causes of action as in the Consolidated Case, though with a total of thirty (30) plaintiffs.

## II.      LEGAL AUTHORITY

Although reasons for moving the Ingram Plaintiffs from State to Federal Court were complex and multifaceted, it cannot be argued this move will not eventually simplify matters for the Courts and all Defendants, as the Ingram Class Action and the current Consolidated Case may be consolidated to achieve judicial efficiency and manifest justice.

**A.      THE COURT SHOULD NOT DISMISS THE INGRAM CASE**

No plaintiff, named or prospective, in the Consolidated Case will benefit from the dismissal of Ingram. Indeed, counsel in the Consolidated Case are the only participants in this litigation who perceive Ingram's presence in federal court as detrimental; it seems based on unfounded fears of a complicated working relationship and loss of managerial control. Out of concern for such issues, the Consolidated Case asks for dismissal and/or a stay of the Ingram Class Action, and cites *Baatz v. Columbia Gas Transmission LLC,* 814 F.3d 785 (6th Cir. 2016) and the "first-to-file rule." However, *Baatz* is not the correct precedent which this Court should consider, and the first-to-file rule is not applicable to the procedural history at issue here in the Western District of Tennessee.

The "first-to-file rule stands for the legal principle where "... actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Baatz*, 814 F.3d at 789 (emphasis added). The *Baatz* Court explains "... [t]he first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Id.* (emphasis added). The doctrine is designed to "... conserve[] judicial resources by minimizing duplicative or piecemeal litigation, and protect[] the parties and the courts from the possibility of conflicting results." Id. (emphasis added). *Baatz* involved the dismissal of an action filed in the Northern District of Ohio when a similar action was already being litigated in the Southern District of Ohio.

Another case cited in the Consolidated Case's Motion to Dismiss is *Cook v. E.I. du Pont de Nemours & Co.*, No. 3:17-cv-00909, 2017 U.S. Dist. LEXIS 122436. This case involved a lawsuit filed in the Middle District of Tennessee which was similar to another case already proceeding in the Eastern District of Texas. *Id* at *2-3. In *Cook,* the Middle District of Tennessee

4

did not dismiss or stay the newly filed suit but instead ordered venue be transferred to the Texas court. *Id.* at *18. In fact, a review of the Eastern District of Texas's docket on *pacer.gov* shows case 1:17-cv-00333, (the case transferred from the Middle District of Tennessee), was consolidated with the earlier filed case by the Texas court. Order of Consolidation, *Chance v. E. I. du Pont de Nemours and Co.*, No. 1:16-cv-00376 (E.D. Tex. Oct. 10, 2017), ECF No. 55; Order of Consolidation, *Cook et al. v. E.I. Du Pont de Nemours and Co.*, No. 1:17-cv-00333 (E.D. Tex. Oct. 10, 2017), ECF No. 72.

Here, in the Western District of Tennessee, the two putative class actions at issue are in the same district, in the same division, and even before the same judge and magistrate. The same considerations faced by *Baatz* and *Cook* are not before this Court, and the first-to-file rule is not applicable. Further, the Consolidated Case is only just beginning, and no objective thresholds have been reached which would overly complicate consolidation of this case with Ingram. No depositions have been conducted, and no expensive discovery production has been rendered. Neither Plaintiffs in the Consolidated Case, nor those potential putative class members yet to be identified, will be prejudiced at this phase of the litigation by consolidation with Ingram or otherwise required to cooperate with counsel for the Ingram Plaintiffs. In short, the arguments of the Consolidated Case amount merely to a half-hearted "we were here first." However, the Court's primary goal is to protect the legal rights of all named Plaintiffs, and not hedge the economic interests or managerial sensitivities of counsel.

Importantly, it is also not a foregone conclusion a class will be certified in the Consolidated Case, or for Ingram, and therefore prior to the Court's ruling on class certification, each individually named Plaintiff is on equal footing. If class certification is eventually denied,

then dismissing the Ingram Class Action will have the result of depriving its thirty (30) Plaintiffs of the right to participate in substantive matters and decisions relating to their legal claims.[3]

Although Ingram agrees the legal claims against Defendants should be presented as a class action, the facts and variables relevant to the underlying breach of duty by Defendants are also diverse, ranging from the inability to set bonds, to physically locate persons, and to effectively address matters in court. The complexities of the technological matters in this case also remain to be explored and clearly shown for purposes of liability. It is more prudent at this phase of the litigation to assume sub-classes of plaintiffs may even be the eventual outcome following discovery. For instance, some Plaintiffs in Ingram suffered injuries different to those suffered in the Consolidated Case. Paragraphs 10, 12, 14, 20, 21, 24, 26, 28, and 31, of the Ingram Complaint, 2:17-cv-02795, ECF No. 1, contain factually distinct injuries from those suffered by any Plaintiff in the Consolidated Case. For example, some Defendants were held in jail after their sentence was completed pursuant to the mittimus, were denied medical care and/or provided improper care due to overcrowding, and some were denied access to a phone call and even access to restrooms. [4] In this respect, Ingram has a superior composite of persons from

---

[3] It should be noted some, if not all, of the thirty (30) plaintiffs in Ingram may choose to opt-out of the pending class action, and consolidation is favored as a means of trying cases involving opt-out plaintiffs. Richard L. Marcus, *Confronting the Consolidation Conundrum*, 1995 B.Y.U.L. Rev. 879, 886, fn. 32.

[4] Due to the additional types of harm suffered by the Plaintiffs in Ingram, it is inaccurate to represent Ingram as completely duplicative of the Consolidated Case, despite the two cases containing identical causes of action and Defendants. The thirty (30) Plaintiffs in Ingram do not have duplicative injuries, nor were they all injured in the exact same manner. The Court in *Smith v. S.E.C.*, 129 F.3d 356 (6th Cir. 1997) notes that "... a court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it. "[T]he one must be materially on all fours with the other.... [T]he issues `must have such an identity that a determination in one action leaves little or nothing to be determined in the other.'"" Ingram, with its thirty (30) plaintiffs, filing also as individuals, is not a mere copycat putative class action filed with one class representative.

which to evaluate how best to protect the overall interests of the persons affected and from which to proceed with this litigation.

**B.      THE COURT SHOULD NOT STAY THE INGRAM CASE**

The Consolidated Case's Motion argues courts around the country frequently stay "duplicative" or "copycat" lawsuits, and it cites *Cohen IP Law Group, PC v. IAC/InterActiveCorp*, No. CV 10-5994 CAS (FMOx), 2010 U.S. Dist. LEXIS 118948 (C.D. Cal Oct 25, 2010) and *Weinstein v. Metlife Inc.*, No. C 06-04444 SI 2006 U.S. Dist. LEXIS 83115 (N.D. Cal. Nov. 6, 2006) for this proposition. However, neither case presents the same considerations faced by this Court.

In *Cohen*, the "duplicative action" was filed with only one named plaintiff, and evidently was filed to circumvent a temporary stay put in place pending resolution of an appeal. *Id.* at *2. The *Cohen* court thus stayed the duplicative action pending the resolution of that appeal. As the *Cohen* court stated [in this procedurally and factually distinct scenario] "... the interests of justice and judicial efficiency" favored the stay. *Id.*

 In *Weinstein*, the court temporarily stayed one of the three causes of action which was substantially similar to another pending case (the "Sims" case). The court noted in its decision to stay the *Weinstein* case (pending ruling by the judge on summary judgment in Sims) that the Sims case was substantially further along and "the parties have deposed plaintiffs" and "thousands of pages of documents" had been produced. Further, the Sims cases' counsel had "fully briefed a summary judgment motion and a motion for class certification." Here again, the Sims and *Weinstein* cases faced substantially different circumstances than those faced by this Court. Judicial economy and justice do not favor a stay of Ingram.

The jail computer system at issue in these class actions has been discussed on the local and national news. It is well known ten million dollars was spent on Defendants' alleged "upgrade," and chaos ensued at the criminal court, jail, and sheriff's office after attempted implementation of said computer system. Plaintiffs suffered in a host of ways because of the breakdown and improper implementation of various parts and subparts of the jail computer system. For example, some Plaintiffs were not released when bond was posted; some had warrants recalled but were arrested again for the same [cleared] warrants; some were not able to post bond because of the computer system did not show a bond; some were merely held for an excessive period of time for a whole host of related reasons; some were confused with other inmates; and, some were not given a timely bond and/or given a court date preventing them being assigned a bond and/or notified of the charges against them. In other words, the factual issues in this case are unusually complex, and ready access to the Ingram Plaintiffs (and their counsel) will be invaluable to determining the substantive issues of class certification, including potential sub-classes, and discovery.

In the Consolidated Case, class discovery has only just begun.[5] If the two cases are consolidated, ready access to the Ingram Plaintiffs (and counsel) would be beneficial in making the necessary determination on commonality of injuries. In fact, counsel in the Ingram case represent a huge majority of Plaintiffs involved in the underlying jail system failure caused by Defendants. (30 individual Plaintiffs in the Ingram matter compared to a mere 8 in the Consolidated Case). Class discovery and certification in this matter will likely be complex, because of the potential for identifiable subtypes of injuries. The thirty (30) Ingram Plaintiffs will

---

[5] It is the understanding of Ingram's counsel, per this Court's Status Conference conducted on December 19, 2017, that class discovery has just begun in the Consolidated Case, and it was temporarily stayed until the disposition of the foregoing motions.

be an invaluable reservoir of knowledge that will be essential to litigating the overall cause of action. As a result, a more accurate picture of the total systemic failure can be evaluated for the purposes of class certification and identification of sub-classes.

Ingram's counsel also ask the Court to consider the special relationship enjoyed between counsel and their thirty (30) Plaintiffs. Many of these clients already have a long-term preexisting relationship with their counsel, now past a year or more, and as a result, counsel has developed an intimate factual knowledge of each Plaintiff's injuries, in addition to issues relevant to the jail computer system.

## C. THE COURT SHOULD CONSOLIDATE INGRAM WITH THE CONSOLIDATED CASE

Ingram broadly agrees with the reasoning of *Defendant's Combined Motion for Consolidation*, especially with Paragraph 8, pg. 4, identifying Rule 42(a) as the appropriate procedural mechanism to effectuate consolidation of Ingram and the Consolidated Case into a "Second Consolidated Case." A complex analysis of *first-to-file* is not necessary as the Rules of Civil Procedure provide a simple solution for related litigation within the same district. Fed. R. Civ. P. 42(a) states:

> (a) Consolidation. If actions before the court involve a common question of law or fact, the court may:
>
> > (1) join for hearing or trial any or all matters at issue in the actions;
> >
> > (2) consolidate the actions; or
> >
> > (3) issue any other orders to avoid unnecessary cost or delay.

Consolidating Ingram and the Consolidated Case is in the best interest of all parties, including potential class members, and Defendants. Judicial economy and justice will also be best effectuated by consolidation for the reasons identified herein. The Court need not be

concerned with the remaining issues for determination; including the agreement between counsel in Ingram and the Consolidated Case, assigning responsibilities, the make-up of the steering committee, and entitlement to fees. These are issues that can be worked out between respective counsel.

If consolidation is ordered, Ingram can be easily folded into the current Consolidated Case pursuant to Fed. R. Civ. P. 42(a). The Second Consolidated Case can then proceed with little interruption, with the benefit of thirty (30) additional plaintiffs and their counsel representing their interests in discovery. The appointment of counsel to formally represent the entire class can take place later, when and if necessary.

The Ingram case was filed in good faith and never intended as a "copycat" case, as it was initially filed in state court, and was upon information and belief, the second lawsuit involving the jail computer system. Equities do not favor punishing the Ingram Plaintiffs. In short, Plaintiffs in Ingram merely seek their day in court, and to be represented by counsel of their choice regarding Defendants' gross mismanagement of the Shelby County jail, court, and computer system.

## CONCLUSION

Ingram requests the Court deny *Plaintiff's Rule 23(g)(3) Motion for Appointment of Interim Class Counsel and to Dismiss without Prejudice or Alternatively to Stay the Recently Filed as Ingram Class Action*, and the Court order consolidation of Ingram and the Consolidated Case. Counsel for Plaintiffs from both cases may then negotiate privately and agree on scope of representation and division of workload. The Court need not involve itself in this matter unless counsel for Plaintiffs cannot reach an agreement, and the Court's assistance becomes necessary.

Respectfully submitted,

s/Daniel Lofton
DANIEL O. LOFTON, BPR#27386
2400 Poplar Ave., Ste. 210
Memphis, TN 38112
(901) 526-7837 Phone
dlofton@craigandloftonlaw.com

s/Paul Craig
PAUL F. CRAIG, BPR#18359
2400 Poplar Ave., Ste. 210
Memphis, TN 38112
(901) 526-7837 Phone

s/Steve Wilson
STEVE G. WILSON, BPR#28460
5100 Poplar Ave., Ste. 2700
Memphis, TN 38137
steve@stevewilsonfirm.com

s/Matt Gulotta
MATTHEW C. GULOTTA, BPR#28194
202 Adams Avenue
Memphis, TN 38103
matt@gulottalaw.net

s/Patrick Brooks
PATRICK M. BROOKS BPR#31045
2299 Union Avenue
Memphis TN 38104
patrick@patrickbrookslaw.com

*Attorneys, Plaintiffs/Class Representatives*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to all parties of record.

s/ Matt Gulotta