# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **SCOTT TURNAGE, CORTEZ D.** | § | |
| **BROWN, DEONTAE TATE, JEREMY S.** | § | |
| **MELTON, ISSACCA POWELL, KEITH** | § | |
| **BURGESS, TRAVIS BOYD, TERRENCE** | § | |
| **DRAIN, and KIMBERLY ALLEN** on behalf | § | |
| of themselves and all similarly situated | § | |
| persons, | § | |
| | § | |
| **Plaintiffs,** | § | **Case No. 2:16-cv-02907-SHM/tmp** |
| | § | **Consolidated With** |
| **v.** | § | **Case No.:  2:17-cv-02015-JTF/dkv** |
| | § | **And Consolidated With** |
| | § | **Case No. 2:17-cv-02795-SMH/tmp** |
| | § | |
| **BILL OLDHAM,** in his individual capacity | § | |
| and in his official capacity as the Sheriff of | § | |
| Shelby County, Tennessee; **ROBERT** | § | |
| **MOORE,** in his individual capacity and in | § | |
| his official capacity as the Jail Director of | § | |
| the Shelby County, Tennessee; **CHARLENE** | § | |
| **McGHEE,** in her individual capacity and in | § | |
| her official capacity as the of Assistant Chief | § | |
| Jail Security of Shelby County, Tennessee; | § | |
| **DEBRA HAMMONS,** in her individual | § | |
| capacity and in her official capacity as the | § | |
| Assistant Chief of Jail Programs of Shelby | § | |
| County, Tennessee; **SHELBY COUNTY,** | § | |
| **TENNESSEE,** a Tennessee municipality; | § | |
| and **TYLER TECHNOLOGIES, INC.,** a | § | |
| foreign corporation, | § | |
| | § | |
| **Defendants.** | § | |

# DEFENDANT TYLER TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT

Defendant Tyler Technologies, Inc. ("Tyler") submits this Memorandum in Support of its Motion to Dismiss Third Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

Despite having now filed three amended complaints in over 18 months, Plaintiffs are still unable to allege claims against Tyler with the requisite degree of factual support required to survive a Rule 12(b)(6) motion to dismiss.  Instead, Plaintiffs continue to assert *in an entirely conclusory manner* that Tyler and its Odyssey software, which was installed at the Shelby County Criminal *Courts*, was responsible for problems at the Shelby County *Jail*.  Plaintiffs' allegations continue to confuse the limited role that Tyler and its Odyssey software played in the overall Integrated Criminal Justice Information System ("iCJIS").  Inexplicably, Plaintiffs have ignored the fact that Tyler did not provide the software for the Offender Management System at the Shelby County Jail, the Case Management System at the Public Defender's Office, or the "Info Hub" that was responsible for integrating the various new software products into one seamless criminal justice information system.  Tyler pointed out Plaintiffs' mistaken impression in its prior Motions to Dismiss [Dkt. Nos. 45 and 58], yet Plaintiffs continue to make the unsupported and conclusory allegation that Tyler's Odyssey software is responsible for their allegedly unlawful detentions *at the Jail*.  *See, e.g.,* Third Amended Complaint ("Third Amended Complaint") at ¶131 (incorrectly, still and again, alleging that Tyler installed Odyssey "for the Jail").

Plaintiffs are also unable, even after several attempts, to allege any defect in the Odyssey software, how Tyler's negligence lead to such defect, or how any such defect contributed to any specific unlawful detention.  It is not sufficient to simply allege that Plaintiffs were wrongfully

detained and that the detention must have resulted from an error in the Criminal Court's new Odyssey software. This is especially true where the Odyssey software is but one part of a new iCJIS system, and where Tyler did not provide the Jail software or the integration software. In short, the most basic pleading rules have not been satisfied and the claims should be dismissed. In addition, as a matter of law, Plaintiffs are barred by the economic loss doctrine from asserting a negligence claim against Tyler. Because Plaintiffs cannot state a claim on which relief can be granted, the Third Amended Complaint should be dismissed as to Tyler pursuant to Rule 12(b)(6).

## II.   FACTUAL BACKGROUND

Tyler is a leading provider of information management solutions and services for local governments. Tyler helps its public sector clients—cities, counties, schools and other governmental entities—to become more efficient, more accessible, and more responsive to the needs of their constituents. Tyler's client base includes more than 15,000 local government offices in all 50 states, Canada, the Caribbean, and various other international locations. Tyler's Odyssey software is but one of many products and services offered to its customers.

On July 22, 2013, following a public Request for Proposal, Tyler and Shelby County entered into a contract for Tyler to provide a "Court Management System for the Shelby County General Sessions Criminal Court Division, Shelby County Criminal Court and PreTrial Services"

(the "Contract"). Exhibit 1 at p.1.[1] Per the Contract's Statement of Work, Tyler was required to implement its Odyssey software "within Shelby County for the Clerk of the Criminal Court and the Criminal Division of the General Sessions Clerk's Office." *Id.* at p. 21. According to the Contract, Odyssey was to replace "Shelby County's in house developed Court Case management System, JSS." *Id.* The Contract contemplated that Tyler would provide the "current version of Odyssey" to Shelby County and would undergo a "Fit Analysis" as necessary to support Shelby County's business. Exhibit 1, Statement of Work, pp. 4, 8.

Importantly, the Contract confirmed that the scope of Tyler's involvement in the overall iCJIS project was limited, and that it *did not extend to the Jail software or the Info Hub*:

> In conjunction with the replacement of JSS, Shelby County will also be replacing JMS -- its current Jail Management System used by the Jail and IMS -- the current Inmate Management System used by the Correction Center. The current JMS/IMS/JSS systems are tightly integrated with a custom written interface. The new iCJIS will be integrated using a service Oriented Architecture solution and an Enterprise Service Bus solution (Info Hub). **Software AG's webMethods will be the Info Hub solution and Global Tel*Link's DSI Offender Management System will be implemented for the Jail and the Correction Center.** New Dawn's JustWare will be used for Case Management by the Public Defender's Office and the Attorney General's Office.

> The new Offender Management System, the Court Case Management System and the Public Defender CMS will be part of the Enterprise Service Bus solution (Info Hub) as well as integrated with Shelby County's current document management solution, OnBase. These systems will be so integrated that a single system will not be able to go live without the data exchanges in place from the other iCJIS systems. The timelines of the Court System Statement of Work is dependent upon the timelines of the other iCJIS partners.

---

[1]     The Third Amended Complaint contains specific references to the Contract and the attached Statement of Work. *See, e.g.,* Third Amended Complaint at ¶¶40, 42-45. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, *public records,* items appearing in the record of the case and *exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.*" *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008) (*citing Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (emphasis added). Because the Contract and Statement of Work are referred to in the Complaint and are central to the claims against Tyler, it is appropriate for the Court to consider them in connection with this motion. Moreover, because of the nature of the Contract, it is a publicly available document that can be accessed at www.shelbycountytn.gov. For this additional reason, it is proper for the Court to consider the Contract in connection with this Motion.

**TYLER TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 4**

*Id.* at pp. 21-22 (emphasis added).

Contrary to Plaintiffs' suggestion (Third Amended Complaint ¶42), the Contract expressly provided that the integration of Odyssey into iCJIS was not the responsibility of Tyler. Instead, the Contract notes that "all data translations that need to be done in order to map data from Odyssey to the Hub/ESB and other agencies [including the Jail] integrated via the Hub/ESB will be performed by the County's System's Integrator, which at the time [the Contract] was written ha[d] yet to be awarded."  Exhibit 1, Statement of Work, p. 5.

The Statement of Work also provided for testing of Odyssey prior to going live and other software-related services.  Exhibit 1, Statement of Work, pp.16-18.  On November 7, 2016, Shelby County went "live" with the new iCJIS system.  Third Amended Complaint ¶52.[2]

On January 9, 2017, Plaintiffs Brown, Tate and Melton filed a putative class action, alleging that Shelby County had violated their constitutional rights by unlawfully detaining them for longer periods of time than appropriate in the Shelby County Jail (the "Brown Case").  On March 13, 2017, the Brown Case was consolidated with a pending matter styled *Powell v. Oldham*, Case No. 2:16-cv-02907, which made similar allegations of wrongful detention at the Shelby County Jail.  On March 24, 2017, Plaintiffs filed an Amended Consolidated Class Action Complaint in the consolidated action.

On April 7, 2017, Tyler filed a Motion to Dismiss, which asserted that Plaintiffs had not alleged, with sufficient detail, any basis for a negligence claim against Tyler and also sought dismissal based on the economic loss doctrine.  On May 4, 2017, Plaintiffs filed the Second

---

[2]     Contrary to Plaintiffs' allegation in Paragraph 52 of the Third Amended Complaint that "Defendants Oldham, Moore, McGhee and Hammons went 'live' with the Odyssey Case management System," Sheriff Oldham and the other individual defendants were not responsible for the Odyssey implementation.  This allegation appears to be yet another example of Plaintiffs conflating the Odyssey with the separate Jail software.

Amended Complaint. Tyler filed a second Motion to Dismiss, again asserting the Plaintiffs had not alleged, with sufficient detail, a basis for their claims against Tyler. On October 31, 2017, Melvin Ingram and twenty-nine additional plaintiffs filed a Class Action Complaint for Violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and Tennessee Common Law, which asserted claims against Tyler that were identical in substance to the Second Amended Complaint. On March 9, 2018, the Court consolidated the Ingram matter with the already pending case and denied, as moot, Tyler's two prior motions to dismiss. On July 30, 2018, Plaintiffs filed the Third Amended Complaint.

Like the three iterations before it, the Third Amended Complaint asserts a Tennessee state law claim for negligence against Tyler, contending that Tyler negligently developed and installed the "criminal court and jail inmate tracking computer systems." Third Amended Complaint ¶129. Despite Tyler's effort in its initial Motions to Dismiss to clarify Odyssey's role in iCJIS and to point out Plaintiffs' apparent misunderstanding, Plaintiffs made no effort in the Third Amended Complaint to address these concerns. Instead, Plaintiffs continued to incorrectly allege that Odyssey was "for the Jail" and that Tyler was responsible for the "jail inmate tracking computer systems." Third Amended Complaint at ¶¶129, 131. Even in the face of Tyler's repeated Motions and the express language of the Contract, Plaintiffs have made no effort to specify the involvement Tyler allegedly had in the "jail inmate tracking" system used at the Shelby County Jail or how the implementation of the Odyssey software at the Shelby County Criminal Courts contributed to the problems that allegedly occurred at the Jail. Nor have Plaintiffs plead any facts whatsoever to support the suggestion that Tyler negligently designed or implemented the Odyssey software or that Tyler's negligence was the proximate cause of any alleged injury to any of the specified Plaintiffs.

Plaintiffs' Third Amended Complaint also continues to assert a conclusory and entirely unexplained claim for Negligent Training and Supervision against Tyler. Third Amended Complaint at ¶¶133-36. In this claim, Plaintiffs plead only the bald conclusion that Tyler had a duty to train and supervise both its own employees and Shelby County's—including apparently employees at the Shelby County Jail, despite the fact that Tyler had no responsibility whatsoever for the new jail software. Nowhere do Plaintiffs allege how Tyler allegedly failed in its training or supervision or how that failure was the cause-in-fact of any injury to Plaintiffs. Again, Plaintiffs are missing not only the factual allegations to support their claims, but any allegation of the necessary causal link between Tyler's alleged conduct and Plaintiffs' alleged harm.

Based on these facts, Plaintiffs' Third Amended Complaint should be dismissed for two, independent reasons. First, the Third Amended Complaint fails to allege sufficient facts to support either a negligence claim or a negligent training or supervision claim as a matter of law. Second, Plaintiffs' claim for negligence is barred by the economic loss doctrine, which prohibits the recovery of purely economic damages for negligence because Plaintiffs lack privity of contract with Tyler.

### III.    ARGUMENT AND AUTHORITIES

#### A.    *Plaintiffs' Claims Against Tyler Fail as a Matter of Law.*

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. Under the Supreme Court's decision in *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face' to survive a Rule 12(b)(6) motion to dismiss." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires "more than a sheer possibility" of entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Rule 8 does not require pleadings to contain "detailed factual allegations," but it does demand more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Moreover, "[a]lthough for the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' allegations here fail, as a matter of law, to properly allege a claim under the standards established by *Iqbal* and *Twombly*.

### 1.    Plaintiffs' Negligence Claim Fails

With regard to the Plaintiffs' negligence claim, the allegations against Tyler are merely conclusory, formulaic recitations that are devoid of any supporting facts. Under Tennessee law, "[i]n order to establish a prima facie claim of negligence ... a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)); *see also Yarnell v. Transamerica Life Ins. Co.*, 694 F. Supp. 2d 849, 853 (E.D. Tenn. 2010). "[N]egligence is not presumed from the mere fact of an accident or injury." *Kae v. Cumberland Univ.*, No. 3:15-00082, 2016 WL 3632804, at *5 (M.D. Tenn. July 7, 2016).

The entirety of the negligence allegation against Tyler is found in Paragraphs 129-132 of the Third Amended Complaint:

129.    As a software company specializing in the development and installation of criminal court and jail inmate tracking computer systems, Defendant Tyler Tech owed [a] duty of reasonable care to Plaintiff and Class Members to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored.

130.    These duties arose when Defendant Tyler undertook to provide services in connection with the software implementation in its Contract with the County "for Court Management System."

131.    Defendant, however, breached these duties with its development and installation of Odyssey for the Jail.

132.    As a direct and proximate result of the negligence of Defendant Tyler Tech, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including Tenn. Code Ann. § 29-29-101(1), from Defendant Tyler Tech.

These allegations do not state a sufficient claim for negligence for at least two reasons.

First, these allegations are premised on incorrect information regarding Tyler's role in iCJIS.

Paragraph 131 of the Third Amended Complaint alleges that Tyler breached its duties "with its

development and installation of Odyssey *for the Jail*."  Tyler's Odyssey software, however, was

not developed or installed at the Jail.  This allegation alone, which forms the cornerstone of

Plaintiffs' negligence claim, provides a basis for dismissal.

Plaintiffs echo the same incorrect characterization elsewhere in the Third Amended

Complaint.  For example, Plaintiffs incorrectly characterize Odyssey as the "heart" of iCJIS, *see*

Third Amended Complaint ¶23, hoping to implicate it, by default, as the cause of Plaintiffs'

alleged injury.  In reality, and as the Third Amended Complaint itself establishes through its

incorporation by reference of the Contract, the opposite is true.  Tyler was not responsible for the

"jail inmate tracking computer systems" and did not install Odyssey "for the Jail."  *See* Third

Amended Complaint ¶¶129, 131.  Plaintiffs also repeatedly refer to Tyler as having

responsibility for the "Computer Tracking System," implying that Odyssey had responsibility for

tracking inmates through iCJIS from start to finish.  As described above, that is not what the

Contract provides.  Exhibit 1, Statement of Work, pp. 2, 5.  Tyler's Odyssey software was implemented in, and only in, the Shelby County Criminal Courts.  Other parties were responsible for the implementation of the Jail software, the integration HUB, and even the specific integration of Odyssey's information into iCJIS.  *Id.*

Because Tyler pointed out these deficiencies in its prior Motions to Dismiss and Plaintiffs chose not to correct the errors in their Second or Third Amended Complaints, it appears that Plaintiffs are unable to provide any details regarding the role the Odyssey software plays at the jail, as compared with the other portions of the iCJIS system.  That is not surprising given the fact that Odyssey was, in fact, not "for the jail" and Tyler had no role in either the jail software or the integration software. Because the Third Amended Complaint is, yet again, based on an incorrect factual premise, it should be dismissed as to Tyler in its entirety without any further opportunity to replead a fourth time.

Second, and regardless of the incorrect premise upon which the claims are based, the Third Amended Complaint contains no allegation of how Tyler's Odyssey software was the "cause in fact" of any alleged injury to Plaintiffs, let alone the proximate cause.  Nor does the Third Amended Complaint include any specific allegation about how Tyler allegedly breached a duty in its development or installation of Odyssey.

Instead, the Third Amended Complaint merely contains conclusory statements regarding Odyssey's involvement in Plaintiffs' specific detentions.  For example:

- Plaintiff Brown alleges that the charges against him were dismissed on November 7, 2016.  Third Amended Complaint ¶78.  Brown then alleges that Sheriff Oldham and others *at the jail* failed to release him until November 14, 2018.  *Id.*  Plaintiff Brown, however, makes no allegation regarding Tyler whatsoever, and certainly does not allege

**TYLER TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 10**

how Tyler's Odyssey software was supposedly responsible for his detention or how Tyler's Odyssey implementation was negligent. The same is true for Plaintiff Melton. *See* Third Amended Complaint at ¶80.

- Plaintiffs Turnage, Powell, Burgess, Boyd, and Drain each allege that he was improperly detained because the Odyssey software did not reflect certain information. Third Amended Complaint ¶¶76, 82, 84, 86, 89. These allegations suggest that the issues either stemmed from data entry errors or occurred in the Jail software or at the Info Hub. They do not suggest a problem with the Odyssey software. There is no factual allegation that the alleged data entry failures were the responsibility of Tyler or that they resulted from an Odyssey software problem arising from negligent design or implementation by Tyler.

- More specifically, with regard to Plaintiff Turnage, the alleged error was Odyssey's supposed failure to purge an expired Attachment Pro Corpus, resulting in Turnage's arrest. Third Amended Complaint ¶¶61-77. The Attachment Pro Corpus, however, is a civil court document, which, as the Third Amended Complaint states, was reflected on the docket of a civil collections matter. Third Amended Complaint ¶65. Any responsibility to purge that document did not fall on Odyssey, which had no responsibility for the civil court docketing system. And, Plaintiffs have not alleged any facts to establish otherwise.

- Plaintiff Allen, newly added as a putative class representative in the Third Amended Complaint, also presents a good example of how Plaintiffs are improperly conflating issues at the Jail with Odyssey. According to the Third Amended Complaint, Plaintiff Allen was detailed because the "jail system did not reflect any information about her." Third Amended Complaint ¶97; *see also* ¶96 (alleging she "did not appear in the jail

08/20/2018

system") and ¶99 (alleging "significant issues with the jail computer system").  These allegations assert a claim regarding the "jail system," which was *not* Tyler's Odyssey system.

### 2.      Plaintiffs' Negligent Training and Supervision Claim Is Also Insufficiently Pled.

Plaintiffs' cause of action for negligent training and supervision also runs afoul of the pleading requirements established by *Iqbal* and *Twombly*.  Under Tennessee law, in addition to the traditional elements of negligence (duty, breach, causation, and damages), a plaintiff claiming negligent supervision must show "that the employer had knowledge of the employee's unfitness for the job."  *Doe v. Catholic Bishop for Diocese of Memphis,* 306 S.W.3d 712, 717 (Tenn. App. Ct. 2008).  Here, the sole allegation of liability is that "Defendant Tyler further undertook the duties of training and supervising the Court's employees with respect to Odyssey and its functionality with the iCJIS system.  Defendant Tyler failed to properly train and supervise these employees."  Third Amended Complaint ¶135.  Plaintiffs have not plead a single fact regarding what training or supervisory role specifically Tyler had (as opposed to the County or others), how Tyler was negligent in its training or supervision, what errors are attributable to negligent training or supervision, how such negligent training or supervision is the proximate cause of any specific Plaintiffs' alleged injury, whether specific employees were unfit for the job, which specific employees were unfit, or whether Tyler had knowledge of the employees' alleged unfitness for the job.

Indeed, as the Third Amended Complaint recognizes (*see* ¶134), Plaintiffs' basis for "asserting" a negligent hiring and supervision claim appears to be the desire to avoid the economic loss doctrine, which recognizes a specific exception in the context of negligent

supervision. *See Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008). Plaintiffs should not, however, be permitted to maintain a cause of action based only their conclusory allegations. *See generally Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (pleadings that offers only "a formulaic recitation of the elements of a cause of action will not do").

### 3.    Plaintiffs Improperly Lump "Defendants" Together.

The Third Amended Complaint also continues to repeatedly use vague references to the term "Defendants," improperly lumping Tyler in with the other defendants. *See, e.g.,* Third Amended Complaint ¶¶ 1, 26, 27, 31, 50, 51, 57, 60, 77, 79, 101, 120 (alleging, for example, that "Defendants made a deliberate choice to follow a course of action" and "Defendants were the officials responsible for establishing the final policy with regard to implementing a competent and efficient Computer Tracing System"). This type of group pleading is impermissible and underscores the Third Amended Complaint's inability to allege facts specific to Tyler. *See, e.g.*, *Bondex Int'l, Inc. v. Hartford Accident and Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011) (finding that "the pleadings' generic references to the misconduct of 'all Defendants'" were "threadbare allegations" that did not satisfy pleading standards without linking factual allegations to a specific Defendant).

Plaintiffs have plead nothing more than unsupported, conclusory allegations that do not withstand the scrutiny of *Iqbal* and *Twombly*. Both claims against Tyler should be dismissed on this basis alone. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *(citing Twombly,* 550 U.S. at 555)); *see also Thompson v. City of Memphis,* No. 09-2658, 2011 WL 3567436, at *1 (W.D. Tenn. August 15, 2011) ("Plaintiffs' complaint is merely a restatement of Plaintiffs' conclusory

allegations coupled with a formulaic recitation of the statutory elements.  This is insufficient to meet the threshold Rule 12(b)6) standard.").  Nothing in the Third Amended Complaint even suggests a connection between Tyler's implementation of Odyssey at the Shelby County Criminal Courts and Plaintiffs' incarceration at Shelby County Jail.  Based on the fact that Plaintiffs have already filed three amended complaints, none of which has come close to overcoming these deficiencies, it would be futile to allow Plaintiffs another attempt to replead.

**B.     The Economic Loss Rule also Bars Plaintiffs' Negligence Claim.**

Plaintiffs' claim for negligence also fails based on the application of the economic loss doctrine.  The economic loss doctrine is "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss."  *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488 (Tenn. 2009).  The Tennessee Supreme Court has described the doctrine as "a general principle that prohibits the recovery of purely economic damages for negligence when the plaintiff lacks privity of contract with the defendant."  *John Martin Co. v. MorselDiesel, Inc.*, 819 S.W.2d 428, 430 (Tenn. 1991).  The Tennessee Supreme Court agreed with the policy behind the economic loss doctrine in *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995), and a number of Tennessee appellate courts and federal district courts applying Tennessee law have applied the doctrine in various contexts.  *See, e.g., United Textile Workers v. Lear Siegler Seating Corp.*, 825 S.W.2d 83 (Tenn. Ct. App. 1990) ("*Lear Seigler*"); *Ladd Landing, LLC v. Tenn. Valley Authority*, 874 F. Supp. 2d 727 (E.D. Tenn. 2012).

The economic loss doctrine has its origins in the U.S. Supreme Court's decision in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).  In *Robins*, the defendant dry dock company negligently damaged a ship's propeller resulting in a delay in the ship's return to

service.  *Id.* at 307-08.  The plaintiff lost use of the ship, resulting in economic losses for the charterer of the ship.  *Id.*  The Supreme Court refused to permit the ship charterer to recover on a negligence claim, stating that "as a general rule . . . a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. [citation omitted] The law does not spread its protection so far."  *Id.* at 309.

The economic loss doctrine was first applied by the Tennessee Court of Appeals in *Lear Siegler*.  There, union workers at a paint factory brought an action against the owner of a neighboring factory to recover lost earnings resulting from the temporary closure of the industrial park in which both factories were located.  825 S.W.2d at 83-84.  The neighboring factory owner had stacked metal racks next to a propane tank storage area, which resulted in a leak that shut down the industrial park.  Notwithstanding the factory owner's alleged negligence, the court decided to "follow the majority rule" and "disallow recovery for purely economic loss absent physical injury or property damage."  *Id.* at 87.

Since *Lear Siegler*, which remains good law in Tennessee,[3] a number of other Tennessee courts have applied the economic loss doctrine.  *See, e.g., Acuity v. McGhee Eng'g*, 297 S.W.3d at 734 ("[t]he economic loss doctrine provides that, absent privity, one may not recover in negligence where there is no injury to person or property"); *Lincoln Gen. Ins.*, 293 S.W.3d at 491 (applying the economic loss doctrine in the context of a products liability case).

---

[3]     Because *Lear Siegler* is a published decision by the Tennessee Court of Appeals that has not been overruled or modified by a subsequent decision of the Tennessee Supreme Court, it is controlling authority on this Court.  *See, e.g., Meadows v. State*, 849 S.W.2d 748, 752 (Tenn. 1993).

Tyler recognizes that there is a split of authority among the federal district courts applying Tennessee law regarding whether the economic loss doctrine applies outside the context of products liability cases or cases involving the sale of goods pursuant to the UCC.  *Compare Ladd Landing*, 874 F. Supp. 2d at 729-31 (concluding that, based on *Lear Siegler*, there is no basis to limit the application of the economic loss doctrine to strictly products liability cases or UCC cases), *with Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 922 (W.D. Tenn. 2010) (finding that the economic loss doctrine should be restricted to "claims involving products liability or the sale of goods, at least where the plaintiff can establish a sufficiently direct relationship between the defendant's negligent act and the plaintiff's economic loss").  As an initial matter, *Ladd Landing*, which was decided after *Ham*, appears to be more consistent with the application of the economic loss doctrine in *Lear Siegler*.

Moreover, because Plaintiffs' negligence claims seem to relate to the ability of Tyler's Odyssey software to perform in the manner required by the Contract, this matter not only involves the sale of goods, it is akin to a products liability matter alleging that the Odyssey software was defectively developed and implemented.  Thus, the policy reasons for applying the economic loss doctrine in products liability or UCC cases are equally applicable here and dictate in favor of the application of the doctrine to Plaintiffs' claims.  *See, e.g., Shema Kolainu-Hear Our Voices v. Providersoft, LLC*, 832 F. Supp. 2d 194 (E.D.N.Y. 2010) (applying economic loss doctrine to bar recovery for negligence claim arising from allegation of defective software); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103 (Tex. App.—Houston [14th Dist.] 2000) (holding that economic loss doctrine precluded recovery in tort against software developer); *Huron Toll & Eng. Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541 (Mich. Ct. App.

1995) (recognizing applicability of economic loss doctrine to nonintentional tort claims arising from software defects).

Plaintiffs' Third Amended Complaint attempts to avoid the application of the economic loss rule by alleging that the Contract is one for services and not goods. *See* Third Amended Complaint ¶¶41. Plaintiffs, however, have ignored the fact that Tennessee applies the "predominant purpose" test to determine whether a "hybrid" or "mixed" contract for the sale of both goods and services is predominantly a sale of (i) a product subject to the economic loss doctrine or (ii) a contact for services not subject to the doctrine. *See, e.g., Hudson v. Town and Country True Value Hardware, Inc.*, 666 S.W.2d 51, 54 (Tenn. 1984).[4]

Numerous courts have held that contracts for the sale of software that involve implementation services such as those delivered under the Contract here are contracts for the sale of goods subject to the UCC. *See, e.g., Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 796-804 (Tenn. Ct. App. 2012) (concluding that contract for installation and maintenance of smart home software system was a contract for the sale of goods); *Springbrook Software, Inc. v. Douglas County*, No. 13-cv-760-slc, 2015 WL 2248449, *12-15 (W.D. Wis. 2015) (applying the economic loss doctrine to contract for software system with Douglas County, Wisconsin deemed to be for sale of goods); *Micro Data Base Systems, Inc. v. Dharma Systems, Inc.*, 148 F.3d 649, 654-55 (7th Cir. 1998) (finding that sale of custom software involves a sale of goods); *RXX Industries, Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546-47 (9th Cir. 1985) (finding that the sale of medical software was a sale of goods despite provisions in the contract for the training, repair

---

[4]     Plaintiffs' use of legal citations in its Third Amended Complaint in an effort to support the bald conclusion that the Contract is not one for the sale of goods runs afoul of *Iqbal* and *Twombly's* pleading rules, which emphasize that this Court is not required to accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs have pleaded no facts to support the suggestion that the Contract is not predominately one for the sale of the Odyssey software.

and upgrading of the software); *Colonial Life Ins. Co. of Am. v. Electronic Data Systems Corp.*, 817 F. Supp. 235, 239 (D. N.H. 1993) (holding that where essence of contract was to license a computer software product, contract is for the sale of a good).   Because the Contract was predominately for the sale of the Odyssey software and Tyler's services were ancillary to that primary goal, the Contract was one for the sale of goods and the economic loss doctrine applies.

From a policy perspective, this is precisely the type of case in which the economic loss doctrine was designed to apply.   As noted, the doctrine had its genesis in the U.S. Supreme Court's *Robins* decision, which warned of the dangers of expanding the duties arising from contractual relationships beyond the confines of the contract and morphing those duties into tort-based duties to third parties.   *See Robins,* 275 U.S. at 309; *see also Lincoln Gen. Ins.,* 293 S.W.3d at 488 (emphasizing the need to distinguish between contract and tort law).   Here, to the extent there is any dispute arising out of or relating to Tyler's obligations under the Contract, it is a contractual dispute to be addressed by the parties to the Contract: Tyler and Shelby County.

Tyler's contractual duties to the County should not be expanded into tort duties to third parties.   As the Supreme Court said, "[t]he law does not spread its protection so far."   *Robins*, 275 U.S. at 309.   This is especially true where third parties suffer solely economic losses that would typically be recoverable only in contract.   In sum, because Plaintiffs have not and cannot allege any specific or actual physical injury, the economic loss doctrine applies in this case and bars Plaintiffs' negligence claim against Tyler.

Plaintiffs, of course, want to avoid the application of the economic loss rule. To do so, they simply state, in yet another conclusory statement, that Plaintiffs are not seeking economic losses, but instead are seeking $48,000 per day, per Plaintiff, as compensation for a "loss of liberty" associated with allegedly unlawful detention at the Shelby County Jail.   Third Amended

Complaint ¶102-03.   And, Plaintiffs plead "damages for 'tangible injury,' including embarrassment, emotion [sic] suffering and any physical harm."   Third Amended Complaint ¶105.   However, damages for a "loss of intangible rights" or "loss of liberty" are not available for negligence claims under Tennessee law.[5]   Furthermore, Plaintiffs in this case have not alleged any specific, actual physical harm,[6] embarrassment, or emotional suffering.[7]   *See* Third Amended Complaint ¶105.   In the absence of specific allegations identifying a certain "tangible injury,"

---

[5]    Tyler has not found any case in which a Tennessee or federal court has permitted compensatory damages for negligence on such a theory.  The cases that Plaintiffs rely on are inapposite.  *Rhodes v. Lauderdale Cty., Tenn.*, 2012 WL 4434722 (W.D. Tenn. Sept. 24, 2012), and *Martinez v. Port Auth. Of N.Y.*, 2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005), both solely concern damages for § 1983 civil rights actions, which are distinctly designed to provide compensation for violations of civil rights.  *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").  Plaintiffs have not, and cannot, assert a § 1983 claim against Tyler and have not included Tyler as a defendant in that count of the Third Amended Complaint.  *See* ¶¶116-22.

[6]    Tennessee law has already established that wrongful incarceration does not translate to "physical injury."  *See, e.g., Pierce v. Stinson*, 493 F. Supp. 609, 611 (E.D. Tenn. 1979) (unlawful incarceration in itself not considered to be physical injury); *see also Mosely v. State*, 475 S.W.3d 767, 773 (Tenn. Ct. App. 2015) ("Here, there are no allegations that any person or instrumentality in the care, custody, or control of the State caused any physical injuries to Mr. Mosley; instead, the only injury alleged by Mr. Mosley concerns the State's statutory duty to release Mr. Mosely from confinement."); *Blalock v. Preston Law Group, P.C.*, No. M2011-00351-COA-R3-CV, 2012 WL 4503187, at *7 (Tenn. Ct. App. Sept. 28, 2012) (citing Tenn. Code Ann. § 28-3-104 and noting that it references wrongful imprisonment as a misuse of the legal system, but not as a claim involving physical injury).

[7]    To the extent a negligence claim for stand-alone emotional distress or embarrassment damages remains, Plaintiffs have not met the requisite pleading standards under Tennessee law.  *See Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) (holding that a stand-alone claim for negligent infliction of emotional distress, which is analyzed under Tennessee's general negligence framework, requires: (1) proof that the emotional injury is "serious" or "severe," and (2) support by "expert medical or scientific proof."); *West v. Genuine Parts Co.*, No. 3:11-CV-252, 2011 WL 4356361, at *3 (E.D. Tenn. Sept. 16, 2011) (dismissing case because plaintiff failed to allege a "serious or severe emotional injury" that would "disable a reasonable, normally constituted person from adequately coping with the alleged mental stress").

Plaintiffs' alleged losses for wrongful incarceration should not be treated as tangible injuries for purposes of the economic loss rule.[8]

**WHEREFORE,** Tyler respectfully requests that the Court grant its Motion to Dismiss and grant such other and further relief to which Tyler may be entitled.

Dated:  August 20, 2018

Respectfully submitted,

_s/ Bradley E. Trammell_____
Bradley E. Trammell (# 13980)
**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ**
165 Madison Ave.  Ste. 2000
Memphis, TN 38103
Tel.: 901-526-2000
btrammell@bakerdonelson.com

Beth Bivans Petronio (admitted _pro hac_)
Texas Bar No. 00797664
**K&L GATES, LLP**
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500  Telephone
(214) 939-5849  Facsimile
beth.petronio@klgates.com

**COUNSEL FOR TYLER TECHNOLOGIES, INC.**

---

[8]      Plaintiffs' reliance on Tenn. Code Ann. § 29-39-101(1) (_see_ Third Amended Complaint ¶132) is misplaced in this context.  That section, which provides a definition of "noneconomic damages" solely for purposes of Title 29, Chapter 39 of the Code, has not been applied in the context of the economic loss doctrine or otherwise outside of the specific context of Title 29, Chapter 39.  In fact, Chapter 39 itself states that "[n]othing in this chapter shall be construed to create or enhance any claim, right of action, civil liability, economic damage or noneconomic damage under Tennessee law."  Tenn. Code. Ann. § 29-39-102(m).

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 20, 2018, a true and correct copy of the foregoing document was forwarded by electronic means through the Court's ECF System and/or email to:

Frank L. Watson , III
William F. Burns
William E. Routt, III
WATSON BURNS, LLC
253 Adams Ave
Memphis, TN 38103

*Interim Class Counsel*

Michael G. McLaren
William E. Cochran, Jr.
Brice M. Timmons
BLACK McLAREN JONES RYLAND
& GRIFFEE PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117

Robert E. Craddock , Jr.
Odell Horton, Jr.
Robert L. Crawford
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177-5000

*Counsel for Defendants Sheriff Bill Oldham,*
*Jail Programmer Debra Hammons, Chief*
*Jailor Robert Moore, Assistant Jailor*
*Charlene McGhee, and Shelby County,*
*Tennessee*

Emmett Lee Whitwell
Shelby County Attorney's Office
160 N. Main Street
Suite 950
Memphis, TN 38103

*Counsel for Defendants Sheriff Bill Oldham,*
*Jail Programmer Debra Hammons, Chief*
*Jailor Robert Moore, Assistant Jailor*
*Charlene McGhee, and Shelby County,*
*Tennessee*

*s/ Bradley E. Trammell*
Bradley E. Trammell