IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SCOTT TURNAGE , CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, TERRENCE DRAIN and KIMBERLY ALLEN on behalf of themselves and all similarly situated persons, | ) ) ) ) ) ) ) ) **Case No. 2:16-cv-2907-SHM/tmp**<br><br>**(Hon. Judge Samuel H. Mays)** |
| PLAINTIFFS,<br><br>v. | ) ) ) ) ) ) ) ) **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, AND TENNESSEE COMMON LAW** |
| BILL OLDHAM, in his individual capacity and in his official capacity as the Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity and in his official capacity as the Jail Director of the Shelby County, Tennessee; CHARLENE McGHEE, in her individual capacity and in her official capacity as the of Assistant Chief Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity and in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; and TYLER TECHNOLOGIES, INC., a foreign corporation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **JURY TRIAL DEMANDED PURSUANT TO FED. R.  CIV. PRO. 38(a) & (b)** |
| DEFENDANTS. | ) |

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FILED BY DEFENDANT TYLER TECHNOLOGIES, INC. AND MEMORANDUM IN SUPPORT OF SAME**

COME NOW Scott Turnage, Cortez D. Brown, Deontae Tate, Jeremy S. Melton, Issacca Powell, Keith Burgess, Travis Boyd, and Terrence Drain, on behalf themselves and all similarly situated persons (hereinafter "the Plaintiffs"), by and through the undersigned counsel, and in response to the Motion to Dismiss Third Amended and Consolidated Class Action Complaint (hereinafter "Motion to Dismiss" or "Motion") filed by Defendant Tyler Technologies, Inc. (hereinafter "Tyler") state as follows:

## I.   SUMMARY

In this, Tyler's third Motion to Dismiss, Defendant Tyler fails to demonstrate that it is entitled to dismissal of Plaintiffs' claims and, in doing so, wrongly ignores Plaintiffs' allegations, which must be assumed to be true and this stage, instead emphasizing Plaintiffs' alleged failure to grasp the nuanced technical details of Tyler's involvement in Shelby County's Integrated Criminal Justice Information System ("iCJIS"). The central thrust of Tyler's argument is that despite their _numerous_ efforts to educate Plaintiffs' through their previous Motions to Dismiss, Plaintiffs simply fail to grasp that Tyler only installed software for the Criminal Court Clerk's office, _not the jail_.

Unfortunately for Tyler - though Plaintiffs and their counsel cannot claim a mastery of the technical details of Tyler's malfunctioning Odyssey software (in significant part due to Tyler's eighteen-month delay in responding to even rudimentary discovery) - Tyler's failure to grasp the nuances of Fed. R. Civ. P. 12(b)(6) is of greater import at this stage of the pleadings. Rule 12(b)(6) does not permit a movant to re-write the allegations of the complaint in their favor as Tyler has attempted to do in its Motion. Plaintiffs have alleged that it is Tyler's software that has malfunctioned causing the over-detentions, regardless of which county entity owns the computers on which it is installed. Tyler attempts to apportion blame to unnamed third-parties,

but it 1) has not filed an answer alleging comparative fault against these third-parties; 2) has not identified these unnamed tortfeasors in its Rule 26(a) disclosures; and 3) has failed to identify them in response to any other discovery. Tyler cannot, at this stage of the proceedings, rely upon the undefined acts of unnamed third parties as a defense.

Finally, Tyler's Motion, now for the third time, raises the spurious argument that because Plaintiffs seek to be compensated in money damages that their losses must be economic in nature and thereby barred by the Economic Loss doctrine since they lack contractual privity with Plaintiffs. This is an inaccurate characterization of the Economic Loss doctrine and evinces a deeply flawed understanding of the American legal system, where non-economic losses are compensated, as best they can be, with money. No one could possibly doubt that if the County hired a contractor to build a building and they negligently dropped a brick onto a passerby that two things would be true: the passerby would sue for money damages, and the negligent contractor would be responsible. In the end, Tyler's Motion to Dismiss must fail because Plaintiffs have thoroughly pled facts that must be accepted as true at this stage of the proceedings. Assuming Plaintiffs' well-pled facts to be true, Plaintiffs have adequately stated a claim for negligence against Tyler that resulted in the prolonged and unlawful detention of the named Plaintiffs and hundreds or thousands of their fellow citizens, citizens whose tax dollars paid Tyler for its negligent work. Tyler's Motion should be denied in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 2016, following a lengthy period of unlawful detention in the Shelby County Jail, Plaintiff Issacca Powell brought a "Class Action Complaint for Civil Rights Violations" against Sheriff Bill Oldham alleging systematic abuses of the civil rights of pre-trial detainees. On January 9, 2017, Plaintiffs Cortez D. Brown, Deontae Tate and Jeremy Melton

filed a companion "Class Action Complaint for Violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Tennessee Common Law," alleging causes of action against Sheriff Bill Oldham, Jail Director Robert Moore, Assistant Chief of Jail Security Charlene McGhee, Assistant Chief of Jail Programs Debra Hammons, and Tyler. This Court consolidated these cases on March 9, 2017, and Plaintiffs filed an "Amended Consolidated Class Action Complaint" on March 24, 2017. Defendants responded by filing dispositive motions. Plaintiffs filed a "Second Amended Consolidated Class Action Complaint" on May 4, 2017. On October 31, 2017, Melvin Ingram and thirty (30) additional plaintiffs filed a third competing putative class action complaint. This Court consolidated the cases and appointed interim lead counsel. (Dkt. 89; Dkt. 101). On July 30, 2018, Plaintiffs filed the now-operative Third Amended Consolidated Class Action Complaint. Defendant Tyler has filed the instant "Motion to Dismiss."

The allegations relating to Shelby County, Tennessee and its officials are not in issue in Tyler's Motion to Dismiss and are not addressed here. The Third Amended Consolidated Class Action Complaint sets forth the following factual allegations as it relates to Tyler:

1. [I] n October 2016, in an effort to replace the JSSi so that more government agencies could receive criminal information, the County rolled out a new Computer Tracking System which it denominated as "the Shelby County Integrated Criminal Justice System (iCJIS) Roadmap." (3rd Amend. Class Action Compl. at ¶ 22.) At the heart of this new Computer Tracking System is a software platform created, marketed and implemented for the County by Defendant Tyler Tech known as "Odyssey." (*Id*. at ¶ 23.)

2. In 2011, Ector County of Odessa, Texas experienced data loss and other significant problems with Odyssey; in fact, these problems were so significant that it withheld

payment from Defendant Tyler Tech. In 2011, Merced County California experienced a breakdown in communications between the criminal court and the jail which were caused by Odyssey. Likewise, in 2014, Cameron County Texas also experienced significant problems with its tracking of inmates caused by Odyssey. (*Id*. at ¶ 35.)

3. [E]arlier this year, Alameda County, California's Odyssey caused havoc with its criminal justice system. (*Id*. at ¶ 36.)

4. Defendant Tyler Tech knew or should have known that Odyssey was not a good fit for the County's needs. Specifically, upon information and belief, Defendant Tyler Tech's Odyssey is a platform that, in order to be successful, must be perfectly compatible with the other aspects of the government entity's system. (*Id*. at ¶ 37.)

5. Instead of altering Odyssey to conform to the government entity's system, Defendant Tyler Tech attempted to "shoehorn" the government entity's system to Odyssey in order to "make it fit." Defendant Tyler Tech did so in order to save money that would require significant custom changes to Odyssey. It is this "one size fits all approach" that caused the massive and disturbing problems with the County and the Jail as described below. (*Id*. at ¶ 38.)

6. On July 22, 2013, Defendant Tyler Tech and the County entered into a Contract (the "Contract") which was self-described as a "Contract … for Court Management System." The Contract denominated Defendant Tyler Tech as a "Provider" of software and case management systems, stating that "All Services by the PROVIDER will be performed in accordance with the generally accepted business practices and standards prevalent in PROVIDER'S industry" and that "PROVIDER certifies that it presently has adequate qualified personnel to perform all Services required under this Contract." (*Id*. at ¶ 39.)

5

7.  As a result, Defendant Tyler Tech was clearly engaged in the provision of services for which Tennessee's "economic loss doctrine" has no application. *See Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 922 (W.D. Tenn. 2010) (holding that the economic loss doctrine does not apply to the provision of services, stating that the "Tennessee Court of Appeals has since implicitly restricted the economic loss doctrine to claims involving products liability or the sale of goods"); *Tan v. Wilbur Smith Assoc.*, Case No. 2:09-cv-25, 2011 U.S. Dist. LEXIS 86433 (E.D. Tenn. Aug. 4, 2011)("the Court agrees that the economic loss rule is applicable to the sale of goods, but does not extend equally to contracts for the provision of services. Therefore, the rule is inapplicable to the instant case, which concerns a contract for services"); *N5ZX Aviation, Inc. v. Bell*, NO. 3-11-0674, 2011 U.S. Dist. LEXIS 131256 at *11 (M.D. Tenn. Nov. 14, 2011) ("Although the Tennessee Supreme Court has said that the Economic Loss Doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property, federal courts applying Tennessee law have declined to extend the Economic Loss Doctrine beyond cases involving the sale of goods. Thus, the Economic Loss Doctrine does not bar claims based upon breach of warranties, negligent misrepresentation, fraud, conversion, fraud in the inducement, or claims under the TCPA")(citations omitted). (*Id.* at ¶ 40-41.)

8.  Defendant Tyler Tech did not simply undertake to install the Odyssey software and then call it a day. To the contrary, Defendant Tyler Tech duties undertook the successful integration of Odyssey in connection with the replacement of the County's entire Computer Tracking System, as the Contract expressly stated:

> This Statement of Work covers the replacement of the Shelby County's in-house developed Court Case Management System,

6

> JSS. In conjunction with the replacement of JSS, Shelby County
> will also be replacing JMS – its current Jail Management System
> used by the Jail and IMS – the current Inmate Management System
> used by the Correction Center. The current JMS/IMS/JSS systems
> are tightly integrated with a custom written interface. … These
> systems will be so integrated that a single system will not be able
> to go live without data exchanges in place from other iCJIS
> systems.

(*Id*. at ¶ 42.)

9. Thus, Defendant Tyler Tech knew that the successful integration of Odyssey was
   essential for the full Computer Tracking System to be operational so that, among other
   things, inmates would not become "lost" in the Shelby County Jail and that their booking
   numbers, charges, bonds and other information would appear at all stages of their
   incarnations in the Computer Tracking System. (*Id*. at ¶ 43.)

10. The Contract's Statement of Work further contained a section titled "Phase 3 – System
    Testing," which stated, in pertinent part, "Special attention should be given to this
    activity. Best practice traditionally has been to treat this activity as a mock go live,
    simulating the upcoming milestone go live event." (*Id*. at ¶ 44.)

11. The Contract's Statement of Work also stated: "The goal for end user acceptance testing
    is a full end to end test cycle. This testing will verify that all aspects of the project . . . are
    working seamlessly." Appendix A to this scope of work is a "Project Schedule" which
    shows this "User Acceptance Testing" as a step to be completed before even training
    begins. In effect, under the Contract, the County and Defendant Tyler Tech should have
    fully tested the Odyssey System prior to switching away from JSSi to iCJIS. (*Id*. at ¶ 45.)

12. Defendant Tyler further undertook the duties of training and supervising the County's
    employees with respect to Odyssey and its functionality with the iCJIS system.
    Defendant Tyler failed to properly train and supervise these employees. (*Id*. at ¶ 46.)

13. Defendant Tyler Tech did not properly integrate Odyssey with the Computer Tracking System and did not properly train County employees so that the Computer Tracking System would work properly, thus causing the wrongful conduct alleged herein. Further, Defendant Tyler Tech failed to properly test Odyssey before the County went [live]. (*Id.* at ¶ 47.)

14. The nine named Plaintiffs then go on to allege that they suffered specific, cognizable deprivations of liberty. (*Id.* at ¶61-100.)

15. Defendant Tyler Tech had a duty train and supervise its own employees and undertook a duty to train and supervise the County's employees in connection with the integration and operation of the Odyssey Case Management System, so as to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored. *Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2007)("Tennessee law recognizes an exception to the economic loss doctrine: despite the absence of privity, a plaintiff may maintain an action for purely economic loss based upon negligent supervision or negligent misrepresentation") (*Id.* at ¶ 134.)

16. As alleged above, Defendant Tyler Tech failed to properly train and supervise these employees, thus proximately causing the wrongful dentitions alleged herein. (*Id.* at ¶ 135.)

17. As a direct and proximate result of the negligent supervision of Defendant Tyler Tech, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Defendant Tyler Tech. (*Id.* at ¶ 136.)

### III.   LAW AND ARGUMENT

**A.   The *Twombly/Iqbal* Standard**

Tyler's Motion to Dismiss is deeply flawed and cites no legal basis for dismissal. In fact, Tyler's Motion is not even properly viewed as a Motion to Dismiss as it cites four full pages of alternative factual argument rather than limiting its scope to the allegations contained in the Third Amended Complaint. Tyler relies on *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  An examination of the *Twombly* opinion is essential to a correct ruling on the pending motion.  The *Twombly* opinion recites a set of rules to be applied when considering a motion to dismiss:

1.   Factual allegations must be enough to raise a right to relief above the speculative level; and

2.   The pleading must contain "something more than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556.

Following *Twombly*, the Supreme Court issued its opinion in *Ashcroft v. Iqbal*, 556 U.S. 662 in 2009.  Relying on *Twombly*, *Iqbal* holds that "The pleading standard Rule 8 announces does not require 'detailed factual allegations' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 677.  *Iqbal* requires a plaintiff to "state a claim to relief that is plausible on its face." *Id.* at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The Court "must construe the complaint

9

in the light most favorable to the plaintiff, **accept all of the complaint's factual allegations as true**, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008) (*citing Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006) (internal quotation marks omitted)(emphasis added).

**B.     Plaintiffs' Complaint Satisfies the *Twombly/Iqbal* Standard.**

Tyler's Motion is wholly predicated on the false premise that, when examining a motion under Fed. R. Civ. P. 12(b)(6), the Court should both reject the factual allegations of the complaint and accept unverified factual allegations set forth in such a motion. Tyler states in its Motion that "these allegations are premised on incorrect information regarding Tyler's role in iCJIS." It then goes on to state that "it appears that Plaintiffs are unable to provide more specific details regarding the role the Odyssey software plays, as compared with the other portions of the iCJIS system" and argues for dismissal under Fed. R. Civ. P. 12(b)(6) because it alleges that the Third Amended Complaint is "based on an incorrect factual premise." (Defs.' Mem. In Supp. of Mot. to Dismiss, Aug. 20, 2018, Dkt. 105-1 p. 10).  Tyler's argument is therefore deeply flawed because it does not "accept all of the complaint's factual allegations as true." *Jelovsek*, 545 F.3d at 434.

Throughout its Motion, Tyler attempts to avoid the necessity of pleading comparative fault allegations in an answer by alleging that other, heretofore unnamed parties are responsible for negligence that Plaintiffs have attributed to Tyler. Fed. R. Civ. P. 8(c) requires that "a party must affirmatively state any avoidance or affirmative defense." Pleading the affirmative defense of comparative fault without actually filing an answer is the central thrust of Tyler's Motion. Tyler's motion denies that Tyler is responsible for the specific acts and omissions cited by

10

Plaintiffs, but, by failing to name the specific parties that Tyler claims are responsible, Tyler seeks to avoid liability without placing Plaintiff on notice of these alleged tortfeasors. While Tyler attempts to accomplish this by asserting that Tyler's contract with Shelby County is incorporated by reference, it does not seek to merely address allegations about the content of the contract. Instead, Tyler attempts to allege that the contractual provisions were carried out as written with no modifications. (Defs.' Memo. in Supp. of Mot. to Dismiss, Aug. 20, 2018, Dkt. 105-1 p. 8-9). In fact, Plaintiffs allege that Tyler did not conform to the scope of work in the contract. (Third Amd. Compl., Dkt. 103, ¶¶ 40-51.) For purposes of this Motion, the facts as alleged in the complaint must be taken as true, and Tyler cannot add to or take away from them. Jelovsek 545 F.3d at 434. Accordingly, Tyler's reliance on its contract in support of its Motion to Dismiss is misplaced and fails to demonstrate that Tyler is entitled to dismissal of Plaintiffs' claims.

**C.     Plaintiff Has Adequately Pled General Negligence.**

Tyler accurately sets out the standard for establishing a *prima facie* case of negligence under Tennessee Law. "In order to establish a prima facie claim of negligence ... a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (*quoting McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)); *see also Yarnell v. Transamerica Life Ins. Co.*, 694 F. Supp. 2d 849, 853 (E.D. Tenn. 2010).

Plaintiffs have satisfied this analysis. Importantly, nowhere in Tyler's Motion does Tyler dispute that it owed a duty of care. Tyler asserts only that Plaintiffs failed to plausibly plead

causation and proximate cause. (Defs.' Memo. in Supp. of Mot. to Dismiss, Aug. 20, 2018, Dkt. 105-1 pp. 10). Plaintiffs have alleged that Tyler's acts and omissions were both the cause in fact and proximate cause of Plaintiffs' liberty deprivations. (*See* Third Amended Complaint at ¶s 129- 132).

Further, Plaintiffs allegations directed to Tyler at ¶¶ 40-47 clearly satisfy the requisite pleading standard. Specifically, Plaintiffs allege that Tyler failed to conduct testing, failed to simulate a "go live" event, failed to supervise and train the County's employees, failed to verify that "all aspects of the project . . . are working seamlessly," as set forth in the contract, that Tyler "attempted to 'shoehorn' the government entity's system to Odyssey in order to 'make it fit,'" and that Tyler did so in order to save money by avoiding necessary custom changes. (*Id*. at ¶ 38.) Plaintiffs went on to Plead that "It is this 'one size fits all approach' that caused the massive and disturbing problems with the County and the Jail as described below." (*Id*.)

Plaintiffs additionally alleged at Paragraph 134 of the Third Amended Consolidated Class Action Complaint:

> Defendant Tyler Tech had a duty train and supervise its own employees and undertook a duty to train and supervise the County's employees in connection with the integration and operation of the Odyssey Case Management System, so as to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored.

Then, at Paragraph 135 Plaintiffs alleged "Defendant Tyler Tech failed to properly train and supervise these employees, thus proximately causing the wrongful detentions alleged herein."

Tyler attempts to attack the claims of certain specific Plaintiffs individually, again attempting to alter or inject new factual material each time. (*See e.g*., Def. Memo. in Support of Mot. to Dismiss at pp. 9 & 10)("Tyler's Odyssey software, however, was not developed or installed at the Jail" – contradicting Plaintiff's allegations at ¶ 137 of Third Amended Complaint)

& ("Plaintiffs incorrectly characterize Odyssey as the 'heart" of iCJIS' " – challenging Plaintiffs' allegations at ¶ 23 of Third Amended Complaint). Tyler's efforts to characterize Plaintiffs' allegations as incorrect cannot serve as a basis to defeat Plaintiffs' Complaint at the pleading stage.

Regarding Plaintiffs Brown and Melton, Tyler insists that because Plaintiffs were detained at the jail after a judge ordered their release that Odyssey could not possibly be responsible. The Court, Plaintiffs assert, can take judicial notice of the fact that what happens in courtrooms must typically be communicated to the jail in order to effectuate release of detainees. Communicating this information is Odyssey's very purpose. To suggest that Plaintiffs have not plausibly placed the blame on Tyler under these circumstances is absurd.

With regard to Plaintiffs Turnage, Powell, Burgess, Boyd and Drain, Tyler demands that this Court accept that "these issues stemmed from data entry errors or occurred in the Jail software or at the Info Hub." This is not a motion for summary judgment, and these facts are reflected nowhere in <u>any pleading</u>. Tyler's insistence that this Court consider facts not pled in the Third Amended Complaint or that the Court draw esoteric technical conclusions simply "because they say so" is inconsistent with the pleading standard of Rule 8 and the construction standards of Rule 12(b)(6).

With regard to Plaintiff Turnage, Tyler again demands that this Court consider additional facts not pled, and denies responsibility for attachments pro corpus simply because they originate in civil court. Again, while hypothetically this may turn out to be a valid defense as to Plaintiff Turnage, Tyler must raise this type of defense in an answer, not a Motion to Dismiss.

With regard to Plaintiff Allen, Tyler continues to deny any responsibility for information appearing in the "jail system" because it is not Tyler's Odyssey system, again totally ignoring the

fact that Tyler's Odyssey system is the system into which judicial officers, through their clerks, would introduce information into the whole of the iCJIS, for example: her bond or a finding of probable cause. Further, Tyler ignores that the Plaintiffs, in this and all of their previous Consolidated Complaints, have pointed the finger of responsibility squarely upon Tyler. If Tyler desires to blame another vendor who assisted in building iCJIS or the County itself, then Tyler must do that by pleading the affirmative defense of comparative fault. The very purpose of this process of pleading is to place the Plaintiffs and Court on notice of other potential tortfeasors so that they may be made parties. For over eighteen months, Tyler has insisted that the failure to protect Plaintiffs civil rights was the responsibility of some other party, and they have <u>refused</u> to identify those parties either through discovery or by simply answering the Complaint, instead wasting Plaintiffs' and this Court's time with motions to dismiss that are devoid of merit.

Overall, Tyler insists that Plaintiffs' allegations fail because Plaintiffs are purportedly required to plead highly technical elaborations on the precise failures within and between the iCJIS and Odyssey systems in order to make a *prima facie* case for negligence. The *Twombly/Iqbal* standard makes no such demand, and the allegations set forth in the preceding paragraphs certainly rise above the basic standard of plausibility and are not merely conclusory. Tyler attempts to increase the pleading standard of Fed. R. Civ. P. 8 to the level of "detailed factual allegations" expressly declined in *Iqbal*. As a practical matter, imposing the requirement of pleading technical details in advance of substantive discovery places an impossible burden on Plaintiffs. In the case at bar, Plaintiffs have maximized the amount of information that can be gleaned from public records. They were not involved in this contracting process or implementation. They are bystanders to the failed implementation of a technically flawed system that directly and proximately caused them to be deprived of liberty for days, weeks and, in at

least one case, nearly a month. This Court should adhere to the plausibility standard and reject Tyler's assertion as imposing an unreasonable level of scrutiny on claims made by any plaintiff.

**D.      Plaintiffs have Adequately Pled Negligent Training and Supervision.**

Tyler asserts that Plaintiffs have insufficiently pled their negligent training and supervision claims. As set forth above, Plaintiffs have adequately pled the negligence aspects of the case. In addition to these elements, Tyler asserts that Tennessee common law requires that Plaintiffs plead "that the employer had knowledge of the employee's unfitness for the job." This standard is partially accurate but materially incomplete. In fact, the complete standard provides that an employer "knew *or should have known*" of the unfitness for the job. *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. App. Ct. 2008) (*citing Phipps v. Walker*, 1996 Tenn. App. LEXIS 210 * (Tenn. Ct. App. Apr. 4, 1996) (emphasis added). The distinction is critical here. Plaintiff has pled that "Defendant Tyler further undertook the duties of training and supervising the County's employees with respect to Odyssey and its functionality with the iCJIS system. Defendant Tyler failed to properly train and supervise these employees." (3rd Amd. Compl., Dkt. 103, ¶ 46.) This is spelled out in detail in the contract between Shelby County and Tyler. (Id., Exh. 1.) Plaintiffs also set forth that Tyler failed to properly test the system as set forth in its contract. (Id., ¶¶ 39-51.) Had Tyler conducted the end-to-end testing set forth in their contract, they *would* have known that the County employees were improperly trained to operate the iCJIS system and Odyssey. Thus, Tyler's entire argument boils down to a "see no evil" sort of willful ignorance. Plaintiffs have met their burden of pleading facts sufficient to state a claim under the *Twombly/Iqbal* standard by pleading that the County's employees were not adequately trained and that Tyler failed to test them and the system to learn of such inadequate training.

**E.      Plaintiffs Have Alleged Claims Against Tyler Specifically.**

Tyler asserts that Plaintiffs decision to make allegations that apply to all Defendants is impermissible and cites *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669 (6th Cir. 2011) for this claim. This case is simply inapposite. *Bondex* addressed an insurance coverage question in which plaintiffs had never pled any theory of contractual liability against an insurer, failed to address it in pleadings, and were specifically found to have waived the issue at trial. The plaintiff's counsel, in oral argument, suggested that their claims against "all defendants" preserved the unraised claim. *Bondex*, 667 F.3d at 681. The *Bondex* Court rejected this theory. Id. Tyler's citation to *Bondex* is strikingly misleading. Tyler implies that *Bondex* even involved "pleadings," when, in fact, *Bondex* is addressed to general statements made in oral argument regarding an abandoned claim. Other than this mis-application of *Bondex*, Tyler's sole case citations are to *Twombly* and *Iqbal* for the general principles of law set forth above. (Defs.' Mem. In Supp. of Mot. to Dismiss, August 20, 2018, Dkt. 105-1 p. 13.)

With regard to the factual allegations themselves, Plaintiffs have made specific allegations about Tyler's conduct as set forth above. Where Plaintiffs have used the generic term "Defendants," it is because Plaintiffs are either making statements that apply equally to all Defendants or Plaintiffs are making statements that could apply to any or all Defendants and such specific knowledge could only be ascertainable to Plaintiffs following substantive discovery. Tyler has set forth specific paragraphs in which Plaintiffs have used the term "Defendants," and Plaintiffs address each in turn as follows:

¶ 1 is a general statement summarizing the nature of the action. This paragraph has no direct bearing on any cause of action directed at Tyler.

¶ 26 provides an example of actions taken by the Defendants and the detrimental results

16

thereof. This paragraph has no direct bearing on any cause of action directed at Tyler.

¶ 27 provides an example of actions taken by the Defendants and the detrimental results thereof. This paragraph has no direct bearing on any cause of action directed at Tyler.

¶ 31 refers to the deliberate indifference of the County officials. These allegations are made against all Defendants, and Plaintiffs certainly allege that Tyler was involved in the decision-making process, but the paragraph is clearly directed predominantly toward "the officials responsible for establishing [a] policy," not Tyler.

¶ 50 sets forth that the "Defendants, individually or collectively, made the determination to defer implementation of the Odyssey System just a few months prior because they knew it was not ready." While Plaintiffs know this occurred, at this juncture, Plaintiffs cannot distinguish between Tyler's involvement and that of the other Defendants.

¶ 51 likewise relates to a County decision with which Tyler was apparently involved. Plaintiffs cannot, without discovery, possibly know the extent of Tyler's involvement or whether Tyler's advice to the County was reasonable or negligent.

¶ 57 refers to "one or more Defendants." This paragraph relates to the knowledge of County policymakers and would only relate to Tyler's liability if Tyler proves to have given negligent advice.

¶ 60 is, again, clearly directed predominantly toward "the officials responsible for establishing [a] policy," not Tyler. It specifically references the individual Defendants in the constitutional claims.

¶ 77 only states that events occurred after "the County and all Defendants were on notice of Odyssey's failures." The allegation merely relates to when something occurred.

¶ 79 refers to "Defendants . . . allow[ing] Plaintiff Tate to post bond. . . ." This paragraph

relates to the deprivation of liberty as to Plaintiff Tate. Clearly, Plaintiff Tate is alleging that County employees and officials in terms of accepting the bond. To the extent that Tyler's negligence caused delay, Tyler may be implicated in this decision, but Plaintiff Tate plainly places the burden of protecting his civil liberties squarely on the shoulders of the officials charged with ensuring the protection of his civil liberties.

¶ 120 states on its face that it is directed against "Defendants Oldham, Moore, McGhee and Hammons." The use of the term "Defendants" standing alone is, again, a reference to a timeline. Specifically, it states that an event occurred after "Defendants became aware of the defects in the Computer Tracking System."

Tyler's entire argument that any claim directed against it should be dismissed because Plaintiffs periodically refer to all the Defendants in the complaint is a red herring without either basis in the allegations of the complaint or in law. None of the referenced paragraphs even have significant bearing on the claims raised against Tyler, but to the extent that they do it is because Plaintiffs cannot be specific in the attribution of some conduct absent discovery. Tyler's argument is that the use of the term "Defendants" is *per se* disqualifying for a factual allegation. Tyler then asks that this Court dismiss properly pled claims that stand alone due to the use of this term in other parts of the pleading. Tyler seeks to fabricate a non-existent rule of law from whole cloth and then misapply it. Tyler's argument is devoid of merit and its request for dismissal on this basis should be denied.

**F.      The Economic Loss Doctrine has No Application to Plaintiffs' Claims.**

As a final effort to avoid responsibility to the potentially thousands of individuals that Tyler has harmed through its negligence, Tyler invokes the Economic Loss Doctrine. Tyler cites, *inter alia*, the leading case on the economic loss doctrine as applied in Tennessee, *Lincoln Gen.*

*Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487 (Tenn. 2009), which accurately summarizes the state of Tennessee common law on the issue. As above with regard to Tyler's citation to the *Bondex* case, Tyler seriously mischaracterizes *Detroit Diesel*. Tyler has gratuitously used the term "Economic Loss Doctrine" as though any damages that would be compensated at law with a judgment for money damages qualify as "economic loss." Such an interpretation misses the mark rather widely. In *Detroit Diesel*, the Federal Court for the Middle District of Tennessee certified a question of law to the Tennessee Supreme Court regarding an exception to the Economic Loss Doctrine. Justice Holder, writing for a unanimous court, stated as follows with regard to the application of the Economic Loss Doctrine:

> The economic loss doctrine is implicated in products liability cases when a defective product *damages itself without causing personal injury or damage to other property*. In this context, "economic loss" is defined generally as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Two types of economic loss, direct and consequential, occur when a defective product is damaged. Direct economic loss may be measured by the defective product's cost of repair or replacement. Consequential economic losses, such as lost profits, result from the product owner's inability to use the product.

*Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009).

(emphasis added) (citations omitted). Each and every other case cited for the application of the Economic Loss Doctrine in Tyler's Motion to Dismiss addresses the same situation, <u>damages to the product itself</u>. Plaintiffs do not allege that they purchased or leased a product of any nature that caused them harm. Similarly, Plaintiffs do not allege – and Tyler does not argue – that Plaintiffs are in privity of contract with any entity to whom Plaintiffs must look in order to recover economic damages, which is the very basis of the Economic Loss Doctrine. Tyler further confuses the Economic Loss Doctrine by citing cases that have no bearing or relationship to the Economic Loss Doctrine, conflating multiple rules of law.

Tyler cites *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). In *Robins*, the "Economic Loss Doctrine" is not even mentioned, having not yet been established as a rule of law. Still, Tyler cites this case for the "origins" of the Economic Loss Doctrine. In *Robins Dry Dock*, the question was whether a duty of care arose to a third party where defendant was negligent *and the defendant had no knowledge that the injured person was under a contract with the plaintiff. Robins*, 275 U.S. at 309 (emphasis added). Here, the Plaintiffs are not merely harmed by pecuniary disadvantage stemming from a breached contract. They were detained unlawfully, sometimes without probable cause, sometimes without recourse to bail, and sometimes to catastrophic effect. Further, Tyler did not merely know of the impact of its actions on the Plaintiffs and the putative classes, they were intimately involved in a competitive bidding process for the right to take on the profound responsibility of providing technical systems adequate to protect the civil liberties of Plaintiffs and the unnamed class members who had no ability to bargain with anyone, mere victims of Tyler's negligence in carrying out their legal and moral duty.

Tyler then moves on to another case that does not address itself to the Economic Loss Doctrine, *Lear Siegler*. In *Lear Siegler*, the Tennessee Supreme Court addressed itself again to purely economic loss stemming from negligence, holding:

> [N]egligence harm to economic advantage alone is too remote for recovery under a negligence theory. *The reason a plaintiff cannot recover stems from the fact that the negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest.*

*United Textile Workers, etc. v. Lear Siegler Seating Corp.*, 825 S.W.2d 83, 85-86 (Tenn. Ct. App. 1990) (emphasis added). Again, two critical elements of this rule are absent in this case. First, the harm to Plaintiffs and their fellow putative class members is the serious deprivation of a liberty interest, which is a non-economic damage. The fact that this is not an "economic loss"

is made apparent by the availability of the writ of habeas corpus for unlawful detention, a remedy so critical to our scheme of liberty that it is enshrined in our Constitution. ("The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." U.S. Const. Art. I, § 9, cl. 2.). No reasonable person can argue that the unlawful detention of another human being in a county jail is generally equivalent to the opportunity loss of a day's wages any more than one could argue that incarceration in prison is tantamount to a fine.[1]

Tyler continues to compound this inaccurate argument by ignoring that the very purpose of the rule as set out in *Lear Siegler* is that "the negligent actor . . . has no reason to foresee any harm to the plaintiff's interest." However, Tyler does not contend it owed no duty of care to Plaintiffs. Moreover, Tyler bid competitively for the right to take on the responsibility of providing the systems adequate to protect the right of Plaintiffs and their fellow class members to be free from unlawful detention along with the protection of other critical civil liberties. For them to now claim that they could not have foreseen such claims arising from their negligence is meritless.

Finally, this Court has previously determined that a loss of liberty is an independent component of damages, not a lost economic opportunity. In *Rhodes v. Lauderdale County*, 2012 U.S. Dist. LEXIS 135922 (W.D. Tenn. 2012), following a bench trial, this Court awarded two plaintiffs who were unlawfully detained "an assessment of damages in compensation for Plaintiffs' loss of liberty" in an amount of $2,000 per hour of incarceration.[2] *Rhodes*, 2012 U.S.

---

[1] Plaintiffs conjecture that Tyler's executives would not stipulate that when found liable they would pay their damages by being incarcerated at the Shelby County Jail until their loss of income equaled the many millions in damages due to the Putative Class.

[2] Tyler attempts to distinguish *Rhodes* by noting that the cause of action in that case was 42 U.S.C. § 1983 rather than negligence. In calculating damages in *Rhodes*, this Court compensated the "loss of liberty" specifically. Here, Tyler's negligence resulted in just such a loss of liberty.

Dist. LEXIS at *33. The *Rhodes* Court separately compensated the plaintiffs for lost wages, lost vacation days, and emotional suffering over and above the damages awarded for loss of liberty. *Id.* at 31-34. Plaintiffs have squarely based their claims for loss of liberty on this Court's ruling in *Rhodes*. This Court should follow its own precedent and reject Tyler's argument that reduces human liberty to mere economic opportunity.

Lastly, as Tyler acknowledges, the Western District of Tennessee has expressly ruled that the Economic Loss Doctrine does not apply to services. *See Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 922-23 (W.D. Tenn. 2010). As a result, Tyler's argument clearly fails.

### III.    Conclusion

This Court should reject Tyler's characterization of the facts of this case and accept all of the allegations set forth in Plaintiffs' Third Amended Class Action Complaint as true, find that Plaintiffs have sufficiently pled their claims against Tyler, reject Tyler's callous characterization of Plaintiffs' damages as mere "economic loss," and deny Tyler's Motion to Dismiss in its entirety.

Respectfully submitted,

/s/*Frank L. Watson, III*
Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38104
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

Michael G. McLaren (#5100)
William E. Cochran, Jr. (#21428)
Brice M. Timmons (#29582)
BLACK MCLAREN JONES RYLAND & GRIFFEE PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117
(901) 762-0535 (Office)
(901) 762-0539 ( Fax)
wcochran@blackmclaw.com


*Interim Class Counsel for Plaintiffs and the putative
Class Members*

**<u>CERTIFICATE OF SERVICE</u>**

   I, the undersigned, do hereby certify that on September 12, 2017 the foregoing was served via U.S. Mail postage pre-paid and/or by email upon the following parties:


Robert E. Craddock, Esq.
Odell Horton, Jr., Esq.
Amber D. Floyd, Esq.
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
 Memphis, Tennessee 38120
(901) 537-1000
Email: rcraddock@wyattfirm.com
Email: ohorton@wyattfirm.com
Email: afloyd@wyattfirm.com

Emmett Lee Whitwell, Esq.
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Suite 950
Memphis, TN 38103
(901)222-2100
Email: lee.whitwell@shelbycountytn.gov

*Counsel for Defendants Bill Oldham,*
*Robert Moore, Charlene McGhee,*
*Debra Hammons and Shelby County,*
*Tennessee*

Bradley E. Trammell, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
(901) 577-2121
Email: btrammell@bakerdonelson.com

Beth Bivans Petronio, Esq.
K&L GATES, LLP
1717 Main Street
Suite 2800
Dallas, Texas 75201
9214) 939-5815
Email: beth.petronio@klgates.com

*Counsel for Defendant Tyler Technologies,*
*Inc*


       /s/*Frank L. Watson, III*