# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT TURNAGE, CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, TERRENCE DRAIN, and KIMBERLY ALLEN on behalf of themselves and all similarly situated persons, | § § § § § § § § § | |
| Plaintiffs, | § § | Case No. 2:16-cv-02907-SHM/tmp |
| | § | Consolidated With |
| v. | § | Case No.:  2:17-cv-02015-JTF/dkv |
| | § | And Consolidated With |
| | § | Case No. 2:17-cv-02795-SMH/tmp |
| BILL OLDHAM, in his individual capacity and in his official capacity as the Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity and in his official capacity as the Jail Director of the Shelby County, Tennessee; CHARLENE McGHEE, in her individual capacity and in her official capacity as the of Assistant Chief Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity and in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; and TYLER TECHNOLOGIES, INC., a foreign corporation, | § § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

## DEFENDANT TYLER TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT

## I.     INTRODUCTION

Plaintiffs' Response[1] recognizes that "an unadorned, the-defendant-unlawfully-harmed-me accusation" cannot withstand a motion to dismiss.[2]  Plaintiffs' allegations here are precisely that—Tyler had a role in Shelby County's new iCJIS system, so it must be to blame for Plaintiffs' allegedly unlawful detentions.  Plaintiffs continue to ignore the fact that Tyler did not provide the software for the Shelby County Jail or the software designed to integrate Tyler's court management system with the jail's own software.  Plaintiffs make no effort to establish either proximate cause or causation, still failing to identify any defect in the Odyssey software, how Tyler's negligence led to such defect, or how any such defect may have contributed to any specific unlawful detention.  Put simply, Plaintiffs have not made a single allegation that actually ties anything Tyler did to any harm Plaintiffs allegedly suffered.  Although "detailed factual allegations" are not required, it is not sufficient to base an allegation on the "sheer possibility that a defendant acted unlawfully."  *Iqbal*, 556 U.S. at 678.  All Plaintiffs could legitimately allege against Tyler is that Tyler's Odyssey system was implemented in the Shelby County criminal courts.  Anything else is mere speculation and unsupported conclusions that are contradicted by the record before the Court and insufficient to state a claim against Tyler.

## II.     ARGUMENT

### A.     The Court need not accept as true allegations that are contradicted by the evidence.

As noted in Tyler's Motion, Plaintiffs' Third Amended Complaint is based on the incorrect factual premise that Tyler had some involvement in the jail software system—it did not.  Tyler's involvement, which was limited to the criminal court management system, is

---

[1]     Plaintiffs' Response to Motion to Dismiss Filed by Defendant Tyler Technologies, Inc. and Memorandum in Support of Same (the "Response") (ECF No. 109).

[2]     Response at 9, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009).

established by the Contract and Statement of Work attached to the Motion.[3]   Instead of acknowledging this truth, Plaintiffs continue to ignore Tyler's limited role.   In fact, Plaintiffs suggest that Tyler's Motion is "deeply flawed" because it fails to accept all of the facts alleged in the Third Amended Complaint as true.[4]   The law is clear, however, that courts need not accept as true allegations that are directly contradicted by the relevant documents.   *Williams v. CitiMortgage, Inc.*, 498 Fed. Appx. 532, 536 (6th Cir. 2012) (finding that when a factual allegation is inconsistent with a document attached, the court should accept the facts as stated in the attached document); *see also Harper v. U.S. Attorney for Eastern Dist. of Tenn.*, 802 F.2d 458 (table), 1986 WL 16081 (6th Cir. 1986) (affirming dismissal of action where exhibit attached to complaint was contrary to allegations in the complaint and defeated the claim for relief); *Consolidated Jewelers v. Standard Financial Corp.*, 325 F.2d 31, 36 (6th Cir. 1963) (upholding dismissal where pleadings were inconsistent with the clear and unambiguous language of the contract attached to the complaint as an exhibit); *Mengal Co. v. Nashville Paper Products and Specialty Workers Union, No. 513,* 221 F.2d 644, 647 (6th Cir. 1955) (where inconsistent with the allegations of the complaint, the exhibit, a collective bargaining contract, controlled).   Mere legal conclusions and factual allegations in the complaint that are contradicted by a document properly before the court on a motion to dismiss inherently "are not well-pleaded facts that the court must accept as true."   *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

---

[3]   Motion Exhibit 1 at 1, 21-22.
[4]   Response at 9.

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 2**

Thus, Plaintiffs' suggestion that "the facts as alleged in the complaint must be taken as true, and Tyler cannot add to or take away from them" is plainly wrong.[5]  As the Contract and Statement of Work establish, Tyler had no responsibility for the jail management system or the integration system between the criminal court management system and the jail.[6]  Once this basic fact is acknowledged, the flaws in Plaintiffs' allegations are obvious:  There is no basis to support the allegation—central to Plaintiffs' claims— that Tyler's Odyssey court management system had any role whatsoever in what occurred *at the jail*.  Plaintiffs' Response serves only to underscore Plaintiffs' lack of understanding regarding the limited role of Odyssey.  The Response states that it is "Tyler's software that has malfunctioned causes the over-detentions, *regardless of which county entity owns the computer on which it is installed*."[7]  That suggestion is astonishingly bold, encapsulating the strict liability standard Plaintiffs are hoping the Court will accept.  Tyler's Odyssey software is not installed on any computers other than those at the criminal court, and Tyler's software is not the "integration hub" responsible for connecting the other systems, including the jail software, that comprise the overall iCJIS system.  Like Plaintiffs' Third Amended Complaint and the three prior versions, Plaintiffs' assertion is based entirely on incorrect information, which cannot form the basis of a well-pleaded complaint.

Moreover, Plaintiffs' suggestion that Tyler is "[p]leading the affirmative defense of comparative fault without actually filing an answer" also misses the mark.[8]  Tyler's reliance on the terms of the Contract to establish its limited role in the iCJIS system is not an invocation of

---

[5]  Response at 11.

[6]  *See* Motion Exhibit 1 at 21-22 (describing Tyler's limited criminal courts role, as compared to that of other vendors in the iCJIS system).

[7]  Response at 2 (emphasis added).

[8]  Response at 10.

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 3**

the comparative fault defense at this stage of the litigation.[9]   Instead, the issue is Plaintiffs'

failure to adequately plead their negligence claim.   Plaintiffs' continued insistence on ignoring

the basic facts regarding the Contract highlights the fact that Plaintiffs' allegations are

conclusory and speculative.[10]   The fact that Plaintiffs are so far off base on this important aspect

of their allegations supports the conclusion that Plaintiffs have failed to meet even the most basic

pleading requirements of *Twombly* and *Iqbal*.

### B.      Plaintiffs Have Not Adequately Plead Negligence

Plaintiffs admit that causation and proximate cause are required elements of a negligence

claim under Tennessee law.[11]   Yet, Plaintiffs can point to no allegation against Tyler that would

establish either causation or proximate cause, instead complaining that Tyler is requiring "highly

technical elaborations on the precise failures with the iCJIS and Odyssey systems."[12]   That is not

Tyler's argument.

Instead, Tyler contends that Plaintiffs should be required to allege that Odyssey was the

cause of *something* that resulted in Plaintiffs' alleged wrongful detentions.   Plaintiffs have not

and cannot make such an allegation—they have instead taken a classic kitchen-sink approach in

---

[9]      Tyler is by no means waiving its right to answer and/or later assert comparative fault, if necessary.  And, despite Plaintiffs' implication to the contrary, Tyler has not unnecessarily or improperly delayed in invoking the doctrine of comparative fault.  Response at 14.  Tyler need not name additional parties for purposes of comparative fault unless and until it is required to file an Answer in this matter.  In any event, a brief review of the pleadings, including the lengthy dispute between the various plaintiffs' groups in this matter reveals that any delays in the case are not of Tyler's making.

[10]      Paragraph 8 of the Response (page 6), which repeats the allegations made in Paragraph 42 of the Third Amended Complaint, represents another good example of how Plaintiffs continue to rely on allegations that are contradicted by the Contract.  That paragraph alleges that Tyler "undertook the successful integration of Odyssey in connection with the replacement of the County's entire Computer Tracking System." Response at 7.  The paragraph then quotes from portions of the Contract, claiming those parts of the Contract "expressly" support that conclusion. *Id.* at 6. But, Plaintiffs use an ellipsis to remove that portion of the text that clarifies what role other vendors played in the iCJIS system and who those vendors were.  *Id.* at 7.  The full text of the Contract actually explains and confirms Tyler's limited role.  Motion Exhibit 1 at 21-22.

[11]      Response at 11.

[12]      Response at 14.

TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 4

an effort to create a claim.  In fact, in a stunning concession, Plaintiffs admit that they "cannot be specific in the attribution of some conduct" without discovery.[13]  Essentially, Plaintiffs have admitted that they cannot plead with specificity the required proximate causation.  Asserting claims with no basis, hoping to later get discovery to support them, is improper and cannot survive a motion to dismiss.  *See, e.g., New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (noting that it is well settled that a party cannot "use the discovery process to obtain [the facts it needs to support its claim] after filing suit."); *Holliday v. Wells Fargo Bank, NA*, 569 Fed. Appx. 366, 372 (6th Cir. 2014) (same).

Plaintiffs' Response points to four factual allegations that they contend help establish causation and proximate cause.  A review of those allegations, however, proves Tyler's point.

1.  <u>Tyler "failed to conduct testing" and to "verify that 'all aspects of the project are working'".</u>[14]  For the sake of argument, this allegation is assumed to be true.  Plaintiffs, however, have not and cannot allege that a failure to conduct testing on the Odyssey system resulted in any specific wrongful detention or other harm.[15]  At an even more basic level, there is no allegation that *any* problem with the Odyssey system resulted in harm to a Plaintiff.  This flaw warrants dismissal.

---

[13]   Response at 18.

[14]   Response at 12.

[15]   As previously noted, the Court need not take the allegations in the Third Amended Complaint as true if they are contradicted by the Contract. Here, Plaintiffs appear to have a fundamental misunderstanding of the system "testing" that Tyler was required to perform under the Contract.  Plaintiffs' Response suggests that "[h]ad Tyler conducted the end-to-end testing set forth in their contract, they would have known that the County employees were improperly trained to operate the iCJIS system and Odyssey." Response at 15.  The allegation has two fatal flaws. First, it easily demonstrates Plaintiffs conflation of the Odyssey system with the iCJIS system, as if they were synonymous.  They are not. Tyler had no responsibility to train anyone to "operate the iCJIS system." *See* Exhibit 1 at p. 36-37 (discussing the scope of Tyler's training responsibilities for the *Odyssey* system, which is just one component of the iCJIS system).  Second, the "end-to-end" system testing envisioned by the Contract is not a test of personnel or their aptitude on the system; it is a test of the Odyssey software functions. *See* Motion Exhibit 1 at 35-36.  In fact, the "end-to-end" testing Tyler performed, which Plaintiffs suggest would have revealed problems with the personnel training on Odyssey, actually occurred *prior* to when the personnel training on Odyssey was conducted. *See* Motion Exhibit 1 at p. 35-37 (detailing the end-to-end testing *of the Odyssey software* during Phase 3 and the training *of certain court personnel* in Phase 4 of the Contract).

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 5**

09/26/2018

501830792 v2

2.   Tyler "failed to simulate a 'go-live' event."[16]  Again, even assuming this is true (which Tyler does not concede), there is no allegation that a failure to simulate a "go-live" of the court management system (Odyssey) had any impact on anyone in the jail or the distinct software system used by the jail.

3.   Tyler "failed to supervise and train the County employees."[17]  As the Contract makes clear, Tyler had no responsibility to train the *jail personnel* on the *jail software*, and only limited responsibility to train the court personnel regarding Odyssey in the criminal courts.[18]  Moreover, nowhere in the Contract does it suggest that Tyler had any responsibility to "supervise" the court personnel.[19]  Nonetheless, Plaintiffs make the conclusory statement that Tyler failed to supervise and train.  Even if this conclusory statement were enough to establish the "conduct below the applicable standard of care" element of negligence (which it is not),[20] Plaintiffs make no allegation related to causation.  Plaintiffs have not and cannot allege how Tyler's allegedly failed training and/or supervision resulted in some cognizable harm to Plaintiffs.

4.   Tyler "attempted to 'shoehorn'" the County into accepting Odyssey in "order to save [Tyler] money."[21]  Even assuming the statement to be true,[22] there is no allegation of how Tyler's alleged "shoehorning" was the proximate cause of any harm to Plaintiffs.

Plaintiffs simply have not and cannot adequately plead allegations of causation or proximate cause.  Instead, Plaintiffs seem to be relying on some form of *res ipsa loquitur*.  That

---

[16]   Response at 12.

[17]   Response at 12.

[18]   Motion Exhibit 1 at 36-37.

[19]   *See generally* Motion Exhibit 1 and, specifically pp. 36-37 (describing the nature of training).

[20]   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Moreover, "[a]lthough for the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 555).

[21]   Response at 12.

[22]   Again, this allegation is wholly inconsistent with the Contract.  Custom modifications to Tyler software are billable to Tyler's clients.  The allegation that Tyler forced the County to accept Odyssey without modifications in order to "save money" makes no sense. *See, e.g.*, Exhibit 1 at 23 (noting that any changes to the current Odyssey system would be identified and priced during the initial stages of the project); at 28 (noting that modifications to the Odyssey system will have a "separate scope and estimate" and that Tyler will provide "a cost estimate" if additional integrations beyond the Contract are needed).

TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 6

term, which is Latin for "the thing that speaks for itself," is a doctrine of law where one is presumed to be negligent if they had exclusive control of whatever caused the injury even though there is no specific evidence of an act of negligence.[23]   That doctrine has no applicability to Plaintiffs' negligence claims against Tyler and cannot form the basis of a proper pleading.

### C.        The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim.

By suggesting that Tyler does not challenge whether it has a duty to Plaintiffs,[24] the Response fundamentally misunderstands the basic premise of Tyler's economic loss doctrine argument.  The economic loss doctrine negates the duty element of negligence and entirely bars recovery for Plaintiffs' asserted damages.  As noted in the Motion, the economic loss doctrine is "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss."  *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488 (Tenn. 2009).  The doctrine "prohibits the recovery of purely economic damages for negligence when the plaintiff lacks privity of contract with the defendant."  *John Martin Co. v. MorselDiesel, Inc.*, 819 S.W.3d 428, 430 (Tenn. 1991). Plaintiffs' negligence claim against Tyler confuses Tyler's potential contractual responsibilities owed to Shelby County with tort duties allegedly owed to Plaintiffs themselves.  This confusion is precisely the sort of conflation of contract and tort that the economic loss rule is tailored to prevent. *See Detroit Diesel*, 293 S.W.3d at 488.

Plaintiffs' characterization of *Detroit Diesel*, *Robins*, and other cases cited in Tyler's Motion to Dismiss is inapposite.  Attempting to distinguish its own claim from those subject to the economic loss rule, Plaintiffs cite an excerpt from *Detroit Diesel*:

---

[23]        *Black's Law Dictionary* (9th ed. 2009).
[24]        Response at 11, 21.

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 7**

> The economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property.  In this context, "economic loss" is defined generally as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold."

*Detroit Diesel*, 293 S.W.3d at 489.[25]  Plaintiffs suggest that such language thereby limits application of the economic loss doctrine to only products liability cases involving "damages to the product itself."[26]  The quoted language simply does not support this conclusion.  The *Detroit Diesel* court merely stated that the doctrine is "*implicated* in products liability cases when a defective product damages itself without causing personal injury or damage to other property." *Id*. at 488–89 (emphasis added).  At no point has the Tennessee Supreme Court, in *Detroit Diesel* or any other case, held that the doctrine is *solely* implicated in such limited circumstances.

In fact, numerous cases support the opposite conclusion.  First, the *Detroit Diesel* court expressed general approval for the economic loss doctrine and its underlying policies.  *Id*. Nothing about the underlying policy of "maintain[ing] separation between contract law and tort law" is exclusive to product liability cases.  *Id*.  Second, the Tennessee Court of Appeals has applied the economic loss doctrine outside the product liability context.  *See United Textile Workers v. Lear Siegler Seating Corp.*, 825 S.W.2d 83, 84 (Tenn. Ct. App. 1990) ("*Lear Seigler*").  Finally, although there is a district split on the matter, the most recent Tennessee federal district case addressing the general applicability of the doctrine held that the doctrine applies broadly.  Compare *Ladd Landing, LLC v. Tenn. Valley Authority*, 874 F. Supp. 2d 727, 729–31 (E.D. Tenn. 2012) (concluding that, based on *Lear Siegler*, there is no basis to limit the application of the economic loss doctrine to strictly products liability cases or UCC cases), with *Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 922 (W.D. Tenn. 2010) (finding that the

---

[25]      Response at 19.
[26]      *Id.*

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 8**

economic loss doctrine should be restricted to "claims involving products liability or the sale of goods, at least where the plaintiff can establish a sufficiently direct relationship between the defendant's negligent act and the plaintiff's economic loss").[27]  Plaintiffs' contention that "[e]ach and every other case [besides *Detroit Diesel*] cited for the application of the Economic Loss Doctrine in Tyler's Motion to Dismiss addresses . . . damages to the product itself [in a products liability case]" is incorrect.  Response at 19; *see, e.g.*, *Lear Siegler*, 825 S.W.2d at 84; *Ladd Landing*, 874 F. Supp. 2d at 729-31.

Plaintiffs' summary statement that Tyler cites "cases that have no bearing or relationship to the Economic Loss Doctrine" is similarly misguided.[28]  The only case that Plaintiffs specifically identify is *Robins*.[29]  Although *Robins* does not invoke the specific term "economic loss doctrine," its application of the doctrine is clear.  In *Robins*, the Supreme Court refused to permit a plaintiff to recover purely *economic losses* on a negligence claim because "as a general rule . . . a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong."  *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927).  This concept is the heart of the economic loss doctrine.  *See MorselDiesel*, 819 S.W.3d at 430 ("[The economic loss doctrine] prohibits the recovery of purely economic damages for negligence when the plaintiff lacks privity of contract with the defendant."); *see also Lear Siegler*, 825 S.W.2d at 84–85 (tracing the economic loss rule to *Robins*); *Ladd Landing*, 874 F. Supp. 2d at 729-30 (noting

---

[27]      As noted in Tyler's Motion, the policy reasons for applying the economic loss doctrine in products liability or UCC cases are equally applicable here and dictate in favor of the application of the doctrine to Plaintiffs' claims. Motion at 16.  And, contrary to Plaintiffs' suggestion in their Third Amended Complaint, the UCC would actually be applicable to this Contract because the primary purpose was the sale of a good.  Motion at 17-18.  Plaintiffs' Response does not even address this argument.

[28]      Response at 19.

[29]      *Id.* at 20.

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 9**

the same).  In their attempt to draw a distinction, Plaintiffs improperly characterize *Robins* as a case about knowledge and foreseeability while ignoring the "general rule" that it expressly sets forth.  *Robins*, 275 U.S. at 309.

Plaintiffs' attempt to avoid the economic loss rule by framing their asserted damages as an "independent component of damages, not a lost economic opportunity" is also unavailing.[30] Plaintiffs reemphasize that *Rhodes v. Lauderdale County*, 2012 U.S. Dist. LEXIS 135922 (W.D. Tenn. 2012), a 42 U.S.C. § 1983 case, allowed recovery for "loss of liberty" independent from "lost wages, lost vacation days, and emotional suffering."  *Id*.  However, Plaintiffs' argument relies on the misplaced assumption that the same categories of damages are available in a common law negligence action as are recoverable in a Section 1983 action.  The special and distinct purpose of Section 1983 belies this assumption.  *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").  It is particularly telling that Plaintiffs have still not identified a single case in which a Tennessee or federal court has permitted compensatory damages for negligence on an inherent "loss of liberty" theory.

As detailed further in the Motion, Plaintiffs have simply failed to specifically allege any colorable non-economic basis for liability.[31]  Because the economic loss doctrine applies, Plaintiffs' negligence claim against Tyler should be dismissed.

**WHEREFORE,** Tyler respectfully requests that the Court grant its Motion to Dismiss and grant such other and further relief to which Tyler may be entitled.

---

[30]     Response at 21.
[31]     Motion at 18-19.

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 10**

Dated:  September 26, 2018

Respectfully submitted,


*s/  Bradley E. Trammell*
Bradley E. Trammell (# 13980)
**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ**
165 Madison Ave., Ste. 2000
Memphis, TN 38103
Tel.: 901-526-2000
btrammell@bakerdonelson.com

Beth Bivans Petronio (admitted *pro hac*)
Texas Bar No. 00797664
**K&L GATES, LLP**
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500  Telephone
(214) 939-5849  Facsimile
beth.petronio@klgates.com

**COUNSEL FOR DEFENDANT TYLER
TECHNOLOGIES, INC.**

09/26/2018

501830792 v2

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 26, 2018, a true and correct copy of the foregoing document was forwarded by electronic means through the Court's ECF System and/or email to:

Frank L. Watson , III
William F. Burns
William E. Routt, III
WATSON BURNS, LLC
253 Adams Ave
Memphis, TN 38103

Michael G. McLaren
William E. Cochran, Jr.
Brice M. Timmons
BLACK McLAREN JONES RYLAND
& GRIFFEE PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117

*Interim Class Counsel for Plaintiffs*

Robert E. Craddock , Jr.
Odell Horton, Jr.
Amber Floyd
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177-5000

*Counsel for Defendants Sheriff Bill Oldham,*
*Jail Programmer Debra Hammons, Chief*
*Jailor Robert Moore, Assistant Jailor*
*Charlene McGhee, and Shelby County,*
*Tennessee*

Emmett Lee Whitwell
Shelby County Attorney's Office
160 N. Main Street
Suite 950
Memphis, TN 38103

*Counsel for Defendants Sheriff Bill Oldham,*
*Jail Programmer Debra Hammons, Chief*
*Jailor Robert Moore, Assistant Jailor*
*Charlene McGhee, and Shelby County,*
*Tennessee*

*s/ Bradley E. Trammell*
Bradley E. Trammell

**TYLER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS -- Page 12**

09/26/2018

501830792 v2