IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SCOTT TURNAGE, CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, TERRENCE DRAIN, and KIMBERLY ALLEN on behalf of themselves and all similarly situated persons, <br><br>     Plaintiffs, <br><br> v. <br><br> BILL OLDHAM, in his individual capacity and in his official capacity as Sheriff Of Shelby County, Tennessee, ROBERT MOORE, in his individual capacity and in his official capacity as Jail Director of Shelby County, Tennessee, CHARLENE MCGHEE, in her individual capacity and in her official capacity as Assistant Chief Jail Security of Shelby County, Tennessee, DEBRA HAMMONS, in her individual capacity and in her official capacity as Assistant Chief of Jail Programs in Shelby County, Tennessee, SHELBY COUNTY, TENNESSEE, and TYLER TECHNOLOGIES, INC., <br><br>     Defendants. | No. 16-2907 <br> Consolidated with: <br> No. 17-2015 <br> And Consolidated with: <br> No. 17-2795 |

ORDER

Before the Court is Defendant Tyler Technologies, Inc.'s ("Tyler") August 20, 2018 Motion to Dismiss. (ECF No. 105.) Plaintiffs filed a response on September 12, 2018. (ECF No. 109.) Defendants replied on September 26, 2018. (ECF No. 111.)

For the following reasons, Defendant Tyler's Motion to Dismiss is GRANTED in part and DENIED in part.

## I.  Background

Plaintiffs bring a class action against Shelby County and Shelby County officials Bill Oldham, Robert Moore, Charlene McGhee, and Debra Hammons, in their individual and official capacities (collectively, the "Shelby County Defendants"). (ECF No. 103.) Plaintiffs also sue Tyler Technologies, Inc. (Id.) Plaintiffs claim they were unlawfully detained at the Shelby County Jail following the County's installation of a new computer tracking system. That system included Defendant Tyler's Odyssey software. Plaintiffs bring claims against Shelby County Defendants under 42 U.S.C. § 1983 for violations of Plaintiffs' Fourth and Fourteenth Amendment rights. Plaintiffs bring negligence claims against Tyler.

Shelby County uses a computer system to process and track information about the arrest files, criminal cases, and court records of inmates at the Shelby County Jail (the "Jail"). (Id. ¶ 22.) The computer tracking system organizes and manages information including inmates' posting of bond, pretrial probable

cause determinations, and the release of arrestees whose bonds have been posted. (Id.)

In 2012, Shelby County decided to replace its in-house developed computer tracking system and solicited bids from providers. (See Contract, ECF No. 105-2 at 927.) On July 22, 2013, Shelby County contracted with Tyler to design, install, and integrate a new court management system (the "Contract") that included Tyler's Odyssey software. (Id.)

In October 2016, Shelby County began implementing the new integrated criminal justice system ("iCJIS"), of which the Odyssey software was a central part. (Third Am. Compl., ECF No. 103 ¶ 23.) On November 1, 2016, Shelby County stopped using its previous computer tracking system and began "record[ing] all arrest and inmate activity by hand." (Id. ¶ 52.) The new system and Odyssey software "went 'live'" on November 7, 2016. (Id.)

By November 15, 2016, deficiencies in the system had become apparent to court staff. (Id. ¶ 53.) Judge William Anderson of the Shelby County General Sessions Court characterized the failings of the new system as follows:

> I apologize for the system . . . . [O]ne person being in jail too long is bad enough, but 15, 20, 30 . . . . We expected problems but we didn't expect problems of this magnitude, where people remain and languish in jail without even getting a bond set, without having [a] court appearance set and us not even knowing how to go about solving the problem . . . how do you lose somebody in

3

> the system for three weeks . . . . Everybody
> says it's the [computer] system."

(Id.)

After the new computer system was put in place, the named Plaintiffs were allegedly kept in jail beyond the dates set for their release. Plaintiff Travis Boyd represents that he was arrested without a warrant and incarcerated on November 2, 2016. (Id. ¶ 86.) It took the Odyssey System seven days to show that Plaintiff Boyd was "booked." (Id.) Only after the computer showed Plaintiff Boyd's status was he afforded a probable cause review. (Id.) Plaintiff Boyd was then detained two days after posting bond. (Id. ¶ 87.)

Plaintiff Terrence Drain represents that he was arrested without a warrant and incarcerated on November 3, 2016. (Id. ¶ 89.) The Odyssey System showed Plaintiff Drain was "booked" five days later. (Id.) Only after the computer showed Plaintiff Drain's status was he afforded a probable cause review. (Id.) After Plaintiff Drain was "booked," his attempt to post bond was refused because bond "did not appear in the clerk's case management software until" three weeks later. (Id. ¶ 91.)

Plaintiff Jeremy S. Melton represents that he was detained, from November 10, 2016, until November 14, 2016, four days after entry of an order for his release, because the "order was not in the Computer System." (Id. ¶ 79.)

4

Plaintiff Deontae Tate represents that he was prevented from posting bond to secure his release for five days, from November 6, 2016, to November 11, 2016, because "he was not in the Computer System and thus could not post bond." (Id. ¶ 79.)

Plaintiff Issacca Powell represents that, on his arrest on November 11, 2016, the "computer system . . . indicated that there was an active warrant for his arrest on the charge of being a convicted felon in possession of a weapon." (Id. ¶ 82.) When he was taken before a judge eleven days after his arrest, Powell had to be "returned to the jail because the Odyssey System did not reflect any pending case against" him. (Id.) After posting bond, Plaintiff Powell was detained for two additional days. (Id.)

Plaintiff Cortez D. Brown represents he was detained from November 6, 2016, to November 14, 2016, seven days after the charges against him were dismissed. (Id. ¶ 78.)

Plaintiff Keith Burgess represents that the Odyssey System failed to reflect that a warrant for his arrest had been recalled on November 16, 2016, resulting in his unlawful arrest and in-carceration for five days. (Id. ¶¶ 83-84.)[1] After Burgess's release, the Odyssey System did not reflect the recalled arrest warrant until four months later. (Id. ¶ 85.)

---

[1] The Third Amended Complaint states "November 16, 2017." (ECF No. 103 ¶ 83.) This appears to be an error. The surrounding dates and time-line occur in 2016.

Plaintiff Scott Turnage represents that his eighty-hour detention, beginning on February 18, 2017, arose from "an [attachment Pro Corpus] that should have already been purged from the Odyssey System[.]" (Id. ¶ 76.)

After implementation of the new computer system, Earle Farrell, a Shelby County Sheriff's Department representative, "acknowledged that the intake process was taking six times as long as usual." (Id. ¶ 55.) Despite that delay, Tyler and Shelby County continued to use the new computer system.

On November 17, 2016, Plaintiff Powell filed a class action complaint against Defendant Oldham, in his individual capacity and in his official capacity as Shelby County Sheriff. (ECF No. 1.)

On March 9, 2017, the Shelby County Defendants filed a consent motion to consolidate actions against Tyler and the Shelby County Defendants by the named Plaintiffs. (ECF No. 41.) The Court granted the consent motion on March 13, 2017, and directed Plaintiffs to file one consolidated complaint. (ECF No. 42.) Plaintiffs filed an Amended Complaint for the consolidated class action on March 24, 2017. (ECF No. 43.)

Plaintiffs filed a Second Amended Complaint on May 4, 2017. (ECF No. 52.)

On March 9, 2018, the Court consolidated Powell, et al. v. Oldham, et al., 2:16-cv-2907-SHM-tmp (W.D. Tenn.) with

<u>Ingram, et al. v. Oldham, et al</u>, 2:17-cv-2795-SHM-tmp (W.D.
Tenn.). (ECF No. 89.) The Court ordered Plaintiffs in both
actions to file a consolidated complaint. (<u>Id.</u> at 743.) Plain-
tiffs filed a Third Amended Complaint on July 30, 2018. (ECF
No. 103.) Defendant Tyler filed this Motion to Dismiss on August
20, 2018. (ECF No. 105.)

## II. Jurisdiction & Choice of Law

Plaintiffs assert a right to relief from the Shelby County
Defendants under 42 U.S.C. § 1983 for violations of Plaintiffs'
Fourth and Fourteenth Amendment rights. (Third Am. Compl., ECF
No. 103 ¶ 2.) The Court has federal question jurisdiction over
Plaintiffs' § 1983 claim under 28 U.S.C. § 1331. <u>See</u> <u>Morrison</u>
<u>v. Bd. of Educ. of Boyd Cty.</u>, 521 F.3d 602, 607 (6th Cir. 2008).

Plaintiffs contend that the Court has jurisdiction over
their claims against Tyler under the Class Action Fairness Act,
28 U.S.C. § 1332(d) ("CAFA"). (ECF No. 103 ¶ 3.) CAFA vests
federal district courts with original jurisdiction to hear a
class action if: (1) the class has more than 100 members; (2)
the parties are minimally diverse; and (3) the amount in contro-
versy exceeds $5,000,000 after aggregating the claims of the
individual members of the proposed class. <u>See</u> <u>Standard Fire</u>
<u>Ins. Co. v. Knowles</u>, 568 U.S. 588, 592 (2013) (citing 28 U.S.C.
§ 1332(d)(2), (d)(5)(B), (d)(6), (d)(1)(D)). Under CAFA, a class

action is any civil action filed under Rule 23 of the Federal Rules of Civil Procedure.  28 USC § 1332(d)(1)(B).

Plaintiffs bring claims on behalf of "at least 1000" class members and invoke Rule 23. (See Third Am. Compl., ECF No. 103 ¶¶ 104, 107.)  The named Plaintiffs are citizens of Tennessee. (Id. ¶ 3.)  Tyler is a corporation organized under the laws of Delaware and has its principal place of business in Texas.  (Id.) Because Plaintiffs and Tyler are citizens of different states, CAFA's minimal diversity requirement is satisfied.  See 28 U.S.C. § 1332(d)(2)(A).

Plaintiffs seek $144,000,000.00 in damages. (ECF No. 103 ¶ 104.)  A plaintiff's assertion of the amount in controversy is not questioned unless it appears "to a legal certainty" that a claim is for less than the jurisdictional amount.  Schultz v. General R.V. Ctr., 512 F.3d 754, 756 (6th Cir. 2008).  It does not appear to a legal certainty that Plaintiffs and the class members cannot recover the amount asserted.  Plaintiffs have satisfied the amount in controversy requirement under § 1332(d)(2).  CAFA's numerosity, minimal diversity, and amount-in-controversy requirements are satisfied.  The Court has juris-diction.

Where the underlying basis for CAFA jurisdiction is diver-sity, the forum state's choice of law rules apply.  See Savedoff v. Access Group, Inc., 524 F.3d 754, 760 n.5, 762 (6th Cir. 2008)

(applying forum state's choice of law provisions where federal jurisdiction was premised on 28 U.S.C. § 1332(d)(2)(A)).

Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a choice of law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume that Tennessee substantive law applies and ground their arguments accordingly. The Court will apply Tennessee substantive law to Plaintiffs' claims against Tyler.

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## IV. Analysis

Plaintiffs bring two claims against Tyler: (1) negligence; and (2) negligent training and supervision. (Third Am. Compl., ECF No. 103 ¶¶ 123–36.)

### A. Negligence Claim

To make a <u>prima facie</u> claim of negligence under Tennessee law, a plaintiff must establish five elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the applicable standard of care; (3) the plaintiff suffered an injury; (4) defendant's conduct was a cause in fact of the injury; and (5) defendant's conduct was a proximate cause of the injury. <u>Giggers v. Memphis Hous. Auth.</u>, 277 S.W.3d 359, 364 (Tenn. 2009) (citing <u>McCall v. Wilder</u>, 913 S.W.2d 150, 153 (Tenn. 1995)).

Tyler argues that Plaintiffs' negligence claim fails for three reasons: (1) Plaintiffs' factual allegations are implausible because they are untrue, insufficient, and contradicted by the Contract (ECF No. 105-1 at 913); (2) Tyler's software was not a cause in fact or proximate cause of Plaintiffs' injuries (<u>id.</u> at 914); and (3) Plaintiffs' claim is barred by the economic loss doctrine because they seek to recover "purely economic damages," (<u>id.</u> at 911). Tyler does not directly challenge the duty, breach, or injury elements of negligence.

## 1.  Factual Allegations

Tyler makes three arguments about the sufficiency of Plain-tiffs' factual allegations.  Tyler contends that: (1) the allegations are untrue; (2) Plaintiffs do not plead sufficient facts to connect Tyler to the events at the Jail; and (3) Plaintiffs' allegations are contradicted by the Contract.  (See ECF No. 105-1 at 911-12.)

Tyler argues that the Third Amended Complaint is "based on an incorrect factual premise" and that Plaintiffs "incorrectly characterize Odyssey as the 'heart' of iCJIS."  (Id. at 913-14.) Tyler represents that its Odyssey software was "implemented in, and only in, the Shelby County Criminal Courts."  (Id. at 914.) Tyler also represents that "[o]ther parties were responsible for the implementation of the Jail software, the integration HUB, and even the specific integration of Odyssey's information into iCJIS."  (Id. at 914.)

On a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pled factual allegations as true.  League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).  To the extent Tyler contends that Plaintiffs' claim fails because the factual allegations in the Third Amended Complaint are untrue, Tyler's contention cannot be sustained.  To the extent Tyler invites the Court to consider facts not con-tained in the Third Amended Complaint or the documents attached

to or referred to in it, the Court can consider facts outside the Complaint only on a properly supported motion for summary judgment.

Tyler argues that Plaintiffs offer no plausible basis for relief because their factual allegations "assert in an entirely conclusory manner that Tyler and its Odyssey software, which was installed at the Shelby County Criminal <u>Courts</u>, [were] responsible for problems at the Shelby County <u>Jail</u>." (ECF No. 105-1 at 906 (emphasis in original).)

Plaintiffs respond that the factual allegations in the Third Amended Complaint plausibly connect Tyler's software to the problems at the Jail. (<u>See</u> ECF No. 109 at 1021.) Plaintiffs cite several allegations including their assertion that "successful integration of Odyssey was essential for the full Computer Tracking System to be operational so that, among other things, inmates would not become 'lost' in the Shelby County Jail and that their booking numbers, charges, bonds and other information would appear at all stages of their incarcerations in the Computer Tracking System." (<u>Id.</u> (citing ECF No. 103 ¶ 43).) Plaintiffs cite their allegation that Tyler knew Odyssey "was not a good fit for the County's needs[,]" but that Tyler "attempted to 'shoehorn' the government entity's system to Odyssey in order to 'make it fit.'" (<u>Id.</u> (citing ECF No. 103 ¶¶ 37, 38).) Plaintiffs also cite their allegation that Tyler "did not property integrate

13

Odyssey with the Computer Tracking System . . ., thus causing the wrongful conduct alleged herein." (Id. (citing ECF No. 103 ¶ 47).)

Plaintiffs' allegations, taken together, are not "mere conclusory statements." Haddad v. Randall S. Miller Assocs., PC, 587 F. App'x 959, 962 (6th Cir. 2014) (quotation omitted). Plaintiffs allege sufficient detail about the nature of Tyler's software, how it was intended to function, and how the software contributed to the problems at the Jail. Plaintiffs' allegations connecting Tyler to the events at the Jail are sufficient to satisfy the liberal pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure.

Tyler argues that the Contract, incorporated by reference into the Third Amended Complaint, contradicts Plaintiffs' allegations and makes clear that Tyler "had no responsibility for the jail management system or the integration system between the court management system and the jail." (ECF No. 111 at 1054.) Tyler contends that, under the terms of the Contract, Tyler was required to implement its Odyssey software only for the Shelby County Criminal Court and the Criminal Division of the Shelby County General Sessions Court. (ECF No. 105-2 at 947.) Tyler argues that the Contract gave other vendors responsibility for the computer system at the Jail. (See ECF No. 105-1 at 908) (citing Contract, ECF No. 105-2 at 947).

Although a court must accept all well-pled facts as true, if a document referenced in the complaint contradicts the allegations in the complaint, the document "trumps the allegations." Williams v. CitiMortgage, Inc., 498 F. App'x 532, 536 (6th Cir. 2012) (quoting N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 454 (7th Cir. 1998)). The Court must determine whether the Contract contradicts Plaintiffs' allegations.[2]

Both parties cite the Project Overview section of the Statement of Work in the Contract. That section defines Tyler's responsibilities as follows:

> This Statement of Work covers the replacement of Shelby County's in house developed Court Case Management System, JSS. In conjunction with the replacement of JSS, Shelby County will also be replacing JMS – its current Jail Management System used by the Jail and IMS – the current Inmate Management System used by the Correction Center. The current JMS/IMS/JSS systems are tightly integrated with a custom written interface. The new iCJIS will be integrated using a service Oriented Architecture solution and an Enterprise Service Bus solution (Info Hub). Software AG's webMethods will be the Info Hub solution and Global Tel*Link's OSI Offender Management System will be implemented for the Jail and the Correction Center. . . .
>
> The new Offender Management System, the Court Case Management System . . . will be part of the Enterprise Service

[2] Ordinarily, a court may not consider matters outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss unless the motion is treated as a motion for summary judgment under Rule 56. See Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016). However, a court may consider "exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." Id. The Court will consider the Contract because it is referred to in Plaintiffs' Third Amended Complaint, its terms are central to the dispute, and it is attached to Tyler's Motion to Dismiss.

Bus solution (Info Hub) as well as integrated with Shelby
County's current document management solution, OnBase.
These systems will be so integrated that a single system
will not be able to go live without the data exchanges in
place from the other iCJIS systems. The timelines of the
Court System Statement of Work is dependent upon the time
lines of the other iCJIS partners.

(ECF No. 105-2 at 947-48 (emphasis added).)

Tyler argues that this provision of the Contract shows it
"was not responsible for the jail inmate tracking systems and
did not install Odyssey for the jail." (ECF No. 105-1 at 913
(internal quotation marks omitted).) Plaintiffs contend the
provision supports, rather than contradicts, their allegation
that Tyler was responsible for the Jail's problems. (ECF No.
109 at 1021 (citing ECF No. 103 ¶ 42).)

The quoted provision of the Statement of Work does not
establish the precise nature of Tyler's involvement in the pro-
ject. The Statement of Work does appear, however, to give Tyler
responsibility for integrating the Enterprise Service Bus, which
included the Offender Management System used by the Jail, with
the Odyssey software. (See Contract, ECF No. 105-2 at 945.)
Plaintiffs' allegations that Tyler's Odyssey software had a role
in what occurred at the Jail are not contradicted by this portion
of the Contract.

Other provisions of the Contract connect Tyler to the Jail's
computer systems. The "Integration Scope" of the Contract pro-
vides that Tyler was to install "the Odyssey Translation Bus,

16

which will provide a standardized set of integrations data ser-

vices . . . [that] will [serve as] the interaction point between

the courts' data system and the County's <u>Enterprise Service Bus</u>

<u>(ESB)</u>, or Hub." (ECF No. 105-2 at 950 (emphasis added).) Tyler

was to provide integration services such as "[r]eal-time data

queries from the County's <u>Hub/ESB to Odyssey</u> in . . . compliant

message formats" and vice versa. (<u>Id.</u> (emphasis added).) The

"compliant message formats" were necessary to exchange infor-

mation on defendant names, warrants, charges, custody status,

fees, bond amount, and other data points. (<u>See</u> App. C, ECF No.

105-2 at 967–73.)

These provisions of the Contract connect Tyler's Odyssey

software to the ESB, one of the systems "so integrated" with the

iCJIS's other systems that the full iCJIS could not "go live"

without it. (Contract, ECF No. 105-2 at 948.) Tyler's respon-

sibility for developing the ESB supports Plaintiffs' allegation

that Odyssey was "[a]t the heart of the new Computer Tracking

System" and that "the successful integration of Odyssey was es-

sential for the full Computer Tracking System to be opera-

tional[.]" (ECF No. 103 ¶¶ 23, 43.)

Tyler argues that, under the Contract, it had a limited

role in the iCJIS. Tyler points to the section of the Statement

of Work providing that "all data translations that need to be

done in order to map data from Odyssey to the Hub/ESB and other

agencies integrated via the Hub/ESB will be performed by the County's System's Integrator, which at the time [the Contract] was written ha[d] yet to be awarded." (Contract, ECF No. 105-2 at 950.) Although this provision appears to contemplate that some other provider will integrate Odyssey's data exchange functions with the ESB, it does not establish that Tyler itself did not eventually perform that task. This provision also does not establish that there were no problems with Tyler's software arising from some feature other than its integration with other systems.

At this stage of the litigation, the Court must view the facts in a light most favorable to Plaintiffs and resolve all factual questions in their favor. Because no provision of the Contract explicitly contradicts Plaintiffs' allegations that Tyler was involved with the events at the Jail, the Court must accept Plaintiffs' allegations as true. See Mackley v. Sullivan & Liapakis, P.C., 1999 WL 287362, at *3 (S.D.N.Y. May 7, 1999) (an incorporated document that "merely cast[s] doubt" on the plaintiff's allegations does not contradict the complaint).

## 2.  Causation and Proximate Causation

Under Tennessee law, "causation in fact" and "proximate causation" are distinct elements of negligence. See Hale v. Ostrow, 166 S.W.3d 713, 718 (Tenn. 2005). Causation in fact refers to the cause and effect relationship between the defendant's

18

conduct and the plaintiff's injury.  See id.  The defendant's

conduct is a cause in fact if an injury would not have occurred

but for that conduct.  See id.; Smith v. Cherry, No. M2005-01168-

COA-R3CV, 2006 WL 1724629, at *4 (Tenn. Ct. App. June 22, 2006).

"It is not necessary that the [defendant's] act be the sole cause

of the plaintiff's injury, only that it be a cause."  Hale, 166

S.W.3d at 718 (emphasis in original).

The Third Amended Complaint alleges that Tyler failed to

tailor the Odyssey software adequately to the Shelby County gov-

ernment system and "caused the massive and disturbing problems

with the [Shelby] County and the Jail [systems]. . . ."  (Third

Am. Compl., ECF No. 103 ¶ 38.)  The Third Amended Complaint also

alleges that "[Tyler] did not properly integrate Odyssey with

the Computer Tracking System . . . [and] failed to properly test

Odyssey[.]"  (Id. ¶ 47.)

The named Plaintiffs claim the following injuries:

Plaintiff Turnage claims his eighty-hour detention arose

from "an instrument that should have already been purged from

the Odyssey System. . . ."  (Id. ¶ 75.)

Plaintiff Brown represents he was detained seven days after

the charges against him were dismissed.  (Id. ¶ 77.)

Plaintiff Tate represents that he was prevented from posting

bond to secure his release for five days because "he was not in

the Computer System and thus could not post bond."  (Id. ¶ 78.)

Plaintiff Melton represents he was detained four days after entry of an order for his release because the "order was not in the Computer System." (Id. ¶ 79.)

Plaintiff Powell represents that, on his arrest, the "computer system . . . indicated that there was an active warrant for his arrest on the charge of being a convicted felon in possession of a weapon." (Id. ¶ 81.) When he was taken before a judge, Powell had to be "returned to the jail because the Odyssey System did not reflect any pending case against" him. (Id.) After posting bond, Plaintiff Powell was detained for two additional days. (Id.)

Plaintiff Burgess represents that the Odyssey System failed to show that a warrant for his arrest had been recalled, leading to his arrest and incarceration for five days. (Id. ¶ 83.) After his release, the Odyssey System did not show the recalled arrest warrant until four months later. (Id. ¶ 84.)

Plaintiff Boyd represents that he was arrested without a warrant and incarcerated. (Id. ¶ 85.) It took the Odyssey System seven days to show Plaintiff Boyd was "booked." (Id.) Only after the computer showed Plaintiff Boyd's status was he afforded a probable cause review. (Id.) Plaintiff Boyd was also detained for two days after posting bond. (Id. ¶ 86.)

Plaintiff Drain represents that he was arrested without a warrant and incarcerated. (Id. ¶ 88.) The Odyssey System showed

Plaintiff Drain was "booked" five days later. (Id.) Only after the computer showed Plaintiff Drain's status was he afforded a probable cause review. (Id.) After Plaintiff Drain was "booked," his attempt to post bond was refused because bond "did not appear in the clerk's case management software until" three weeks later. (Id. ¶ 90.)

Assuming Plaintiffs' allegations to be true, Plaintiffs have pled facts establishing cause in fact. But for Tyler's failure to sufficiently integrate and design the Odyssey software, the iCJIS would have worked properly, and Plaintiffs would not have been detained unlawfully.

Proximate cause "encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993) (quotation omitted). To establish proximate cause, Tennessee courts apply a three-prong test: (1) the defendant's conduct must have been a "substantial factor" in bringing about the plaintiff's harm; (2) there is no rule or policy that should relieve the defendant from liability because of the manner in which injury occurred; and (3) the harm that the plaintiff suffered must have been reasonably foreseeable by a person of ordinary intelligence and prudence. See McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991); Nichols v. Knox Cty., Tennessee, No. E201401566COAR3CV, 2015 WL 6661485, at *5 (Tenn. Ct. App. Nov. 2, 2015).

21

"Foreseeability is 'the crucial factor in the proximate cause test because, if the injury that gives rise to a negligence case could not have been reasonably foreseen, there is no proximate cause and thus no liability despite the existence of negligent conduct.'" Nichols, 2015 WL 6661485, at *5 (quoting King v. Anderson Cty., 419 S.W.3d 232, 248 (Tenn. 2013)).

Tennessee has adopted the meaning of "substantial factor" given in the Restatement (Second) of Torts § 413. See Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co., 15 S.W.3d 425, 431 (Tenn. Ct. App. 1997). A factor is "substantial" when it "has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, . . . rather than the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." RESTATEMENT (SECOND) OF TORTS § 431, cmt. a. Assuming Plaintiffs' allegations to be true, Tyler's failure to integrate and design its software properly is more than a mere "philosophical cause" of Plaintiffs' over-detainments. The Third Amended Complaint adequately alleges that Tyler's conduct was a "substantial factor".

Tyler cites no rule or policy that should relieve it from liability because of the manner in which the negligence has resulted in the over-detainments. The Court has found no such rule or policy.

Neither the Sixth Circuit nor any court in Tennessee has addressed the foreseeability of harm arising from the installation, design, or integration of a computer systems for use in a court or criminal system.  The United States District Court for the Northern District of Texas addressed the issue in _Davis v. Dallas Cty., Tex._, 541 F. Supp. 2d 844, 853 (N.D. Tex. 2008).  In _Davis_, Dallas County hired the defendant technology contractor to develop and integrate a new computer system for tracking inmate information and exchanging that information among the various agencies responsible for arrests, detentions, and release.  _Id._ at 847.  The plaintiff alleged that defects in the new computer system caused some inmates to be detained beyond the date set for their release.  _Id._  The _Davis_ Court held that it was foreseeable that officials would rely on the information presented by the computer system and that negligent design and installation of the computer program would lead to officials releasing prisoners beyond their proper term.  _Id._ at 853.

The facts here are similar.  Tyler is also a technology contractor hired to develop a computer system for tracking the defendants in criminal cases.  (_See_ Contract, ECF No. 105-2 at 947–48.)  Tyler could reasonably have foreseen that negligently installing, designing, or integrating the Odyssey software would lead to inmates being detained beyond their proper term.

Plaintiffs have adequately pled that the harm they suffered was reasonably foreseeable.

Plaintiffs have pled a sufficient factual basis to establish causation in fact and proximate causation.

### 3. Economic Loss Doctrine

Tyler argues that the economic loss doctrine bars Plaintiffs' negligence claim because Plaintiffs seek to recover "purely economic damages." (ECF No. 105-1 at 911, 918–24.) Tyler contends that, "because Plaintiffs' negligence claim seems to relate to the ability of Tyler's Odyssey software to perform in the manner required by the Contract[,] . . . [in] that the Odyssey software was defectively developed and implemented[,]" the economic loss doctrine precludes Plaintiffs' claim. (Id. at 920.) Tyler also argues that the Contract was predominantly for goods,[3] and that Plaintiffs' damages are purely economic. (Id. at 921–22.)

Plaintiffs argue that Tyler provided services to which Tennessee's economic loss doctrine has no application. (ECF No. 109 at 1014–15.) Plaintiffs also contend that the economic loss

---

[3] Tyler acknowledges a split about whether the economic loss doctrine applies to non-product liability cases or contracts for services. (See ECF No. 105-1 at 920.) Because the economic loss doctrine does not apply to Plaintiffs' negligence claim, the Court need not address whether the economic loss doctrine applies to non-product liability cases or hybrid service-goods contracts.

doctrine does not apply because Plaintiffs do not seek purely economic damages. (_Id._ at 1039-40.)

Under Tennessee law, a plaintiff injured by another's negligence is entitled to compensatory damages. _See_ _Dedmon v. Steelman_, 535 S.W.3d 431, 437 (Tenn. 2017). There are two kinds of compensatory damages: (1) economic damages; and (2) noneconomic damages. Economic damages compensate the plaintiff for the actual pecuniary losses that "naturally result from the defendant's wrongful conduct[.]" _Meals ex rel. Meals v. Ford Motor Co._, 417 S.W.3d 414, 419-20 (Tenn. 2013) (footnote omitted). Economic damages include out-of-pocket medical expenses, future medical expenses, lost wages, and lost earning potential. _Id._ Noneconomic damages compensate the plaintiff for physical pain and suffering, mental or emotional pain or anguish, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, and all other nonpecuniary losses. _See_ _Dedmon_, 535 S.W.3d at 438 (citing _Elliott v. Cobb_, 320 S.W.3d 246, 247 (Tenn. 2010)).

Tennessee's economic loss doctrine "prohibits the recovery of purely economic damages for negligence when the plaintiff lacks privity of contract with the defendant." _John Martin Co. v. Morse/Diesel, Inc._, 819 S.W.2d 428, 430 (Tenn. 1991). A plaintiff who suffers purely economic harm may recover damages only under contract law and not on a tort theory. _Id._; _see also_

Messer Grieshem Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003). The doctrine maintains the separation of tort law and contract law by preventing a party from obtaining relief through tort law for disputes that should be resolved according to contract principles. Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001) abrogated on other grounds by Bowen ex rel. Doe v. Arnold, 502 S.W.3d 102, 117 (Tenn. 2016); see also Lincoln Gen. Ins. Co v. Detroit Diesel Corp., 293 S.W.3d 487, 488 (Tenn. 2009).

The economic loss doctrine does not apply when the plaintiff seeks damages for nonpecuniary losses including personal injuries and mental anguish. See Messer, 131 S.W.3d at 463; Laxton v. Orkin Exterminating Co., Inc., 639 S.W.2d 431, 431, 434 (Tenn. 1982) (damages allowed for mental anguish resulting from the negligent contamination of plaintiffs' water supply); see also Tenn. Code Ann. § 29-34-104 (providing that, "[i]n all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action"). The Court must determine whether Plaintiffs seek "purely economic" damages.

Plaintiffs claim a right to compensatory damages for their alleged deprivation of liberty. (Third Am. Compl., ECF No. 103 ¶ 102.) Plaintiffs allege that "each named Plaintiff and each Class Member is entitled to $48,000 per day that they were unlawfully incarcerated or unlawfully re-incarcerated (approximately $2,000 per hour) for their loss of liberty." (Id. ¶ 103.)

Unlawful imprisonment is not a purely economic injury. Economic losses may accompany the loss of liberty, such as when an incarcerated individual cannot work and earn wages. Unlawful imprisonment also implicates mental, emotional, and dignitary injuries that are inherently nonpecuniary. Damages for unlawful imprisonment "redress the denial of free movement and the violation done to [an individual's] dignity." Rhodes v. Lauderdale Cty., Tenn., No. 2:10-cv-02068-JPM, 2012 WL 4434722, at *11 (W.D. Tenn. Sept. 24, 2012) (quotation omitted). Because the remedies Plaintiffs seek do not constitute purely economic damages, the economic loss doctrine does not apply.

Plaintiffs have sufficiently pled factual matter to state a negligence claim against Tyler that is plausible on its face and that is not barred by the economic loss doctrine.

Defendant Tyler's motion to dismiss Plaintiffs' negligence claim is DENIED.

### B. Negligent Training and Supervision Claim

Tyler argues that Plaintiffs fail to state a claim for negligent training and supervision because:

> Plaintiffs have not plead a single fact regarding what training or supervisory role specifically Tyler had, how Tyler was negligent in its training or supervision, what errors are attributable to negligent training or supervision, how such negligent training or supervision is the proximate cause of any specific Plaintiffs' alleged injury, whether specific employees were unfit for the job, or whether Tyler had knowledge of the employees' alleged unfitness for the job.

(ECF No. 105-1 at 916.)

Under Tennessee law, a plaintiff may recover for negligent hiring, supervision, or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job. Doe v. Catholic Bishop for Diocese of Memphis, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)); see also Hays v. Patton-Tully Transp. Co., 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993). To establish the employer's knowledge, the plaintiff must show that the employer knew, or should have known through the exercise of reasonable care, that the employee was not qualified to perform the work for which he was hired. See Davis v. Covenant Presbyterian Church, No. M2013-02273-COA-R3-CV, 2014 WL 2895898, at *8 (Tenn. Ct. App. June 23, 2014) (citing Marshalls of Nashville, Tenn., Inc. v. Harding Mall Assocs., Ltd., 799 S.W.2d 239, 243 (Tenn. Ct. App. 1990)).

The plaintiff must identify the employee whose actions injured him and explain how the employee negligently injured him. See Thompson v. Bank of Am., N.A., 773 F.3d 741, 755 (6th Cir. 2014) (applying Tennessee law); see also Gilliard v. JP Morgan Chase Bank, N.A., 2012 WL 6139922, at *6 (E.D. Tenn. Dec. 11, 2012) (finding complaint does not state a claim for negligent supervision because "it fail[ed] to identify any employee of any defendant, who took any intentional action outside the scope of the employee's employment that caused a specific harm to plaintiffs").

Plaintiffs allege that Tyler "undertook the duties of training and supervising the County's employees with respect to Odyssey and its functionality with the iCJIS system. Defendant Tyler failed to properly train and supervise these employees." (Third Am. Compl., ECF No. 103 ¶ 47.) Plaintiffs also allege that Tyler failed to "train and supervise its own employees and . . . the County's employees" in connection with Tyler's Odyssey software. (ECF No. 103 ¶¶ 134, 135.)

Plaintiffs' allegations are a "formulaic recitation of the elements" of a negligent training and supervision claim. League of United Latin Am. Citizens, 500 F.3d at 527 (6th Cir. 2007); see Doe, 306 S.W.3d at 717. Plaintiffs identify no specific employees and do not explain how any specific employee's actions negligently injured them. See Thompson, 773 F.3d at 755.

Plaintiffs do not allege that Tyler knew an employee under its supervision was unfit to operate the Odyssey system. Plaintiffs' general allegations of negligent supervision and training are "mere conclusory statements" not supported by facts. See id.; Bundy v. Madison Cty., Tenn., No. 14-1337, 2015 WL 1957094, at *3 (W.D. Tenn. Apr. 29, 2015).

In their response to Tyler's Motion to Dismiss, Plaintiffs represent that, "[h]ad Tyler conducted the end-to-end testing set forth in their contract, they would have known that the County employees were improperly trained to operate the iCJIS system and Odyssey." (ECF No. 109 at 1024 (emphasis in original).) Plaintiffs represent that Tyler should have known the employees it trained and supervised were unfit, but Tyler "willful[ly] ignor[ed]" the employees' lack of training by failing to test its system. (Id.) Plaintiffs do not allege in the Third Amended Complaint that Tyler willfully ignored Shelby County employees' unfitness to operate the new computer system. The Court may not consider new facts alleged in Plaintiffs' Response. See Neff v. Standard Fed. Bank, 2007 WL 2874794, at *9 (S.D. Ohio Sept. 27, 2007).

Because Plaintiffs have not pled sufficient facts to establish a plausible claim for negligent training and supervision, Defendant Tyler's Motion to Dismiss that claim is GRANTED.

## V.    Conclusion

For the foregoing reasons, Tyler's August 20, 2018 Motion to Dismiss is GRANTED in part and DENIED in part.


So ordered this 15th day of October, 2018.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE