# EXHIBIT C

# WATSON BURNS, PLLC
## TRIAL LAWYERS

November 27, 2017

*VIA Email and US Mail*

Robert E. Craddock, Esq.
Odell Horton, Jr., Esq.
Amber Floyd, Esq.
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee 38120

Emmett Lee Whitwell, Esq.
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Suite 950
Memphis, TN 38103

**RE:**   *Powell et al. on behalf of themselves and all similarly situated persons v. Oldham, et al.*; Civil Action No. 2:16-cv-02907-SHM-tmp.

Dear Counsel:

We are in receipt of and have reviewed Defendant Shelby County's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents and its Responses to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents as well as Defendant Bill Oldham's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents.

As you know, of the 23 in total Interrogatories propounded to it, Defendant Shelby County has refused to answer all but three of these Interrogatories, primarily based on the claim that the information sought is "outside the scope of limited class certification discovery" and "is not proportional to the needs and issues related to class certification."

Likewise, in response to the 33 Document Requests propounded to it, Defendant Shelby County has refused to produce any documents other than a partial spreadsheet relating to class members (for which it unilaterally reduced the applicable time period and information to be provided) and a handful of documents relating to the charges against the named Plaintiffs (to which, ironically, Defendant Shelby County objected in its response to Document Request No. 28).

While we certainly appreciate that discovery is and should be truncated at this stage, in all candor we do not believe that the County Defendants' position that it need not produce any

November 27, 2017
Page | 2

documents concerning the widely reported, systemic over-detention issues experienced at the
Shelby County Jail is remotely tenable.  Documents and information that discuss or
acknowledge the repetitive dentition and re-arrest problems alleged by our clients (whether
connected to the County's computer systems or otherwise) goes directly to commonality – that
is, whether the plaintiffs and the putative class were subjected to a common set of facts and/or a
policy or practice.  Thus, although many of our requests clearly implicate merits, they also
directly bear on whether class certification should occur in this action.

    As a result, pursuant to Local Rule 7.2 and in a good faith effort to obtain the needed
information and documents without Court intervention, we outline the Interrogatories and
Document Requests which we believe are warranted and propose certain limitations as a
compromise.

**Identification of Persons in the Putative Classes – Interrogatory No. 3**: This
Interrogatory seeks to determine the breadth of the class or classes and states:

   **INTERROGATORY NO.3:**        From November 1, 2016 to the present, please
identify each person who was arrested and incarcerated in the Shelby County jail (along with the
specific criminal charge or charges made against each person) *and*:

   a)     was denied the ability to post a pre-set bond; or
   b)     Shelby County's records did not reflect that said person was entitled to a pre-set
bond, although the applicable charge carried with it a pre-set bond; or
   c)     was detained longer than 48 hours prior to a probable cause determination; or
   d)     was detained longer than 48 hours prior to a probable cause determination *and*
was subsequently released either for lack of probable cause or by posting a bond; or
   e)     was detained longer than six hours after posting bond; or
   f)     was detained longer than six hours after dismissal of charges or determination that
probable cause did not exist; and/or
   g)     was re-arrested and incarcerated on the basis of a warrant that had previously
been served and satisfied.

    Your clients have produced a spreadsheet that purports to answer portions of
Interrogatory No. 3 but have failed to provide the name of each class member and have
unilaterally limited the applicable time period to November 1, 2016 through March 31, 2017
(rather than through the present). We are aware of persons who fall into Interrogatory No. 3 well
after March 31, 2017. We would ask that you identify each person on your spreadsheet by name.
As a compromise, we are willing to reduce the time period to November 1, 2016 through June 1,
2017. We believe that this is a fair compromise in this regard.

    Your clients also claim that by utilizing the spreadsheet "Plaintiffs' counsel may review
the spreadsheet and identify cases for which counsel determines falls within the scope of this
interrogatory." This is not accurate given the lack of needed information (as set forth below).
However, even if this were true, we are entitled to have your clients confirm or deny the number
and identities of those in each of these objective categories. If Shelby County agrees that a
particular person is within these categories, it needs to tell us. Otherwise, we will be required to

November 27, 2017
Page | 3

take tedious depositions of the County going line by line through your spreadsheet, which would take several days to accomplish.

**Subpart b) - Preset Bonds**: As you know, our clients include those arrested on charges that carry with them a pre-set bond and that our clients allege the County's computer system at the time of their arrests reflected that they were not entitled to a bond. The current spreadsheet does not indicate whether each charge carries with it a pre-set bond. Additionally, your spreadsheet does not contain information as to whether the computer system did or did not reflect the pre-set bond was noted in it at the time of arrest. Please let us know if you will make this available.

**Subparts c) & d) – Persons Detained Longer that 48 hours without a probable cause hearing**: Please identify these persons on the spreadsheet. This information is not equally determinable by us. Indeed, the spreadsheet contains no information from which this fact can be confirmed or denied. Moreover, even if we could gather this factual information, we need to be in a position to know whether your clients agree or disagree as to the number of persons to whom this occurred.

**Subpart e) – Persons Detained Longer that 6 hours after posting a bond**: There is no information on your spreadsheet from which this information can be determined. Please include the time that each bond was posted.

**Subpart f) – Persons Detained Longer that 6 hours after a Court's dismissal or finding of no probable cause**: There is no information on your spreadsheet from which this information can be determined. Please include the time that dismissal or lack of probable cause was found by the Court.

**Subpart g) – Persons re-arrested and jailed on an arrest warrant previously served and satisfied**: There is no information on your spreadsheet concerning re-arrests on the same warrant. Please provide this information.

Lastly, to the extent not specifically mentioned above, we have the following questions or need the following additions to the spreadsheet:

1. We are unable to ascertain with certainty the meanings of the abbreviations or acronyms contained in the "Disposition" column. Please identify the meaning of each abbreviation or acronym.

2. What is the difference between "ReleaseDate" and "DischargeDate"?

3. Please identify each arrestee by name.

4. Please identify whether each bond was pre-set.

5. Please identify the amount of each bond.

6. Please identify each whether each arrest was made with or without a warrant

November 27, 2017
Page | 4

7. Please include time, in addition to date, in the following columns: BondSetDate, BondPostedDate, DispositionDate, and DischargeDate.

8. Please identify the date and time of each individual's probable cause determination, if any, and the outcome thereof.

**Information and Documents Discussing the Problems Alleged in Plaintiffs' Second Amended Class Action Complaint Interrogatory Nos. 4, 8, 12, 13, 14 and Document Request Nos.1, 10, 12, 13, 18**:     These Interrogatories and Document Requests seek information concerning whether there was a common, repetitive problem with the Shelby County computer system that led to the alleged over-detentions and re-arrests asserted in the Second Amended Complaint. As explained above, while this certainly touches upon the merits of Plaintiffs' claims, it also goes to the heart of Rule 23.

For example, we understand that the County created a position of "jail support specialist" to specifically address these problems. In addition to the newly created "jail support specialist" position, the County has for years employed what is known as a "jail population management analyst" whose duties include ensuring that the timely release of inmates occur and that issues concerning same are well documented. *See, Little v. Shelby County*, 384 F. Supp. 2d 1169, 1180(W.D. Tenn. 2005)("[T]he Jail currently produces monthly Population Management Reports which include data on, among other things, the average daily population at the Jail, the total number of inmates booked, the total number of inmates released, the average length of stay at the Jail, booking process time and the total number of inmates in the Jail with cases pending in General Sessions Courts and Criminal Courts broken down by the booking date and offense type. *The report identifies when and why there are backups in moving the inmate population through the Jail.* Data contained in the reports is shared with state criminal court judges during monthly meetings that focus on population management. The Jail also now employs a jail population management analyst to facilitate the County's population management effort. The population management analyst works with the population data that is collected, examines individual inmate cases and meets with judges and representatives from the offices of the District Attorney General and Public Defender to try to move particular cases through the Jail. In addition, the population management analyst works with pretrial services in an effort, where appropriate, to obtain lower bonds or move particular inmates out of the Jail").

In addition to the County's Population Management Reports, this same information is tracked and specifically documented in the County's "Jail Report Card." *Id.* at 1181 ("One example of how data is currently utilized at the Jail is the Jail Report Card - a monthly report that provides statistics on Jail operations and activities. Through this report, problems within the Jail are identified. The information contained in the Jail Report Card is reviewed at monthly meetings attended by Shelby County Sheriff Mark H. Luttrell, Jr. During these meetings individual managers explain any variances in numbers concerning their areas of operation. Sheriff Luttrell testified that the Jail Report Card is used both as a tool to monitor conditions at the Jail and to hold managers accountable for their areas of operation").

November 27, 2017
Page | 5

As a result, the requested information and documents cannot be unduly burdensome since the County is already compiling this very information. Further, based upon these common issues, the County may have conducted an audit to determine how widespread these issues were. Clearly, this type of information bears upon commonality.

With respect to documents, we are certainly willing to limit the time frame to the same November 1, 2016 through June 1, 2017 time frame suggested above. We also are willing to limit these documents to emails and internal memoranda. Please let us know if, with these limitations (and/or perhaps others that your clients may recommend), we can obtain this information.

**Insurance and Indemnity Agreements – Interrogatory No. 3 [sic]:** This Interrogatory seeks insurance policies and indemnity agreements concerning Shelby County and/or the individual County defendants. Your client has objected on the grounds that it is irrelevant to class certification. First, we would point out that insurance and indemnity agreements must be produced under Rule 26(a)(1)(iv). Second, the assets of the individual defendants and the County (and their net worths) are directly relevant under Rule 23 pursuant to the "limited fund" doctrine, which permits non-opt class certification against those defendants who have inadequate or small net worths. This information is discoverable. *See,* Order Granting in Part and Denying in Part Plaintiffs' Motion for Sanctions, Dkt No. 235 at p. 17, *Howard et al and all similarly situated persons v. Wilkes & McHugh, P.A. et al,* Case 2:06-cv-02833-JPM-tmp (Magistrate Pham ruling that defendants were required to answer net worth information pursuant to the limited fund doctrine).

We would propose on conducting a conference call this Thursday to conduct our Rule 7.2 conferral. Please let us know your availability.

Very truly yours,

Frank L. Watson, III

WER/jr
Enclosures

CC:   Michael G. McLaren, Esq.
      William E. Cochran, Jr., Esq.
      Brice M. Timmons, Esq.
      Joseph S. Ozment, Esq.
      Claiborne H. Ferguson, Esq.