IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SCOTT TURNAGE , CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, TERRENCE DRAIN, and KIMBERLY ALLEN on behalf of themselves and all similarly situated persons, <br><br>     PLAINTIFFS, <br><br> v. <br><br><br><br><br><br> BILL OLDHAM, in his individual capacity as former Sheriff of Shelby County, Tennessee; FLOYD BONNER, JR., in his official capacity as Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity as former Jail Director of Shelby County, Tennessee; KIRK FIELDS, in his official capacity as Jail Director of Shelby County, Tennessee; CHARLENE McGHEE, in her individual capacity as former Assistant Chief of Jail Security of Shelby County, Tennessee; REGINALD HUBBARD, in his official capacity as Assistant Chief of Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity as former Assistant Chief of Jail Programs of Shelby County, Tennessee; TIFFANY WARD in her official capacity as Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; TYLER TECHNOLOGIES, INC., a foreign corporation; GLOBAL TEL*LINK CORPORATION, a foreign corporation; SOFTWARE AG USA, INC., a foreign corporation; and SIERRA-CEDAR, INC., a foreign corporation, SIERRA SYSTEMS GROUP, INC., a foreign corporation. <br><br>     DEFENDANTS. | **Case No. 2:16-cv-2907-SHM/tmp** <br><br><br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, TENNESSEE COMMON LAW, DECLARATORY, AND INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |

**SIXTH AMENDED CLASS ACTION COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiffs Scott Turnage, Cortez D. Brown, Deontae Tate, Jeremy S. Melton, Issacca Powell, Keith Burgess, Travis Boyd, Terrence Drain, and Kimberly Allen, on behalf of themselves and all other similarly situated persons, by and through their designated attorneys, and for their Fifth Amended Class Action Complaint allege as follows:

All allegations in this Complaint are based upon the investigation of counsel, except the specific allegations pertaining to the named Plaintiffs, which are based upon personal knowledge. As of the date of this Complaint, only limited discovery has been conducted. As a result, it is likely that once the discovery process is substantially complete, the named Plaintiffs will seek leave to amend their Complaint to add new factual allegations and/or new claims.

## I.

## NATURE OF THE ACTION

1.      This is a class action brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 and Tennessee common law in order to remedy Defendants' actions in causing hundreds of Shelby County arrestees to be deprived of their constitutional rights by subjecting them to, *inter alia*,

> (i) unlawful detention by denying them the ability to post bonds that were pre-set, (ii) unlawful detention by detaining them longer than forty-eight (48) hours prior to probable cause determination either delaying their release for lack of probable cause or delaying having their criminal bonds set and posted, (iii)  unlawful detention by detaining them longer than six hours after posting their required bonds,  (iv) detaining them longer than six hours after charges against them had been dismissed or it was determined that probable cause did not exist to detain them, and/or, (v) re-arresting them on warrants that had previously been served and satisfied (i.e., re-arresting them on the identical warrant that had been previously served), all of which has proximately caused these arrestees to be

2

unlawfully detained and, thus, suffer damages. The named Plaintiffs and the Class Members seek declaratory and permanent injunctive relief as well as an award of compensatory damages against Defendants.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section 1988.

3.     With respect to the state law claims against Defendant Tyler Technologies, Inc., this Court also has original subject matter jurisdiction over this Class Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Pursuant to § 1332(c)(2), the named Plaintiffs are citizens of Tennessee (and two-thirds or more of the Class Members are citizens of Tennessee). Pursuant to § 1332(d)(10), Defendant Tyler Technologies Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Plano, Texas, and, as such, is a citizen of the States of Texas and Delaware.   As a result, the named Plaintiffs and Defendant are citizens of different States, pursuant to § 1332(d)(2)(A).

4.     With respect to the state law claims against Defendant Global Tel*Link Corporation, this Court also has original subject matter jurisdiction over this Class Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Pursuant to § 1332(c)(2), the named Plaintiffs are citizens of Tennessee (and two-thirds or more of the Class Members are citizens of Tennessee). Pursuant to § 1332(d)(10), Defendant Global Tel*Link Corporation is a corporation organized under the laws of Idaho, with its principal place of business in Reston, Virginia, and, as such, is a citizen of the States of Virginia and Idaho.   As a result, the named Plaintiffs and Defendant are citizens of different States, pursuant to § 1332(d)(2)(A).

3

5.      With respect to the state law claims against Defendant Software AG USA, Inc., this Court also has original subject matter jurisdiction over this Class Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Pursuant to § 1332(c)(2), the named Plaintiffs are citizens of Tennessee (and two-thirds or more of the Class Members are citizens of Tennessee). Pursuant to § 1332(d)(10), Defendant Software AG USA, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Reston, Virginia, and, as such, is a citizen of the States of Virginia and Delaware.   As a result, the named Plaintiffs and Defendant are citizens of different States, pursuant to § 1332(d)(2)(A).

6.      With respect to the state law claims against Defendant Sierra-Cedar, Inc., this Court also has original subject matter jurisdiction over this Class Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Pursuant to § 1332(c)(2), the named Plaintiffs are citizens of Tennessee (and two-thirds or more of the Class Members are citizens of Tennessee). Pursuant to § 1332(d)(10), Defendant Sierra-Cedar, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Alpharetta, Georgia, and, as such, is a citizen of the States of Georgia and Delaware.   As a result, the named Plaintiffs and Defendant are citizens of different States, pursuant to § 1332(d)(2)(A).

7.      With respect to the state law claims against Defendant Sierra Systems Group, Inc., this Court also has original subject matter jurisdiction over this Class Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Pursuant to § 1332(c)(2), the named Plaintiffs are citizens of Tennessee (and two-thirds or more of the Class Members are citizens of Tennessee). Pursuant to § 1332(d)(10), Defendant Sierra Systems Group, Inc. is a corporation organized under the laws of Canada, with its principal place of business in Vancouver, British

Columbia, Canada and, as such, is a citizen of Canada. As a result, the named Plaintiffs and Defendant are citizens of different States, pursuant to § 1332(d)(2)(A).

8.      Upon information and belief, the proposed Class exceeds 100 persons. Pursuant to the 28 U.S.C. § 1332(d)(6), the aggregate amount of the Class Members' claims substantially exceeds $5,000,000.00 and, thus, exceeds the requisite amount in controversy set forth in § 1332(d)(2).

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

### III.

### THE PARTIES AND PERSONAL JURISDICTION

10.     Plaintiff Scott Turnage (hereinafter referred to as "Plaintiff Turnage") is an individual residing in Hardeman County, Tennessee.

11.     Plaintiff Travis Boyd (hereinafter "Plaintiff Boyd") is an individual residing in Shelby County, Tennessee.

12.     Plaintiff Cortez D. Brown (hereinafter referred to as "Plaintiff Brown") is an individual residing in Memphis, Tennessee.

13.     Plaintiff Deontae Tate (hereinafter referred to as "Plaintiff Tate") is an individual residing in Memphis, Tennessee.

14.      Plaintiff Jeremy S. Melton (hereinafter referred to as "Plaintiff Melton") is an individual residing Olive Branch, Mississippi.

15.     Plaintiff Keith Burgess (hereinafter referred to as "Plaintiff Burgess") is an individual residing in Shelby County, Tennessee.

16.     Plaintiff Issacca Powell (hereinafter "Plaintiff Powell") is an individual residing in Memphis, Tennessee.

17.     Plaintiff Terrence Drain (hereinafter "Plaintiff Drain") is an individual residing in Memphis, Tennessee.

18.     Plaintiff Kimberly Allen (hereinafter "Plaintiff Allen") is an individual residing in Memphis, Tennessee.

19.     Defendant Bill Oldham (hereinafter "Defendant Oldham") is the former Sheriff of Shelby County, Tennessee and has been served with process in this matter. Defendant Oldham is named in this action in his individual capacity.

20.     Defendant Floyd Bonner, Jr. (hereinafter "Defendant Bonner") is the Sheriff of Shelby County, Tennessee and may be served with process at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103.  Defendant Bonner is named in this action in his official capacity as the Sheriff of Shelby County.

21.     Defendant Robert Moore (hereinafter "Defendant Moore") is the former Chief Jail Director of the Shelby County Jail and has been served with process in this matter. Defendant Moore is named in this action in his individual capacity.

22.     Defendant Kirk Fields (hereinafter "Defendant Fields") is the Chief Jail Director of the Shelby County Jail and may be served with process in this matter at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103.  Defendant Fields is named in this action in his official capacity as the Chief Jail Director of the Shelby County Jail.

23.     Defendant Charlene McGhee (hereinafter "Defendant McGhee") is the former Assistant Chief of Jail Security of the Shelby County Jail and has been served with process in this matter. Defendant McGhee is named in this action in her individual capacity.

24.     Defendant Reginald Hubbard (hereinafter "Defendant Hubbard") is the Assistant Chief of Jail Security of the Shelby County Jail and may be served with process at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103.  Defendant Hubbard is named in this action in his official capacity as the Assistant Chief of Jail Security of the Shelby County Jail.

25.     Defendant Debra Hammons (hereinafter "Defendant Hammons") is the former Assistant Chief of Jail Programs of the Shelby County Jail and has been served with process in this matter. Defendant Hammons is named in this action in her individual capacity.

26.     Defendant Tiffany Ward (hereinafter "Defendant Ward") is the Assistant Chief of Jail Programs of the Shelby County Jail and may be served with process as 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103.  Defendant Ward is named in this action in her official capacity as the Assistant Chief of Jail Programs of the Shelby County Jail.

27.     Defendant Shelby County, Tennessee (hereinafter "Defendant Shelby County" or "the County") is a Tennessee municipality which, by virtue of Plaintiffs' claims against Defendants Bonner, Fields, Hubbard and Ward in their official capacity, is a party defendant to this matter. Defendant Shelby County has been served with process in this matter.

28.     Defendant Tyler Technologies, Inc. (hereinafter referred to "Defendant Tyler Tech") is a corporation organized under the laws of the State of Delaware, with its principle place of business located at 5101 Tennyson Parkway, Plano, Texas 75024 and has been served with process in this matter.

29.     Defendant Global Tel*Link Corporation (hereinafter referred to as "GTL") is a corporation organized under the laws of the State of Idaho, with its principal place of business located at 12021 Sunset Hills Road, Suite 100, Reston, Virginia 20190.  Service of process may

be accomplished on Defendant through its registered agent for service of process, Incorp Services, Inc., 7288 Hanover Green Drive, Mechanicsville, Virginia 23111-0000.

30.    Defendant Software AG USA, Inc. (hereinafter referred to as "Software AG") is a corporation organized under the laws of Delaware, with its principal place of business located at 11700 Plaza America Drive, Suite 700, Reston, Virginia 20190.  Service of process may be accomplished on Defendant through its registered agent for service of process, Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219.

31.    Defendant Sierra-Cedar, Inc. (hereinafter referred to as "Sierra-Cedar") is a corporation organized under the laws of Delaware, with its principal place of business located at 1255 Alderman Drive, Alpharetta, Georgia 30005.  Service of process may be accomplished on Defendant through its registered agent for service of process, Corporation Service Company, 40 Technology Parkway Southsuite 300, Norcross, Georgia 30092.

32.    Defendant Sierra Systems Group, Inc. (hereinafter referred to as "Sierra Systems") is a corporation organized under the laws of Canada, with its principal place of business located at 1177 West Hastings Street, Suite 2500, Vancouver, British Columbia, Canada, V6E 23K.  Service of process may be accomplished on Defendant through service by mail in accordance with Section 10(a) of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

33.    This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Tennessee.  As a result, this Court has personal jurisdiction over Defendant pursuant to TENN. CODE ANN. §§ 20-2-214(1), (2) and (6) and 20-2-223(1), (3) and/or (4) on the grounds that the claims asserted against it arise from its transaction of business within Tennessee and on the grounds that it has committed a

8

tortious act within Tennessee.   Furthermore, Defendants' contacts and actions were directed toward Tennessee and thus warrant the exercise of personal jurisdiction over it pursuant to TENN. CODE ANN. § 20-2-225(2).

## IV.

## FACTUAL ALLEGATIONS

### A.    Summary of Class Allegations

34.    For almost twenty years, the Shelby County Jail (the "Jail") has employed a computer system known as "JSSi" to process and track the arrest files, criminal cases and court records of inmates at the Jail (hereinafter referred to as the "Criminal Tracking System") so as to carry out its administrative policies governing, *inter alia*, the posting of bonds, the pre-trial probable cause determination of arrestees, the release of arrestees whose bonds have been posted, the release of arrestees whose arrests were not supported by probable cause or whose cases had been dismissed and the confirmation that arrest warrants have been in fact carried out and satisfied. The JSSi system appears to have worked quite well during this time frame.

35.    However, in October 2016, in an effort to replace the JSSi so that more government agencies could receive criminal information, the County rolled out a new Computer Tracking System which it denominated as "the Shelby County Integrated Criminal Justice System (iCJIS) Roadmap."   At the heart of this new Computer Tracking System is a software platform created, marketed and implemented for the County by Defendants Tyler Technologies, Inc., Global Tel*Link Corporation, Software AG USA, Inc., Sierra-Cedar, Inc., and Sierra Systems Group, Inc. (hereinafter collectively referred to as "Contractor Defendants") that is colloquially known as "Odyssey" and more formally as the Shelby County Integrated Criminal Justice System (hereinafter "iCJIS").

36.     The County, however, was warned and/or should have had knowledge that the Odyssey system would not work and that the tracking and protection of Jail arrestees could and would be jeopardized if it were adopted.

37.     The County ignored these dire warnings by recklessly choosing to implement the Odyssey system.  Indeed, the County's unreasonably inefficient implementation of the Odyssey system constituted deliberate indifference with respect to Plaintiffs and the Class Members thereafter by causing inmates to linger for days and weeks in the Jail in direct violation of their constitutional rights.

38.     For example, Defendants, acting with deliberate indifference, failed to permit many arrestees to post bonds that were preset by their arrest warrants or civil writs of attachment of the person, causing these persons to be imprisoned for days and even weeks – often over petty crimes such as driving on a suspended license and public intoxication. Moreover, when these arrestees actually were allowed to post bond (and in fact did so), the County nevertheless recklessly failed to acknowledge their bond postings, thus continuing to unlawfully detain them.

39.     Additionally, Defendants, with deliberate indifference, failed and refused to process and arraign arrestees so that their bonds could even be set, causing them to be detained for days and even weeks without a bond setting.

40.     The County further failed to release prisoners whose cases had been dismissed, detaining them for days and weeks before determining that there were court orders dismissing the charges against them.

41.     Lastly, the County's deliberate inaction caused many persons who had been arrested and released to be re-arrested on the same warrant, again in violation of their constitutional rights.

42.     Plaintiffs allege that the County's unreasonably inefficient implementation of its administrative policies, as specifically enforced by the individual Defendants named herein, amounts to a policy of deliberate indifference and/or inaction to their constitutional rights.

**B.    The County Establishes an IT Steering Committee that is Told the Odyssey Software Will Not Work.**

43.     The County formed an IT Steering Committee from the Shelby County Criminal Justice Coordinating Council to study an overhaul of the JSSi Computer Tracking System.  JSSi tracked the initiation and disposal of over 28,000 criminal cases per year. The selection and implementation of its replacement system constitutes a custom, policy or practice in that the Defendants made a deliberate choice to follow a course of action made from among various alternatives, and the Defendants were the officials responsible for establishing the final policy with regard to implementing a competent and efficient Computer Tracing System.

44.     The IT Committee established an iCJS Executive Committee of which Defendant Oldham was a member.  The IT Committee received request for proposals from a number of independent contractor software vendors, including one or more of the Contractor Defendants. One or more of the Contractor Defendants promoted to the County the purchase and implementation of its Odyssey Case Management System, claiming that it could provide a fully integrated court and justice solution with up to date information.

45.      Upon information and belief, Defendant Oldham and the County received information from various members of the IT Steering Committee that the Odyssey software was not compatible with the needs of the Computer Tracking System and would not be appropriate. For example, Criminal Circuit Court Judge Lee Coffee told this committee that the Odyssey Case Management platform would simply not work well and that another solution should be sought out.

46.     As a result, Defendant Oldham and the County were expressly on notice that Odyssey was incapable of serving as a proper Computer Tracking System.  Indeed, several other counties around the country have experienced significant problems with One or more of the Contractor Defendants' Odyssey.

47.     In 2011, Ector County of Odessa, Texas experienced data loss and other significant problems with Odyssey; in fact, these problems were so significant that it withheld payment from Defendant Tyler Tech. In 2011, Merced County, California experienced a breakdown in communications between the criminal court and the jail which were caused by Odyssey.  Likewise, in 2014, Cameron County, Texas also experienced significant problems with its tracking of inmates caused by Odyssey.

48.     Lastly, earlier this year, Alameda County, California's Odyssey caused havoc with its criminal justice system.

49.     Defendant Tyler Tech and/or the other Contractor Defendants knew or should have known that Odyssey and the iCJIS, as implemented, were not a good fit for the County's needs. Specifically, upon information and belief, Defendant Tyler Tech's Odyssey is a platform that, in order to be successful, must be perfectly compatible with the other aspects of the government entity's system and the other iCJIS components were not compatible with the Tyler Tech components.

50.     Instead of altering Odyssey to conform to the government entity's system, Defendant Tyler Tech and/or one or more of the other Contractor Defendants attempted to "shoehorn" the government entity's system to Odyssey in order to "make it fit."  One or more of the Contractor Defendants did so in order to save money that would require significant custom

changes to Odyssey.  It is this "one size fits all approach" that caused the massive and disturbing problems with the County and the Jail as described below.

51.     In spite of the severe concerns regarding Odyssey's implementation, the County failed to adequately test the system despite having been apprised of the necessity of doing so.

**C.    The Contractor Defendants Negligently Integrate Odyssey in a Manner that Leads to Computer Tracking System Miscues and Negligently Supervises Its Employees and the County's Employees.**

52.     On July 22, 2013, Defendant Tyler Tech and the County entered into a Contract (the "Contract") which was self-described a "Contract … for Court Management System."  The Contract denominated Defendant Tyler Tech as a "Provider" of software and case management systems, stating that "All Services by the PROVIDER will be performed in accordance with the generally accepted business practices and standards prevalent in PROVIDER'S industry" and that "PROVIDER certifies that it presently has adequate qualified personnel to perform all Services required under this Contract."

53.     As a result, Defendant Tyler Tech was clearly engaged in the provision of services for which Tennessee's "economic loss doctrine" has no application. *See Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 922 (W.D. Tenn. 2010) (holding that the economic loss doctrine does not apply to the provision of services, stating "Tennessee Court of Appeals has since implicitly restricted the economic loss doctrine to claims involving products liability or the sale of goods"); *Tan v. Wilbur Smith Assoc.*, Case No. 2:09-cv-25, 2011 U.S. Dist. LEXIS 86433 at *(E.D. Tenn. Aug. 4, 2011) ("the Court agrees that the economic loss rule is applicable to the sale of goods, but does not extend equally to contracts for the provision of services. Therefore, the rule is inapplicable to the instant case, which concerns a contract for services"); *N5ZX Aviation, Inc. v. Bell*, NO. 3-11-0674, 2011 U.S. Dist. LEXIS 131256 at *11 (M.D. Tenn. Nov. 14, 2011) ("Although the Tennessee Supreme Court has said that the Economic Loss Doctrine is implicated in products

liability cases when a defective product damages itself without causing personal injury or damage to other property, federal courts applying Tennessee law have declined to extend the Economic Loss Doctrine beyond cases involving the sale of goods. Thus, the Economic Loss Doctrine does not bar claims based upon breach of warranties, negligent misrepresentation; fraud; conversion; fraud in the inducement, or claims under the TCPA") (citations omitted).

54.      Defendant Tyler Tech did not simply undertake to install the Odyssey software and then call it a day. To the contrary, Defendant Tyler Tech duties undertook the successful integration of Odyssey in connection with the replacement of the County's entire Computer Tracking System, as the Contract expressly stated:

> This Statement of Work covers the replacement of the Shelby County's in-house developed Court Case Management System, JSS. In conjunction with the replacement of JSS, Shelby County will also be replacing JMS – its current Jail Management System used by the Jail and IMS – the current Inmate Management System used by the Correction Center. The current JMS/IMS/JSS systems are tightly integrated with a custom written interface. … These systems will be so integrated that a single system will not be able to go live without data exchanges in place from other iCJIS systems.

55.      Thus, Defendant Tyler Tech knew that the successful integration of Odyssey was essential for the full Computer Tracking System to be operational so that, among other things, inmates would not become "lost" in the Shelby County Jail and that their booking numbers, charges, bonds and other information would appear at all stages of their incarnations in the Computer Tracking System.

56.      The Contract's Statement of Work further contained a section titled "Phase 3 – System Testing," which stated, in pertinent part, "Special attention should be given to this activity. Best practice traditionally has been to treat this activity as a mock go live, simulating the upcoming milestone go live event."

14

57.     The Contract's Statement of Work also stated: "The goal for end user acceptance testing is a full end to end test cycle. This testing will verify that all aspects of the project . . . are working seamlessly." Appendix A to this scope of work is a "Project Schedule" which shows this "User Acceptance Testing" as a step to be completed before even training begins. In effect, under the Contract, the County and Defendant Tyler Tech should have fully tested the Odyssey System prior to switching away from JSSi to iCJIS.

58.     Defendant Tyler further undertook the duties of training and supervising the County's employees with respect to Odyssey and its functionality with the iCJIS system. Defendant Tyler failed to properly train and supervise these employees.

59.     Defendant Tyler Tech did not properly integrate Odyssey with the Computer Tracking System and did not properly train County employees so that the Computer Tracking System would work properly, thus causing the wrongful conduct alleged herein. Further, Defendant Tyler Tech failed to properly test Odyssey before the County implemented Odyssey.

60.     On information and belief, the other Contractor Defendants had substantially similar contractual obligations either to Shelby County or as subcontractors for the County's top-level contractors.[1]

61.     On information and belief, the County intentionally cancelled the testing phase of implementation along with other aspects of the implementation process in order to save money.

62.     Defendant Moore and the County were aware that Odyssey was not ready to "go live" immediately prior to its implementation.

---

[1] All Contractor Defendants other than Tyler Tech have been identified as comparative tortfeasors by one or more of the Contractor Defendants.

63.     In fact, Defendants, individually or collectively, made the determination to defer implementation of the Odyssey System just a few months prior because they knew it was not ready.

64.     The decision to implement Odyssey in light of these concerns also constitutes a custom, policy or practice in that the Defendants made a deliberate choice to follow a course of action made from among various alternatives *in light of the known concerns about Odyssey*, and the Defendants were the officials responsible for establishing the final policy with regard to implementing a system adequate to protect the constitutional rights of the public and pre-trial detainees.

**D.     Defendants GTL, Software AG and Sierra-Cedar negligently failed to comply with their duties to Plaintiffs in connection with the County's Integrated Criminal Justice System, thereby materially contributing to the violations of Plaintiffs' rights.**

65.     In its Twelfth Affirmative Defense, Defendant Tyler Tech adopts and relies upon the doctrine of comparative fault and asserts that the negligence, acts or omissions of Defendants GTL, Software AG and Sierra-Cedar, among others, should be considered in reducing the liability of Defendant Tyler Tech by the percentage of fault attributable to Defendants GTL, Software AG and Sierra-Cedar in accordance with the comparative fault principles enunciated in *McIntyre v. Balentine*.  (*See* Defendant Tyler Technologies, Inc.'s Original Answer and Affirmative Defenses to Third Amended Class Action Complaint, Case 2:16-cv-02907-SHM-tmp, Dkt. No. 122, filed 11/28/18 at p. 18, ¶ 12).

66.     On information and belief, and on the basis of the allegations contained in Defendant Tyler Tech's Twelfth Affirmative Defense, Plaintiffs believe that Defendants GTL, Software AG, and Sierra-Cedar entered into contractual relationships with the County in connection with the County's Integrated Criminal Justice System and, in doing so, undertook the same or substantially similar duties to Plaintiffs as those undertaken by Defendant Tyler Tech.

67.     Specifically, on information and belief, and relying upon Tyler's Responses and Objections to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents, Defendant GTL entered into a contract with the County to implement, support and maintain an Offender Management System ("OMS") for the Sheriffs' Office Jail and the Shelby County Correction Center.  Defendant GTL did not properly implement, support and maintain OMS and did not properly train County employees so that OMS would work properly, thus causing the wrongful conduct alleged herein, including, but not limited to, the mass over-incarceration alleged herein and the associated violations of the Plaintiffs' constitutional rights and other damages.

68.     On information and belief, and relying upon Tyler's Responses and Objections to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents, Defendant Software AG entered into a contract with the County to implement, support and maintain an Info Hub Architecture Software in support of the County's Integrated Criminal Justice System. Defendant Software AG did not properly implement, support and maintain the Info Hub Architecture Software and did not properly train County employees so that the Info Hub Architecture Software would work properly, thus causing the wrongful conduct alleged herein, including, but not limited to, the mass over-incarceration alleged herein and the associated violations of the Plaintiffs' constitutional rights and other damages.

69.     On information and belief, and relying upon Tyler's Responses and Objections to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents, Sierra-Cedar had responsibility for the implementation portions of the County's Integrated Criminal Justice System's "information hub" that transmitted information from one Integrated Criminal Justice System subsystem to another (for example, from the jail to the courts and vice versa).  Defendant Sierra-Cedar did not properly implement the County's Integrated Criminal Justice System's

"information hub" and did not properly train County employees so that the "information hub" would work properly, thus causing the wrongful conduct alleged herein, including, but not limited to, the mass over-incarceration alleged herein and the associated violations of the Plaintiffs' constitutional rights and other damages.

70.     On information and belief, and relying upon "Sierra-Cedar, Inc.'s Answer to Plaintiffs' Fifth Amended Class Action Complaint, Sierra Systems had responsibility for the implementation portions of the County's Integrated Criminal Justice System's "information hub" that transmitted information from one Integrated Criminal Justice System subsystem to another (for example, from the jail to the courts and vice versa).  Defendant Sierra-Cedar did not properly implement the County's Integrated Criminal Justice System's "information hub" and did not properly train County employees so that the "information hub" would work properly, thus causing the wrongful conduct alleged herein, including, but not limited to, the mass over-incarceration alleged herein and the associated violations of the Plaintiffs' constitutional rights and other damages.

E.     **Ignoring these Warnings, the Sherriff and the County Adopt and Defendants Moore, McGhee, and Hammons Implement the Odyssey System and the Violation of Arrestees' Rights Ensues.**

71.     Notwithstanding the serious storm warnings described herein, Defendant Oldham and the County determined nevertheless to contract with Defendant Tyler Tech to install and implement the Odyssey Case Management System.  Specifically, on November 1, 2016, Defendants Oldham, Moore, McGhee and Hammons terminated the Jail's use and reliance on JSSi and began to record all arrest and inmate activity by hand. Then, on November 7, 2016, Defendants Oldham, Moore, McGhee and Hammons went "live" with the Odyssey Case Management System.

72.     Immediately thereafter, the Class Members as defined below, became subject to a Computer Tracking System that could not and would not properly track their arrest records and

criminal cases, forcing them to become "lost" in the Jail.  On November 15, 2016, General Sessions

Criminal Court Judge Anderson characterized the County's failures as follows:

> I apologize for the system. I don't know what the problem is. Nobody can tell me what the problem is, where the problems are. That's just a terrible example of the problems we are having.  You know I'm not an IT person, I don't understand how computers operate. It's not my job.  My job is to make sure that people who are charged with criminal offenses have their day in court in a timely manner, have a bond set & get the opportunity to process their selves thru the system.  They're just charged not convicted.  I'm not talking about a single person that's been convicted.  Every single person I'm talking about that comes in my court initially are only charged with criminal offenses.  Nobody has been convicted of a thing.  You called this a debacle?  The way I've seen it in the last week and a half, that's the best way I can come up with.  They are doing the best they can but much of this should have been anticipated.  I've been told this company has been implemented in numerous big cities across the country.  I can't believe we're the first ones to have these terrible problems.  And one person being in jail too long is bad enough, but 15, 20, 30.  I went down last weekend, last Thursday before the holiday and I walked thru the jail and went to a booking session.  He was sleeping on the floor, people sleeping in chairs. There was no movement. It was terrible.  I mean it was unbelievable. I thought how could this be happening in Shelby County where our system has flowed so smoothly since I've been a judge.  Frankly, it's worked very well for years.  We expected problems but we didn't expect problems of this magnitude, where people remain and languish in jail without even getting a bond set, without having court appearance set and us not even knowing how to go about solving the problem.  ...how do you lose somebody in the system for three weeks...That's an excellent question. I'm going to try to get answers to that. I'm not able to get answers to get.  Kinda like running into one wall after another, anytime I ask questions "how did this happen" they said it's not our fault, it was their fault. I go the next person, it wasn't our fault.  We never get to the bottom line, we never get to the end person that the buck stops at.  And the only thing I can think of it's the computer system.  Everybody says it's the comp. system.  Well, fine, but I've got to get people into court.  I understand that answer, you can only do the best you can do and they obviously did not anticipate problems of this magnitude you've heard.  Every single group that has been asked has thrown out 6, 7, 8, 9 different problems.  Now that takes time obviously. The question I suppose is why hasn't more of this anticipated on the front end before.  In a city this size, in a county this size, in a magnitude of having a

19

computer system that's archaic but worked fine before fine.  And a computer system that's going to be the way of the future doesn't talk to the archaic one.  They should have anticipated that this is going to be a problem.  Maybe it's like you speak English and I speak French.  We are two people but you don't understand French.  It's not helping me to talk to you.  That's what I am hearing in there. ...rights being violated & the Constitution?  Well, it's very simple, it's what I do for a living, that the oath I took, what I have to do is to make sure the criminal justice system flows.

73.    The  County  and  Defendants  Oldham,  Moore,  McGhee  and  Hammons acknowledged these problems and their protracted indifference to the problem but took no action to terminate the current method of tracking Plaintiffs and the Class Members so as to prevent the wrongful detentions.

74.    Shelby County Sheriff's Department representative Earle Farrell gave an interview on November 4, 2016, days after implementation, in which he acknowledged that the intake process  was  taking  six  times  as  long  as  usual. (Plaintiffs  contend  that  this  was  a  gross understatement.)

75.    Despite this acknowledgement of the problem Mr. Farrell stated: "I guess my advice to anybody out there having a delay getting out of jail: don't be arrested. There's an idea for you."

76.    One or more of the Defendants have asserted that they should have returned to the use of JSSi following the flawed implementation of Odyssey but did not do so for budgetary reasons.

77.    As a result, the County had no effective ability to determine and ensure: (i) that arrestees with pre-set bonds in their arrest warrants or other instruments authorizing detention could post such bonds and be released, (ii) that no arrestee was detained longer than forty-eight (48) hours prior to probable cause determination,  (iii)  that those  arrestees who had in fact posted bond were released, (iv) that those arrestees who had their charges against dismissed were released,

20

and/or (v) that those who had been arrested and released would not be re-arrested on the same warrant.

78.     On information and belief, the above-referenced problems continue to persist as of the date of filing of this pleading.

79.     The decision not to implement a return to JSSi, a system of using paper records or to implement some alternative set of procedures to ensure compliance with constitutional requirements in light of the serious and well-known flaws with Odyssey also constitutes a custom, policy or practice in that the Defendants made a deliberate choice to follow a course of action made from among various alternatives and the Defendants were the officials responsible for establishing the final policy with regard to implementing a system adequate to protect the constitutional rights of the public and pre-trial detainees. As a result, Defendants Oldham, Moore, McGhee and Hammons were each aware of the unlawful detentions that were taking place at the hands of their subordinates and knowingly acquiesced in this unconstitutional conduct.

80.     In or around September 2018, Defendants Oldham, Moore, McGhee and Hammons were replaced in their official capacities as Shelby County Sheriff, Chief Jail Director, Assistant Chief of Jail Security, and Assistant Chief of Jail Programs by Defendants Bonner, Fields, Hubbard, and Ward, respectively.  Defendants Bonner, Fields, Hubbard, and Ward are named in this Fifth Amended Complaint solely in their official capacities as the successors of Defendants Oldham, Moore, McGhee and Hammons in connection with the relief sought herein, including the declaratory and injunctive relief sought from their respective offices.

**F.      Violations of the named Plaintiffs' Rights.**

      **i.      Plaintiff Turnage is Arrested and Detained for 80 Hours on an Attachment**

**Arising from a Civil Debt of $301.25**

81.     On the morning of February 18, 2017, nearly four months after the implementation of the Odyssey System, Plaintiff Turnage was driving eleven (11) miles over the speed limit in Hardeman County, Tennessee. He was pulled over by the Hardeman County Sheriff's Department. Their computer system revealed a holder for Plaintiff Turnage originating from Shelby County, Tennessee.

82.     The Hardeman County deputies took Plaintiff Turnage into custody to await retrieval by deputies from the Shelby County Sheriff's Department. Approximately five (5) hours later, Shelby County deputies arrived and transported Plaintiff Turnage to the Shelby County Jail. They showed him a copy of an Attachment *Pro Corpus* and advised him that his bond was five hundred dollars ($500.00), that he should have someone standing by to post it, and that as soon as he was assigned an RNI number he would be released.

83.     Plaintiff Turnage was permitted to use his cell phone to call a friend in Memphis, who was waiting at the Shelby County Jail to post bond in the amount of five hundred dollars before Plaintiff Turnage arrived.

84.     Plaintiff Turnage's record of arrest shows that he was arrested under T.C.A. § 29-9-102 on an instrument originating on September 25, 2014 from Division 6 (a civil division) of Shelby County General Sessions Court.

85.     A cursory review of the Shelby County General Sessions Court docket report for the case of *Baptist Minor Medical Centers, Inc. v. Scott M. Turnage, Docket No. 1577937* (hereinafter referred to as "the Turnage Collections Matter") reveals that an Attachment *Pro Corpus* was issued on September 24, 2014.

86.     The face of the Attachment *Pro Corpus* carries a five hundred $500.00 bond.

22

87.     A further review of the record in the Turnage Collections Matter reveals that Plaintiff Turnage was originally sued in a collections action on a statement of sworn account for three hundred one dollars and twenty-five cents ($301.25) and that a judgment in favor of Baptist Minor Medical Centers, Inc. in that amount plus court costs was entered. Years later, after Plaintiff Turnage ostensibly failed to appear for a subpoena in aid of execution and *scire facias*, the General Sessions Court issued the Attachment *Pro Corpus*, set bond at five hundred dollars ($500.00), and entered an expiration date for the Attachment *Pro Corpus* in the General Sessions Court docket of September 24, 2015, a year and a half prior to Plaintiff Turnage's arrest.

88.     Despite the fact that the County was clearly in possession of a copy of the Attachment *Pro Corpus*, having presented it to Plaintiff Turnage upon his arrest, and despite Plaintiff Turnage's ability to post bond immediately, Plaintiff Turnage was not permitted to post bond and depart.

89.     Plaintiff Turnage lingered in the intake area of the Shelby County Jail for approximately twenty-four (24) hours. During that time he was compelled to sit upright in a hard plastic chair for virtually the entire period. He was never permitted to lie down and rarely permitted to move enough to gain any form of physical comfort. The lights were never turned out or dimmed, and he was deprived of sleep for this entire period.

90.     Instead of accepting his bond and releasing him, he was transferred to a dormitory floor with criminal detainees where he remained for more than two additional days. During this time he periodically asked guards to advise him of his court date or when he could post bond. Eventually, a guard advised him that he would never get out without the assistance of an attorney because he did not have a court date.

91.     Mr. Turnage retained the aid of two separate attorneys, neither of whom could determine on what basis he was even being held.

92.     Mr. Turnage was finally released approximately eighty (80) hours after his initial arrest with no explanation and having posted no bond.

93.     He was advised of a court date, but upon appearing with his counsel discovered that his name was not on the docket.

94.     A further review of the General Sessions Civil Division record indicates that at some point Judge Lonnie Thompson of Division 6 of Shelby County General Sessions Court issued an order to release Plaintiff Turnage. The file contains emails between various employees of the County. The order states on its face as follows:

> IT APPEARING TO THE COURT that Mr. Scott Turnage is being detained in the Shelby County Jail under Booking Number 17141078, having been arrested on an Attachment Prop Corpus issued by this Court on September 24, 2014 on General Sessions Civil Warrant Number 1577937 and;
>
> IT APPEARING TO THE COURT that the Attachment Pro Corpus issued on Civil Warrant Number 1577937 was to expire one year from issuance (September 24, 2015);
>
> IT IS NOW ORDERED, ADJUDGED and DECREED that the authorities at the Shelby County Jail shall immediately release Mr. Scott M. Turnage, Booking Number 15141078 with no bond being posted

95.     The instrument bears the signature of Judge Lonnie Thompson and is undated.

96.      In effect, Plaintiff Turnage was jailed for eighty (80) hours on an instrument that should have already been purged from the Odyssey System and that bore a bond of five hundred dollars ($500.00) on its face over an underlying debt of three hundred one dollars and twenty-five cents ($301.25.).

97.     Plaintiff Turnage's arrest, detention in jail, denial of access to the bail system, and inhumane treatment while in detention constitutes a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. This deprivation of Plaintiff Turnage's constitutional rights began three months and eighteen days after the County and all Defendants were on notice of Odyssey's failures and the systematic deprivation of the constitutional rights at issue in Mr. Turnage's case.

### ii.     Plaintiff Brown is Detained for a Week Following the Dismissal of His Charges

98.     On November 6, 2016, Plaintiff Brown was arrested on a petition for revocation of his suspended sentence and taken into custody at the Jail.  On November 7, 2016, Judge Mark Ward entered an order dismissing these charges.  However, Defendants Oldham, Moore, McGhee and Hammons did not release Plaintiff Brown from the Jail until November 14, 2016, a full seven days after these charges were fully dismissed.  Plaintiff Brown was forced to endure harsh conditions, which included sleeping on the floor due to overcrowded conditions.

### iii.    Plaintiff Tate is Jailed After Being Refused the Ability to Post a Pre-Set Bond of $100.00

99.     On November 6, 2016, Plaintiff Tate was arrested and incarcerated in the Jail because he failed to appear at a court date with respect to a charge of driving while his license was suspended or revoked.  His arrest warrant contained a pre-set bond of $100.00. At the time of his arrest, Plaintiff possessed $255.00 in cash and, therefore, Plaintiff Tate instructed officers at the Jail to deducted $100.00 from his property so as to post bond and secure his release.  Plaintiff Tate was repeatedly told that he was not in the Computer System and thus that he could not post bond. Plaintiff Tate lingered in the Jail until November 11, 2016, at which time Defendants finally allowed him to post bond and released him.

### iv.    Plaintiff Melton is Detained for Four Days after the Entry of an Order for his Release

100.    On November 10, 2016, Plaintiff Melton was arrested on a criminal information for a misdemeanor charge of possession of a controlled substance.  On November 14, 2016, Plaintiff Melton's charges were dismissed by the Judge Blackett for time served by entry of court order. However, Plaintiff Melton was not released from the Jail on November 14.  Instead, despite Plaintiff Melton's pleas for release, Defendants Oldham, Moore, McGhee and Hammons did not release Plaintiff Melton at that time nor for four more days thereafter, based on their subordinates claims that his order was not in the Computer System.  Finally, on November 18, 2016, Plaintiff Melton was released from the Jail.

### v.    Plaintiff Powell is Held for Two Weeks Without Access to Bail or Court

101.    On November 1, 2016 Plaintiff Powell was stopped by officers of the Memphis Police Department for a broken windshield. Upon stopping Plaintiff Powell, officers ran his name through their computer system which indicated that there was an active warrant for his arrest on the charge of being a convicted felon in possession of a weapon. Based on that information, the officers arrested Plaintiff Powell and took him to the Shelby County Jail. He was booked into the jail, but Plaintiff was not notified of his charges or presented before a judge or magistrate.

102.    Plaintiff Powell demanded to be taken before a judge and was taken to criminal court, but upon arrival he was returned to the jail because the Odyssey System did not reflect any pending case against Plaintiff Powell. After eleven (11) days in jail Plaintiff Powell's family retained an attorney to seek his release. A criminal court judge instructed that Plaintiff Powell be brought before him and ordered the jailers to remedy the situation. Plaintiff was then advised that his bond had been preset on the original arrest warrant and he was notified of the amount. His

family posted the bond the same day, but even after posting bond, Plaintiff Powell was detained for an additional two days prior to release.

### vi.     Plaintiff Burgess is Arrested on an Already Satisfied Warrant

103.     Plaintiff Burgess was cited for driving with a suspended license on August 6, 2016. He was arraigned on September 9, 2016 and afforded an opportunity to obtain the reinstatement of his license and have the charges dismissed. The matter was set for compliance on October 25, 2017. On October 25, 2016 Plaintiff Burgess failed to appear, and Judge Gerald Skahan issued a bench warrant for Plaintiff Burgess' arrest. On November 16, 2017, Plaintiff Burgess appeared in court with his attorney, and the Court ordered the bench warrant recalled and dismissed the charges against him at the request of the state, Plaintiff Burgess having obtained reinstatement of his driver's license.

104.     The Odyssey System, however, did not reflect the fact that the warrant was recalled. Plaintiff Burgess was re-arrested, ostensibly on the same putative bench warrant. After lingering for twenty-four (24) hours in intake, Plaintiff Burgess was transferred to a dormitory floor where he remained for days while his family worked with his attorney to have him released. Judge Gerald Skahan, upon being notified of Plaintiff Burgess' re-incarceration, promptly ordered his release.

105.     This, however, did not resolve Plaintiff Burgess' dilemma. The recall of the putative bench warrant was not entered into the Odyssey System for an additional four (4) months on March 16, 2017, meaning that Plaintiff Burgess remained subject to the fear of unlawful arrest, harassment and detention for that entire period.

### vii.    Plaintiff Boyd is Detained for Six Days Without a Probable Cause Determination Followed by Further Overdetention After Posting Bond

106.     Plaintiff Boyd was arrested on November 2, 2016 without a warrant and was subsequently booked into the Shelby County Jail at 201 Poplar. Plaintiff Boyd lingered in custody

until November 9, 2016 before the Odyssey System even reflected that Plaintiff Boyd was booked into the jail. Only after this fictitious date on which "Booking Occurred" according to Odyssey was Plaintiff Boyd afforded a probable cause review. As a direct result, Plaintiff Boyd's case was prevented from a bond review for six days, when his bond was set and promptly posted.

107.     As though this blatant violation of Plaintiff Boyd's absolute right to a probable cause determination within forty-eight (48) hours of a warrantless arrest was not a sufficient violation of Plaintiff Boyd's rights, once his bond was posted Plaintiff Boyd was unlawfully detained a further two days prior to his release. Plaintiff Boyd's charges were dismissed at his initial court setting.

108.     Plaintiff Boyd and Plaintiff Drain (below) were simultaneously arrested on the same charges and on substantially identical affidavits of complaint.

### viii.     Plaintiff Drain is Detained for Six Days Without a Probable Cause Determination Followed by an Additional Twenty-Five Days of Overdetention

109.     Plaintiff Drain was arrested on November 3, 2016 without a warrant and was subsequently booked into the Shelby County Jail at 201 Poplar. Plaintiff Drain lingered in custody until November 8, 2016 before the Odyssey System even reflected that Plaintiff Boyd was booked into the jail. Only after this fictitious date on which "Booking Occurred" according to Odyssey was Plaintiff Drain afforded a probable cause review. According to the Odyssey System, Plaintiff Drain's bond was set on November 3, 2016, yet he (and those outside the jail trying to locate him) did not learn of this setting or have the opportunity to post it until after the November 8, 2016 date.

110.     As though this blatant violation of Plaintiff Drain's absolute right to a probable cause determination within forty-eight (48) hours of a warrantless arrest was not a sufficient violation of Plaintiff Boyd's rights, Plaintiff Drain was unable to make or receive calls or to receive visitors while in jail because his RNI did not work. Further, due to over detention of hundreds of

others at 201 Poplar, Plaintiff Drain was unable to be placed in a cell or other appropriate holding area with a bed. As a result, he spent four days in the "booking area" with virtually no sleep.

111.    After the November 8, 2016 date on which "Booking Occurred," Plaintiff Drain's friends and family attempted to post his bond, but his bond was refused because, even though the bond was apparently set by a judicial commissioner on November 3, 2016, it did not appear in the clerk's case management software until November 27, 2016.

112.    Even after Plaintiff Drain's bond was posted on November 27, 2016, Plaintiff drain was detained for six or more additional hours before his actual release.

113.    Plaintiff Drain's charges were dismissed at his initial court setting.

114.    Plaintiff Drain and Plaintiff Boyd (above) were simultaneously arrested on the same charges and on substantially identical affidavits of complaint.

### ix.    Plaintiff Allen is Detained for Approximately Eight Days After Being Unable to Post A Pre-Set Bond Because She Was Not Found In The Computer System

115.    Officers arrested Plaintiff Allen, a wife and mother of three young children, in the early afternoon of November 7, 2016, after being pulled over for speeding. When the officer ran her information in the SCSO system it returned a bench warrant issued in July 2016 for her arrest for failure to appear at a July 2016 court date on charges of driving on a suspended license and violation of the vehicle registration law.

116.    Officers immediately took Plaintiff Allen into custody and booked her into Jail East on the same day.  Her bond was pre-set at $500. Jailers advised her that her first court appearance was set for November 8, 2016, the following day. She was able to call her husband who immediately attempted to post her bond so she could be released. Unfortunately, because of the computer system debacle, Plaintiff Allen's husband was unable to post the bond because she did not appear in the jail system.

117.    Plaintiff Allen's husband insisted that the jailers locate a physical copy of the warrant. The jailers, however, advised him that they were unable to find the physical copy of the warrant itself to ascertain the bond amount the "old fashioned" way. In essence, the jailers continued to detain Plaintiff Allen despite the fact that they could not locate either a physical or digital copy of the warrant and the jail system did not reflect any information about her.

118.    On November 8, 2016, the alleged date of her first court appearance, Plaintiff Allen did not appear on the court schedule. As a result, she was not taken before a judge. In fact, she was *never* taken for arraignment during her illegal detention in Jail East.

119.    Though her husband continued to try to post her pre-set $500 bond, Plaintiff Allen remained detained inside Jail East for a total of eight days. During this time, Jail East officials told Plaintiff Allen that she should have been watching the local news as "[t]hey told you not to get arrested right now," a reference to the callous comments of Mr. Earle Farrell, SCSO representative, from days earlier when the significant issues with the jail computer system were first made known.

120.    Finally, on November 15, 2016, Plaintiff Allen's husband was allowed to post the $500 bond and she was released to return home to her young children. On November 16, Plaintiff Allen was officially arraigned. However, on February 22, 2017, all charges against Plaintiff Allen were dismissed.

**G.    Uniform Damages to the Plaintiffs and the Class Members for Loss of Liberty.**

121.    Plaintiffs and the Class Members have sustained damages as the result of the unlawful detentions proximately caused by Defendants' acts and omission.  These damages include two distinct types.

122.    First, having been unlawfully deprived of their liberty, Plaintiffs and the Class Members are entitled to compensatory damages for the loss of "intangible rights" which "redress the denial of free movement and the violation done to [an individual's] dignity as a result of the

unlawful detention, and not the physical and mental injuries arising from the incident." *Rhoades v. Lauderdale County, Tennessee*, No. 2:10-cv-02068-JPM-dkv, 2012 U.S. Dist. LEXIS 13922 at *31 (W.D. Tenn. Sept. 24, 2012), quoting, *Martinez v. Port Auth. of N.Y.*, 2005 U.S. Dist. LEXIS19141, 2005 WL 2143333 at *19 (S.D.N.Y Sept. 2, 2005).

123.    Plaintiffs assert that each named Plaintiff and each Class Member is entitled to $48,000 per day that they were unlawfully incarcerated or unlawfully re-incarcerated (approximately $2,000 per hour) for their loss of liberty. *See Rhoades v. Lauderdale County, Tennessee*, 2012 U.S. Dist. LEXIS 13922 at *32 (awarding $72,000 ($2,000 per hour) to a husband and $72,000 ($2,000 per hour) to a wife who were both unlawfully detained for 36 hours).

124.    Upon information and belief, Plaintiffs anticipate that at least 1000 Class Members were unlawfully detained an average of three (3) days.  As such, Plaintiffs allege that the damages to themselves and the Class defined below is $144,000,000.00.

125.    Second, Plaintiffs and the Class Members are entitled to damages for "tangible injury," including embarrassment, emotion suffering and any physical harm, to be determined by the trier of fact.

126.    Plaintiffs reserve the right to amend this allegation based upon the discovery that will be conducted in this action.

## V.

## CLASS ACTION ALLEGATIONS

127.    The named Plaintiffs bring this action as a Class Action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, and pursuant to Rules 23(b)(1), 23(b)(2) and/or 23(b)(3) defines the class as follows:

> From November 1, 2016 to the present, Plaintiffs, and all of similarly situated persons who were arrested and incarcerated in the Shelby County Jail and who:

31

(i) were previously or will be in the future denied the ability to post bonds that were pre-set,

(ii) were previously or will be in the future detained longer than forty-eight (48) hours prior to probable cause determination and who were or will be either released for lack of probable cause or had or will have criminal bonds set which were or will be posted,

(iii)  were previously or will be in the future detained longer than six hours after posting their required bonds,

(iv) were previously or will be in the future detained longer than six hours after charges against them had been dismissed or it was determined that probable cause did not exist to detain them, and/or

(v) were previously or will be in the future re-arrested on  warrants that had previously been served and satisfied (i.e., were re-arrested on the identical warrant that had been previously served).

Excluded from the Class are the named Defendants, their agents, affiliates, and employees, the Judge assigned to this matter and his or her staff.

128.  **Numerosity.**  The requirements of Rule 23(a)(1) are satisfied in that there are too many Class Members for joinder of all of them to be practicable.  Upon information and belief, these Class Members exceed over 1000 in number.  This Class, as defined above, meets the numerosity requirement.

129.  **Commonality.**  The claims of the Class Members raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2).  These common legal and factual questions, which may be determined without the necessity of resolving individualized factual disputes concerning any Class Member, include, but are not limited to, the following questions:

(i)    Whether the U.S. Constitution protects an arrestee's right to comply with a preset bond and, thus, be released from incarceration.

(ii)    Whether the U.S. Constitution protects an arrestee's right to a timely probable cause determination..

(iii)    Whether the U.S. Constitution protects an arrestee's right to be released from incarceration upon a criminal court's dismissal of the charges against him or her.

(iv)    Whether the U.S. Constitution protects an arrestee's right to be released from incarceration upon posting the required bond.

(v)    Whether the U.S. Constitution protects an arrestee's right to be free from incarceration based upon the same warrant that was previously served and satisfied.

(vi)    Whether the rights alleged to be protected by the U.S. Constitution set forth in issues (i) through (v) above, were clearly established.

(vii)    Whether the acts or omissions of Defendants Oldham, Moore, McGhee and Hammons in connection with adopting and implementing the Odyssey Case Management System were the proximate cause of the constitutional deprivations of Plaintiffs and the proposed Class and/or whether these Defendants' failure to properly train and supervise their subordinates with respect to the Odyssey Case Management System was the proximate cause of the constitutional deprivations of Plaintiffs and the proposed Class.

(viii)    Whether that the County's implementation of its administrative policies amounts to a policy of deliberate indifference and/or inaction to their constitutional rights.

(ix)    Whether One or more of the Contractor Defendants owed an ordinary duty of care to Plaintiffs and the proposed Class that its Odyssey system would operate and

could be operated in a proper manner such that their rights to be released from incarceration would and could be timely honored.

(x)    Whether One or more of the Contractor Defendants breached its ordinary duty of care to Plaintiffs and the proposed Class.

(xi)    Whether One or more of the Contractor Defendants breach of its ordinary duty of care to Plaintiffs and the proposed Class has proximately caused them damages.

130.   **Typicality**.  The claim of the named Plaintiffs is typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3).  For example, the named Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class Members were injured or damaged by the same wrongful practices in which Defendant engaged, namely the failure and refusal to honor their Fourth and Fourteenth Amendment rights secured under the U.S. Constitution.

131.   **Adequacy of Representation.**  The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiffs has a sufficient stake in the litigation to vigorously prosecute their claims on behalf of the Class Members and the named Plaintiffs' interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiffs individually, as distinguished from the other members of the Class, and the relief sought is common to the Class.  Plaintiffs do not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and has no conflict with any other member of the Class.

132.   Further, Plaintiffs have retained competent counsel experienced in class action litigation, including consumer and financial services class actions, to represent them and the Class

Members in this litigation. To wit, Plaintiffs' chosen counsel – Watson Burns, PLLC – has successfully prosecuted class actions in several matters, including, but not limited to, class action suits brought against law firms for charging and collecting unlawful fees and expenses. *See, e.g., Howard et al  v. Wilkes & McHugh, P.A.*, Case No. 2:06-cv-02833-JMP-cgc (W.D. Tenn. Filed 2006) (appointing Watson Burns, PLLC as Class Counsel and ultimately approving $4 million settlement in connection with overcharged legal fee); *Manjunatha A. Gokare, P.C. and Goldstein, Borgen, Dardarian & Ho, P.C. v. Federal Express Corporation, et al.,* Case No. 2:11-cv-2131-JTF-cgc (W.D. Tenn. Filed Nov. 11, 2011) (appointing Watson Burns co-lead class counsel representing nationwide class in breach of contract and RICO claims against international freight shipper alleging overcharging for residential delivery surcharge fees for delivers made to non-residential locations; nationwide class was certified and a settlement of $26 million was approved); *Youngblood v. Linebarger, Goggan, Blair & Sampson, LLP*, Case No. 10-cv-2304 SHM-tmp (W.D. Tenn. filed Mar 10, 2010) (Watson Burns appointed lead class counsel representing plaintiff class of 48,000 delinquent taxpayers against Texas law firm alleging that Linebarger charged and received an unlawful legal fee from tax payers when pursuing property tax collection suits on behalf of the City of Memphis; the class was certified and ultimately settled for $7.4 million); *Ham v. Swift Transportation Co., Inc*., 275 F.R.D. 475 (W.D. Tenn. 2011) (Watson Burns appointed co-lead class counsel representing plaintiff class against national trucking company challenging the testing practices of a commercial truck driving; class-wide settlement case achieved for compensatory damages and debt write off valued in excess of $17 million).

133.    Additionally, Plaintiffs' chosen counsel, Michael G. McLaren of Black McLaren Jones Ryland & Griffee, P.C., has been a lawyer in Memphis, Tennessee, since 1976. Mr. McLaren is a distinguished member of the Tennessee Bar, the Memphis Bar, and the American Bar

Associations. He has been practicing exclusively in the area of civil litigation during his 41-year career. Mr. McLaren graduated from Yale University in 1972 and from Loyola University of Chicago's School of Law in 1976 before beginning practice in Memphis, Tennessee. Mr. McLaren has handled and/or tried thousands of cases during that time period. He has worked exclusively in federal and state civil litigation during his entire career. He has had numerous Tennessee Court of Appeals, Sixth Circuit Court of Appeals, and Federal Circuit Court of Appeals opinions, too numerous to mention here, during his career. Mr. McLaren was a member of the International Association of Defense Counsel for 20+ years and has taught at that organization's week-long Trial Advocacy Academy. He is s a frequent lecturer on matters involving civil litigation. Mr. McLaren has also had significant experience in class action matters, representing both plaintiffs and defendants, some of which are as follows:

(a)    In a class action matter pending before Judge Mays, Mr. McLaren represented three separate law firms, serially, in the matter of *Landers, et al. v. Morgan Asset Management, Inc., et al.* His charge was to resolve the dispute between plaintiff's attorneys involved with respect to their fees. He successfully resolved all issues, by representing the firms one by one.

(b)    In a class action matter in the Western District, Mr. McLaren was defense counsel in a matter involving a lawsuit between a homeowners' association and his client, Wells Fargo Development Corp., where the residents in a condominium complex complained of construction defects.

(c)    Mr. McLaren was a counsel in a class action matter involving a case against U-Haul Co. of America (Amerco) involving failure of tires in the F-150 pickup truck case.

36

(d)     Mr. McLaren was likewise involved as defense counsel in the litigation involving a chemical substance which potentially caused bladder cancer, brought by workers against his client, Ciba Geigy Novartis. The matter was successfully resolved, but only after suit was brought, notices were given, extensive negotiations were held, plaintiffs were interviewed, and elaborate financial and future-health monitoring was resolved.

(e)     Mr. McLaren also represented the plaintiffs in a class action matter in state court in Memphis, Tennessee, regarding noise abatement in the airport area.

(f)     As general counsel of Wright Medical, a position he held for approximately 13 months, Mr. McLaren handled potential class action lawsuits involving certain orthopedic devices and claims brought on behalf of plaintiffs for alleged failure of those devices.

Mr. McLaren brings significant tort and contract experience to the table, including too many matters to be listed here, professional liability (both defense and plaintiff oriented), and matters that have been aired in both state and federal court for the last 41 years. He has had jury trial experience in state and federal court, including practice in Louisiana; Texas; Arkansas; Mississippi; Tennessee; and all three Tennessee Federal districts, West Tennessee, Middle Tennessee, and East Tennessee, in all types of diverse matters, such as coverage issues, contractual disputes, and tort cases including personal injury claims. He has participated in hundreds of mediations, including many in the United States District Court for the Western District of Tennessee.

134.    On June 29, 2018, this Court, after considering all of the factors set forth at Fed. R.Civ.P. 23(g)(1)(A), appointed Frank Watson, Bill Burns, and Michael McLaren as interim class counsel. (Dkt. 101).

135.    **Predominance and Superiority.**  All of the requirements for Rule 23(b)(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation.  In particular, the Plaintiffs and the Class Members have suffered a common cause of injury, namely the violation of their due process rights, caused by the common course of conduct engaged in by Defendants. The Class Members' legal claims arise exclusively under Section 1983 and Tennessee law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof. Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable.  The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases.  Additionally, individual litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation. *Zuccarini v. Hoechst (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326, 335 (E.D. Mich. 2001) ("Differences in damages sustained by individual class members does not preclude a showing of typicality nor defeat class certification"); *Bremiller v. Cleveland Psychiatric Inst.*, 898 F. Supp. 572, 579 (N.D. Ohio 1995) ("The above-cited caselaw demonstrates that the existence of individual damages is not enough to defeat class certification on the commonality element.

Therefore, the court declines to decertify the class on this basis") As a result, the desirability to concentrate litigation in this forum is significantly present.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance of a class action.  Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper.

<div align="center">

**VI.**

**<u>CAUSES OF ACTION</u>**

</div>

**COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST DEFENDANTS OLDHAM, MOORE, McGHEE, HAMMONS IN THEIR INDIVIDUAL CAPACITIES)**

136.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

137.    As alleged above Defendants Oldham, Moore, McGhee and Hammons, acting under color of state law and with deliberate indifference, violated the rights of Plaintiffs and the Class Member secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

138.    It is clearly established that: (i) the failure and refusal to permit an arrestee to post the criminal bonds pre-set in his arrest warrant constitutes the unlawful seizure and detention of the arrestees, (ii) the failure and refusal to afford arrestees a probable cause hearing within forty-eight (48) hours of arrest constitutes an unlawful seizure and detention of the arrestee, (iii) the failure and refusal to release an arrestee who has in fact his posted required bond constitutes and unlawful seizure and detention of the arrestee, (iv) the failure and refusal to release an arrestee who has had the charges against him dismissed, constitutes an unlawful seizure and detention of the arrestee and/or (v) the detention of an arrestee on a warrant that has been served and previously satisfied (*i.e.*, the arrest of a person on the same warrant twice) constitutes an unlawful seizure and detention of the arrestee.  These unlawful detentions were without any legal justification.  *Allen*

<div align="center">39</div>

*v. Thompson*, 14 F. Supp. 3d 885, 896 (W.D. Ky. 2014) ("detaining someone without any justification violates a clearly established right to be free from unlawful detention"). It would be clear to any reasonable person – let alone any public law enforcement officer – that these actions are wrongful and unconstitutional. As a result, Defendants Oldham, Moore, McGhee and Hammons are not entitled the any affirmative defense of "qualified immunity" for the individual liability.

139.    Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by adopting and implementing the Odyssey Case Management System.

140.    To the extent that Defendants Oldham, Moore, McGhee and Hammons claim their subordinates are the actual persons who wrongfully detained Plaintiffs and the Class Members and that they were not personally involved themselves, Defendants Oldham, Moore, McGhee and Hammons at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of these offending subordinates.  Indeed, almost immediately after Odyssey went live, Defendants became aware of the defects in the Computer Tracking System that were causing the unlawful detentions. Nevertheless, they each knowingly acquiesced in the continued use of the Odyssey Case Management System.  As a result, Defendants Oldham, Moore, McGhee and Hammons are personally liable under Section 1983.  *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") (quoting, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983)).

141.    In the alternative, Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, failed to properly train and/or supervise their subordinates with respect to

40

the Odyssey Case Management System, which proximately caused the above described constitutional rights violations.

142.    In the alternative, Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by failing to implement remedial measures to rectify the systematic constitutional rights violations outlined above after being placed on notice of the actual failure of the Odyssey Case Management System.

**COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST DEFENDANTS BONNER, FIELDS, HUBBARD, WARD IN THEIR OFFICAL CAPACITIES AND, THUS AGAINST SHELBY COUNTY)**

143.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

144.    As alleged above, Defendants Bonner, Fields, Hubbard, and Ward, acting under color of state law, violated the rights of Plaintiffs and the Class Members secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.  Further, Shelby County, acting by and through its policymakers, officers, and agents, and acting under color of state law, violated the rights of Plaintiffs and the Class Members secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

145.    It is clearly established that: (i) the failure and refusal to permit an arrestee to post the pre-set bond constitutes the unlawful seizure and detention of the arrestee, (ii) the failure and refusal to afford arrestees a probable cause hearing within forty-eight (48) hours of arrest constitutes an unlawful seizure and detention of the arrestee, (iii) the failure and refusal to release an arrestee who has in fact posted his required bond constitutes and unlawful seizure and detention of the arrestee, (iv) the failure and refusal to release an arrestee who has had the charges against him dismissed, constitutes an unlawful seizure and detention of the arrestee and/or (v) the

incarceration of an arrestee on a warrant that has been served and previously satisfied (*i.e.*, the arrest of a person on the same warrant twice) constitutes an unlawful seizure and detention of the arrestee.

146.    These unlawful detentions were without any legal justification.

147.    The huge and unreasonable delays in the release from custody of Plaintiffs and the Class were not the result of necessary administrative procedures.  To the contrary, no matter how "reasonable" the County's criminal administrative policies may appear on their face, the implementation of those policies, through the defective Odyssey system, constitutes a policy of inaction and/or policy amounting to deliberate indifference to the rights of Plaintiffs and the Class Members. Because Plaintiffs and the Class challenge the County's implementation of its criminal administrative policies *in toto*, Plaintiffs and the Class Members are entitled to have their claims against the County tried to a jury. *See*, *Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004) (in Section 1983 action where arrestees were not released until 29 hours after their charges were dismissed, court held that county's summary judgment must be denied, where plaintiffs alleged that the implementation of the county's administrative procedures *in toto* amount to deliberate indifference).

### COUNT 3 – NEGLIGENCE (AGAINST DEFENDANT TYLER TECH)

148.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

149.    As a software company specializing in the development and installation of criminal court and jail inmate tracking computer systems, Tyler Tech owed a duty of reasonable care to Plaintiffs and the Class Members to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored.

150.    These duties arose when Defendant Tyler Tech undertook to provide services in connection with the software implementation in its Contract with the County "for Court Management System."

151.    Defendant, however, breached these duties with its development and installation of Odyssey for the Jail.

152.    As a direct and proximate result of the negligence of Tyler Tech, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Tyler Tech.

**COUNT 4 – NEGLIGENT TRAINING AND SUPERVISION (AGAINST TYLER TECH)**

153.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

154.    Tyler Tech had a duty train and supervise its own employees and undertook a duty to train and supervise the County's employees in connection with the integration and operation of the Odyssey Case Management System, so as to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored.   *Acuity v. McGhee Eng'g, Inc*., 297 S.W.3d 718, 734 (Tenn. Ct. App. 2007) ("Tennessee law recognizes an exception to the economic loss doctrine: despite the absence of privity, a plaintiff may maintain an action for purely economic loss based upon negligent supervision or negligent misrepresentation")

155.    As alleged above, Tyler Tech failed to properly train and supervise these employees, thus proximately causing the wrongful detentions alleged herein.

156.    As a direct and proximate result of the negligent supervision of One or more of the Contractor Defendants, Plaintiffs and the Class Members have suffered damages. Under this

43

Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Tyler Tech.

### COUNT 5 – NEGLIGENCE (AGAINST DEFENDANT GTL)

157.   Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

158.   Defendant GTL owed a duty of reasonable care to Plaintiffs and the Class Members to properly implement, support and maintain OMS for the Sheriff's Office Jail and the Shelby County Correction Center, thereby ensuring that Plaintiffs' rights to be released from incarceration would and could be timely honored.

159.   Defendant GTL, however, breached these duties in connection with its role in the implementation, support and maintenance of OMS or in connection with its other obligations related to the Shelby County Jail and/or courts' computer systems.

160.   As a direct and proximate result of the negligence of Defendant GTL, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Defendant GTL.

### COUNT 6 – NEGLIGENCE (AGAINST DEFENDANT SOFTWARE AG)

161.   Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

162.   Defendant Software AG owed a duty of reasonable care to Plaintiffs and the Class Members to implement, support and maintain an Info Hub Architecture Software in support of the County's Integrated Criminal Justice Information System, thereby ensuring that Plaintiffs' rights to be released from incarceration would and could be timely honored.

163.    Defendant Software AG, however, breached these duties in connection with its role in the implementation, support and maintenance the Info Hub Architecture Software or in connection with its other obligations related to the Shelby County Jail and/or courts' computer systems.

164.    As a direct and proximate result of the negligence of Defendant Software AG, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Defendant Software AG.

### COUNT 7 – NEGLIGENCE (AGAINST DEFENDANT SIERRA-CEDAR)

165.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

166.    Defendant Sierra-Cedar owed a duty of reasonable care to Plaintiffs and the Class Members to implement portions of the County's Integrated Criminal Justice Information System "information hub" that transmitted information from one subsystem of the County's Integrated Criminal Justice Information System to another, thereby ensuring that Plaintiffs' rights to be released from incarceration would and could be timely honored.

167.    Defendant Sierra-Cedar, however, breached these duties in connection with its improper implementation of the County's Integrated Criminal Justice Information System "information hub" or in connection with its other obligations related to the Shelby County Jail and/or courts' computer systems.

168.    As a direct and proximate result of the negligence of Defendant Sierra-Cedar, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Defendant Sierra-Cedar.

**COUNT 8 – NEGLIGENCE (AGAINST DEFENDANT SIERRA SYSTEMS)**

169.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

170.    Defendant Sierra Systems owed a duty of reasonable care to Plaintiffs and the Class Members to properly implement, support and maintain OMS for the Sheriff's Office Jail and the Shelby County Correction Center, thereby ensuring that Plaintiffs' rights to be released from incarceration would and could be timely honored.

171.    Defendant Sierra Systems, however, breached these duties in connection with its role in the implementation, support and maintenance of OMS or in connection with its other obligations related to the Shelby County Jail and/or courts' computer systems.

172.    As a direct and proximate result of the negligence of Defendant Sierra Systems, Plaintiffs and the Class Members have suffered damages. Under this Count, Plaintiffs and the Class Members do not seek "economic damages" as defined by Tennessee law, including TENN. CODE ANN. § 29-39-101(1), from Defendant Sierra Systems.

**COUNT 9 – DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 (AGAINST DEFENDANTS BONNER, FIELDS, HUBBARD, WARD IN THEIR OFFICAL CAPACITIES AND, THUS AGAINST SHELBY COUNTY)**

173.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

174.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n the case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

175.    Based on the above, pursuant to 28 U.S.C. § 2201, Plaintiffs request a declaration that the Defendants, acting under color of state law, with deliberate indifference, and beginning on

or about November 7, 2016 and continuing through the present, have violated the constitutional rights of thousands of Plaintiffs and Class Members by directly participating in and proximately causing the above described constitutional rights violations and by failing to implement remedial measures to rectify the systematic constitutional rights violations outlined above.

176.    Such declaratory action by this Court would settle the actual and substantial controversy that exists between Plaintiffs and Defendants.

177.    Such declaratory action would serve a useful purpose in clarifying the legal relations in issue and would provide an arena for res judicata as to the controversy that exists between Plaintiffs and Defendants.

178.    Such declaratory action would provide a common answer to the claims of all Class Members.

## COUNT 10 – INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983 (AGAINST DEFENDANTS BONNER, FIELDS, HUBBARD, WARD IN THEIR OFFICAL CAPACITIES AND, THUS AGAINST SHELBY COUNTY)

179.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

180.    As alleged herein, Plaintiffs have and continue to suffer unconstitutional deprivations of their liberty interests caused by Defendants' criminal administrative policies in connection with Defendants' ongoing use of the defective Odyssey system.  Under 42 U.S.C. § 1983, Defendants' criminal administrative policies constitute a policy or custom of inaction and/or policy or custom amounting to deliberate indifference to the rights of Plaintiffs and the Class Members.

181.    The deprivations of liberty interests suffered by Plaintiffs constitute irreparable injury such that remedies available at law, such as monetary damages, are inadequate to fully compensate for such injury.

182.    The Defendants' unconstitutional administrative policies are a continuing policy and practice and therefore subject Plaintiffs, Class Members, and the public to ongoing risk of deprivation of their constitutional rights.

183.    Considering the balance of hardships between the parties, and Defendants' indifference towards their egregious violations of Plaintiffs' liberty interests, a permanent injunction against Defendants is warranted.

184.    Such a permanent injunction would serve the public interest by preventing Defendants from continuing to subject the public to unconstitutional deprivations of liberty.

185.    Defendants should be permanently enjoined from any further continuation of their policies and practices that have resulted in the violations of Plaintiffs' constitutional rights, including, but not limited to, Defendants' use of the flawed Odyssey system.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, the named Plaintiffs and the Class Members demand judgment against Defendants Bill Oldham, Floyd Bonner, Jr., Robert Moore, Kirk Fields, Charlene McGhee, Reginald Hubbard, Debra Hammons, Tiffany Ward, Shelby County, Tyler Tech, GTL, Software AG, Sierra-Cedar, and Sierra Systems on each Count of the Complaint and pray for the following relief:

1.      Issue service of process and serve the Defendants;

2.      Issue an Order certifying that this action may be maintained as a class action, appointing Plaintiffs and their counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to all Class Members;

3.      Grant any reasonable request to Amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this Class Action;

4.      Empanel a jury to try this matter;

5.      Award each Plaintiff Class Member compensatory damages who has suffered same in an aggregate amount of not less than $144,000,000.00;

6.      Award Plaintiffs equitable relief, including the declaratory and injunctive relief requested herein;

7.      Award Plaintiffs' their reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

8.      Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

9.      Award pre-and post-judgment interest in the amount of 10% per annum pursuant to TENN. CODE ANN. § 47-14-123 in amount according to the proof at trial; and

10.     Grant the Plaintiffs and Class Members such further relief as the Court may deem just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

s/ *Brice Moffatt Timmons*
Michael G. McLaren (#5100)
William E. Cochran, Jr. (#21428)
Brice M. Timmons (#29582)
BLACK MCLAREN JONES RYLAND & GRIFFEE PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117
(901) 762-0535 (Office)
(901) 762-0539 ( Fax)
Email: mmclaren@blackmclaw.com
Email:  wcochran@blackmclaw.com
Email: btimmons@blackmclaw.com

</div>

_s/ William E. Routt_
Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
William E. Routt (Tenn. Bar. No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38104
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com
Email:  wroutt@watsonburns.com

_s/ Claiborne Ferguson_
Claiborne Ferguson (Tenn. Bar No. 20457)
Attorney for Plaintiffs and the Class
THE CLAIBORNE FERGUSON LAW FIRM P.A.
294 Washington Avenue
Memphis, Tennesseee 38103
Email:  Claiborne@midsouthcriminaldefense.com

_s/ Joseph S. Ozment_
Joseph S. Ozment (Tenn. Bar No. 15601)
THE LAW OFFICE OF JOSEPH S. OZMENT, PLLC
1448 Madison Ave.
Memphis, Tennessee 38104
Phone: (901) 525-4357
Email: jozment@oz-law.net

_Counsel for Plaintiffs and the putative Class
Members_

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2019, a true and correct copy of the foregoing pleading has been filed electronically with the Court's Electronic Case Filing System. Pursuant to the Court's ECF System, the following parties listed below are filing users who will receive notice of the foregoing document's filing:

Robert E. Craddock, Esq.
Odell Horton, Jr., Esq.
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
 Memphis, Tennessee 38120
(901) 537-1000
Email:  rcraddock@wyattfirm.com
Email:  ohorton@wyattfirm.com

*Counsel for Defendants Bill Oldham, Floyd Bonner, Jr., Robert Moore, Kirk Fields, Charlene McGhee, Reginald Hubbard, Debra Hammons, Tiffany Ward, and Shelby County, Tennessee*

Bradley E. Trammell, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 577-2121
Email:  btrammell@bakerdonelson.com

*Counsel for Defendant Tyler Technologies, Inc.*

Douglas F. Halijan
William David Irvine
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103-2217
(901) 524-5000
Email:  dhalijan@bpjlaw.com
Email:  wirvine@bpjlaw.com

*Counsel for Defendant Software AG Cloud Americas, Inc.*

Emmett Lee Whitwell, Esq.
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Suite 950
Memphis, TN 38103
(901) 222-2100
Email:  lee.whitwell@shelbycountytn.gov

*Counsel for Defendants Bill Oldham, Floyd Bonner, Jr., Robert Moore, Kirk Fields, Charlene McGhee, Reginald Hubbard, Debra Hammons, Tiffany Ward, and Shelby County, Tennessee*

Beth Bivans Petronio, Esq.
K&L GATES, LLP
1717 Main Street
Suite 2800
Dallas, Texas 75201
(214) 939-5815
Email:  beth.petronio@klgates.com

*Counsel for Defendant Tyler Technologies, Inc.*

Russell Brandon Bundren
James L. Murphy
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
(615) 252-4647
Email:  bbundren@babc.com
Email:  jmurphy@bradley.com

*Counsel for Defendant Global TelLink Corporation*

Albert G. McLean
Kevin David Bernstein
SPICER RUDSTROM PLLC
119 S. Main Street, Suite 700
Memphis, TN 38103
901-522-2324
Email:  amclean@spicerfirm.com
Email:  kdb@spicerfirm.com

*Counsel for Defendant Sierra-Cedar, Inc.*

*s/ Brice M. Timmons*