IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE - WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT TURNAGE, CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, TERRENCE DRAIN, and KIMBERLY ALLEN on behalf of themselves and all similarly situated persons, | ) ) ) ) ) ) ) | **Case No. 2:16-cv-2907-SHM/tmp** |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, TENNESSEE COMMON LAW, DECLARATORY, AND INJUNCTIVE RELIEF** |
| BILL OLDHAM, in his individual capacity as former Sheriff of Shelby County, Tennessee; FLOYD BONNER, JR., in his official capacity as Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity as former Jail Director of Shelby County, Tennessee; KIRK FIELDS, in his official capacity as Jail Director of Shelby County, Tennessee; CHARLENE McGHEE, in her individual capacity as former Assistant Chief of Jail Security of Shelby County, Tennessee; REGINALD HUBBARD, in his official capacity as Assistant Chief of Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity as former Assistant Chief of Jail Programs of Shelby County, Tennessee; TIFFANY WARD in her official capacity as Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; TYLER TECHNOLOGIES, INC., a foreign corporation; GLOBAL TEL*LINK CORPORATION, a foreign corporation; SOFTWARE AG USA, INC., a foreign corporation; and SIERRA-CEDAR, INC., a foreign corporation, SIERRA SYSTEMS GROUP, INC., a foreign corporation. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION AND MEMORANDUM FOR A DISCOVERY CONFERENCE, TO PERMIT MERITS-BASED DISCOVERY, TO COMPEL DEPOSITIONS, AND FOR SANCTIONS AND FEES**

COME NOW the Plaintiffs, Scott Turnage, Cortez D. Brown, Deontae Tate, Jeremy S. Melton, Issacca Powell, Keith Burgess, Travis Boyd, Terrence Drain, and Kimberly Allen, on behalf of themselves and all similarly situated persons (hereinafter the "Plaintiffs"), and respectfully move for sanctions and fees, to permit merits-based discovery, to compel depositions, and for a discovery conference. Defendants, Bill Oldham, Floyd Bonner, Jr., Robert Moore, Kirk Fields, Charlene McGhee, Reginald Hubbard, Debra Hammons, Tiffany Ward, and Shelby County, Tennessee (hereinafter "County Defendants"), failed to cooperate with Plaintiffs regarding discovery, particularly by failing to produce deponents in response duly noticed depositions.[1] In support of their motion, Plaintiffs state as follows:

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs filed this action on November 17, 2016. (Dkt. No. 1). Thereafter, the Complaint was turned into a Consolidated Class Action Complaint, (Dkt. No. 43), and has since been amended a number of times until the operative Seventh Amended Class Action Complaint was filed on June 19, 2019. (See Dkt. Nos. 52, 103, 138, 170, 198, 218). The Plaintiffs have alleged that all Defendants in this matter deprived them of the constitutional rights by subjecting them to:

> (i) unlawful detention by denying them the ability to post bonds that were pre-set, (ii) unlawful detention by detaining them longer than forty-eight (48) hours prior to probable cause determination either delaying their release for lack of probable cause or delaying having their criminal bonds set and posted, (iii) unlawful detention by detaining them longer than six hours after posting their required bonds, (iv) detaining them longer than six hours after charges against them had been dismissed or it was determined that probable cause did not exist to detain them, and/or, (v) re-arresting them on warrants that had previously been served and satisfied (i.e., re-arresting them on the identical warrant that had been previously served), all of which has proximately caused these arrestees to be unlawfully detained and, thus, suffer damages.

---

[1] Plaintiffs respectfully request that this Motion be referred to the Magistrate Judge and also request a hearing on the Motion pursuant to Local Rule 7.2(d). Plaintiffs submit that a hearing on this Motion would benefit the parties and the Court because any questions or issues concerning the matters addressed in the Motion can be fully addressed at the hearing, and the Court will have the opportunity to assist in setting deposition dates and thereby put an end to the County Defendant's refusal to provide available dates.

(Dkt. No. 118, pp. 2-3). Following a case management conference, the Court entered a Scheduling Order in this case on February 22, 2017, which concluded discovery on September 15, 2017. (Dkt. No. 37). An Amended Scheduling Order was later entered by the Court on April 10, 2019, which set a deadline for class certification discovery[2] on November 13, 2019. (Dkt. No. 186). The operative Second Amended Scheduling Order was entered by the Court on September 6, 2019, which extended all discovery related to class certification by May 18, 2020. (Dkt. No. 244).

County Defendants' idle approach to discovery thus far, and delayed responses to basic inquiries, has seriously delayed this litigation and harmed Plaintiffs' ability to depose County Defendants' witnesses in this matter. Indeed, Plaintiffs have been unable to conduct <u>any</u> depositions thus far because County Defendants' counsel will not timely respond (or, in some cases, respond at all) to requests for available deposition dates. Then, after Plaintiffs' counsel are compelled to unilaterally set deposition dates and file the corresponding Notice(s) to Take Depositions, County Defendants' will not confirm whether their witness(es) will appear at their deposition, have not offered alternative dates, and have not produced their duly noticed witness(es) at the deposition(s) or otherwise informed Plaintiffs the witness(es) is unavailable.

This situation has now escalated. Plaintiffs have now been informed that County Defendants' central fact witness, Ed Raper, passed away before Plaintiff's counsel could take his deposition. As detailed below, Mr. Raper's death occurred after nine (9) months of Plaintiffs' counsel's attempts to take Mr. Raper's deposition, dozens of e-mails on the subject, and officially noticing Mr. Raper's deposition on three (3) separate occasions, and one (1) unofficial occasion.

---

[2] The parties previously agreed to bifurcate class certification from merits discovery, with class discovery and class certification to occur first.  As described herein, the circumstances have changed dramatically since that time.  Thus, Plaintiffs seek, in part, a Court order providing that discovery no longer be bifurcated and that the parties proceed on both class and merits-based discovery.

Plaintiffs aver they have been, and will be continue to be, substantially prejudiced by their inability to depose Mr. Raper due to County Defendants' willful, bad faith and dilatory conduct. Plaintiffs now respectfully request a discovery status conference to compel County Defendants' and co-Defendants' counsel to provide deposition dates for the remaining witnesses, to provide for Plaintiffs to proceed with both class and merits discovery, and for appropriate sanctions.

## **FACTUAL HISTORY**

Plaintiffs' counsel noticed Mr. Raper's deposition three (3) separate times, (Dkt. Nos. 261, 275, 281), and first requested deposition dates for Mr. Raper, at the latest, on May 22, 2019. See attached as **Exhibit A**. On February 8, 2020, Mr. Raper passed away before Plaintiffs' counsel could take his deposition. Plaintiffs' counsel have previously requested deposition dates for numerous other witnesses, but these requests have been side-tracked or ignored. Due to the actions of the County Defendants and their counsel in refusing to comply – or otherwise interminably delaying compliance with – their discovery obligations, Plaintiffs have suffered significant prejudice in their ability to obtain the evidence necessary to prosecute this action.

County Defendants' dilatory and willful conduct is evidenced by the numerous e-mails sent from Plaintiffs' counsel to County Defendants' counsel requesting deposition dates for Mr. Raper and other potential deponents. When that failed, Plaintiffs' counsel were compelled to notice Mr. Raper's deposition, and then request whether County Defendants intended to comply with these notices. These e-mails and docket entries are as follows:

1. On May 22, 2019, Plaintiffs' counsel requested from County Defendants' counsel, and co-Defendants' counsel, available dates for Mr. Raper's deposition, as well as three (3) other potential deponents. See **Exhibit A**. In that correspondence, twenty (20) dates were proposed by Plaintiffs' counsel over a seven (7) week period.

2.      On July 26, 2019, after half of the proposed dates had lapsed, County Defendants' counsel responded to the May 22, 2019 correspondence.   County Defendants' position was that no depositions should be taken. <u>See</u> attached as **Exhibit B**.

3.      Plaintiffs continued requesting available dates for Mr. Raper's deposition but never received any. On November 3, 2019, Plaintiffs were compelled to issue a notice to take Mr. Raper's deposition on December 18, 2019. (Dkt. No. 261).

4.      This breach in the typical decorum between members of the legal profession was cited on November 13, 2019, by Plaintiffs' counsel in correspondence to County Defendants' counsel, wherein Plaintiffs' counsel proposed alternative dates to County Defendants' counsel if Mr. Raper was unavailable on the noticed date for his deposition. <u>See</u> attached as **Exhibit C**.  Thereafter, Mr. Raper's deposition was continued at County Defendants' counsel's request.

5.      On December 6, 2019, Plaintiffs' counsel sent another letter requesting available dates for Mr. Raper's deposition. <u>See</u> attached as **Exhibit D**. At that time, ten (10) dates were proposed in January 2020. (<u>Id</u>.)

6.      While County Defendants' counsel received this December 6, 2019 correspondence, County Defendants' counsel did not respond to it. In the meantime, County Defendants' counsel continued corresponding with Plaintiffs' counsel regarding other matters in this litigation. This prompted Plaintiffs' counsel to follow up, again, on December 13, 2019, seeking available dates for Mr. Raper's deposition. <u>See</u> attached as **Exhibit E**.

7.      On December 13, 2019, County Defendants' counsel responded, and stated "I am attempting to confirm the date.  We are leaning toward [January] 22nd or 23rd.  I

4

[will] confirm on Monday." <u>See</u> attached as **Exhibit F**. In fact, County Defendants' counsel did not confirm Mr. Raper availability on the following Monday.

8. On December 16, 2019, Plaintiffs' counsel again followed up with County Defendants' counsel to confirm Mr. Raper's availability for a January 22, 2020 deposition. <u>See</u> attached as **Exhibit G**. This correspondence went unanswered.

9. On January 9, 2020, Plaintiffs' counsel again followed up with County Defendants' counsel to confirm Mr. Raper's deposition for January 22, 2020. <u>See</u> attached as **Exhibit H**. Due to County Defendants' counsel's failure to communicate a confirmed date for Mr. Raper's deposition, this deposition was not officially noticed but had been agreed upon by all counsel.

10. On January 13, 2020, Plaintiffs' counsel became aware of the fact that County Defendants' counsel wanted to, again, reschedule Mr. Raper's deposition. <u>See</u> attached as **Exhibit I**.

11. On January 14, 2020, Plaintiffs' counsel sent correspondence to County Defendants' counsel to address County Defendants' counsel's newly raised concerns regarding Mr. Raper's deposition, and, again, requesting when Plaintiffs could depose, *inter alia*, Mr. Raper. <u>See</u> attached as **Exhibit J**. At this time, no available dates were provided by County Defendants' counsel to depose Mr. Raper.

12. On January 17, 2020, Plaintiffs' counsel sent correspondence to County Defendants' counsel stating they intended to notice Mr. Raper's deposition for February 5, 2020, because no proposed dates had been provided by County Defendants. <u>See</u> attached as **Exhibit K**.

13.  On January 17, 2020, Plaintiffs filed a Revised Notice to Take the Deposition of Ed Raper, set for February 5, 2020. (Dkt. No. 275).

14.  On January 17, 2020, County Defendants' counsel advised Plaintiffs' counsel, for the first time, that, "[t]his is to advise that I have irreconcilable conflicts on Feb. 6 (the date "noticed" for Ed Raper's deposition) . . . would request alternative dates for those depositions." See attached as **Exhibit L**. While Mr. Raper's deposition had been noticed for February 5, 2020, no explanation was ever provided for how a conflict on February 6, 2020, should prevent Mr. Raper's deposition from proceeding forward as noticed. Under the Federal Rules of Civil Procedure, Mr. Raper's deposition was limited to one (1) day of only seven (7) hours. See Fed. R. Civ. P. 30(d)(1).

15.  Thereafter, Plaintiffs' counsel responded that they would certainty accommodate Defense counsels' schedule, but that Plaintiffs needed a firm date for Mr. Raper's deposition before they would reschedule Mr. Raper's Deposition yet again. See **Exhibit L**.

16.  Due to Plaintiffs' desire to depose Mr. Raper first, since he was a key factual witness for the Plaintiffs' class certification and Plaintiffs' eventual case-in-chief, depositions of the named Plaintiffs were postponed at this time. See attached **Exhibit M**.

17.  On January 22, 2020, Plaintiffs' counsel again requested available dates for Mr. Raper's deposition and proposed the use one of the dates recently made available by postponing the depositions of all named Plaintiffs, each of which had already

been cleared by all Defendants' and co-Defendants' counsel. (Id.) This proposal was flatly rejected by County Defendants' counsel. See attached **Exhibit N**.

18.     On January 27, 2020, Plaintiffs' counsel again requested dates from County Defendants' counsel for available dates for Mr. Raper's deposition. See attached **Exhibit O**.

19.     On January 28, 2020, Plaintiffs' counsel again requested available dates for Mr. Raper's Deposition. See attached **Exhibit P**. At this time, Plaintiffs' counsel, Michael G. McLaren, expressed frustration to County Defendants' counsel by stating, "I don't think I've ever had a harder time getting depo dates in my entire legal career." (Id.)

20.     On February 4, 2020, Plaintiffs' counsel again requested available dates for Mr. Raper's Deposition. See attached **Exhibit Q**.

21.     On February 7, 2020, despite efforts to accommodate County Defendants' counsels' schedule, Plaintiffs were forced to file a Second Revised Notice to Take the Deposition of Mr. Raper, setting the deposition for March 6, 2020. (Dkt. No. 281).

22.     On February 8, 2020, Plaintiffs' counsel followed up with County Defendants' counsel and stated, "[d]espite my persistent requests, I never got a date or dates from you for [the] Raper [deposition]. I have assu[r]ed you I am asking CLASS questions, not merit questions. I've now noticed it for 3/6. I expect to go forward then." See attached **Exhibit R**. This correspondence went unanswered.

23.     On February 12, 2020, Plaintiffs' counsel followed up with County Defendants' counsel and stated, "please let me know your intentions on the March 6 depo notice

7

of Mr. Raper. I fully expect to go forward that day unless you file some sort of motion to prevent it." <u>See</u> attached **Exhibit S**.

24.     In response to this latest request, County Defendants' counsel informed Plaintiffs' counsel that Mr. Raper had died. <u>See</u> attached **Exhibit T**. County Defendants' counsel had not previously indicated that Mr. Raper had any illness or other health issues that may result in either his death or in the Plaintiffs' inability to depose him in the future (to date, the County Defendants' counsel has declined to provide Plaintiffs with any information regarding the cause of Mr. Raper's death, which is the subject of pending written discovery requests propounded by Plaintiffs).

25.     Due to County Defendants' counsel continuously obstreperous behavior, on February 17, 2020, Plaintiffs' counsel asked County Defendants' counsel if County Defendants intended to produce any deponents at deposition dates that had been noticed and requested a simple yes or no answer. <u>See</u> attached **Exhibit U**.

26.     In response, County Defendants' counsel inquired into what questions would be asked at all depositions. <u>See</u> attached **Exhibit V**. Plaintiffs' counsel responded to this rehashed concern, stating that Plaintiffs will always be mindful of the Court's Orders and will conduct the depositions accordingly. <u>See</u> attached **Exhibit W**.

27.     Finally, on February 18, 2020, Plaintiffs' counsel informed County Defendants' counsel they would move for a default judgment for failure to cooperate in discovery if the noticed witnesses were not produced on their respective deposition date. <u>See</u> attached **Exhibit X**.

## **ARGUMENT**

A.       **Legal Standard.**

The purpose of discovery is to make relevant information available to litigants, so that disputes may be resolved with as full and accurate an understanding of the true facts as possible. Properly conducted, discovery narrows and clarifies issues in dispute, reduces the risk of surprise, and gives parties a better sense of their chances of success, and their options for settlement. See Hickman v. Taylor, 329 U.S. 495, 501, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

Where a party has failed to attend his or her deposition, "the court **<u>must</u>** require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3) (emphasis added). Likewise, pursuant to Rule 37, the Court has discretion to impose sanctions against a party for failure to comply with discovery rules. Fed. R. Civ. P. 37(c)(1). Several factors are relevant to a district court's decision to impose Rule 37 sanctions including "whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997); see also Taylor v. Medtronics, Inc., 861 F.2d 980, 986 (6th Cir. 1988) (factors to consider for the imposition of sanctions include "(1) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, (2) whether the dismissed party was warned that failure to cooperate could lead to dismissal, and (3) whether less drastic sanctions were imposed or considered before dismissal was ordered.").

The Court has inherent authority to impose "sanctions based on the spoliation of evidence." Adkins v. Wolever, 554 F.3d 650, 653 (6th Cir. 2009). Spoliation is the "destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." United States v.

9

Copeland, 321 F.3d 582, 597 (6th Cir. 2003). In determining whether spoliation sanctions are appropriate, federal law applies. Adkins, 554 F.3d at 652.

If the Court determines that spoliation occurred, it has broad discretion to consider "whether it was negligence or bad faith that motivated the defendants and relatedly, what sanction, if any, should be imposed." O'Brien, 575 F.3d 567, 588 (6th Cir. 2009) (citing Adkins, 554 F.3d at 653). As the United States Court of Appeals for the Sixth Circuit has noted, "a proper spoliation sanction should serve both fairness and punitive functions." Adkins, 554 F.3d at 652.

### B. Plaintiffs are entitled to both class and merits-based discovery, and request a discovery conference to ensure that Defendants comply with their obligations.

A principal justification asserted by the County Defendants for refusing to provide witnesses is their fear that Plaintiffs will seek to depose County witnesses not only on issues pertaining to class certification but on the merits. While these unfounded fears provide no basis for the County Defendants to refuse to provide witnesses, the purpose for bifurcating class and merits discovery in this action has long since run its course. It is true that, in 2017, Plaintiffs agreed to bifurcation of discovery in the hopes of quickly resolving issues pertaining to class certification. Due to the County Defendants' obstruction of the discovery process and wholly unjustifiable delays, the hope of quickly resolving class certification issues has passed. Now, three years later, the landscape has changed. The County Defendants' key witness has passed away, as have two named Plaintiffs. No depositions have been taken. This case has stagnated. This Court should order that discovery proceed on both class and merits-based discovery.

Indeed, bifurcation is disfavored under federal law and is serving only to impede the resolution of this case. The County Defendants' insistence that the parties adhere to such bifurcation ignores the realities of class action litigation today, which are governed by the Supreme

Court's landmark decision in Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 (2011). In Dukes, the Supreme Court indicated that class certification requires a trial court to engage in a "rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied[.]" Id. at 351, 131 S.Ct. at 2551-52. This analysis frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id.; see Gusman v. Comcast Corp., 298 F.R.D. 592, 595 (S.D. Cal. 2014) ("Facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case."); McEwan v. OSP Grp., L.P., 2016 U.S. Dist. LEXIS 42798, 2016 WL 1241530, *3 (S.D. Cal. 2016) ("In this regard, the Supreme Court had directed courts considering class certification motions to engage in a 'rigorous analysis' to determine whether Rule 23's prerequisites have been satisfied, an analysis that will frequently []overlap with the merits of plaintiff's underlying claim.").

In light of Dukes and the "rigorous analysis" requirement for class certification, many courts "are reluctant to bifurcate class-related discovery from discovery on the merits." Chen-Oster v. Goldman, Sachs & Co., 285 F.R.D. 294, 299-300 (S.D.N.Y. 2012) (collecting cases). This is because the distinction between class and merits discovery is murky at best and impossible to determine at worst. See Munoz v. PHH Corp., 2016 U.S. Dist. LEXIS 17254, 2016 WL 10077139, *4 (E.D. Cal. 2016) ("Courts have repeatedly acknowledged that there is no clear-cut division between discovery that relates to class certification and discovery that relates to the merits."); In re Riddell Concussion Reduction Litig., 2016 U.S. Dist. LEXIS 89120, 2016 WL 4119807, *2 (D.N.J. 2016) (explaining that the court had previously declined to bifurcate discovery because "more often than not there is no 'bright line' between class certification and merits issues."); Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC, 2011 U.S. Dist. LEXIS 16684, 2011

11

WL 486123, *2 (M.D. Fla. 2011) ("Simply stated, if district courts as neutral arbiters of the law find the distinction between merits and class issues to be murky at best, and impossible to discern at worst, the Court cannot imagine how parties with an incentive to hold back damaging evidence, can properly draw the line between these categories of evidence during 'phased' discovery.").

As this action has demonstrated over the last three years, separating merits and class discovery "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two." True Health Chiropractic, Inc. v. McKesson Corp., 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, *3 (N.D. Cal. 2015); see Quinn v. Specialized Loan Servs., LLC, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017) (observing that bifurcation "may give rise to disputes over whether a particular discovery request relates to the merits or to class certification"); Burges v. BancorpSouth, Inc., 2015 U.S. Dist. LEXIS 89822, 2015 WL 13628132, *4 (M.D. Tenn. 2015) (same); City of Pontiac Gen. Employees' Ret. Sys. v. Wal-Mart Stores, Inc., 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); Munoz v. PHH Corp., No. 1:08-cv-0759-DAD-BAM, 2016 U.S. Dist. LEXIS 17254, at *11-13 (E.D. Cal. Feb. 11, 2016) (finding "no practical or meaningful method for limited the scope of Plaintiffs' depositions given the substantial overlap between merits discovery and class certification discovery at this juncture in the case"). Plaintiffs respectfully request that this Court allow them to proceed with both class and merits-based discovery. In addition, this Court should set a discovery conference before the Magistrate Judge to ensure that Defendants understand and comply with their obligations and that any orders entered related to discovery are sufficiently detailed to prevent Defendants from continuing their dilatory conduct under the pretense that their discovery obligations are vague or confusing.

**C.** **Plaintiffs' are entitled to the imposition of sanctions on the County Defendants in this instance for their overt and ongoing violations of their discovery obligations in this action.**

Here, sanctions should be imposed upon the County Defendants. Indeed, Plaintiffs have clearly been prejudiced by the County's efforts to thwart the depositions of its agents. As early as May 2019, Plaintiffs sought to take the deposition of Mr. Raper, the County's chief IT officer. The County was aware that Mr. Raper had health issues but dodged and delayed producing Mr. Raper for months[3]. Ultimately, Mr. Raper died in February 2020 having never been deposed in this matter. This case represents a unique situation wherein County Defendants' repeated conduct in failing to produce a single witness for deposition, when combined with one of the potential deponents' death, has undoubtedly prejudiced Plaintiffs because they no longer have access to key information from a pivotal witness for County Defendants. Plaintiffs aver that this bad faith and/or negligent conduct is tantamount to spoliation, a doctrine which typically applies to the destruction of physical evidence, but which appears relevant under this unique set of circumstances.

For months, Plaintiffs' counsel has requested the following from the County Defendants, to no avail: 1) confirmed dates when the deponents and counsel are available, and 2) confirmation that a noticed witness(es) will appear for their deposition(s). Unfortunately, the County Defendants have simply refused to comply. Plaintiffs are now forever barred from deposing Mr. Raper, despite months of reasonable inquiries. If County Defendants had timely replied to the original request for deposition dates in May of 2019, this entire issue could have been avoided.

---

[3] Although Plaintiffs suspect that many individuals employed by the County knew of Mr. Raper's serious health issues, Mr. Raper's knowledge of his health issues alone is imputed to the County because he was a managing agent. *Bland v. Allstate Ins. Co.*, 944 S.W.2d 372, 376 (Tenn. Ct. App. 1996) ("Of course, the knowledge of an agent is imputed to his principal."); *see also Wigington v. Metro. Nashville Airport Auth.*, 374 F. Supp. 3d 681, 695 (M.D. 2019) ("The knowledge of these agents is imputed to the principal even if not specifically communicated to it"). In short, the County knew that Mr. Raper was experiencing health problems.

Federal Courts possess certain inherent powers, including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). In Chambers, the United States Supreme Court noted that even if there were sanctions available under certain federal statute(s) and/or various Rules in the Federal Rules of Civil Procedure, the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation. Id. at 38. In Chambers, the Supreme Court affirmed the District Court's resort to its inherent authority to award attorney fees amounting to almost $1,000,000.00, despite the potential availability of sanctions under 28 U.S.C. §1927 and/or Rule 11 of the Federal Rules of Civil Procedure. Id. at 46. In affirming the District Court's award of sanctions, the Supreme Court stated as follows:

> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.

Id. at 46.

> In Chambers, the Supreme Court also noted the following:

> There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could be sanctioned under the statute or the Rules. A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. See Roadway Express, supra, at 767. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the

14

inherent power. But if in the informed discretion of the court, neither the statute nor the Rules or up to the task, the court may safely rely on its inherent power.

Id. at 50.

In Chambers, the Supreme Court also stated as follows:

[A] court may assess attorney's fees when a party has "acted in bad faith, vexaciously, wantonly, or for oppressive reasons." []. In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order []. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

Id. at 45-46 (citations omitted).

In First Bank v. Hartford Underwriters Ins. Co., 307 F.3d 501 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit addressed the question of whether the Supreme Court's decision in Chambers required a District Court to consider whether the conduct at issue could be sanctioned under any other potential applicable Rules or statutes before resort was made to the Court's inherent powers. In resolving this question, the Sixth Circuit stated as follows:

In our view, Chambers should be read broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes. While a district court should ordinarily consider whether "the conduct could also be sanctioned under the statute or the Rules", Chambers, 501 U.S. at 50, there is nothing in Chambers that explicitly requires a court to determine whether "the conduct at issue is covered by one of the other sanctioning mechanisms."

First Bank at 515.

In the First Bank case, the Sixth Circuit recognized that a District Court has the inherent authority to impose sanctions pursuant to its inherent powers based on a finding that the actions of

the party in question were taken in bad faith or that the party had engaged in conduct that was "tantamount to bad faith." See First Bank at 517 (citing Chambers, 501 U.S. at 50 and Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980). Willfulness, bad faith, vexatiousness, oppressiveness, or fault requires "a clear record of delay or contumacious conduct." Carpenter v. City of Flint, 723 F.3d 700, 704 (6th Cir. 2013) (quoting Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997)). Contumacious conduct is considered to be "behavior that is perverse in resisting authority and stubbornly disobedient." Id. at 704-05 (quoting Schafer v. City of Defiance Police Dep't, 529 F.3d 731, 737 (6th Cir. 2008)). "The plaintiff's conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." Id. at 705 (internal quotation marks and brackets omitted). The Sixth Circuit has held that a party's dilatory tactics and disobedience persist through drawn-out litigation, the court may infer that the party has acted willfully and/or in bad faith. Harmon v. CSX Transp., Inc., 110 F.3d 364, 367 (6th Cir. 1997).

In this case, there can be no other inference but that County Defendants' counsel acted willfully, in bad faith and/or negligently. Plaintiffs' counsel requested available dates for Mr. Raper's deposition on fifteen (15) documented occasions over the course of nine (9) months. They offered over 30 possible dates. These simple requests were deflected or ignored. While, in the face of this intransigence, Plaintiffs did eventually file multiple notices of Deposition for Mr. Raper, Plaintiffs never received any assurances that Mr. Raper would have appeared, even for his fourth noticed scheduled deposition. Unfortunately, we will never know the answer to this question.

Before his death, Mr. Raper was the central fact witness regarding the exact cause of the "how" and "why" the Class Action Plaintiffs were over detained, as alleged in their Complaint. This is because Mr. Raper was the project manager, or equivalent, in charge of launching the

Odyssey system for Shelby County. Odyssey is, of course, the current jail management system used by Shelby County that went "live" on November 7, 2016, and precipitated this entire litigation due to its failure to properly track inmates while they were incarcerated.

Due to County Defendants' conduct, Plaintiffs will never have an opportunity to depose Mr. Raper, who is probably the only individual witness with a complete picture of what happened when Shelby County launched the Odyssey system, what was supposed to happen, and how Shelby County responded to the chaos that ensued after the launch was an abysmal disaster. While it is theoretically possible to recreate the testimony Mr. Raper would have provided during his deposition from an assortment of, yet to be identified, witnesses, this would be like reconstructing a mirror after it has been shattered into a thousand pieces.

In this case, Plaintiffs aver it is painfully clear that County Defendants never wanted Mr. Raper deposed, and County Defendants went to painstaking efforts to make sure that a deposition was never taken. This conduct cannot be tolerated. As detailed above, Plaintiffs aver that County Defendants' conduct can be interpreted through no other lens than that of a party seeking in bad faith to avoid the deposition of a central fact witness. This conduct has unequivocally prejudiced Plaintiffs.  Sanctions should accordingly be imposed.

### D.    Plaintiffs are entitled to a default judgment in their favor, or, in the alternative, an adverse inference against the County Defendants.

It is apparent from the foregoing that Defendants have not cooperated in discovery. Federal Rule of Civil Procedure 37(b) gives courts a range of sanctions against litigants who fail to cooperate in discovery, or refuse to comply with disclosure orders. These include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Here, a default judgment against the County Defendants is both appropriate and well within the sound discretion of this Court.  See, e.g., Am. Book Co. v. Consol. Group of Co., No. 3:09-CV-112, 2011 U.S. Dist. LEXIS 34794 at *11 -12 (E.D. Tenn. Mar. 9, 2011) (where corporate defendant failed to appear three times for deposition, court dismissed defendant's counter-claims); Joiner v. Atl. Track & Turnout of Memphis, No. 15-cv-2730-SHL/tmp, 2016 U.S. Dist. LEXIS 52953 (W.D. Tenn. Mar. 31, 2016) (*pro se* plaintiff's failure to appear at three noticed depositions warranted dismissal of his case).  While the County certainly will not view its persistent failure to produce witnesses for deposition necessitating a default judgment, this Court has recognized that the failure to appear at a properly noticed deposition is a "serious" violation of the rules of discovery. See, Bell-Flowers v. Progressive Ins. Co., No. 04-3026 B/P, 2006 U.S. Dist. LEXIS 102913 at *5 (W.D. Tenn. May 19, 2006) (noting that the plaintiff's failure to appear at her constituted "serious violations of the court's scheduling order and the rules of discovery").

In this instance, the harm suffered by Plaintiffs is particularly grievous.  As established above, Plaintiffs have forever lost the opportunity to obtain evidence from the key fact witness in this case due to the County Defendants' disregard for their discovery obligations.  They have

18

effectively spoliated the key evidence in this case.  Under controlling case law, default judgment is thus justified and appropriate.

In the alternative, Plaintiffs are entitled to, at very least, an adverse inference against the County Defendants.  An "adverse inference" instruction tells the jury to assume that the wrongdoing party "fears [producing the evidence]; and this fear is some evidence that the . . . document . . . would have exposed facts unfavorable to the party." Flagg v. City of Detroit, 715 F.3d 165, 177 (6th Cir. 2013) (alteration in original) (quoting Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995).  The Sixth Circuit has expressly adopted the imposition of a "rebuttable" adverse instruction where the party has acted negligently in failing to cooperate in discovery. See Arch Ins. Co. v. Broan-NuTone LLC, 509 F. App'x 453, 457 (6th Cir. 2012); One Beacon Ins. Co. v. Broadcast Dev. Grp., Inc., 147 F. App'x 535 541 (6th Cir. 2005)  (finding a jury instruction allowing jurors to infer that missing evidence would favor the non-spoliating party was appropriate when a party destroyed evidence negligently).

"Although adverse inference instructions typically are used in cases involving spoliation of evidence, a court also may grant an adverse inference instruction for the non-production of evidence upon a showing '(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the . . . claim or defense [of the other party] such that a reasonable trier of fact could find that it would support that claim or defense.'" Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., 328 F.R.D. 100, 119 (S.D. N.Y. 2018) quoting Scantibodies Lab., Inc. v. Church & Dwight Co., No. 14-CV-02275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396, 2016 WL 11271874, at *35 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 21223, 2017 WL 605303 (S.D.N.Y. Feb. 15,

2017); see also Terrell v. Memphis Zoo, Inc., No.17-cv-2928-JPM-tmp, 2018 U.S. Dist. LEXIS 149825 at *9 (W.D. Tenn. Aug. 8, 2018) (same).

Plaintiffs are entitled to this adverse inference regardless of whether the County acted in bad faith or with willful conduct. See, Linde v. Arab Bank, PLC, 269 F.R.D. 186, 196 (E.D. N.Y. 2010) ("In addition, while courts in the Second Circuit consider at the sanctions stage whether the party resisting discovery has acted in good faith, a court may impose sanctions--including findings of fact adverse to the noncompliant party--even if it does not find bad faith or willful conduct"). Based upon the continuous and repeated efforts of Plaintiffs to depose Mr. Raper and others, the County cannot seriously contend that its conduct, at a bare minimum, was negligent. This negligent conduct has resulted in Plaintiffs' loss of the evidence known to Mr. Raper, which, as documents produced by the County suggest, was extremely harmful to the County.

Further, Defendants should be ordered to pay Plaintiffs their reasonable attorneys fees as required by Rule 37(a)(5). See, e.g., Overton v. Univ. of Tenn., No. 2:08-cv-02796-BBD-dkv, 2010 U.S. Dist. LEXIS 33996 (W.D. Tenn. March 18, 2010) (granting attorneys' fees as sanctions in connection with motion to compel where plaintiff's failure to respond to discovery was not substantially justified).

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court impose appropriate sanctions upon the County Defendants, award Plaintiffs their attorneys' fees, and order that Plaintiffs are entitled to conduct both class and merits-based discovery. For the same reasons, Plaintiffs request that the Court compel the County Defendants to provide deposition dates for their witnesses. Finally, this Court should set a discovery conference before the magistrate judge to clarify any orders related to discovery in this cause.

Respectfully submitted,


By:    */s/ Michael G. McLaren*_____
Michael G. McLaren (#5100)
Brice M. Timmons (#29582)
William E. Cochran, Jr. (#21428)
Black McLaren Jones Ryland & Griffee PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117
(901) 762-0535 (Office)
(901) 762-0539 ( Fax)
mmclaren@blackmclaw.com
btimmons@blackmclaw.com
wcochran@blackmclaw.com

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
William E. Routt (Tenn. Bar No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38104
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com
Email:  wroutt@watsonburns.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2020, a true and correct copy of the foregoing pleading has been filed electronically with the Court's Electronic Case Filing System.  Pursuant to the Court's ECF System, the following parties listed below are filing users who will receive notice of the foregoing document's filing:

Robert E. Craddock, Esq.
Odell Horton, Jr., Esq.
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
 Memphis, Tennessee 38120
(901) 537-1000
Email:  rcraddock@wyattfirm.com
Email:  ohorton@wyattfirm.com

*Counsel for Defendants Bill Oldham, Floyd Bonner, Jr., Robert Moore, Kirk Fields, Charlene McGhee, Reginald Hubbard, Debra Hammons, Tiffany Ward, and Shelby County, Tennessee*

Emmett Lee Whitwell, Esq.
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Suite 950
Memphis, TN 38103
(901) 222-2100
Email:  lee.whitwell@shelbycountytn.gov

*Counsel for Defendants Bill Oldham, Floyd Bonner, Jr., Robert Moore, Kirk Fields, Charlene McGhee, Reginald Hubbard, Debra Hammons, Tiffany Ward, and Shelby County, Tennessee*

Bradley E. Trammell, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 577-2121
Email:  btrammell@bakerdonelson.com

*Counsel for Defendant Tyler Technologies, Inc.*

Beth Bivans Petronio, Esq.
K&L GATES, LLP
1717 Main Street
Suite 2800
Dallas, Texas 75201
(214) 939-5815
Email:  beth.petronio@klgates.com

*Counsel for Defendant Tyler Technologies, Inc.*

Douglas F. Halijan
William David Irvine
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103-2217
(901) 524-5000
Email:  dhalijan@bpjlaw.com
Email:  wirvine@bpjlaw.com

*Counsel for Defendant Software AG Cloud Americas, Inc.*

Russell Brandon Bundren
James L. Murphy
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
(615) 252-4647
Email:  bbundren@babc.com
Email:  jmurphy@bradley.com

*Counsel for Defendant Global TelLink Corporation*

22

Albert G. McLean
Kevin David Bernstein
SPICER RUDSTROM PLLC
119 S. Main Street, Suite 700
Memphis, TN 38103
901-522-2324
Email:  amclean@spicerfirm.com
Email:  kdb@spicerfirm.com

*Counsel for Defendant Sierra-Cedar, Inc.*

/s/ *Michael G. McLaren*

## CERTIFICATE OF CONSULTATION

I, Michael G. McLaren, hereby certify that, pursuant to Local Rule 7.2(a)(1)(B), on Wednesday, March 3, I spoke with and emailed Odell Horton, attorney for all County Defendants, who indicated he could not consent to the above motion. Further, on March 4, 2020, counsel for Plaintiffs, Frank L. Watson, conferred by electronic mail with Bradley E. Trammell and Beth Bivens Petronio, counsel for Defendant Tyler Technologies, Inc., Douglas F. Halijan, counsel for Defendant Software AG Cloud Americas, Inc., Russell Brandon Bundren, counsel for Defendant Global TelLink Corporation, Albert G. McLean, counsel for Defendant Sierra-Cedar, Inc., Heather Marie Gwinn Pabon, counsel for Defendant Sierra Systems Group, Inc., and Robert A. McLean, counsel for Defendant Tetrus Corp. concerning Plaintiffs' request to conduct both class and merits based discovery.  On March 5, 2020, counsel for Plaintiffs, Frank L. Watson, further conferred via telephone with Mr. Trammell regarding this relief.  Mr. Trammell has indicated that Tyler Technologies, Inc. cannot consent to the requested relief at this time.  Counsel for the remaining Defendants have not indicated whether the requested relief will be opposed

/s/ *Michael G. McLaren*