# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT TURNAGE, CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, TERRENCE DRAIN and KIMBERLY ALLEN on behalf of themselves and all similarly situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:16-cv-02907-SHM-tmp |
| v. | ) ) | Jury Demanded |
| BILL OLDHAM, in his individual capacity as former Sheriff of Shelby County, Tennessee; FLOYD BONNER, JR., in his official capacity as Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity as former Jail Director of Shelby County, Tennessee; KIRK FIELDS, in his official capacity as the Jail Director of Shelby County, Tennessee; CHARLENE MCGHEE, in her individual capacity as former Assistant Chief of Jail Security of Shelby County, Tennessee; REGINALD HUBBARD, in his official capacity as Assistant Chief of Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity as former Assistant Chief of Jail Programs; TIFFANY WARD in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; TYLER TECHNOLOGIES, INC., a foreign corporation; GLOBAL TEL*LINK CORPORATION, a foreign corporation; SOFTWARE AG USA, INC., a foreign corporation; SIERRA-CEDAR, INC., a foreign corporation; SIERRA SYSTEMS GROUP, INC., a foreign corporation, and TETRUS CORP, a foreign Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## SHELBY COUNTY DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A DISCOVERY CONFERENCE, TO PERMIT MERITS-BASED DISCOVERY, TO COMPEL DEPOSITIONS, AND FOR SANCTIONS AND FEES

COME NOW Defendants Bill Oldham, Floyd Bonner, Jr., Robert Moore, Kirk Fields, Charlene McGhee, Reginald Hubbard, Debra Hammons, Tiffany Ward, and Shelby County, Tennessee (collectively referred to as the "Shelby County Defendants") and submit this Response in Opposition to above-referenced Motion.

## INTRODUCTION

By their instant Motion, Plaintiffs essentially accuse the Shelby County Defendants of intentionally delaying discovery with actual or constructive knowledge that a fact witness, Edwin Raper, had a terminal health condition, thereby depriving Plaintiffs of discovery allegedly needed to prosecute their claims when Mr. Raper passed away.  According to Plaintiffs, drastic sanctions are needed, including a death penalty sanction in the form of a default judgment against the Shelby County Defendants or, alternatively, some sort of unspecified adverse inference instruction.  The Plaintiffs also ask the Court to discard the bifurcated discovery process required by the Court's prior orders (*orders that were put in place with the consent of the Plaintiffs*).  In pursuit of their goals, Plaintiffs have provided the Court an incomplete and often inaccurate version of events leading up to this point.  In reality, there has been no purposeful delay of the discovery process, no failures to appear for noticed depositions, and no violations of the Court's orders.  Rather, any scheduling issues encountered in this case have been driven by the sheer number of parties involved, the fact that amendments to pleadings and joinder of new parties continued past the middle part of 2019, the fact that new counsel were appearing as late as December of 2019, and the fact that all Defendants have been working to address justifiable concerns pertaining to the Plaintiffs' failure to adhere to the bifurcated discovery process that has been ordered by the Court on numerous occasions.  Moreover, there was no effort to prevent Mr. Raper from being deposed before his death, as Plaintiffs shockingly claim.  In fact, as far as the

Shelby County Defendants' counsel are aware, Mr. Raper's death on February 8, 2020, at age 47, was completely unexpected. As will be explained in further detail, counsel for the Shelby County Defendants did not discuss any health issues with Mr. Raper, had no reason to discuss health issues with Mr. Raper, and had no knowledge that Mr. Raper had a health condition of any kind. Plaintiffs should not be permitted to exploit Mr. Raper's untimely death as a means of circumventing their burden of proof in this case, especially in light of the fact that they have not shown that Mr. Raper's death is unfairly prejudicial to them in any way.[1] In short, there is no basis for an award of sanctions of any kind. Accordingly, the Plaintiffs' Motion should be denied, and the Shelby County Defendants should be awarded their attorney's fees and costs incurred in responding to the Plaintiffs' Motion.

## FACTS

As the Court is aware, this is a complicated case. There are ten plaintiffs, represented by six lawyers at two different law firms, who seek to serve as class representatives for a class they contend may include thousands of individuals. There are fifteen defendants, represented by more than seventeen lawyers at eight different law firms and the Shelby County Attorney's office. The issues in the case pertain to a years' long effort to modernize computer systems that store and communicate information pertaining to persons incarcerated in Shelby County jail facilities and/or who are prosecuted through the Shelby County criminal court systems. Coordinating discovery efforts and complying with discovery obligations has been an enormous

---

[1] The Shelby County Defendants have produced thousands of documents pertaining to Mr. Raper's involvement in the events at issue in this case, including many emails authored or received by Mr. Raper. Of course, Mr. Raper was not the sole Shelby County employee involved with or knowledgeable of the events at issue, but instead was one of many individuals who have relevant knowledge that may be discovered by Plaintiffs. Plaintiffs have yet to establish (or even tried to establish) their inability to prove anything as a result of Mr. Raper's death.

task, and one that has required great expense to be incurred by Shelby County and the other Defendants.  To date, extensive written discovery has occurred and hundreds of thousands of documents have been collected for review and production.  Although Plaintiffs' Motion attempts to paint a picture of discovery being intentionally delayed, the Plaintiffs' version of the facts leading up to the filing of the instant Motion is selective in nature and fails to give a complete picture of the events.

In approximately the middle of 2019, counsel for the parties engaged in discussions concerning a potential mediation and the class certification discovery they thought may be necessary to prepare for a mediation.  In connection with these discussions, Plaintiffs' counsel sent a letter dated May 22, 2019 (the starting point of the Plaintiffs' version of events), expressing interest in deposing all of the individual defendants, a Rule 30(b)(6) witness of each entity defendant, and four additional witnesses, including three judges of Tennessee state courts and Mr. Raper, who at the time was employed in Shelby County's information technology department and had responsibilities related to the computer system implementation at issue in this case.[2]  At this time, significant written discovery and document production activities were underway, some of which were conducted under the close supervision of the Court.  In addition, numerous changes were occurring, and thereafter continued to occur, with respect to the operative pleadings, the parties before the Court, and the counsel representing the various Defendants.  All of this activity consumed substantial amounts of time and financial resources over the following months and necessitated delays in scheduling the depositions of witnesses. Indeed, it would have made little sense to engage in depositions prior to the time the pleadings

---

[2] Notably, Plaintiffs' counsel did not provide any deposition topics for the Rule 30(b)(6) depositions they indicated an intent to pursue.

were fixed and all Defendants were before the Court, prior to the time all electronic discovery had been produced by Shelby County, and prior to the time that counsel for all Defendants had been retained and provided an opportunity to familiarize themselves with the various and complex issues presented in this case.

Although the initial Complaint in this matter was filed on November 17, 2016, the Plaintiffs have amended their pleadings six (6) times since then. A number of these amendments added or substituted parties in response to comparative fault defenses raised by various defendants joined in earlier pleadings. Until early 2019, the only parties to the case were the Plaintiffs, the Shelby County Defendants, and Tyler Technologies, Inc. On January 18, 2019— more than two years after the this action was filed—Plaintiffs' filed their Fourth Amended Complaint, which added Defendants Global Tel*Link Corporation ("GTL"), Software AG Cloud Americas, Inc. ("Software AG"), and Sierra-Cedar, Inc. ("Sierra-Cedar") as parties to the case. (DE 138.) On February 26, 2019, Plaintiffs filed their Fifth Amended Complaint, substituting Software AG USA, Inc. as a defendant in the place of Software AG Cloud Americas, Inc. (DE 170.) On April 23, 2019, Plaintiffs sought leave to file a Sixth Amended Complaint (DE 190), which the Court granted on April 30, 2019. (DE 197.) The Sixth Amended Complaint was filed on May 1, 2019, adding Defendant Sierra Systems, Inc. as a defendant to the case less than a month before Plaintiffs' correspondence concerning initiation of deposition discovery. (DE 198.) On June 5, 2019, several weeks after Plaintiffs' May letter concerning potential depositions, Plaintiffs' counsel gave notice that Plaintiffs intended to seek leave to file a seventh amended pleading. Plaintiffs' Unopposed Motion to Amend was filed on June 18, 2019. (DE 213). The next day, on June 19, 2019, counsel for Sierra Systems Group, Inc.—a defendant joined to the case by Plaintiffs' Sixth Amended Complaint—entered notices of appearance. (DE

214 and 215).  Also that day, the Court granted Plaintiffs' Motion to Amend (DE 216), and the

Plaintiffs filed their Seventh Amended Complaint—the version now in effect—and issued a

summons to yet another new defendant, Tetrus Corp.  (DE 218 and 219).  Between June 27,

2019 and July 12, 2019, Defendants, except for Tetrus Corp., filed Answers.  (DE 224, 225, 226,

227, 228, and 232.)  On July 15, 2019, Tetrus Corp. filed a Motion for Extension of Time,

requesting until August 6, 2019 to file a responsive pleading.  (DE 233.)  The Motion was

granted on July 16 2019 (DE 234), and Tetrus Corp. filed its Answer on August 6, 2019.  (DE

235.)

In the midst of all of the changes to the pleadings, the Plaintiffs and the Shelby County

Defendants were locked in a protracted document production process related to the Plaintiffs'

requests for electronically stored information ("ESI") (mainly in the form of hundreds of

thousands of emails), thousands of Shelby County Criminal Court and General Sessions Court

case files, and other information from the Shelby County Defendants.  Over the course of several

months, counsel for the Plaintiffs and the Shelby County Defendants worked together to make

production of the requested case files or "jackets" related to individual cases.  On April 26, 2019,

the Shelby County Defendants produced the requested jackets from the Shelby County Criminal

Court. (*See* DE 193.)  Thereafter, counsel for the Plaintiffs and the Shelby County Defendants

worked together to collect and scan for production numerous jackets from the Shelby County

General Sessions Court.  While the process of producing jackets continued, disputes concerning

the clear overbreadth of Plaintiffs' proposed ESI protocol led to a series of conferences and

hearings before the Court, the details of which need not be recited in detail here.  However, it

suffices to say that the parties' differences in that regard were significant and ongoing into late

August of 2019, by which time the Plaintiffs and the Shelby County Defendants had submitted

notices regarding their respective positions on the status of ESI discovery efforts and the Court had conducted numerous conferences on those issues.  (DE 221, 222, 223, 231, 236, and 238.)[3] On August 26, 2019, the Court entered an Order resolving the parties' discovery disputes and setting timelines for production of ESI and completion of the Shelby County Defendants' privilege review.  (DE 239.)

On September 3, 2019, the Shelby County Defendants produced more than 107,000 documents that had been collected pursuant to the Plaintiffs' request for ESI, which in turn had been culled from the more than 300,000 ESI documents Plaintiffs initially insisted should be produced.  Following its review of thousands of documents that had been set aside as potentially privileged in the ESI search term process, the Shelby County Defendants made supplemental productions of roughly 4,900 documents on October 24, 2019 and 128 documents on January 6, 2020.  After completing their privilege review and preparing a privilege log, the Shelby County Defendants produced the log to the other parties on January 10, 2020.[4]

---

[3] As further discussed below, in their Response in Partial Opposition of Defendants' Motion Requesting Approval of Third Amended Scheduling Order, Plaintiffs mistakenly characterize the primary focus of these hearings and conferences as having been directed at issues pertaining to bifurcated discovery.  (*See* DE 293, at p. 3.)  In reality, the vast majority of the appearances before the Court were necessitated by the extremely broad and often shifting nature of Plaintiffs' requests for ESI.

[4] As the Court may recall, the manner in which ESI documents were searched and produced did not entail a traditional responsiveness review to determine whether documents being produced were actually responsive to Plaintiffs' discovery requests.  Rather, documents were flagged for production, or set aside for privilege review, simply by virtue of being "hit" by one or more of Plaintiffs' search terms or terms intended to capture potentially privileged communications.  This resulted in a high volume of irrelevant but otherwise privileged documents being set aside for potential inclusion on the Shelby County Defendants' privilege log.  On November 6, 2019, counsel for the Plaintiffs and the Shelby County Defendants reached an agreement whereby Shelby County would log only those privileged documents related to the issues in this case.  The process of completing the privilege log took longer than initially expected, and Plaintiffs agreed to allow Shelby County additional time to complete the task.

During the course of the aforementioned events, the Shelby County Defendants did not simply ignore Plaintiffs' May 2019 letter or their subsequent communications concerning depositions, as Plaintiffs' Motion suggests.  Rather, the parties continued to discuss the prospect of a mediation and potential dates for depositions, both by phone and in person.  Further, the Shelby County Defendants and the various other Defendants endeavored to understand the Plaintiffs' intended scope of the anticipated depositions, in light of the Court's Order bifurcating the discovery in this matter and limiting discovery at this time to issues pertaining to class certification.  As it turned out, gaining this understanding was far from easy.

Shortly after the time that Mr. McLaren sent his May letter, it became unclear who exactly the Plaintiffs wanted to depose and how they wanted to proceed with depositions.  More specifically, subsequent communications from counsel for the Plaintiffs indicated that they may not wish to pursue, in the short term, the full list of depositions that was provided in Mr. McLaren's May 22, 2019 letter.  This prompted the Defendants' counsel to have discussions with Mr. McLaren to gain clarity concerning Plaintiffs' intentions.  (Decl. of Odell Horton, Jr., ¶¶ 7-8.)[5]  These discussions occurred in person following the status conference conducted by the Court on July 10, 2019, and touched on a variety of issues related to deposition scheduling and the still-evolving nature of the case.  (*Id.*)  Following that discussion, Odell Horton, Jr., counsel for the Shelby County Defendants, provided a written response to Mr. McLaren's May letter, *which was on behalf of all Defendants then before the Court* on July 26, 2019.  (*Id.,* ¶ 8.)  Mr. Horton's letter, which was sent before Defendant Tetrus Corp. filed its Answer, stated in pertinent part as follows:

> You sent a letter to Defendants dated May 22, 2019 regarding depositions of certain individuals, depositions of 30(b)(6) witnesses

---

[5] The Declaration of Odell Horton, Jr. is attached hereto as **<u>Exhibit 1</u>**.

and potential deposition dates.  Although Bob [Craddock] and/or I
have discussed these issues with Bill Burns and now with you after
the hearing on Wednesday, July 10th, I wanted to respond in writing
to your letter on behalf of Defendants.

We asked the following questions and made the following
statements regarding your letter:

1.      *Defendants are not opposed to the concept of depositions
regarding class discovery.*  This group of depositions would also
include the named plaintiffs;

2.      *It is Defendants' position we should not take depositions
until all of the named Defendants are before the Court.  The Court
recently granted Tetrus an extension of time until August 6th to
respond to Plaintiffs' Seventh Amended Complaint.  The new
Defendants were not copied on your letter and do not have copies
of any of the discovery that has been conducted to date*;

3.      Most of the deposition dates in your letter will have passed
by August 6th;

4.      *Defendants have requested topics for the 30(b)(6) witnesses
but have not received them.  It is unclear what topics relevant to
class discovery you would expect each defendant to have
information or knowledge*;

5.      The current Scheduling Order includes a September 6th
deadline for mediation and other rapidly approaching deadlines.
*Due to the search terms and production of documents issues and
other case related issues, it is unlikely the parties will meet the
current deadlines in the Scheduling Order*;

6.      *Based on past statements by Plaintiffs' counsel, you would
propose a revised Scheduling Order.*  We again discussed Plaintiffs'
providing a revised Scheduling Order after the July 10th hearing.
*We look forward to receiving your proposed Scheduling Order and
working with you regarding the proposed dates and related issues…*

(Ex. B to Plaintiffs' Motion, emphasis added.)

Plaintiffs' characterization of this correspondence as an insistence by the Shelby County

Defendants that "no depositions should be taken" is obviously incorrect. (*See* Plaintiffs' Motion

at p. 4.)  Mr. Horton's correspondence plainly stated, "*Defendants are not opposed to the*

*concept of depositions regarding class discovery.*"  (*Id.*)  Viewed in context, the Defendants'

positions concerning the timing of the depositions and requests for more information, as reflected in Mr. Horton's letter, were quite logical.  Again, as mentioned above, it made little sense to engage in deposition discovery before the pleadings were closed.  Likewise, it was not fair to expect new defendants, including some that had been parties to the case only a few weeks, to immediately engage in depositions.  Further, it was not reasonable to expect the Defendants to agree upon deposition dates without first having the topics that Plaintiffs intended to pursue in the course of Rule 30(b)(6) depositions.[6]  Moreover, the schedule for the entire case was in a state of flux at the time of Mr. Horton's letter, and the parties were engaged in ongoing efforts to develop a new schedule, taking into account the recent changes in the makeup of the case and the appearances of new counsel.

Plaintiffs' Motion also inaccurately suggests that the Shelby County Defendants continued to ignore or to stall Plaintiffs efforts to depose Mr. Raper following Mr. Horton's letter of  July 26, 2019.  (*See* Plaintiffs' Motion at p. 2.)   In fact, in conjunction with efforts to modify the existing scheduling order in the Summer of 2019, the Defendants continued to push the Plaintiffs to come to a consensus as to how they wished to proceed with discovery and who they wished to depose, and the Plaintiffs were slow in responding.  For instance, on August 8, 2019, counsel for the Shelby County Defendants reminded counsel for Plaintiffs via email that the Defendants still needed clarification from the Plaintiffs concerning the Plaintiffs' anticipated

---

[6] Obviously, Rule 30(b)(6) witness designations and scheduling determinations could not be made in the absence of knowing the anticipated topics of those depositions.  Further, depending upon the Rule 30(b)(6) topics provided by Plaintiffs, Mr. Raper may have been designated as a Rule 30(b)(6) representative for Shelby County.  Logistically, it would have made sense to have Mr. Raper deposed only once, rather than rushing to depose him as a fact witness and then having to depose him again as a Rule 30(b)(6) representative, after the time Plaintiffs finally provided a proper Rule 30(b)(6) deposition notice.  Counsel for the Shelby County Defendants repeatedly emphasized this point to counsel for the Plaintiffs during the months leading up to Plaintiffs' Motion.

discovery plan, so that the Defendants could evaluate the feasibility of potential deadlines being

discussed.  (*See* Ex. 1 to Horton Decl.)  Specifically in regard to depositions, counsel for the

Shelby County Defendants stated:

> Yesterday Plaintiffs e-mailed a Proposed Second Amended
> Scheduling Order to Defendants.  As Defendants stated after the
> hearing this morning, we need additional information from Plaintiffs
> before we can consider possible deadlines for the Proposed Second
> Amended Scheduling Order.  *Attached is the letter Defendants sent
> to Mike McLaren responding to his May 22, 2019 letter regarding
> depositions.  Defendants have not heard from Plaintiffs regarding
> the issues raised in the letter.  Please let us know how many
> depositions you intend to take, who you wish to depose or other
> discovery before a potential mediation deadline.*  We can discuss the
> other issues in the letter after our next hearing.  This information
> will assist the parties with the scheduling process.  *You stated you
> will provide the requested information a week from today.*  If you
> have any questions, please contact us.

(*Id.*, emphasis added.)

Despite claiming in their Motion that they were diligently seeking dates for Mr. Raper's

deposition at every turn, Plaintiffs did not respond to Mr. Horton's August 8, 2019 email within

the timeframe they suggested.  In fact, Plaintiffs did not respond until August 20, 2019, when

Bradley Trammell, counsel for Defendant Tyler Technologies, Inc., sent an email stating,

"Tomorrow is another hearing before Judge Pham and we have not heard from Plaintiffs about

scheduling."  (*Id.*)  In response, counsel for Plaintiffs provided a proposed revised scheduling

order, but otherwise failed to respond to any of the other deposition and discovery issues raised

by the Defendants.  Mr. Trammell emphasized the Plaintiffs' lack of responsiveness in a reply as

follows:

> We [i.e., all Defendants] want to work with Plaintiffs on
> scheduling.  *Most respectfully, this proposed order ignores the
> conversation we had after the last court appearance as well as
> Odell's email and letter.*  We need to know Plaintiff's position, for
> example, on class certification discovery before we can evaluate any
> proposed Order.  As we discussed after court, the amount of class

11

> certification discovery will have an impact on when mediation can
> be scheduled.

(*Id.*, emphasis added.)

After being asked by Mr. Trammell to commit to a position concerning how Plaintiffs wished to proceed with discovery, Plaintiffs abandoned the expansive course of fact witness and Rule 30(b)(6) deposition discovery initially outlined in Mr. McLaren's letter of May 22, and indicated instead that they needed only four or five depositions of Shelby County employees for class certification purposes.  (*Id.*)  However, Plaintiffs' counsel did not indicate which witnesses they intended to depose or if the anticipated witnesses were the same as previously identified in Mr. McLaren's May 22 letter.   (*Id.*)

As these communications show, the Shelby County Defendants were not trying to stall discovery.  Instead, all Defendants were trying to push the Plaintiffs to make a firm decision as to how they wanted to proceed with depositions, so that counsel for the numerous Defendants could begin coordinating schedules.  However, as of late August 2019 (three months after Mr. McLaren's initial letter concerning potential depositions), the Plaintiffs had still not provided the Defendants with clear indications as to how they wished to proceed, who they wished to depose, or when they intended to begin taking depositions.

In fact, Plaintiffs' positions continued to evolve as time progressed, undercutting their present effort to paint themselves as litigants being actively delayed in their quest for deposition discovery.  For instance, on August 29, 2019, in an email sent by Frank Watson, Plaintiffs' conditioned their consent to proposed revisions to case management deadlines upon all parties agreeing to abandon plans to take the very depositions that Plaintiffs now contend they were so loudly clamoring to take:

> The plaintiff [sic] team is fine in advancing all of the deadlines in
> your last scheduling order by 30 days, premised upon the parties all

12

> agreeing to an early mediation to occur by mid November *without depositions*.

(Ex. 2 to Horton Decl., emphasis added.)

Subsequently, on September 6, 2019, the Plaintiffs and the Defendants jointly filed a motion to amend the scheduling order.  (DE 242.)  As justification for seeking a six-month extension of existing deadlines (including a then-existing deadline of November 13, 2019 for completion of bifurcated class-only discovery), the parties cited the recent additions of new defendants and the need to review the large production of ESI made by the Shelby County Defendants on September 3, 2019.  (*Id.*, at pp. 1-2, ¶¶ 3-4.)  The Court granted the Parties' joint Motion and entered a Second Amended Scheduling Order later that same day.  (DE 244.)

In the weeks that followed, the Shelby County Defendants continued to work on reviewing more than 5,000 documents set aside in the ESI production process for privilege review.  On October 15, 2019, counsel for the Shelby County Defendants advised counsel for the Plaintiffs that the Shelby County Defendants had completed their initial review of these documents, that several thousand documents determined to be non-privileged would be produced, and that additional time was needed to complete a privilege log for a large number of documents believed to be privileged.  Counsel for Plaintiffs agreed to the requested extension.

On October 24, 2019, counsel for the Shelby County Defendants spoke by telephone with Mr. Watson, one of Plaintiffs' counsel, regarding various discovery issues, potential settlement prospects, and logistics of a potential mediation to occur before the March 3, 2020 mediation deadline.  (Horton Decl., ¶ 11.)  With regard to depositions, Mr. Horton advised that the Defendants would want to depose the Plaintiffs before a mediation and proposed scheduling those depositions in mid-December of 2019 or in early January, 2020, subject to the difficulty of coordinating available dates for all counsel.  (*Id.*)  Mr. Watson advised that the Plaintiffs would

want to depose Mr. Raper and a number of other, unspecified witnesses before the mediation. (*Id.*)  However, counsel for Plaintiffs did not insist upon dates for Mr. Raper's deposition at this time.  (*Id.*)  Rather, counsel for the parties left open for further discussion the complete list of witnesses that the Plaintiffs wished to depose and when those depositions might occur.[7]  (*Id.*)

Plaintiffs assert that they were "compelled" to issue a Notice for Mr. Raper's deposition on November 3, 2019, after Plaintiffs' "continued" requests for dates were ignored.  (Plaintiff's Motion, p. 4)  As shown above, there were no requests ignored.  Further, Plaintiffs issued their notice on November 13, 2019, not November 3 as stated in their Motion.  Moreover, despite the assertion to the contrary in their Motion (*id.*, at 4), Plaintiffs' counsel gave no indication in their email of November 13, 2019 that they believed there to have been any "breach in the typical decorum between members of the legal profession," much less "cited" anything to that effect. (*See* Ex. C to Plaintiffs' Motion).  Rather, the referenced correspondence simply proposed a number of different dates on which Plaintiffs' counsel could be available to depose Mr. Raper, in addition to the December 18 date they unilaterally selected, and concluded, "Happy to discuss." (*Id.*)  Plaintiffs' current construction of this communication as some sort of rebuke is difficult to comprehend.

Notably, Plaintiffs' notice for Mr. Raper's deposition was not limited in any way to suggest that the scope of the deposition would pertain to class certification issues only.  (DE 261.)  In fact, the opposite is true—the notice broadly indicated that the deposition would be taken "for the purposes of discovery, use as evidence, preservation of testimony, and all other purposes authorized by law."  (*Id.*)  Accordingly, on November 19, 2019, counsel for the Shelby

---

[7] Following his October 24, 2019 call with Mr. Watson, Mr. Horton reached out to counsel for the other Defendants to begin coordination of schedules for potential depositions anticipated to occur in December and January.  (Horton Decl., ¶ 12.)

County Defendants contacted counsel for the Plaintiffs to discuss the scope of the deposition and were advised that they would need to speak with Mr. McLaren regarding that topic, as he was likely to be taking the deposition.  (*See* Horton Decl., at ¶ 13 and Ex. 3.)

On November 26, 2019, the Shelby County Defendants requested an additional extension of time to complete their privilege log.  Plaintiffs agreed to this request.  Notably, Plaintiffs' counsel advised that Plaintiffs would want to receive the completed privilege log prior to taking the deposition of Mr. Raper.[8]  (*See* Ex. 4 to Horton Decl.).

On December 3, 2019, Odell Horton and Robert Craddock spoke via telephone with Mr. McLaren regarding, among other issues, the anticipated scope of Mr. Raper's deposition and the collective Defendants' position that the deposition would need to be limited to class certification topics.  (Horton Decl., ¶ 15.)  Mr. McLaren agreed with the Defendants' position regarding the permissible scope of Mr. Raper's deposition and further agreed to work with counsel for the Defendants to resolve potential disputes concerning distinctions between class certification and liability issues in advance of the deposition, to the extent possible.  (*Id.*)  To that end, Mr. McLaren and counsel for the Shelby County Defendants agreed to cancel Mr. Raper's deposition that had been noticed for December 18, 2019 and to reschedule the deposition for some time in January of 2020, subject to the availability of counsel on dates to be provided by Mr. McLaren. (*Id.*)  Counsel further discussed that as a means of resolving the scope-related issues, Mr. McLaren would provide a list of deposition topics, similar to a Rule 30(b)(6) notice, which could be used to facilitate discussions among counsel for the parties as to the permissible scope of Mr. Raper's deposition, but which would not necessarily limit Mr. McLaren's questions of Mr.

---

[8] As stated above, by agreement of the parties, the Shelby County Defendants' time for completing their privilege log was ultimately extended until January 10, 2020.

Raper.  (*Id.*)  Mr. McLaren indicated that the list of topics would be provided the following week, and counsel agreed to have follow-up discussions following receipt of the topic list.  (*Id.*)

On December 6, 2019, Mr. McLaren sent a letter to counsel for the Shelby County Defendants, listing a number of potential dates in January for Mr. Raper's deposition.  However, contrary to what was discussed a few days prior, counsel for Plaintiffs did not provide a list of deposition topics or otherwise provide any information to be used in anticipated discussions of the scope of Mr. Raper's deposition.  (*See* Ex. D to Plaintiffs' Motion.)

Plaintiffs take issue with the timeliness of the Shelby County Defendants' response to Mr. McLaren's letter of December 6, 2019, asserting that they followed up numerous times and implying that the Shelby County Defendants were simply ignoring the request for deposition dates.  (*See* Plaintiffs' Motion, pp. 4-5.)  What Plaintiffs fail to point out is that Mr. McLaren's correspondence was addressed to some counsel for the Shelby County Defendants, but to no counsel for the other Defendants.  Obviously, it was necessary to communicate with counsel for the numerous other Defendants before a date could be selected that would work for everyone.  Further, the Plaintiffs fail to acknowledge that on December 9, 2019, then-counsel for Tetrus Corp advised the parties that they would be seeking permission to withdraw from the case and that new counsel would be assuming Tetrus' defense.  That same day, Garrett Estep and Robert McLean entered a Notice of Appearance as new counsel for Tetrus (DE 271), and the Court entered an Order allowing the substitution of counsel on December 17, 2019.  (DE 273.)  This impacted scheduling of upcoming discovery.

Moreover, Plaintiffs' assertion that Mr. McLaren's correspondence of December 16, 2019 "went unanswered" is inaccurate.  (*See* Plaintiffs' Motion at p. 5, ¶ 8.)  Plaintiffs' Motion fails to disclose that counsel for the Shelby County Defendants spoke via telephone with Mr.

McLaren on December 18, 2019—two days after his December 16 email—about his request for deposition dates and the fact that the Shelby County Defendants were still awaiting the deposition topics that were discussed with Mr. McLaren on December 3, 2019.  (Horton Decl. 16.)  On this call, counsel for the Shelby County Defendants also reiterated their position that if Plaintiffs were still considering taking a Rule 30(b)(6) deposition, Mr. Raper could be designated a witness for various topics, and that it would be more efficient to know that before proceeding with his deposition in a personal capacity and later having to depose him again in a representative capacity.  (*Id.*)  Mr. McLaren advised that he would follow up with counsel for the Shelby County Defendants and provide the previously discussed topics within the week.  (*Id.*)

Likewise, Plaintiffs' Motion fails to disclose another telephone call between counsel for the Shelby County Defendants and Mr. McLaren that occurred on January 6, 2020.  On that call, counsel for the Shelby County Defendants again inquired as to the status of the deposition topics that counsel for the Plaintiffs had agreed to provide a month prior, but which had not yet been provided.  (*Id.,* ¶ 17.)  Given the delay in receiving the topics that Plaintiffs had agreed to provide, counsel for the Shelby County Defendants suggested postponing Mr. Raper's deposition that was scheduled for January 22, 2020, so that the Shelby County Defendants could have adequate time to consider the scope of the Plaintiffs' proposed deposition topics and to prepare Mr. Raper for testimony on any topics for which he might be Shelby County's designated witness.  (*Id.*)  In response, Mr. McLaren stated that he would provide deposition topics in a few days and requested that any decision concerning the rescheduling of Mr. Raper's deposition be deferred until such time as the Shelby County Defendants could review the forthcoming deposition topics.  (*Id.*)

On January 8, 2020, after repeated urging by counsel for the Shelby County Defendants, Mr. McLaren finally sent to defense counsel two deposition notices, one for Mr. Raper scheduled for January 22, 2020 and one for a Rule 30(b)(6) deposition to occur at an unspecified time. (Horton Decl., at ¶ 18 and Ex. 5.)  These notices were accompanied by a cover letter stating that if Shelby County elected not to designate Mr. Raper as a Rule 30(b)(6) witness, Plaintiffs would proceed with his deposition in an individual capacity on January 22.  (*See id.*)  This was the first that the Shelby County Defendants had seen of a list of potential deposition topics, despite the fact that they had requested these topics as early as July of 2019 and had been actively pressing Mr. McLaren to provide the same for nearly a month.  More importantly, the topics provided by Plaintiffs underscored the concern that had prompted the Defendants to engage with the Plaintiffs concerning the anticipated scope of depositions to begin with.  Plaintiffs' proposed Rule 30(b)(6) Notice contained 34 different, wide-ranging topics, a number of which were wholly unrelated to class certification issues, overbroad, or otherwise objectionable.

On January 10, 2020, counsel for the Shelby County Defendants spoke via telephone with Mr. McLaren regarding his recently-provided list of deposition topics and other depositions, including the anticipated depositions of the Plaintiffs.  (Horton Decl., ¶ 19.)  This is yet another event that Plaintiffs' Motion fails to disclose.  During this call, counsel for the Shelby County Defendants advised Mr. McLaren that Plaintiffs' delay in providing the Rule 30(b)(6) topics had made it infeasible for Shelby County to fully consider the topics or to prepare Mr. Raper to give testimony by January 22, the date then-scheduled for his deposition.  (*Id.*)  Accordingly, the parties agreed to reschedule Mr. Raper's deposition for a date in February or early March of 2020.  (*Id.*)  Counsel for the Shelby County Defendants again agreed to coordinate with counsel for all Defendants concerning the rescheduling of Mr. Raper's deposition and to follow up with

Mr. McLaren regarding any concerns the Defendants may have regarding the scope of the Plaintiffs' proposed deposition notice. (*Id*.)  This agreement was confirmed via email by Mr. McLaren.[9]  (*See* Ex. 6 to Horton Decl.)

In light of Mr. McLaren's unequivocal agreement on January 10, 2020 to reschedule the deposition of Mr. Raper for some time in February or early March, it is difficult to conceive how Plaintiffs can plausibly state that they somehow "became aware" on January 13 that the Shelby County Defendants' counsel wanted to reschedule the deposition.  (*See* Plaintiffs' Motion, p. 5, ¶ 10.)  Nor is it accurate to state that an email sent by Mr. Watson on January 14, 2020 was in response to the Shelby County Defendants' "newly raised concerns regarding Mr. Raper's deposition."  (*See id.* at p. 5, ¶ 11.)  As shown above, counsel for the Shelby County Defendants had been discussing all Defendants' concerns with Mr. McLaren for more than a month at the time of the January 13 email referred to in Plaintiffs' Motion.  Moreover, hardly indicative of any effort to delay cooperation requested in Mr. Watson's January 14 email, Mr. Horton quickly advised that he would work to schedule the depositions of Mr. Raper, a Rule 30(b)(6) representative of Shelby County, and three (3) of the individual Shelby County Defendants (whose depositions had been requested for the first time on the previous day) within the two-month time period requested by Mr. Watson.  (*See* Ex. 7 to Horton Decl.)

Three days later, on January 17, 2020, and before counsel for the various Defendants could coordinate schedules for the requested depositions, counsel for Plaintiffs sent an email advising that depositions would be noticed on dates unilaterally selected by the Plaintiffs, which Plaintiffs insisted was necessitated by the Shelby County Defendants' failure to provide dates.

---

[9] That same day, Mr. Horton communicated with counsel for the other Defendants to begin coordinating potential deposition dates in February and March.  (Horton Decl., ¶ 19.)

(*See* Ex. K to Plaintiffs' Motion.)  Numerous notices were filed with the Court shortly thereafter. (DE 275-280.)

The reason dates had not been provided within the three-day span between Mr. Watson's January 14 email and the notices Plaintiffs served on January 17 should have been obvious to counsel for Plaintiffs.  With respect to the depositions of Mr. Raper and Shelby County, Mr. Horton and Mr. Craddock were still in the process of working with Mr. McLaren to resolve issues related to the scope of the depositions and to reschedule the date of Mr. Raper's deposition.  Indeed, at roughly the same time that Mr. Routt's email concerning deposition notices was sent on January 17, 2020, Mr. Horton—as he had assured Mr. McLaren on January 10—sent Mr. McLaren an email outlining the Defendants' collective opinions regarding the topics Plaintiffs had identified in their draft 30(b)(6) notice provided on January 8, and requested a conference call to discuss the same.  (Ex. 8 to Horton Decl.)  As to the other witnesses whose depositions were requested for the first time earlier in the week, Plaintiffs had not allowed sufficient time to coordinate the availability of the witness and the many attorneys involved.  Upon receiving Mr. Routt's email of January 17, Mr. Horton promptly advised counsel for the Plaintiffs that he was still working to schedule the depositions that Plaintiffs had requested.  (*See* Ex. K to Plaintiffs' Motion.)

Plaintiffs assert that counsel for the Selby County Defendants claimed on January 17, 2020, allegedly "for the first time," that they had an unavoidable scheduling conflict on the date Plaintiffs had selected for Mr. Raper's deposition.  (*See* Plaintiffs' Motion at p. 6, ¶ 14).  But this too is inaccurate.  The email cited by Plaintiffs came from Albert McLean, counsel for

Defendant Sierra-Cedar, Inc.[10]  (*See* Ex. L to Plaintiffs' Motion.)  Mr. McLean's email certainly

provides no basis for sanctions against the Shelby County Defendants.  If anything, Mr.

McLean's email shows the difficulty that is inherent in scheduling events in multi-party

litigation.  Plaintiffs' Motion consistently glosses over the fact there are numerous defendants in

this case and that selecting dates for depositions could not be accomplished at the whim of the

Shelby County Defendants.

   It is also inaccurate to say that counsel for the Shelby County Defendants "flatly rejected"

Plaintiffs' proposals or to suggest that the Shelby County Defendants simply ignored requests to

schedule depositions made throughout late January and early February of 2020. (*See* Plaintiffs'

Motion at p. 7-8, ¶¶ 17-20.)  Counsel for the Shelby County Defendants continued efforts to

cooperate in discovery.  For instance, on January 28, 2020, Mr. Horton sent Mr. McLaren an

email, repeating his January 17 request for a conference to discuss the concerns regarding the

scope of the Plaintiffs' 30(b)(6) notice.[11]  (*See* Ex. P to Plaintiffs' Motion.)  That conference call

occurred on January 30, 2020, at which time counsel for the Shelby County Defendants

attempted to resolve with counsel for Plaintiffs the Defendants' concerns regarding the

---

[10] Although Mr. McLean's email referred to an incorrect date, the Shelby County Defendants
understand that he meant to refer to the date Plaintiffs had selected for Mr. Raper's deposition.

[11] Although Mr. Watson had expressed on January 22 that deferring the Rule 30(b)(6) deposition
until after taking depositions of individual witnesses might help to avoid anticipated disputes
concerning the difference between class and merits discovery (*see* Ex. N to Plaintiff's Motion),
the 30(b)(6) topics Plaintiffs had provided arose in the first instance from discussions in
December regarding potential means of resolving disputes concerning the scope of depositions in
general.  Thus, simply putting off the Rule 30(b)(6) deposition did not resolve the Defendants'
concerns or alleviate the need for further discussion, as it was likely that Plaintiffs would be
asking questions of individual witnesses that tracked the topics in the 30(b)(6) notice.

anticipated scope of depositions and a process for ensuring that questions were limited to class certification issues.  These efforts did not result in a resolution.

On February 7, 2020, counsel for the Plaintiffs noticed Mr. Raper's deposition for March 6, 2020 and a number of other depositions to occur on other dates.  (DE 281-285).  The following day, Mr. McLaren advised that he intended to go forward with Mr. Raper's deposition on the date noticed.  (Ex. R to Plaintiffs' Motion).  Puzzlingly, Plaintiffs' Motion faults the Shelby County Defendants for not responding to this email, despite the fact that the email neither solicited nor required a response.  (*See* Plaintiffs' Motion, at p, 7.)

As discussed further below, counsel for the Shelby County Defendants were surprised to learn on February 10, 2020 that Mr. Raper had died over the preceding weekend.  After attempting to confirm some basic information concerning Mr. Raper's death, counsel for the Shelby County Defendants alerted counsel for the Plaintiffs of the unexpected development on February 12, 2020.[12]

Importantly, Plaintiffs' assertions that Shelby County Defendants have failed to produce deponents in response to duly noticed depositions are simply not true.  (*See*, Plaintiffs' Motion, at p. 1 and p. 2.)  As discussed above, in each instance where the Defendants were not available to conduct a deposition on the date chosen and noticed by the Plaintiffs, or where circumstances otherwise warranted rescheduling the deposition, the deposition was postponed in advance by agreement of the parties.  Not once did Plaintiffs actually go to a scheduled deposition and find

---

[12] While Plaintiffs now contend that the inability to depose Mr. Raper has prejudiced the Plaintiffs' ability to prosecute their claims, the nearly immediate response of Plaintiffs' counsel to the news of Mr. Raper's death was the exact opposite.  On February 13, 2020, counsel for Plaintiffs insisted that Mr. Raper's untimely death had deprived Shelby County of any means of defending this case and, as a consequence, merited a "much higher" settlement demand from Plaintiffs.  (*See* Ex. 9 to Horton Decl.)

that a witness failed to appear, as their Motion plainly suggests.  Indeed, the only deposition that has occurred in this case was that of Robert Moore, the former Chief Jailer, and his deposition occurred on March 11, 2020, which was the date noticed by the Plaintiffs.[13]  Former Sherriff Bill Oldham's deposition was scheduled to occur in March, but was postponed due to the national health emergency related to the outbreak of COVID-19.

### Ed Raper's Death

Beyond its one-sided and often mistaken recitation of the factual background of this matter, Plaintiffs' Motion is offensive in its suggestion that the Shelby County Defendants intentionally delayed Mr. Raper's deposition, knowing he was ill, so that he would die before being deposed.  (*See* Plaintiff's Motion at p. 13, where they assert, "The County was aware that Mr. Raper had health issues but dodged and delayed producing Mr. Raper for months," and at p. 17, where they assert, "County Defendants went to painstaking efforts to make sure that a deposition [of Mr. Raper] was never taken.")  There is simply no basis for these accusations.

The truth is that Mr. Raper's untimely death, at the age of 47 years old, appears to have been an unexpected result of a reaction to medication he was taking for diabetes.  (Decl. of E. Lee Whitwell, ¶¶ 22-27.)[14]  Counsel for the Shelby County Defendants had no knowledge of Mr. Raper's health condition, nor any reason to know of that condition.  (*Id.*, ¶¶ 16-18; *see also* Horton Decl., ¶¶ 23-30, and Decl. of Robert E. Craddock, ¶¶ 7-9.)[15]  Mr. Whitwell in the Shelby

---

[13] Chief Moore's deposition proved that the concerns that initially led the Defendants to consult with the Plaintiffs concerning the anticipated scope of depositions were well-founded.  Counsel for the Plaintiffs asked numerous questions concerning merits issues, to which counsel for the various Defendants interposed a number of objections.

[14] The Declaration of E. Lee Whitwell is attached hereto as **Exhibit 2**.

[15] The Declaration of Robert E. Craddock, Jr. is attached hereto as **Exhibit 3**.

County Attorney's Office had corresponded with Mr. Raper as recently as January 30, 2020 concerning Mr. Raper's availability for being deposed in either February or March. (Whitwell Decl., ¶ 7.) Mr. Raper provided his availability, but mentioned nothing to Mr. Whitwell about being ill. (*Id.*, ¶¶ 8-10.) Accordingly, counsel for the Shelby County Defendants were surprised to learn of Mr. Raper's death, which they confirmed only after receiving a report of his death through Mr. Trammell on February 10, 2020.[16] After hearing that Mr. Raper may have died, Mr. Horton asked Mr. Whitwell to try to confirm this report. (Horton Decl., ¶ 27.) Once he was able to confirm Mr. Raper's death, Mr. Whitwell attempted to learn how Mr. Raper died. (Whitwell Decl., ¶¶ 13-19.) He spoke with Smita Sompalli, an employee in Shelby County's IT Department who worked with Mr. Raper, and she advised that Mr. Raper had recently experienced complications believed to have been related to medications he had been taking for diabetes. (*Id.*, ¶¶ 20-26.) To date, the Shelby County Defendants have not been able to determine the exact cause of Mr. Raper's untimely death, but it is believed that his death resulted from recently-onset complications of diabetes.[17] (*Id.*, ¶ 27.) Given the privacy issues related to Mr. Raper's personal health information and concerns for Mr. Raper's family who are likely still grieving his loss, the Shelby County Defendants have not pursued a quest to determine the cause of Mr. Raper's death, as Plaintiffs apparently contend is necessary.

---

[16] Mr. Trammell was alerted of Mr. Raper's death by representatives of his client, Defendant Tyler Technologies, whose employees were continuing to work with Mr. Raper in connection with standard ongoing maintenance issues.

[17] Counsel for the Shelby County Defendants have not "declined to provide Plaintiffs with any information regarding the cause of Mr. Raper's death," as stated in Plaintiffs' Motion. (*See* Plaintiffs' Motion at p. 8.) Counsel for the Shelby County Defendants did not have any information to provide at the time they advised counsel for the Plaintiffs of Mr. Raper's death on February 12, 2020.

## LAW AND ARGUMENT

**I.     Plaintiffs have failed to demonstrate that they are entitled to sanctions of any kind against the Shelby County Defendants.**

As the foregoing facts illustrate, the Shelby County Defendants have not attempted to thwart Plaintiffs' requested discovery in this matter.  To the contrary, on top of incurring hundreds of thousands of dollars in expenses in the form of attorneys' fees and outside litigation support vendor charges in connection with efforts to comply with Plaintiffs' discovery requests, the Shelby County Defendants, through their counsel, have worked diligently to resolve potential discovery disputes and to coordinate the task of scheduling depositions in this multi-party litigation.  Any delays in the discovery process have resulted solely from the complex and evolving nature of this matter, including relatively recent amendments to the pleadings and joinder of multiple additional parties, the long-running efforts to respond to Plaintiffs' massive and often shifting requests for ESI and to make production of all requested documents, the need to coordinate schedules of multiple counsel (some of which joined the case as late as December of 2019), and efforts to resolve the parties' differences with respect to distinctions between class certification and merits discovery.  In short, Shelby County Defendants have fully complied with their discovery obligations, and the delays Plaintiffs complain they have suffered are nothing out of the ordinary, given the context of this specific matter.  Accordingly, and as set forth in more detail below, Plaintiffs' Motion should be denied in its entirety.

### A.   *There is no basis for sanctions under Rule 37.*

As the facts above demonstrate, the Shelby County Defendants have not engaged in any conduct that would be considered sanctionable under any provision of Rule 37 of the Federal Rules of Civil Procedure.

Relying on Rule 37(d), Plaintiffs first assert that they are entitled to attorney's fees sanctions due to some unspecified failure of a witness to attend a deposition.  Plaintiffs' argument, however, side-steps the necessary factual predicate for their position—there must have been a failure to appear for a deposition before sanctions of any kind are appropriate under Rule 37(d).  Plaintiffs have failed to identify a single instance where that has occurred, nor can they.  As discussed above, although Plaintiffs have unilaterally noticed different depositions from time to time, any rescheduling of those depositions has occurred by consent *in advance of the deposition date.*  The only deposition that has occurred to date actually went forward on the date noticed by the Plaintiffs.[18]  Thus, Rule 37(d) is simply not applicable.

In addition to Rule 37(d), Plaintiffs claim their request for sanctions is supported by Subsections (b) and (c)(1) of Rule 37—neither of which are applicable here.  Contrary to Plaintiffs' assertion that 37(b) provides "a range of sanctions against litigants who fail to cooperate in discovery" (*see* Plaintiffs' Motion at p. 17), that subsection only grants authority to impose sanctions after a party has violated a court order. *See* Fed. R. Civ. P. 37(b) (Failure to Comply with a Court Order).  There has been no violation of a court order by the Shelby County Defendants, nor have the Plaintiffs even attempted to show that there has been.

Similarly, while Plaintiffs broadly claim that Rule 37(c)(1) provides discretion to issue sanctions for "failure to comply with discovery rules" (*see* Plaintiffs' Motion at p. 9), sanctions under this subsection are only permitted when a litigant has failed to disclose or timely supplement the information in its initial disclosures.  *See* Fed. R. Civ. P. 37(c) (Failure to Disclose, to Supplement an Earlier Response, or to Admit). Here again, the Plaintiffs' have not

---

[18] In light of the COVID-19 pandemic and measures either recommended or mandated to slow the spread of the virus, other depositions that were expected to go forward on the dates noticed by the Plaintiffs have had to be rescheduled for dates that have not yet been determined.

even attempted to show that the Shelby County Defendants' Rule 26 disclosures are deficient in any manner.

In light of their total failure to show any occurrence for which sanctions are contemplated under Rule 37, Plaintiffs' request for sanctions pursuant to Rule 37 should be denied.

> B. *Although the Court has the inherent authority to impose sanctions in appropriate circumstances, sanctions would be wholly inappropriate in this instance.*

Imposing any level of sanctions—particularly the extremely severe sanctions advocated by Plaintiffs—would be improper in this case.  In weighing a motion for sanctions arising from allegations that a party has failed to cooperate in discovery, courts in the Sixth Circuit consider the following factors: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered.  *Phipps v. Accredo Health Grp., Inc.,* No. 2:15-CV-02101-STA/CGC, 2017 WL 685579, at *4 (W.D. Tenn. Feb. 21, 2017) (citing *Peltz v. Moretti*, 292 Fed. App'x. 475, 479  (6th Cir. 2008)).  Inherent in each of these factors is a threshold requirement that a party against whom sanctions are sought has failed to cooperate in discovery.  As discussed in  great detail above, the Shelby County Defendants have complied with all discovery obligations.   Specifically in regard to depositions, the Shelby County Defendants have acted in good faith to resolve disputes between Plaintiffs and all Defendants concerning the anticipated scope of depositions and to schedule the requested depositions on dates convenient to everyone, not just counsel for the Plaintiffs.  The Court can and should simply end its sanctions inquiry there.

Nevertheless, each of the relevant sanctions factors outlined above also weighs in favor of denying Plaintiffs' motion in its entirety.  As evident from the facts laid out in detail above,

the Shelby County Defendants have gone to extensive lengths to advance the course of discovery in this matter. The Shelby County Defendants have produced voluminous amounts of ESI and been proactive in their efforts to keep the discovery process moving. On numerous occasions in which Plaintiffs claim they were being stonewalled, the Plaintiffs themselves were the cause of delay and, in reality, the Shelby County Defendants (and other Defendants) pushed the Plaintiffs to cooperate in efforts to move this case along. There is simply no basis to conclude that the Shelby County Defendants are at fault for the issues about which Plaintiffs now complain.

To the extent that the Shelby County Defendants have any level of fault for the pace at which depositions have been scheduled, their conduct certainly does not rise to the level required to warrant the draconian sanction of a default judgment, or as explained in more detail below, an adverse inference instruction. As Chief Judge S. Thomas Anderson of this Court has explained, "[e]ntry of a default judgment against a party for failure to cooperate in discovery is a sanction of last resort." *Phipps*, 2017 WL 685579, at *3. The cases cited by Plaintiffs in apparent support of their argument show how egregious a party's conduct must be to warrant such sanctions, and nothing the Shelby County Defendants has done rises to that level. *See, Am. Book Co. v. Consol. Grp. of Companies, Inc.*, No. 3:09-CV-112, 2011 WL 1258019, at *4 (E.D. Tenn. Mar. 9, 2011), report and recommendation adopted, No. 3:09-CV-112, 2011 WL 1212745 (E.D. Tenn. Mar. 31, 2011) (dismissing case after defendant was ordered three times to appear for deposition, left abruptly during two depositions and failed to appear for a third, ignored the court's order of monetary sanctions, and failed to respond to plaintiffs' final motion for sanctions); *Joiner v. Track*, No. 15-CV-2730-SHL/TMP, 2016 WL 1583847, at *2 (W.D. Tenn. Mar. 31, 2016), report and recommendation adopted, No. 15-CV-2730-SHL-TMP, 2016 WL 1583675 (W.D. Tenn. Apr. 19, 2016) (dismissing case after plaintiff failed to appear as ordered for three court

28

conferences and two show cause order hearings); *Bell-Flowers v. Progressive Ins. Co.*, No. 04-3026 B/P, 2006 WL 8434918, at \*2 (W.D. Tenn. May 19, 2006) (**denying** a motion to dismiss in spite of Plaintiffs' failure to appear at her deposition and failure to provide complete discovery responses).[19]

Further, despite Plaintiffs' insistence that their inability to depose Mr. Raper constitutes prejudice to them, they have not demonstrated that to be the case. The Shelby County Defendants have produced thousands of emails and other documents related to Mr. Raper's involvement in the events at issue. Furthermore, although Mr. Raper had extensive knowledge of the matters at issue in this lawsuit, his knowledge of the events that have occurred was by no means exclusive. In fact, many other employees of the County were involved in the iCJIS project and its implementation, and they can be deposed by the Plaintiffs. Likewise, the Plaintiffs are permitted to take a Rule 30(b)(6) deposition of Shelby County. Simply put, Plaintiffs have not identified a single element of their case that is dependent entirely upon testimony of Mr. Raper or a single instance in which other means of discovery have failed to answer any questions Plaintiffs may have. And because Plaintiffs share the blame for any alleged delay, they cannot claim to have been prejudiced. *See, e.g., Carpenter v. City of Flint*, 723 F.3d 700, 706 (6th Cir. 2013) (finding no prejudice when both parties failed to take advantage of options to continue moving case along).

Finally, the Court has not issued any warnings to Shelby County Defendants that their conduct could warrant sanctions, and no previous sanctions have been awarded or considered on

---

[19] Plaintiffs' motion quotes directly from this ruling but leaves out the highlighted text: "**Although Bell-Flowers's failure to appear at her December 19 deposition and failure to provide complete discovery responses are** serious violations of the court's scheduling order and the rules of discovery**, the court concludes that the extreme sanction of dismissal is not warranted at this time**." (*See* Plaintiffs' Motion at p. 18.)

these issues.  This factor particularly weighs against the harsh sanctions Plaintiffs' request in

their motion.  *Freeland v. Amigo*, 103 F.3d 1271, 1281 (6th Cir. 1997) (ruling that district court

abused discretion in immediately imposing sanction that caused a party to lose their day in court

and failing to consider whether less drastic sanctions would remedy misconduct).  Since all four

factors weigh against issuing sanctions, Plaintiffs' Motion should be denied.

> C.   *The unexpected death of Mr. Raper provides no basis for imposing sanctions for*
> *spoliation of evidence.*

Plaintiffs insist—while citing no case law in support of their claim—that Mr. Raper's

untimely death is tantamount to spoliation of evidence on the part of Shelby County.   More

specifically, the Plaintiffs' Motion essentially accuses the Shelby County Defendants and their

counsel of intentionally delaying Mr. Raper's deposition, with knowledge of a terminal health

condition, in order to ensure Mr. Raper's silence.  (*See* Plaintiff's Motion at p. 13, where they

assert, "The County was aware that Mr. Raper had health issues but dodged and delayed

producing Mr. Raper for months," and at p. 17, where they assert, "County Defendants went to

painstaking efforts to make sure that a deposition [of Mr. Raper] was never taken.").  It is

outrageous that the Shelby County Defendants and their counsel even need respond to these

offensive, unsupported allegations.  In any event, it is clear that the concept of spoliation does

not apply here.

Generally speaking, spoliation involves the destruction or significant alteration of

evidence while litigation is pending.  *See Owner–Operated Ind. Drivers Ass'n v. Comerica Bank*,

860 F. Supp. 2d 519, 537 (S.D. Ohio 2012), *aff'd in part and vacated in part on unrelated*

*grounds*, 562 Fed. App'x 312 (6th Cir. 2014).  In order to establish a claim for spoliation, the

moving party must demonstrate (1) that the party against whom a finding of spoliation is sought

had control of the evidence, (2) that the party had a duty to preserve the evidence, (3) that the

evidence was destroyed with a culpable state of mind, and (4) that the information was relevant to the litigation.  *Id*.  Plaintiffs have failed to show that these factors apply here.

Although Mr. Raper was an employee of Shelby County and the County has a general duty to preserve evidence during the course of this litigation, Shelby County had no control over Mr. Raper's health and untimely death.  In fact, neither Shelby County nor counsel for Shelby County had any knowledge of Mr. Raper's health conditions.  In the days leading up to Mr. Raper's death, counsel for the Shelby County Defendants had been in contact with Mr. Raper about potential dates for his deposition.  Mr. Raper mentioned nothing to cause counsel to believe he was ill, much less advised that he had some sort of terminal condition. Hypothetically, given strong public policies in regard to the confidentiality of a person's health information, it is questionable that Shelby County could have even inquired about Mr. Raper's health conditions, even if the County had some reason to suspect that he was ill (which it did not).  It is even more doubtful that Mr. Raper would have been under any obligation to share details concerning his health.   Given what Shelby County knew—*i.e.*, that Mr. Raper had indicated his availability to give deposition testimony in February and March without any contingency for illness—it borders on absurd to suggest that Shelby County had any greater duty to "preserve" Mr. Raper's testimony than it undertook here by working with the other parties to schedule his deposition on a suitable.[20]

---

[20] Plaintiffs suggest in a footnote to their Motion that Mr. Raper's personal knowledge of his own health condition is imputed to Shelby County. This argument not only lacks any grounds under the law, but also defies common sense.  Plaintiffs cite to two insurance cases for the elementary proposition that an agent's knowledge can generally be imputed to its principal, but which supply no basis for Plaintiffs' contention that such imputation applies to an employee's personal health information.  Generally speaking, for an agent's knowledge to be attributed to his principal, the agent's knowledge must be "received while the agent is acting within the scope of his authority and [be] in reference to a matter over which his authority extends." *Carter v. Baker's Food Rite Store*, 787 S.W.2d 4, 7 (Tenn. Ct. App. 1989).  It is difficult to envision a

Unequivocally, Plaintiffs' spoliation claim also fails on the third element the Court must consider. Since the culpable state of mind requirement stands in relation to the "destruction" of evidence, Plaintiffs arguably would need to show that Shelby County had some level of fault in bringing about Mr. Raper's death. *See, e.g.*, *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 999 (N.D. Ohio 2016) ("The culpable state of mind factor is satisfied by a showing that the evidence *was destroyed knowingly*, even if without intent to breach a duty to preserve it, *or negligently*.") (emphasis added). But Plaintiffs can show no such facts. As discussed above, the Plaintiffs have not even shown that Shelby County was aware of Mr. Raper's health condition.

For the foregoing reasons, there is no basis to find that Shelby County, by way of Mr. Raper's unexpected death, has spoliated evidence. Plaintiffs' request for sanctions on that basis should be denied.

### D.   *While Plaintiffs have failed to even suggest what adverse inference they ask the Court to instruct, no adverse inference is warranted.*

The factors for determining whether an adverse inference is warranted are essentially identical to the elements of spoliation, and Plaintiffs' request for an adverse inference instruction fails for the same reasons that their request for a default judgment falls short. More specifically, to obtain an adverse inference instruction—for spoliation of evidence or otherwise—the moving party must demonstrate the following:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

topic that falls further outside the scope of an individual's professional authority at work than his own personal health information. Mr. Raper had no obligation or reason to disclose his heath information to Shelby County.

*Parrish v. Dollar Gen. Corp.*, 680 F. App'x 423, 427 (6th Cir. 2017)(quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citation and internal quotation marks omitted).

In addition to the deficiencies discussed above, which relate to the first two requirements, Plaintiffs' motion fails to put forth any information on which the Court could assess the third factor of consideration.  Plaintiffs must draw a connection between Mr. Raper's anticipated testimony and some claim or defense at issue in the case "such that a reasonable trier of fact could find" that Mr. Raper's testimony would have supported the Plaintiffs' claim or been detrimental to the Shelby County Defendants.  But Plaintiffs have not even stated what inferences they are requesting, let alone established any facts that would permit a reasonable trier of fact to conclude that any allegedly undiscoverable evidence would have been helpful to Plaintiffs' case. *See, e.g., BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1062 (W.D. Tenn. 2009) (denying a request for an adverse inference where Plaintiff offered no evidence to support an allegation that destroyed documents may have established a specific fact at issue).

For the foregoing reasons, Plaintiffs' request for an adverse inference instruction should be denied.

II.   **There is no basis for overturning the bifurcation order entered by the Court with the consent of all parties, and to do so at this stage of discovery would be contrary to the interests of fairness and justice.**

From the earliest stages of this litigation, discovery has been bifurcated into two separate phases. In February 2017, upon *joint motion* of the parties,[21] the Judge Mays ruled that

---

[21] At the time of the Court's initial Scheduling Order, the only two parties before the Court in this matter were Plaintiff Issacca Powell and Defendant Bill Oldham (named in his individual and official capacities).

"bifurcat[ion of] class certification from merits discovery" was "appropriate" in this case and adopted bifurcated discovery in the Court's initial Scheduling Order. (DE 37.) Since the entry of the original Scheduling Order, the growing number of parties to this case have reiterated their consent to limiting pre-certification discovery to Rule 23 issues on four separate occasions. First, a Consolidation Order[22] dated March 13, 2017, provided that the parties would continue to abide by the Court's initial Scheduling Order. (DE 42.) Three subsequent Scheduling Orders were entered on September 7, 2018, April 10, 2019, and September 6, 2019.  (DE 108, 186, and 244.) Each of these amended Scheduling Orders reaffirmed the bifurcation of class and merits discovery adopted in the Court's initial Scheduling Order. Importantly, each of these amended Scheduling Orders were presented to the Court with the *express agreement* of all parties.

Now—after the Defendants have relied upon the Court's bifurcation orders for years, attended numerous hearings before the Magistrate Judge in seeking to narrow Plaintiffs' overly broad discovery requests, and spent hundreds of thousands of dollars to produce hundreds of thousands of documents in fulfillment of their class discovery obligations—Plaintiffs want to move the goal posts.  In explaining their reversal, Plaintiffs state that they had initially hoped to "quickly resolve issues pertaining to class certification," but that this objective no longer seems achievable. (*See* Plaintiffs' Motion, p. 10.)  If Plaintiffs' request for merits-based discovery were granted, however, it would only serve to *further* delay a class certification ruling.

By definition, the phased discovery structure facilitates reaching a class certification determination "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). The intent behind the

---

[22]On March 13, 2017, Powell's suit was consolidated with Case No. 17-cv-2015, resulting in the addition of Named Plaintiffs Cortez D. Brown, Deontae Tate, and Jeremy S. Melton. Shelby County, several individual Shelby County Defendants, and Tyler Technologies, Inc. were similarly incorporated as defendants, (DE 42.)

Court's Scheduling Orders bifurcating discovery is, and has always been, to allow all parties to avoid the time and expense of merits-related discovery unless and until Plaintiffs satisfy their burden of establishing that this matter should be certified as a class. This goal is just as worthwhile as it was three years ago—perhaps even more so for parties like the Shelby County Defendants who have fully answered all class-based written discovery requests directed to them, and who would be significantly harmed by having to repeat this process for merits-based requests before any showing must be made by Plaintiffs that a viable class exists.

All of the cases Plaintiffs rely upon to support their request for merits discovery are inapposite here, because each involved an *initial* determination of the appropriate course of discovery.[23] On the other hand, when faced with the choice to disturb an existing bifurcation order, courts have declined to do so. *See Antoine v. School Board of Collier County*, 2018 WL 9617243, at *1 (M.D. Fla. April 18, 2018) ("The reasons for this bifurcation have not changed since the outset of this case.  Thus, the Court is not inclined to modify the [Scheduling Order] to allow for full merits discovery at this time.").

The most appropriate time to decide whether discovery should be conducted in phases or as a single, continuous endeavor is at the very outset of a case, as the Court and the parties did at

---

[23] Moreover, while Plaintiffs' Motion points to cases speaking on the disadvantages of phased discovery and ultimately declining to bifurcate class and merits-based discovery, significant authority exists to support Judge Mays' ruling that bifurcation is appropriate in this case. Numerous federal courts—including this Court—have bifurcated class and merits discovery. *See, e.g., Clarke v. Baptist Memorial Healthcare Corp.*, No. 2:06-cv-02377, 2008 WL 11320263 (W.D. Tenn. Jan. 28, 2008); *Horton v. Southwest Medical Consulting, LLC*, 2017 WL 5075928, at *1 (N.D. Okla. August 14, 2017) (electing to bifurcate discovery over the objection of plaintiff); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 933 (N.D. Ill. 2013) ("While the Court recognizes that the class certification and merits issues may overlap in some respects, this alone is not enough to overcome the efficiency benefits to be gained from bifurcated discovery. . . . Thus, after careful review of [the filings], the Court finds that in the interest of convenience and judicial economy, bifurcating class certification from merits discovery is appropriate.").

the initial scheduling conference in February 2017. This is because it forces the parties to weigh the advantages and disadvantages of alternative discovery structures on the front end and reach a consensus, so that they can then rely upon these expectations to inform their decisions, strategies, and budgets for each stage of litigation going forward. The parties knew—or at least had the opportunity to consider—these advantages and disadvantages when their joint motion to bifurcate discovery was raised at the Court's first scheduling conference, and on each amendment thereafter. Shelby County Defendants and all parties in this case have incurred the costs of (*inter alia*) working through class and merits disagreements in reliance upon, and in exchange for, the benefit of deferring merits discovery[24] until Plaintiffs have met their burden of establishing that class certification is proper. Plaintiffs have not provided a compelling basis for disrupting the parties existing discovery structure, and the Court should therefore deny their request to engage in merits-based discovery prior to class certification.

## **CONCLUSION**

For the reasons stated above, Shelby County Defendants respectfully request that Plaintiffs' Motion be dismissed in its entirety.

---

[24] Notably, Plaintiffs have also taken advantage of the bifurcated discovery structure established in the Court's orders. Plaintiffs objected to nearly every interrogatory and request for production propounded in this case by the Shelby County Defendants on the grounds that such discovery requests "call[] for information well outside the scope of discovery, which is currently limited to Class Certification Discovery, and, as such, is irrelevant, not proportional to the needs and issues involved in Class Certification and is overly broad and unduly burdensome." (*See, e.g.*, Exhibit A to Joint Response of Vendor Defendants to Plaintiffs' Motion, DE 312-1, at p. 3.) Plaintiffs' narrow construction of which issues pertain to class discovery in its own discovery responses is directly at odds with the positions it has taken while requesting much broader "class" discovery from Defendants. (*See generally* Ex. 4 to Horton Decl.)

Respectfully submitted,

/s/ Meghan M. Cox
Robert E. Craddock, Jr. (# 5826)
Odell Horton, Jr. (# 12426)
Byron N. Brown IV (# 23529)
Meghan M. Cox (# 33028)
WYATT, TARRANT & COMBS, LLP
6070 Poplar, Suite 300
Memphis, TN 38119
(901) 537-1000
rcraddock@wyattfirm.com
ohorton@wyattfirm.com
bbrown@wyattfirm.com
mcox@wyattfirm.com

AND

E. Lee Whitwell (#33622)
Shelby County Attorney's Office
160 North Main Street, Suite 950
Memphis, TN  38103
(901) 222-2100
lee.whitwell@shelbycountytn.gov

*Attorneys for Shelby County Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 9, 2020, a true and correct copy of the foregoing was served upon the following counsel via the Court's ECF filing system:

Michael G. McLaren
William E. Cochran, Jr.
Brice M. Timmons
Black McLaren Jones Ryland & Griffee PC
530 Oak Court Drive, Suite 360
Memphis, TN 38117
MMcLaren@blackmclaw.com
wcochran@blackmclaw.com
btimmons@blackmclaw.com

Frank L. Watson
William F. Burns
Watson Burns, PLLC
253 Adams Avenue
Memphis, TN 38104
fwatson@watsonburns.com
bburns@watsonburns.com

*Counsel for Plaintiffs*

Bradley E. Trammell
Baker, Donelson, Bearman, Caldwell &
Berkowitz
165 Madison Avenue, Suite 2000
Memphis, TN  38103
btrammell@bakerdonelson.com

Beth Petronio
K&L Gates
1717 Main Street, Suite 2800
Dallas, Texas  75201
beth.petronio@klgates.com

*Counsel for Tyler Technologies, Inc.*

Russell Brandon Bundren
James L. Murphy
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
bbundren@babc.com
jmurphy@bradley.com

*Counsel for Global Tel*Link Corporation*

Kevin David Bernstein
Albert G. McLean
Spicer Rudstrom PLLC
119 S. Main Street, Suite 700
Memphis, TN 38103
kdb@spicerfirm.com
amclean@spicerfirm.com

*Counsel for Sierra-Cedar, Inc.*

Douglas F. Halijan
William David Irvine
Burch Porter & Johnson
130 N. Court Avenue
Memphis, TN 38103-2217
dhalijan@bpjlaw.com
wirvine@bpjlaw.com

*Counsel for Software AG USA, Inc.*

Heather Gwinn-Pabon
Erin McDaniel
Gordon Rees Scully Mansukhani, LLP
3401 Mallory Lane, Suite 120
Franklin, TN 37067
hgwinn@grsm.com

*Counsel for Sierra Systems Group, Inc.*

Robert A. McLean
Garrett M. Estep
Farris Bobango Branan, PLC
999 S. Shady Grove Road, Suite 500
Memphis, Tennessee 38120
ram@farris-law.com
gestep@farris-law.com

*Counsel for Tetrus Corp.*

/s/Meghan M. Cox

38