IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SCOTT TURNAGE, CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, TRAVIS BOYD, TERRENCE DRAIN and KIMBERLY ALLEN on behalf of themselves and all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>BILL OLDHAM, in his individual capacity as former Sheriff of Shelby County, Tennessee; FLOYD BONNER, JR., in his official capacity as Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity as former Jail Director of Shelby County, Tennessee; KIRK FIELDS, in his official capacity as the Jail Director of Shelby County, Tennessee; CHARLENE MCGHEE, in her individual capacity as former Assistant Chief of Jail Security of Shelby County, Tennessee; REGINALD HUBBARD, in his official capacity as Assistant Chief of Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity as former Assistant Chief of Jail Programs; TIFFANY WARD in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; TYLER TECHNOLOGIES, INC., a foreign corporation; GLOBAL TEL\*LINK CORPORATION, a foreign corporation; SOFTWARE AG USA, INC., a foreign corporation; SIERRA-CEDAR, INC., a foreign corporation; SIERRA SYSTEMS GROUP, INC., a foreign corporation, and TETRUS CORP, a foreign corporation,<br><br>Defendants. | Civil Action No. 2:16-cv-02907-SHM-tmp<br><br>Jury Demanded |

## DECLARATION OF EMMETT LEE WHITWELL

I, Emmett Lee Whitwell, declare as follows:

1. I am an adult resident of the State of Tennessee.

2. I have personal knowledge and/or collected the facts and information contained in this declaration.

3. I am competent to testify as to the matters set forth herein.

4. I am employed by Shelby County Government in the Shelby County Attorney's Office in the position of Assistant County Attorney. I have been employed with Shelby County Government since July, 2016. My business address is 160 North Main Street, Suite 900, Memphis, TN 38103.

5. Because of the unique circumstances of this class and the record-keeping at the Shelby County Jail, it is not practical or feasible and would be extremely time consuming and expensive to provide mail notice to Class Members. Given the historically transient nature of the Shelby County Jail's population, as well as the small proportion of Class Members who will ultimately be eligible for monetary relief as explained below, requiring notification of Class Members by mail also would be unduly burdensome.

6. The number of persons booked into the Shelby County Jail during the class period, November 1, 2016 through March 30, 2021, is 72,975.

7. There is no way to easily determine how many Class Members booked during this time period may have a valid claim for monetary relief. Pursuant to the parties' proposed settlement terms, only inmates who were detained for 9 hours or more after legal authority for detention ceased are eligible for monetary relief. The only way to determine the number of Class Members who meet this threshold would be to individually review each inmate/detainee's court jacket and jail record to determine the amount of time the claimant spent in jail and the amount of time from when legal authority for the detention ceased (usually based on an order from a

2

court) until the actual time that the detainee was released (jail records). Some of the relevant records are maintained in hard copy and others are maintained electronically; both would need to be reviewed to accurately and fully obtain the information. Even if such review could be completed in an average of 20 minutes per detainee, reviewing all 72,975 jackets and jail records at 8 hours a day, with 2 persons reviewing files full time, would take nearly 6 years. Such an undertaking, if the persons reviewing files were paid the current minimum wage, would cost Shelby County taxpayers approximately $175,000.

8. There were a number of people booked into the Shelby County Jail during the class period who would not be eligible for release, even after a court order on the specific charge for which they were arrested, because there were other reasons to hold them, such as an outstanding warrant from another jurisdiction, failure to post bond, or additional charges. Jail records would have to be reviewed in detail in this respect as well.

9. Although it is difficult, if not impossible, to know definitively the Class Members eligible for monetary relief without examining each court jacket and jail record, the County's random sampling has allowed us to extrapolate and provide our best estimates. Based on this random sampling, we believe it is fair to estimate the total number of Class Members eligible for monetary relief to be approximately 3,500. This estimate is affected by the fact that the vast majority of persons who may have been allegedly over-detained as a result of the implementation and operation of the new computer system were booked no later than June 1, 2017 based upon various adjustments made by the County and Defendants regarding the new computer system, processing of detainees, etc. A spreadsheet was produced denoting all detainees from November 1, 2016 through June 1, 2017, and based upon an evaluation of that spreadsheet and a random sample of court jackets, it appears that some 3,500 or so persons might qualify for settlement

3

compensation. Although we believe that most of the eligible claimants would have been detained prior to June 1, 2017, nonetheless it is believed that there are a small number of others after June 1, 2017 who might be eligible for settlement compensation as well. This is based on anecdotal information obtained internally at the County, such as information from criminal court judges.

10. The manner in which the records are kept not only makes it challenging to estimate the total number of class members who may be entitled to monetary relief, it makes mail notice impractical and infeasible for a number of reasons. First, as noted, the jackets are hard copy files, and a number of the files may lack information or contain inaccurate information. Some jackets contain no record of an inmate/detainee's address, and a number of individuals were homeless at the time of their arrest. The County has reason to suspect that some inmates/detainees intentionally provide incorrect or outdated addresses. In addition, some errors may have occurred during the course of transcribing the information. For example, a number of inmates' addresses appear on their face to have mismatched cities and states. Many of the errors would be impossible to detect and correct without additional information. Even if any such errors could be corrected, doing so would require a manual review and correction, which, based on the sheer number of inmates arrested, would be both time-consuming and prohibitively expensive.

11. Second, mail notice is also hampered by the fact that many of the inmates/detainees are transient. In fact, there are a number of inmates/detainees who are currently considered homeless, and therefore have no address to send mail notice. Moreover, it is believed that a large number of the Class Members have moved (perhaps multiple times) since 2017. Further, based upon experience, many of those who are arrested are unlikely to review notice by mail and avoid notices from the government. Statistically, there will also be a number

4

of deceased persons in the pool of potential claimants. In fact, two of the named plaintiffs have passed away during the course of this litigation alone.

12.     Third, at the bulk mail rate of $0.46 per letter, it would cost approximately $33,300 in mailing costs just to submit mail notice to all persons who were booked into the Shelby County Jail during the class period, not including any costs that may be assessed if a third party vendor is engaged in connection with the mailing.

13.     Fourth, there is legitimate concern for fraud if these notices are mailed to all 72,975 individuals arrested during the relevant time period, especially when we believe that only 3,500 Class Members are eligible for monetary relief. For example, if notice is mailed, such notice may not be received by the proper recipient. There could be potential for fraud by someone who is not a proper claimant to submit a Claim Form in the name of the mail notice recipient. The potential claimants are people who have been arrested, many of whom have been convicted (in some instances more than once). Moreover, for each non-eligible Claim Form that is submitted, that means that a Shelby County employee must locate and pull the appropriate court jacket and jail record, review and scan the appropriate contents of each to the Administrator, and then the Administrator must make a determination of whether the claim is legitimate. If not, then a letter will have to be sent to the claimant informing that the claim has been denied. If only 15% of persons who are sent mail notice send in a Claim Form (with 3,500 being actually eligible), that would result in approximately 7,358 erroneous Claim Forms that would have to be reviewed and investigated. If the jail and court records for these 7,358 claimants were reviewed for 40 hours per week at an average pace of 20 minutes per claimant, the Administrator would spend in excess of 14 months investigating erroneous claims. The postage alone for denying these erroneous claims would cost almost $3,400.

5

14. Fifth, the records of a significant number of the inmates who were arrested during the relevant time period have been expunged or are currently in the process of being expunged. While the Court has previously ordered the disclosure of these records subject to the parties' Amended Agreed Protective Order dated on February 11, 2019, this authorization and protection is limited to the disclosure of expunged information between the parties in this litigation. Disseminating expunged information by mail to the public, without regard for the likelihood of such mail being intercepted or delivered to an incorrect mailing address, would raise serious privacy concerns for the County and those inmates whose arrest details are no longer considered public record.

## Declaration under 28 U.S.C. § 1746

STATE OF TENNESSEE
COUNTY OF SHELBY

I, Emmett Lee Whitwell, having been first duly sworn, state under penalty of perjury as follows:

I am an Assistant County Attorney and in that capacity I execute the foregoing Declaration. I verify that I have read the foregoing Declaration and am familiar with the contents thereof. To the extent the information set forth therein is within my personal knowledge, the matters set forth are true and correct to the best of my knowledge and information. To the extent the information set forth therein is not known to me personally but is based on the information and records of Shelby County Government, the matters set forth are true and correct to the best of my information and belief.

Emmett Lee Whitwell

6